1

2

3

4

5

6

7

8

The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

STATE OF WASHINGTON, et al.,

10

Plaintiffs,

11

v.

12

13

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

14

Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

NO. 2:25-cv-01228-KKE

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
August 5, 2025

ORAL ARGUMENT REQUESTED

1

**<u>TABLE OF CONTENTS</u>**

2    I.    INTRODUCTION .......................................................................................... 1

3    II.    STATEMENT OF FACTS ............................................................................ 2

4        A.    Congress Creates and Funds Mental Health Programs in Response to Mass School Shootings ................................................................... 2

6        B.    The Department's Process for Awarding New Grants Is Separate and Apart from its Process for Awarding Continuing Grants ......................... 4

7            1.    The Department uses a competitive process to award new grants based on published priorities and selection criteria ............................ 5

9            2.    The Department makes continuation awards based on grantee performance .................................................................................... 5

10        C.    The Department's Selection of MHSP Applications Based on Published Priorities ..................................................................................... 7

12        D.    The Department's Selection of SBMH Applications Based on Published Priorities ..................................................................................... 8

13        E.    Grantees Are Making Substantial Progress Towards the Programmatic Goals of These Mental Health Grants ........................................ 8

14            1.    SBMH ............................................................................................. 9

15            2.    MHSP ........................................................................................... 10

16        F.    The Department Discontinued Certain Program Grants Due to a Purported Conflict with the Trump Administration's Priorities ................. 11

18        G.    The Harmful, Immediate Impact of The Department's Non-Continuation Decision on Students, Schools, and Plaintiff States ................. 13

19    III.    LEGAL STANDARD ................................................................................ 15

20    IV.    ARGUMENT .............................................................................................. 15

21        A.    Plaintiffs Are Likely to Succeed on the Merits of their Claims .............. 15

23            1.    Defendant's Non-Continuation Decision is subject to review under the APA ................................................................................ 16

24            2.    Defendants' Non-Continuation Decision was arbitrary and capricious ........... 17

25            3.    Defendants' actions were contrary to law ..................................... 21

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

    a. The Department violated 34 C.F.R. § 75.253(b) by discontinuing Program grants based on new priorities ........................................................... 21

    b. Defendants' Non-Continuation Decision violates the regulatory mandate that the Department give priority to continuation awards over new grants ..... 26

   4. Defendants acted without observance of procedure required by law ............... 26

   5. Defendants retroactively imposed new conditions on awarded Program grants in violation of the Spending Clause ........................................................ 27

  B. Grantees in Plaintiff States Will Suffer Irreparable Harm Without Preliminary Relief ................................................................................................................... 28

  C. The Balance of Equities Tips in the States' Favor and an Injunction Is in the Public Interest ..................................................................................................... 32

  D. Grantees in Plaintiff States Are Entitled to Preliminary Relief ............................... 33

V.  CONCLUSION ................................................................................................................... 33

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ................................................................................................ 16

4

5

*All. for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................................... 15

6

*Ambach v. Bell*,
  686 F.2d 974 (D.C. Cir. 1982) ............................................................................... 29

7

8

*Arizona Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ............................................................................... 28

9

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291(2006) ................................................................................................ 27

10

11

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ............................................................................................... 27

12

*Backcountry Against Dumps v. Fed. Aviation Admin.*,
  77 F.4th 1260 (9th Cir. 2023) ............................................................................... 23

13

14

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................... 16

15

*Bissonnette v. LePage Bakeries Park St., LLC*,
  601 U.S. 246 (2024) ............................................................................................... 23

16

17

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
  42 F.4th 1024 (9th Cir. 2022) ............................................................................... 23

18

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) ............................................................................... 27

19

20

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ............................................................................................... 23

21

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ............................................................................................... 16

22

23

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019) .......................................................................................... 17, 18

24

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  591 U.S. 1 (2020) ............................................................................................... 19, 20

25

26

*Dickson v. Sec'y of Def.*,
  68 F.3d 1396 (D.C. Cir. 1995) ............................................................................... 17

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ................................................................. 32

*EC v. Chenery Corp.*,
  332 U.S. 194 (1947) ............................................................................... 18

*Encino Motorcars v. Navarro*,
  579 U.S. 211 (2016) .......................................................................... 18, 21

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ............................................................................... 18

*FDA v. Wages & White Lion Invs.*,
  145 S. Ct. 898 (2025) ............................................................................. 18

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ............................................................................... 17

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) ................................................................ 33

*Jaffee v. Redmond*,
  518 U.S. 1 (1996) ................................................................................... 32

*Kisor v. Wilkie*,
  588 U.S. 558 (2019) ............................................................................... 22

*Los Altos Boots v. Bonta*,
  562 F. Supp. 3d 1036 (E.D. Cal. 2021) ................................................. 31

*Michigan v. EPA*,
  576 U.S. 743 (2015) .......................................................................... 17, 21

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v.
  State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................... 17, 18, 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ............................................................................... 27

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ................................................................. 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ................................................................................... 27

*Planned Parenthood of Greater Washington & N. Idaho v.
  U.S. Dep't of Health & Hum. Servs.*,
  328 F. Supp. 3d 1133 (E.D. Wash. 2018) ................................. 29, 31, 33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Population Inst. v. McPherson*,
    797 F.2d 1062 (D.C. Cir. 1986) ............................................................................ 29

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020) ............................................................................... 15

*S. Educ. Found. v. United States Dep't of Educ.*,
    CV 25-1079-PLF, 2025 WL 1453047 (D.D.C. May 21, 2025) ............................. 16

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
    25-CV-02425-EMC, 2025 WL 1713360 (N.D. Cal. 2025) ................................... 28

*Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.*,
    841 F. Supp. 2d 349 (D.D.C. 2012) ...................................................................... 29

*Silvers v. Sony Pictures Ent., Inc.*,
    402 F.3d 881 (9th Cir. 2005) ............................................................................... 23

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ............................................................................................. 28

*State v. Bureau of Land Mgmt.*,
    286 F. Supp. 3d 1054 (N.D. Cal. 2018) ............................................................... 29

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................................. 30

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................. 15

*Wolford v. Lopez*,
    116 F.4th 959 (9th Cir. 2024) ............................................................................. 32

## Statutes

20 U.S.C. § 1221 ........................................................................................................... 4

20 U.S.C. § 1221e-4 ............................................................................................... passim

20 U.S.C. § 1228a(b) ................................................................................................ 4, 20

20 U.S.C. § 1232(a)(2) ........................................................................................... passim

20 U.S.C. § 1232(d) ........................................................................................... 2, 15, 26

20 U.S.C. § 1232(d)(1) .................................................................................................. 7

5 U.S.C. § 553 ..................................................................................................... 2, 4, 15

5 U.S.C. § 706(2)(A) ...................................................................................... 2, 15, 17, 21

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

5 U.S.C. § 706(2)(B) .......................................................................................... 2

5 U.S.C. § 706(2)(D) ....................................................................... 2, 15, 26, 27

Bipartisan Safer Communities Act,
　Pub. L. No. 117-159, 136 Stat. 1313 (June 25, 2022) ................................ 4, 33

### Regulations

34 C.F.R. § 75.100 ............................................................................................ 5

34 C.F.R. § 75.101 ............................................................................................ 5

34 C.F.R. § 75.101(a)(4) ................................................................................. 24

34 C.F.R. § 75.105 ............................................................................................ 5

34 C.F.R. § 75.105(a) ..................................................................................... 24

34 C.F.R. § 75.110 ............................................................................................ 5

34 C.F.R. § 75.118 ............................................................................................ 6

34 C.F.R. § 75.201 ............................................................................................ 5

34 C.F.R. § 75.217 ............................................................................................ 5

34 C.F.R. § 75.251(a) ....................................................................................... 5

34 C.F.R. § 75.253(a)(5) ................................................................................ 22

34 C.F.R. § 75.253(b) ............................................................................... passim

34 C.F.R. § 75.251(b)(2) ............................................................................. 6, 19

34 C.F.R. § 75.253(c) ............................................................................... passim

45 Fed. Reg. 22,552 (April 3, 1980) ........................................................... 6, 25

59 Fed. Reg. 30,258 (June 10, 1994) .................................................... 6, 19, 25

84 Fed. Reg. 29,180 (June 21, 2019) ............................................................ 3, 7

85 Fed. Reg. 32,025 (May 28, 2020) ............................................................... 8

87 Fed. Reg. 47,152 (Aug. 2, 2022) ............................................................ 8, 26

87 Fed. Reg. 47,159 (Aug. 2, 2022) ....................................................... 7, 26, 28

87 Fed. Reg. 60,083 (Oct. 4, 2022) ............................................................ 7, 26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

87 Fed. Reg. 60,092 (Oct. 4, 2022)..........................................................................8, 26

87 Fed. Reg. 60,137 (Oct. 4, 2022)...............................................................................8

87 Fed. Reg. 60,144 (Oct. 4, 2022)...............................................................................7

87 Fed. Reg. 72,976 (Nov. 28, 2022) .......................................................................7, 12

89 Fed. Reg. 15,173 (Mar. 1, 2024)..........................................................................8, 12

89 Fed. Reg. 70,300 (Aug. 29, 2024) ...........................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

# I.    INTRODUCTION

The U.S. Department of Education recently upended two federal grant programs that provide critical mental health services in high-need schools: the Mental Health Service Professional Demonstration Grant Program (MHSP) and School-Based Mental Health Services Grant Program (SBMH) (collectively, the "Programs"). Congress created and funded these Programs following repeated tragic and devastating loss from school shootings. In 2022, spurred by the tragedy in Uvalde, Texas, a bipartisan Congress funded the Programs through 2026. These Programs have been an incredible success, providing services to nearly 775,000 students in their first year. Sampled projects showed real results: a 50% reduction in suicide risk, decreases in absenteeism and behavioral issues, and increases in positive student-staff engagement.

Nonetheless, on April 29, 2025, the Department inexplicably announced its decision to discontinue certain Program grants (the "Non-Continuation Decision") through boilerplate notices it issued to school districts, regional education agencies, state education departments, and universities across the country. These notices claimed that because grantees' projects supposedly conflicted with the Trump Administration's new priorities, continuing their grants was not in the federal government's best interest.

The Department's Non-Continuation Decision violates not only the moral imperative that we care for our children's safety and well-being, but also the Administrative Procedure Act (APA) and the Spending Clause. It bears the hallmark of an arbitrary and capricious action— boilerplate notices to an unknown subset of grantees that fail to provide an individualized basis for the discontinuance, consider grantees' substantial reliance interests, or consider the tremendously harmful impact to children dependent on these mental health services, the educational mission of affected schools, and the mental health workforce pipeline.

Moreover, in imposing new priorities, the Department violated its own regulations. Under 34 C.F.R. § 75.253(b), the Department considers only the grantee's performance when deciding whether to continue a multi-year grant—and there is no indication whatsoever that

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

grantee performance was even a factor in its Non-Continuation Decision. The Non-Continuation Decision also strips grantees of § 75.253(c)'s requirement that the Department fund multi-year projects over new grant awards.

Even if Defendants were somehow permitted to discontinue grants based on new priorities, they did not follow the required notice-and-comment process before unlawfully applying "new priorities" to discontinue grants. *See* 5 U.S.C. § 553; 20 U.S.C. §§ 1232(a)(2), (d), 1221e-4. Such surprise retroactive conditions also violate Spending Clause constraints. This Court should set aside the Non-Continuation Decision. *See* 5 U.S.C. §§ 706(2)(A), (B), (D).

The Non-Continuation Decision threatens the very purpose of these programs: to protect the safety and wellbeing of our children by permanently increasing the number of mental health professionals providing services in high-need schools. If the Non-Continuation Decision is not rescinded, students will once again have limited or no access to mental health services, undermining the gains grantees have made towards preventing another tragic school shooting. Grantees will be forced to lay off the very same professionals they expended Program funds to recruit and retain. They will also be forced to abandon the graduate students who received Program-funded scholarships in exchange for beginning their careers at high-need schools.

As the Non-Continuation Decision causes Plaintiffs immediate and irreparable harm, each of the preliminary injunction factors is met. Plaintiffs respectfully request that this Court issue an order rescinding the unlawful Non-Continuation Decision and enjoining Defendants from discontinuing Program grants based on new priorities.

## II.    STATEMENT OF FACTS

### A.    Congress Creates and Funds Mental Health Programs in Response to Mass School Shootings

On February 14, 2018, a former student shot and killed 14 students and 3 teachers at a high school in Parkland, Florida. Range Decl., Attach. E at 9. Later that year, Congress created

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1  MHSP through the Department of Education Appropriations Act, 2019, Pub. L. No. 115-245

2  (Sept. 28, 2018). The conference report described this Program as:

3      a demonstration program to test and evaluate innovative partnerships between
       institutions of higher education and States or high-need local educational
4      agencies to train . . . [qualified] mental health professionals . . . with the goal of
       expanding the pipeline of these workers into low-income public elementary
5      schools and secondary schools in order to address the shortages of mental health
       service professionals in such schools.
6

7  Range Decl., Attach. D at 4. President Trump then established a Federal Commission on School

8  Safety. 84 Fed. Reg. 29,180 (June 21, 2019). The Commission found a consistent theme—

9  "longstanding concern over limited access to mental health professionals in high-poverty

10  districts and schools where needs are the greatest." *Id.* The Commission's final report offers

11  recommendations for improving school safety, including providing students access to mental

12  health care services in schools, where treatment is much more likely to be effective and

13  completed. Range Decl., Attach. E at 36-37.

14      In 2020, Congress established SBMH by appropriating $10 million "to increase the

15  number of qualified, well-trained . . . mental health professionals that provide school-based

16  mental health services to students." Range Decl., Attach. F at 4. To promote the sustainability

17  of these programs, Congress required the awards to include a 25% match from the grantee and

18  to not supplant existing mental health funding. *Id.* It also directed the Department to continue

19  the MHSP. *Id.*

20      Congress continued to fund these Programs. For fiscal year 2021, Congress increased

21  funding for SBMH to $11 million. *See* Range Decl., Attach. G at 4. For fiscal year 2022,

22  Congress increased MHSP funding to $55 million and SBMH funding to $56 million. Range

23  Decl., Attach. H at 4.

24      A few months later, a gunman shot and killed 19 students and 2 teachers at an elementary

25  school in Uvalde, Texas. *See* Range Decl., Attach. I at 3. The Uvalde tragedy prompted a

26  bipartisan Congress to dramatically increase the funding levels for the Programs. Specifically,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    Congress directed the Department to make available an additional $100 million per year for each

2    Program for fiscal years 2022 through 2026. Bipartisan Safer Communities Act, Pub. L. No.

3    117-159, 136 Stat. 1313, 1342 (June 25, 2022).

4        The Act's Republican champions explained, "We crafted this landmark law with a simple

5    purpose: to reduce violence and save lives." Range Decl., Attach. B at 3. Congress achieved this

6    purpose by "providing the resources to help bring 14,000 additional mental health professionals

7    into U.S. schools." *Id*. They also explained, "Too often, adolescents with untreated mental health

8    conditions become the very same perpetrators who commit acts of violence. For this reason, we

9    crafted our law to . . . connect [students experiencing mental health crises] with the care they

10   need before it's too late." *Id.*

11       MHSP and SBMH are "applicable programs" under the General Education Provisions

12   Act (GEPA) and are therefore subject to Congress's mandate that the Department require grant

13   applicants to address equity issues. 20 U.S.C. §§ 1221, 1228a(b). Applicants are required to:

14           develop and describe in such applicant's application the steps such applicant
             proposes to take to ensure equitable access to, and equitable participation in,
15           the project or activity to be conducted with such assistance, by addressing the special
             needs of students, teachers, and other program beneficiaries in order to overcome
16           barriers to equitable participation, including barriers based on gender, race, color,
             national origin, disability, and age.
17
18   20 U.S.C. § 1228a(b) (GEPA Equity Directive). The Department provides instructions for grant

19   applicants, explaining how to meet this Directive. *See, e.g.*, Gustafson Decl., Attach. A at 18.

**B.    The Department's Process for Awarding New Grants Is Separate and Apart from**
20      **its Process for Awarding Continuing Grants**

21       GEPA and the Department's regulations ensure that applicants have fair and adequate

22   notice of the rules and criteria the Department uses for grantmaking. GEPA requires the

23   Department to use the APA's notice-and-comment process for grant programs. *See* 20 U.S.C. §§

24   1221e-4, 1232(a)(2), (d); 5 U.S.C. § 553. The Department's regulations set the requirements

25   governing: (1) the Department's competitive grantmaking process for awarding new grants; and

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

(2) its determination whether to make a continuation award for an existing multi-year grant—a non-competitive process that is based on the grantee's performance.

### 1. The Department uses a competitive process to award new grants based on published priorities and selection criteria

Each fiscal year, the Department awards billions in discretionary grants. Range Decl., Attach. O at 2. These grants are awarded competitively. *Id.* When the Department announces a competition for new grants for a particular fiscal year, it publishes an application notice that explains, among other things:

1.   How to apply for a new grant;

2.   The project period that will be approved for multi-year projects;

3.   The priorities established for the selection of new grants for the program that year;

4.   The selection criteria used to decide which applications will be awarded new grants and how the criteria will be weighted; and

5.   Any program performance measure requirements, including whether the application should propose project-specific performance measures and explain how the proposed measures would accurately measure project performance.

*See* 34 C.F.R. §§ 75.100, 75.101, 75.105, 75.110, 75.201.

The Department uses the published "priorities" to focus a particular year's grant competition on particular activities and objectives. *See* Range Decl., Attach. O at 3, Attach. N at 15-16; 34 C.F.R. § 75.105. The Department then scores the quality of each application using the selection criteria and priorities, ranks the applications, and awards new grants to the strongest applicants. 34 C.F.R. §§ 75.201, 217; Range Decl., Attach. N at 27-28.

### 2. The Department makes continuation awards based on grantee performance

The Department generally approves funding for 12-month budget periods. 34 C.F.R. § 75.251(a). When awarding a new multi-year grant, the Department funds the initial budget

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1  period and "indicates [its] intention to make continuation awards to fund the remainder of the

2  project period." 34 C.F.R. § 75.251(b)(2).

3      Unlike the process for awarding new grants, grantees do not compete for continuation

4  awards, and the priorities for future years' grant competitions are not relevant. Multi-year grant

5  recipients do not submit applications that are scored and ranked against other applicants.

6  *Compare* Range Decl., Attach. N at 27-28, *with id.* at 32-33, 46; *see also* 59 Fed. Reg. 30,258,

7  30,259 (June 10, 1994) (announcing "entirely new paradigm" for continuation awards based on

8  "projects' reporting on results and performance" rather than annual application). Instead, the

9  Department considers "any relevant information regarding grantee performance," including

10  performance reports, performance measures, and financial data. 34 C.F.R. §§ 75.118, .253(b);

11  Range Decl., Attach. N at 33 ("The program staff uses the information in the performance report

12  in combination with the project's fiscal and management performance data to determine

13  subsequent funding decisions."); 59 Fed. Reg. 30,258, 30,259 (June 10, 1994) ("[T]he

14  continuation award decision . . .  will be based entirely on the submission of [performance]

15  reports . . . rather than on the submission of a continuation award application.").

16      Further, the Department "gives priority to continuation awards over new grants."

17  34 C.F.R. § 75.253(c); Range Decl., Attach. N at 46 ("A grantee does not have to compete with

18  other applicants to receive [a continuation award]."); 45 Fed. Reg. 22,552, 22,559 (Apr. 3, 1980)

19  (explaining that each "continuation award will be judged on the basis of the criteria in [§ 253(a)]

20  and *will not be subject to competition with other applications*") (emphasis added). The

21  Department has long represented that a denial of continuation award funding is "extremely rare

22  in practice." *See* 59 Fed. Reg. 30,258, 30,259 (June 10, 1994); *see also* 89 Fed. Reg. 70,300,

23  70,316 (Aug. 29, 2024) ("In general, we do not deny a large number of non-competing

24  continuation awards . . . . ").

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    **C.    The Department's Selection of MHSP Applications Based on Published Priorities**

2            In 2019, under the first Trump Administration, the Department published a notice

3    inviting applications for the first MHSP grant competition and setting the inaugural program

4    priorities. 84 Fed. Reg. 29,180 (June 21, 2019); *see* 20 U.S.C. § 1232(d)(1) (exempting

5    regulations governing first-time grant competitions from APA rulemaking requirements).

6            In 2022, under the Biden Administration, the Department used rulemaking to add new

7    priorities for future MHSP competitions. *See* 20 U.S.C. §§ 1221e-4, 1232(a)(2), (d)(1); Range

8    Decl., Attach. P at 5. The Department published the proposed priorities, requirements, and

9    definitions, and invited the public to comment. 87 Fed. Reg. 47,159 (Aug. 2, 2022). The

10   Department explained the proposed priorities would "enable the Department to administer a

11   competitive grant program consistent with the intent of Congress . . . . " *Id.* at 47,165. The

12   Department then published a notice announcing the "final priorities, requirements, and

13   definitions" for future MHSP grant competitions and addressing public comments. 87 Fed. Reg.

14   60,083 (Oct. 4, 2022). For instance, in response to one comment, the Department explained it

15   would not add a definition for "diverse backgrounds" due to "the breadth of diversity that exists

16   across [local education agencies] nationwide." *Id.* at 60,087.

17           Separately, the Department invited applications for new MHSP grants for fiscal year

18   2022 and announced it would consider three of the final priorities for that year's competition.

19   *See* 87 Fed. Reg. 60,144 (Oct. 4, 2022). The notice also explained that "[n]on-Federal peer

20   reviewers will evaluate and score each application program narrative" based on selection criteria

21   such as "need for the project" and "quality of the project design." *Id.* at 60,149-50. The notice

22   stated that "[a]ll strategies to increase the diversity of providers must comply with applicable

23   Federal civil rights laws, including Title VI of the Civil Rights Act of 1964." *Id.* n.2. The

24   Department repeated this process for fiscal years 2023 and 2024. *See* 87 Fed. Reg. 72,976

25   (Nov. 28, 2022); 89 Fed. Reg. 15,180 (Mar. 1, 2024).

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

**D.      The Department's Selection of SBMH Applications Based on Published Priorities**

The Department ran the first SBMH grant competition in 2020. 85 Fed. Reg. 32,025 (May 28, 2020). As with MHSP, the Department later used rulemaking to add new priorities for future SBMH competitions. *See* 87 Fed. Reg. 47,152 (Aug. 2, 2022) (proposed priorities, requirements, and definitions); 87 Fed. Reg. 60,092 (Oct. 4, 2022) (final priorities, requirements, and definitions). The Department explained that it needed to establish the priorities, requirements, and definitions to "evaluat[e] the quality of applications" and "ensur[e] that the program achieves its intended objectives." 87 Fed. Reg. 47,152, 47,158 (Aug. 2, 2022).

As with MHSP, the Department issued a notice inviting applications from state education agencies (SEAs) and local education agencies (LEAs) for new SBMH grants for fiscal year 2022, setting two "competitive preference" priorities that were optional but would earn applicants extra points. 87 Fed. Reg. 60,137, 60,138 (Oct. 4, 2022). The SBMH competition also used an objective peer review process based on scoring selection criteria, *id.* at 60,142-143, and stated that "[a]ll strategies to increase the diversity of providers must comply with applicable Federal civil rights laws, including Title VI of the Civil Rights Act of 1964." *Id.* n.2. The Department repeated this process for fiscal year 2024. *See* 89 Fed. Reg. 15,173 (Mar. 1, 2024).

Against this backdrop, grantees applied for Program grants, tailoring their projects to the priorities announced for that year's Program to make their applications more competitive. *See*, *e.g.*, Piazza Decl. ¶7. After deciding the grantees would receive multi-year, multi-million-dollar grants for Program projects, the Department awarded funding for the first budget year, followed by annual one-year continuation awards. *See, e.g.*, Piazza Decl. ¶8.

**E.      Grantees Are Making Substantial Progress Towards the Programmatic Goals of These Mental Health Grants**

Once the grants were awarded, grantees accomplishing programmatic goals, improving the mental health of thousands of students and making substantial progress towards Congress's goal of permanently adding 14,000 additional mental health professionals into high-need

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

schools. *See* Range Decl., Attach. B at 3. The National Association of School Psychologists found that during the Programs' first year, grantees served nearly 775,000 K-12 students and hired nearly 1,300 mental health professionals. *See* Range Decl., Attach. C at 3. These improvements led to real results: a 50% reduction in suicide risk at high-needs schools, decreases in absenteeism and behavioral issues, and increases in positive student-staff engagement based on data from sampled programs. *Id.* Program success is also reflected in the following grant project examples from Plaintiff States.

### 1.    SBMH

**Washington.** The Department awarded a five-year SBMH grant beginning on January 1, 2023 to Educational Service District 189 (NWESD), an LEA that serves as a regional liaison between Washington State and 35 northwest Washington school districts. Gustafson Decl. ¶4. By its second year, NWESD had hired 19 new mental health professionals—exceeding its early recruitment and retention goals. *Id.* ¶¶14, 24. NWESD also improved its MHP-to-student ratio by 60%—from 1:1,160 to 1:656—making substantial progress towards its target ratio of 1:547 by December 2027. *Id.* ¶9, 15. In 2024, NWESD provided 795 individual students with 7,870 mental health related service sessions—treatment that students may not have otherwise been able to access. *Id.* ¶15.

**California.** Since the launch of the Santa Clara County School Behavioral Health Workforce Pipeline Grant, over 15,000 students have received school-based mental health services, growing from 3,080 students in Year 1 to 12,074 in Year 2, a 392% increase in reach. Totson (SBMH) Decl. ¶12. The program successfully hired 21 new professionals across 32 LEAs, 11 in Year 1, and 10 in Year 2, greatly expanding school-based mental health capacity. *Id.* Notably, 81% of professionals have been retained across two years, thanks to strategic support through financial incentives and licensure assistance. *Id.* Clinically, more than 6,000 hours of mental health services, including therapy, crisis intervention, and behavioral support, have been delivered, with a projected total of 6,500 hours by year-end. *Id.*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

**Maine.** In 2022, the Department awarded the Maine Department of Education a SBMH grant. Welter Decl. ¶8. As a result, nine participating school districts were successful in hiring ten new school-based mental health professionals and retaining an additional four providers with grant funds. *Id.* ¶12. In 2024, this cohort of 14 providers worked with almost 5,000 students, providing lessons, skill building exercises, and counseling. *Id.* Without these school-based services, students in Maine's rural communities faced yearslong waitlists. *Id.* ¶¶7, 12.

### 2.    MHSP

**Washington.** The Department awarded a five-year MHSP grant beginning in 2023, to the University of Washington SMART Center for its Workforce for Student Well-Being Initiative (WSW). Stuber Decl. ¶19. The WSW uses Program funds to provide competitive conditional scholarships to graduate students who are enrolled in six schools of social work across Washington. *Id.* ¶21. These scholarships allow graduate students who are passionate about and adept at working with youth to avoid the high amount of debt that would normally be a barrier to low-paying school-based mental health careers. *Id.* WSW scholarship recipients are required to work in a high-need school district for a minimum of two years after graduation. *Id.* ¶33. As of June 2025, the WSW project has recruited, trained, and significantly reduced the debt burden for 27 graduate students committed to maintaining employment as school social workers in high-need Washington school districts. *Id.* ¶23.

**Colorado.** The Department awarded the University of Denver, a private institution of higher education, an MHSP grant beginning on April 1, 2023. Lengsfeld Decl. ¶¶6, 16. Since then, the University of Denver has enrolled 13 current students from 12 different rural LEAs, who are now entering their second year of training; partnered with 21 different LEAs in rural Colorado to support school-based mental health shortages; provided rural Colorado students with much needed school-based mental health services; provided rural Colorado community members who have aspired to become school psychologists with access to higher education and the training to do so; facilitated a rural-focused school psychologist curriculum lens, empowering

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

rural practitioners with the skills necessary to practice within their communities; and funded approximately nine graduate student employees to support their tuition costs. *Id.* ¶18. By all accounts, the project has been a highly successful public-private partnership between the State of Colorado, the University of Denver, Colorado's public LEAs, and the Department of Education. *Id.* ¶19.

**Oregon.** In Oregon, another state that suffers from chronic mental health service shortages in its rural areas, the Department awarded Oregon State University a grant in 2023. Tumer Decl. ¶¶8, 10. To address these gaps for schoolchildren, Oregon State University partnered with the High Desert Education Service District and four Central Oregon school districts to recruit a pipeline of school counseling graduates, train interns and place them in these high-need schools; provide supervision support, and employ program graduates in these schools. *Id.* and ¶7. Since the Department has awarded this grant, the project has met or exceeded its aims and received positive feedback from the Department. *Id.* ¶10.

**F.     The Department Discontinued Certain Program Grants Due to a Purported Conflict with the Trump Administration's Priorities**

On April 29, 2025, the Department implemented its Non-Continuation Decision by sending "Notice[s] of Non-Continuation of Grant Award," notifying certain grantees that their Program grants would be discontinued at the end of the grants' current budget period. *See, e.g.*, Gustafson Decl., Attach. E. To Plaintiff States' knowledge, all notices stated the following:

> This letter provides notice that the United States Department of Education has determined not to continue your federal award, S184xxxxxxx, in its entirety, effective at the end of your current grant budget period. See, *inter alia*, 34 C.F.R. § 75.253(a)(5) and (f)(1).
>
> . . . The Department has undertaken a review of the grants and determined that the grant specified above provides funding for programs reflect prior Administration's priorities and policy preferences and conflict with those of the current Administration, in that the programs: violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds. The grant is therefore inconsistent with, and no longer effectuates, the best interest of the Federal Government and will not be continued.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    Gustafson Decl., Attach. E. The notices also reminded grantees to "carefully review and

2    discharge your closeout responsibilities" and "submit all final reports by no later than 120

3    calendar days after the end of the grant period of performance." *Id*.

4          On that same day, the Department also sent an email to Congress informing it of the Non-

5    Continuation Decision and stating that only "certain recipients" received notices, claiming

6    $1 billion in savings. Range Decl., Attach. A. The Department claimed that "[t]he prior

7    Administration's preferences are not legally binding" and told Congress that it planned to "re-

8    envision and re-compete" the funds. *Id.*

9          To the media, the Department has suggested that it targeted grants for their perceived

10   diversity, equity, and inclusion (DEI) efforts. *See* Range Decl., Attach. I at 4-5. However, the

11   Department's claimed rationale does not square with the grants that were not discontinued. For

12   instance, media has reported that "[t]he Indiana Department of Education, Fort Wayne

13   Community Schools in Indiana, and Norma[n] Public Schools in Oklahoma" had not been

14   contacted about funding changes. Range Decl., Attach. I. But these projects competed with and

15   served the same priorities as the discontinued projects. *See* Range Decl., Attach. J at 9

16   (explaining Fort Wayne Community Schools' 2023 MHSP project would "meet Competitive

17   Priorities 1, 2, and 3");[1] Range Decl., Attach. K at 5 (explaining Norman Public Schools' 2024

18   SBMH project would meet "Competitive Preference Priority 2");[2] Range Decl., Attach. L

19   at 21-22 (explaining Indiana Department of Education's SBMH project "seeks to . . . recruit

20   and retain school counseling candidates by creating a talent pipeline of mental health service

21   providers whose racial and ethnic backgrounds parallel their students").

22   _____

23        [1] The MHSP priorities for 2023 were: "Competitive Preference Priority 1—Increase the Number of
     Qualified School-Based Mental Health Services Providers in High-Need LEAs Who Are from Diverse Backgrounds
24   or from Communities Served by the High-Need LEA"; "Competitive Preference Priority 2—Promote Inclusive
     Practices"; and "Competitive Preference Priority 3—Partnerships with [minority serving institutions]." 87 Fed. Reg.
     72,976, 72,977-78 (Nov. 28, 2022).
25        [2] The second SBMH priority for 2024 was: "Competitive Preference Priority 2—Increasing the Number
     of Credentialed School-Based Mental Health Services Providers in LEAs with Demonstrated Need Who Are from
26   Diverse Backgrounds or from Communities Served by the LEAs with Demonstrated Need." 89 Fed. Reg. 15,173,
     15,175 (Mar. 1, 2024).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE                          12                ATTORNEY GENERAL OF WASHINGTON
                                                                    Complex Litigation Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                       Seattle, WA 98104
                                                                         206-464-7744

### G.     The Harmful, Immediate Impact of The Department's Non-Continuation Decision on Students, Schools, and Plaintiff States

The Department's Non-Continuation Decision, and apparent abandonment of Congress's GEPA Equity Directive and appropriation directives, is causing irreparable harm to our children, our schools, and school-based mental health service providers. Program funding will be discontinued on December 31, 2025, but the harmful effects of the Non-Continuation Decision—which disrupt multi-year, multi-million-dollar grant projects operating on the academic year throughout Plaintiff States—are immediate.[3] And without this funding, the Program projects will come to an end.[4]

The cost to our children's safety, well-being, and academic success is incalculable. The Department made its Non-Continuation Decision amid an unprecedented mental health crisis for our youth following years of isolation during the pandemic.[5] These grants were designed to respond to America's school shooting crisis and fill a critical need in schools. *See supra* § II.A. Without them, many children in rural and/or lower-income schools throughout Plaintiff States will likely go without mental health services.[6] And these children will suffer the attendant

---

[3] *See, e.g.*, Dishongh Decl. ¶¶19, 23; Feuerborn Decl. ¶19; Gustafson Decl. ¶23; Nelson Decl. ¶¶19, 25; Stuber Decl. ¶29; Furedi Decl. ¶17; Kleinsmith Decl. ¶18; Rodriguez Decl. ¶18; Khan Decl. ¶¶17, 21; Totson Decl. (MHSP) ¶¶17, 23; Totson (SBMH) Decl. ¶17; Ciriza Decl. ¶¶18, 23; Welter Decl. ¶22; Frey Decl. ¶18; Amoussou Decl. ¶¶18, 19; Stalker Decl. ¶20; Hutchins Decl. ¶17; Owen-Deschryver Decl. ¶¶15, 23; Garcia-Diaz Decl. ¶20; Eklund Decl. ¶¶21-22; Piazza Decl. ¶¶11, 15; Lengsfeld Decl. ¶¶25, 27; Matuszewicz Decl. ¶¶18, 23; Mocarski Decl. ¶22; Tumer Decl. ¶¶17, 21; Tankersley Decl. ¶¶20, 25; Gilge Decl. ¶¶18, 23; Chamberlin-Scholle Decl. ¶28; Jensen Decl. ¶¶18, 22.

[4] *See* Furedi Decl. ¶16; Baranski Decl. ¶16; Bareilles Decl. ¶20; Kleinsmith Decl. ¶17; Rodriguez Decl. ¶17; Khan Decl. ¶16; Totson (MHSP) Decl. ¶16; Totson (SBMH) Decl. ¶16; Ciriza Decl. ¶17; Jensen Decl. ¶17; DeOrian Decl. ¶17; Knight-Teague Decl. ¶18; Miller (MHSP) Decl. ¶16; Miller (SBMH) Decl. ¶16; Strear Decl. ¶16; Parr Decl. ¶15; Cisneros Decl. ¶16; Gragg Decl. ¶23; Hire Decl. ¶17; Nadler Decl. ¶17; Chamberlin-Scholle Decl. ¶27; Anderson/Hulac (CRISP) ¶16; Anderson/Hulac (TISP) ¶16; Lengsfeld Decl. ¶24; Matuszewicz Decl. ¶17; Ongart Decl. ¶20; Christensen Decl. ¶14; Curran Decl. ¶18; Garcia-Diaz Decl. ¶19; Sanders Decl. ¶23; Mocarski Decl. ¶19; Barton Decl. ¶24; Frey Decl. ¶17; Amoussou Decl. ¶17; Welter Decl. ¶16; Hutchins Decl. ¶16; Owen-Deschryver Decl. ¶14; Gilge Decl. ¶17; McGill Decl. ¶16; Kida Decl. ¶16; Rimkunas Decl. ¶18; Stalker Decl. ¶17; Storie Decl. ¶14; Tumer Decl. ¶16; Tankersley Decl. ¶19; Chammat Decl. ¶18; Dishongh Decl. ¶18; Feuerborn Decl. ¶18; Nelson Decl. ¶18; Stuber Decl. ¶28; Eklund Decl. ¶20; Piazza Decl. ¶14; Iversen Decl. ¶17; Giannini-Previde Decl. ¶16.

[5] *See, e.g.*, Chammet Decl. ¶¶9,10; Dishongh Decl. ¶20; Feuerborn Decl. ¶9; Gustafson Decl. ¶35; Stuber Decl. ¶17; Rodriguez Decl. ¶21; Steer Decl. ¶22; Owen-Deschryver Decl. ¶8; Curran Decl. ¶9. Matuszewicz Decl. ¶10; Gilge Decl. ¶18; Iversen Decl. ¶4; Knight-Teague ¶9.

[6] *See, e.g.*, Storie Decl. ¶16 (80% of students get their mental health services at school); Barton Decl. ¶25; Gustafson Decl. ¶32; Knight-Teague Decl. ¶9; Parr Decl. ¶8; Matuszewicz Decl. ¶18; Welter Decl. ¶7.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1  consequences: short- and long-term health problems; lower grades; increased absenteeism,

2  suspensions, and expulsions; and a higher risk of suicide and drug overdose. *See* Range Decl.,

3  Attach. C at 6.[7]

4       If the Non-Continuation Decision is not rescinded, grantees will be forced to lay off

5  project staff and mental health service providers, reducing access to much-needed mental health

6  services for students in Plaintiffs' rural and low-income schools.[8] Grantees will lose qualified

7  mental health service providers who were hired, retained, and trained using Program funds as

8  part of Congress's goal to permanently add thousands of new providers to schools throughout

9  Plaintiff States.[9] Grantees will lose the benefits of the relationships that students and school staff

10  members have developed with these providers.[10] The spillover effect of students turning to

11  community mental health services—to the extent they are available—will tax Plaintiffs' already-

12  strained mental health care systems.[11]

13       Grantees will also be forced to cut financial assistance for the graduate students who were

14  receiving specialized training to provide school-based mental health services in high-need

15  settings throughout Plaintiff States, drying up the pipeline.[12] The sudden loss of funding will

16  discourage these students and others from pursuing careers as school-based mental health

17  services providers in Plaintiff States' rural and low-income communities.[13] Grantees'

18  relationships with community partners will be irreparably damaged because they can no longer

19

20

21  [7] *See also, e.g.*, Furedi Decl. ¶22; Ciriza Decl. ¶19; DeOrian Decl. ¶18; Matuszewicz Decl. ¶10; Welter Decl. ¶18; Gilge Decl. ¶18; Dishongh Decl. ¶9; Feuerborn Decl. ¶22; Gustafson Decl. ¶22; Eklund Decl. ¶21.

22  [8] *See, e.g.*, Gustafson Decl. ¶¶23, 34; Nelson Decl. ¶¶19, 23; Stuber Decl. ¶34; Furedi Decl. ¶¶19, 23; Kleinsmith Decl. ¶¶19, 20, 23; Rodriguez Decl. ¶23; Khan Decl. ¶18; Totson (SBMH) Decl. ¶¶17, 19, 22; Criza Decl. ¶¶18, 22; Miller (SBMH) Decl. ¶¶17, 19; Parr Decl. ¶¶11, 16, 21; Garcia-Diaz Decl. ¶22.

23  [9] *See, e.g.*, Totson (MHSP) Decl. ¶¶19-21; Welter Decl. ¶¶17, 20-21; Amoussou Decl. ¶¶21-22; Stalker Decl. ¶¶19, 21; Gilge Decl. ¶¶19-21.

24  [10] *See, e.g.*, Gustafson Decl. ¶¶23, 28; Furedi Decl. ¶¶19-20; Rodriguez Decl. ¶21; Totson (MHSP) Decl. ¶¶18, 22; Totson (SBMH) Decl. ¶18; Jensen Decl. ¶19; Knight-Teague Decl. ¶24; Rimkunas Decl. ¶¶19, 24.

25  [11] *See, e.g.*, Gustafson Decl. ¶¶31-32; Tumer Decl. ¶7; Gragg Decl. ¶ 28; DeOrian Decl. ¶18.

26  [12] *See e.g.*, Barton Decl. ¶24; Feuerborn Decl. ¶¶19, 23; Nelson Decl. ¶23; Tankersley Decl. ¶¶22, 25; Eklund Decl. ¶21c.
[13] *See, e.g.*, Storie Decl. ¶15; Ciriza Decl. ¶¶18, 20; Parr Decl. ¶¶18, 22.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    honor the commitments they made to provide mental health services to the children in these

2    communities.[14]

## III.    LEGAL STANDARD

4        A preliminary injunction is warranted where Plaintiffs establish that (1) they are likely

5    to succeed on the merits, (2) irreparable harm is likely in the absence of preliminary relief, (3)

6    the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v.*

7    *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding-scale

8    approach to preliminary relief, "serious questions going to the merits and a balance of hardships

9    that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long

10   as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction

11   is in the public interest." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)

12   (citation modified). The balance of the equities and public interest factors merge when the

13   government is a party. *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020).

## IV.    ARGUMENT

15       Plaintiffs have satisfied the *Winter* factors for issuance of a preliminary injunction.

16   **A.    Plaintiffs Are Likely to Succeed on the Merits of their Claims**

17       Plaintiffs are likely to succeed on the merits of their APA and Spending Clause claims

18   challenging the Non-Continuance Decision. First, Defendants' Non-Continuation Decision is

19   arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Second, Defendants' Non-Continuation

20   Decision is contrary to law because Defendants cannot discontinue grants based on new

21   priorities. *Id.* And third, even if Defendants could consider new priorities when continuing

22   grants, they violated procedural laws by failing to first publish these priorities in the Federal

23   Register. 5 U.S.C. §§ 553, 706(2)(D); 20 U.S.C. §§ 1221e-4, 1232(a)(2), (d). As the

24

25

26       [14] *See, e.g.*, Piazza Decl. ¶18; Rimkunas Decl. ¶20, 25; Parr Decl. ¶¶16, 18; Lengsfeld Decl. ¶33; Matuszewicz ¶19; Gragg Decl. ¶25.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1   Administration sought to impose retroactive conditions on Program grants, the Non-
2   Continuation Decision also violates the Spending Clause.

3   **1.    Defendant's Non-Continuation Decision is subject to review under the APA**

4   As a threshold matter, Defendants' Non-Continuation Decision constitutes a "final
5   agency action" subject to review under the APA. Final agency actions (1) "mark the
6   consummation" of agency decision-making, and (2) determine "rights or obligations . . . from
7   which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation
8   modified); *see also Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).
9   Finality is interpreted in a "pragmatic and flexible manner." *Abbott Labs. v. Gardner*, 387 U.S.
10  136, 150 (1967).

11  The Non-Continuation Decision meets both prongs. First, the Department drew its
12  definitive conclusion that certain Program grants are not in the government's best interest.
13  Gustafson Decl., Attach. E. There is no indication that the Department intends to reverse course,
14  or that any further steps are required to make this determination. Ongart Decl., Attach. C (email
15  from the Department refusing to provide more information and stating, "The letter of non-
16  continuation contains all the information I have about the reason . . . . "). Although the
17  Department offered discontinued grantees the opportunity to request reconsideration within 30
18  days, Gustafson Decl., Attach. E, this reconsideration process is voluntary and not necessary for
19  the discontinuance to be considered final. *See S. Educ. Found. v. United States Dep't of Educ.*,
20  CV 25-1079 (PLF), 2025 WL 1453047, at *15 (D.D.C. May 21, 2025); *see also Darby v.*
21  *Cisneros*, 509 U.S. 137, 137 (1993) (if reconsideration is voluntary, administrative exhaustion
22  is not required for the agency action to be considered final). The Non-Continuation Decision is
23  therefore the final agency action.

24  Second, Defendants' actions have clear legal consequences: grantees in Plaintiff States
25  lost the benefit of a fair continuation award determination based on their performance under
26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    34 C.F.R. § 75.253(b); the priority of continued funding over funding new grants promised by

2    34 C.F.R. § 75.253(c); and millions of dollars in prospective funding, Range Decl., Attach. A.

3          **2.     Defendants' Non-Continuation Decision was arbitrary and capricious**

4        The APA requires that a court "hold unlawful and set aside agency action" that is

5    "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Agency actions must "be reasonable and

6    reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414,

7    423 (2021). When making this assessment, courts consider "only whether the [agency] examined

8    'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a

9    rational connection between the facts found and the choice made.'" *Dep't of Commerce v. New*

10    *York*, 588 U.S. 752, 773 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State*

11    *Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

12        Notices providing the same boilerplate explanations untethered to specific grants and the

13    performance of specific grantees are the epitome of an arbitrary and capricious action because

14    they show an obvious lack of individualized assessment. *See, e.g.*, Range Decl., Attach. Q at 5

15    (*New York v. U.S. Dep't Educ.*, No. 25-1424, ECF No. 40.1 (2d Cir. 2025) (blanket action failed

16    to provide individualized assessment)); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir.

17    1995) (faulting boilerplate language for making it impossible to discern agency's rationale).

18    Furthermore, when an agency has "relied on factors which Congress has not intended it to

19    consider," its action is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

20        Defendants' Non-Continuation Decision is arbitrary and capricious for at least five

21    independently sufficient reasons.

22        *First,* the Non-Continuation Decision is not reasonable or reasonably explained. In

23    making this determination, the Court looks to the "grounds that the [Department] invoked" when

24    it discontinued the grant. *Michigan v. EPA*, 576 U.S. 743, 758 (2015); *see also Motor Vehicle*

25    *Mfrs. Assn.*, 463 U.S. at 50. Defendants have an obligation to "examine[] 'the relevant data' and

26    articulate[] 'a satisfactory explanation' for [the] decision, 'including a rational connection

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

between the facts found and the choices made.'" *Dep't of Commerce*, 588 U.S. at 773 (quoting *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43). Here, the Department plainly did not make the individualized assessment required for agency actions, because its implementing notices used the same boilerplate language for each termination. As a result, the Non-Continuation Decision provides no factual findings, much less a rational connection between any facts and the Department's conclusion that the grant was not in the federal government's best interest. Instead, the Department lists four theoretical bases for the grant discontinuances and does not identify which, if any, of these bases apply specifically to the grantee. *See, e.g.*, Gustafson Decl., Attach. E. Where a grantee cannot or does not identify the basis for its discontinuance, the decision is arbitrary and capricious. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (holding agency action is arbitrary and capricious where party is "compelled to guess at the theory underlying the agency's action"). Accordingly, the Non-Continuation Decision and its implementing notices provided no reasoned explanation.

*Second*, Defendants executed a major change in policy without any notice or concrete explanation and without considering the impacts or reliance interests. As the Supreme Court recently reiterated, "[t]he change-in-position doctrine" prevents agencies from "mislead[ing]" regulated entities." *FDA v. Wages & White Lion Invs.*, 145 S. Ct. 898, 917 (2025) (quoting *Encino Motorcars v. Navarro*, 579 U.S. 211, 221-22 (2016)). "Under that doctrine, '[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change,' 'display awareness that [they are] changing position,' and 'consider serious reliance interests.'" *Id.* (quoting *Encino Motorcars*, 579 U.S. at 221-22). What the agency must not do is depart from its prior position *sub silentio. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Here, Defendants' notices obliquely reference the Department's change in priorities and policy preferences without identifying or explaining this changed position, or how they allegedly conflicted with the prior Administration's priorities and policy preferences. *See, e.g.*, Gustafson Decl., Attach. E.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Third*, Defendants' Non-Continuation Decision also failed to account for the substantial reliance interests of discontinued grantees. "When an agency changes course, . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020) (internal quotation marks and citation omitted). The agency must also consider alternatives to its change in position that are "within the ambit of existing [policy]." *Id.* Grantees structured their projects and budgets with the understanding that Defendants would make annual continuation awards based on grantees' project performance. *See, e.g.*, Dishongh Decl. ¶13; Feuerborn Decl. ¶15; Nelson Decl. ¶13; Stuber Decl. ¶20; Knight-Teague Decl. ¶22; Frey Decl. ¶11; Amoussou Decl. ¶11-12. This reliance is supported by, among other things:

- Defendants' history and practice of making continuation award decisions based on grantee performance under these and other grant programs. *See* 59 Fed. Reg. 30,258, 30,259 (June 10, 1994) (instituting performance reports as the basis for continuation decision rather than applications); Lengsfeld Decl. ¶23; Mocarski Decl. ¶15; Barton Decl. ¶19;

- Defendants' regulations expressly requiring Defendants to state an "intention to make continuation awards to fund the remainder of the project period" upon approval of multi-year grants, 34 C.F.R. § 75.251(b)(2), consider any information relevant to grantee's performance, 34 C.F.R. § 75.253(b), and assign priority to "continuation awards over new grants," 34 C.F.R. § 75.253(c); and

- Defendants' guidance document explaining to prospective grantees, "The program staff uses the information in the performance report in combination with the project's fiscal management performance data to determine subsequent funding decisions." Range Decl., Attach. N at 33.

Believing that discontinuances would be based on criteria within their control—i.e. their performance—grantees invested time and resources that will be lost based on improper criteria

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    outside their control. 34 C.F.R. § 75.253(b); *see e.g.* Feuerborn Decl. ¶20; Matuszewicz ¶19.

2         The Department also failed to account for the reliance interests of the Program

3    participants: school-based mental health services providers who were recruited or provided

4    retention incentives to work in LEAs with demonstrated need, *see e.g.*, Hutchins Decl. ¶18;

5    graduate students who are in the middle of multi-year graduate programs and are learning that

6    they will no longer receive tuition assistance or post-graduate supervision and support, *see e.g.*,

7    Nelson Decl. ¶25; and—most importantly—the students in low-income and rural areas

8    throughout Plaintiff States who, as the first Trump Administration recognized, need access to

9    school-based mental health services and will go without should these Programs close, *see* n.6,

10   *supra*. Defendants did not consider any of these reliance interests, much less weigh them against

11   competing policy concerns (if any), or consider any alternatives. *See Regents of the Univ. of*

12   *California*, 591 U.S. at 30.

13        *Fourth*, the Non-Continuation Decision is without reason because the Department did

14   not apply the same standards to all Program grants in deciding which grants to discontinue.

15   Although its provided basis—the alleged "conflict" between the prior and current

16   Administration's Program priorities—applied to all grantees, Defendants' Non-Continuation

17   Decision only discontinued "certain" grants and has permitted other Program grants to continue.

18   Range Decl., Attach. A at 2. Yet those non-discontinued grants are a part of the same Programs,

19   were awarded using the same application criteria, and necessarily reflect the same prior

20   Administration's priorities and policy preferences as Plaintiffs' grants. *See supra* §§ II.C, D, F.

21        *Fifth*, the Department's Non-Continuation Decision relied on factors which Congress has

22   not intended it to consider. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Per the GEPA Equity

23   Directive, Congress requires grant applicants to describe in their applications the steps they will

24   take to ensure equity in their programs. 20 U.S.C. § 1228a(b). To the extent that Defendants'

25   discontinued Program grants based on applicants' compliance with the GEPA Equity Directive,

26   the Non-Continuation Decision was arbitrary and capricious. *Id.*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

In sum, Defendants failed to engage in any "reasoned decision making" whatsoever and the Department's Non-Continuation Decision was arbitrary and capricious. *See Michigan*, 576 U.S. at 750; *Encino Motorcars*, 579 U.S. at 222 ("[A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy.").

### 3.    Defendants' actions were contrary to law

The Department's regulations require the Department to use a fair and transparent process when awarding and assessing grants for continuation. But under the Department's interpretation of its continuation regulation, 34 C.F.R. §75.253, it can change the rules of the game midstream, torpedoing multi-year, multi-million-dollar projects that were selected through a competitive peer-reviewed process. *See supra* §§ II.B-D. Not so. The Department's Non-Continuation Decision should be set aside because it violates Defendants' grant regulations by (1) considering information (i.e., an alleged conflict with new priorities) that is not relevant to grantee's performance (based partly on priorities established prior to grantees' applications) and (2) failing to prioritize continuation awards over new grants. *See* 5 U.S.C. § 706(2)(A); 34 C.F.R. § 75.253(b), (c).

### a.    The Department violated 34 C.F.R. § 75.253(b) by discontinuing Program grants based on new priorities

Defendants' Non-Continuation Decision violates § 75.253(b) because the Department impermissibly considered information not relevant to grantee performance—the current Administration's new priorities—when determining whether to discontinue Program grants. Gustafson Decl., Attach. E.

In order to receive a continuation award, a grantee must meet the requirements of 34 C.F.R. § 75.253(a). The parties dispute whether the Department may consider new priorities when evaluating the fifth requirement that grantees, "Receive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

§ 75.253(a)(5); *see, e.g.*, Range Decl., Attach. A. Under 34 C.F.R. § 75.253(b), the Department

may not.

"[A] court must 'carefully consider' the text, structure, history, and purpose of a regulation" when determining whether to defer to an agency's interpretation of a regulation. *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). "[I]f there is only one reasonable construction of a regulation," then the court cannot "defer[] to any other reading, no matter how much the agency insists it would make more sense." *Id*. Otherwise, that would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id*.

The Department's novel application of new priorities to the continuation determination goes against the plain text of the continuation regulation, the Department's own interpretation of this regulation as reflected in its guidance, the Department's regulatory framework for grantmaking, the regulatory history, and the regulation's purpose.

*First*, the plain text of the regulation cabins the information that the Department "may consider" when "determining whether the grantee has met the [§ 75.253(a)] requirements." 34 C.F.R. § 75.253(b). Specifically, the regulation only permits the Department to consider "relevant information regarding grantee performance":

> *Information considered in making a continuation award.* In determining **whether the grantee has met the requirements described in paragraph (a)** of this section, the Secretary may consider ***any relevant information regarding grantee performance***. This includes considering [performance] reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and any other relevant information.

34 C.F.R. § 75.253(b) (emphasis added). Because "best interest" is one of "the requirements described in paragraph (a) of this section," the § 75.253(b) limitation applies, and the Department may only consider "grantee performance" when determining whether continuing a multi-year grant is in the federal government's best interest.

The Department might argue that "may" should be read permissively and, therefore, § 75.253(b) does not limit what it can consider. But "[d]epending on the context, 'may' can be

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    limiting, meaning '***may only***.'" *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42

2    F.4th 1024, 1034-35 (9th Cir. 2022) (emphasis added). The "natural meaning" of § 75.253(b) is

3    that the Department "may only" consider the "specified" information when determining whether

4    the grantee has met the § 75.253(a) requirements. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543

5    U.S. 157, 166 (2004). To read otherwise would "render part of the [regulation] entirely

6    superfluous." *Id.*

7         The Department might also argue that it can consider new priorities under "any other

8    relevant information." But new priorities cannot be read into the second sentence because they

9    do not fit the common attributes of the performance-related items in the list. *See, e.g.*, *Silvers v.*

10   *Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (explaining doctrine of *expressio*

11   *unius est exclusio alterius*); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252

12   (2024) ("[C]ourts interpret a 'general or collective term' at the end of a list of specific items in

13   light of any 'common attribute[s]' shared by the specific items.") (quote omitted). Quite the

14   opposite—because priorities are set at the outset of a grant competition, and grantees design,

15   propose, and execute their projects based on those priorities, it would be nonsensical to evaluate

16   a grantee's performance using a different set of priorities.

17        *Second*, the Department's own guidance document supports that the Department is

18   limited to considering grantee performance when determining whether a grantee has met the

19   "best interest" requirement. *See* Range Decl., Attach. N at 32-33; *cf. Backcountry Against Dumps*

20   *v. Fed. Aviation Admin.*, 77 F.4th 1260, 1269 (9th Cir. 2023) (concluding agency order

21   interpreting regulation supported court's interpretation). The guidance explains that program

22   staff reviews a grantee's performance information to determine, *inter alia*, if continuation is in

23   the federal government's best interest:

24        ***How do I get funds after the first year if my organization receives a multiyear***
         ***award?***

25

26        . . .

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

The program staff uses the information in the performance report in combination with the project's fiscal and management performance data to determine subsequent funding decisions. . . . ***Before a continuation award can be issued, program staff reviews the information in the performance report and the financial and project management activities. The goal is to determine*** if you have made substantial progress in reaching the project's objectives, if expenditures correspond to the project's plans and timelines, if the recommended funding amount is appropriate, and ***if continuation of the project is in the best interest of the Federal government***.

Range Decl., Attach. N at 32-33 (emphasis added). The guidance assures prospective applicants that continuations are based on information related to their performance—that is, factors within the grantee's control. *See id.*; *cf. id.* at 38 (explaining that if program staff "identify areas of weakness or noncompliance, discover the grantee is not making substantial progress, or have suggestions for how the grantee might better achieve the program objectives," and these findings are "unresolved," the Department could discontinue the grant). The Department's interpretation of 34 C.F.R. § 75.253(b) follows the plain meaning of the text: when making a continuation determination—including determining whether the "best interest" requirement is met—it considers only information relevant to grantee performance.

*Third*, the regulatory framework also supports applying the § 75.253(b) limitation to the "best interest" requirement and prohibiting consideration of new priorities as part of a grantee's performance. As explained earlier, the Department uses a competitive process when awarding new grants, and a non-competitive process when making a continuation award for an existing multi-year grant. *See generally supra* § II.B. "Priorities" is a term of art and refers to activities and objectives that the Department announces it may use when selecting applications for new grant awards under a particular year's grant competition rules. *See, e.g.*, 34 C.F.R. § 75.105(a) ("[T]he Secretary establishes priorities for selection of applications ***in a particular fiscal year***.") (emphasis added); *id.* § 75.101(a)(4) ("application notice" includes "[a]ny priorities established by the Secretary for ***the program that year***"); *supra* § II.B.1. The term is reserved for the competitive grantmaking process for new grants. *See* Range Decl., Attach. N at 27-28. In contrast, grantees do not submit applications for continuation awards, and the Department makes

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1   the decision using a non-competitive process. *See, e.g.*, 59 Fed. Reg. 30,258, 30,259

2   (June 10, 1994) (removing application requirement for continuation awards). The regulation also

3   requires the Department to prioritize continuation awards over new awards—showing that new

4   priorities (applying to new grant competitions) are simply irrelevant to the continuation

5   determination. *See* 34 C.F.R. § 75.253(c).

6       *Fourth*, Plaintiffs' interpretation is supported by the regulatory history. In 1994, the

7   Department removed the non-competitive application process it had originally used for

8   continuation awards. 59 Fed. Reg. 30,258, 30,261 (June 10, 1994). The Department explained

9   that the same § 75.253(a) standards would still apply—***including*** the requirement "that

10  continuation of the project is in the best interests of the Federal Government"—but that

11  performance report requirements would "take on increased importance" because "the

12  continuation award decision . . . will be based entirely on the submission of reports." *Id*. The

13  Department also explained the performance report would "include an evaluation of the grantee's

14  progress in achieving ***the objectives of the approved application***" and "the effectiveness of the

15  project in meeting the purposes of ***the program under which it was funded***." *Id*. (emphasis

16  added).

17      *Fifth*, as expressed by the Department, the purpose of 34 C.F.R. § 75.253 would only be

18  served by Plaintiffs' interpretation. Since the very beginning, the Department has strived to

19  "ensure consistent treatment" of continuation decisions, has stated that multi-year grants "will

20  not be subject to competition with other applications" for continuation funding, and has

21  prioritized continuation funding over new grants. 45 Fed. Reg. 22,552, 22,559 (April 3, 1980).

22  "If Congress appropriates sufficient funds," grants that "meet[] the [§ 75.253(a)] criteria will be

23  funded" before new grants. *Id*. The continuation regulation provides applicants advance notice

24  and a fair measure in the Department's decision whether to award a continuance, while ensuring

25  the Department can cut off funding if the grantee's performance raises concerns that the project

26  is no longer in the government's best interest. This purpose of consistency and fairness is not

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

served by allowing the Department to interfere with the grantee's project by changing the rules and imposing new priorities partway through a multi-year grant.

### b. Defendants' Non-Continuation Decision violates the regulatory mandate that the Department give priority to continuation awards over new grants

Defendants' discontinuances are also contrary to law because the Secretary failed to give priority to continuation awards over new grants. *See* 34 C.F.R. § 75.253(c) ("Subject to the criteria in paragraphs (a) and (b) of this section, in selecting applications for funding under a program, the Secretary gives priority to continuation awards over new grants."). Defendants have announced they intend to recompete the discontinued Program funds. Range Decl., Attach. A. By forcing discontinued grantees to submit new applications and compete in a new grant competition, rather than allowing them to receive continuation awards for their existing multi-year grants, Defendants have violated this regulatory requirement.

### 4. Defendants acted without observance of procedure required by law

Defendants' Non-Continuation Decision clearly violates procedural mandates and may therefore be set aside under the APA. *See* 5 U.S.C. § 706(2)(D). Defendants are required to follow the APA's notice-and-comment rulemaking procedure when changing priorities for grant programs. *See* 20 U.S.C. §§ 1221e-4; 1232(a)(2), (d). Consistent with their statutory obligations, Defendants underwent the notice-and-comment rulemaking process when they changed the SBMH and MHSP program priorities in 2022. *See* 87 Fed. Reg. 47,152 (Aug. 2, 2022) (SBMH proposed priorities); 87 Fed. Reg. 60,092 (Oct. 4, 2022) (SBMH final priorities); 87 Fed. Reg. 47,159 (Aug. 2, 2022) (MHSP proposed priorities); 87 Fed. Reg. 60,083 (Oct. 4, 2022) (MHSP final priorities); *see also* Range Decl., Attach. P at 5 ("The priorities are being established in accordance with . . . 20 U.S.C. 1232(d)(1)."). However, the priorities referenced in the Non-Continuation Decision notices were not published before the Department applied them as a basis to discontinue Program grants. As just discussed, Defendants cannot discontinue these grants based on changed priorities, but even if they could, they may not do so without following the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

proper procedures. As the Non-Continuation Decision used unpublished priorities contrary to procedures required by law, it must be set aside. 5 U.S.C. § 706(2)(D).

### 5. Defendants retroactively imposed new conditions on awarded Program grants in violation of the Spending Clause

Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015). The Spending Clause of the U.S. Constitution, art. I, § 8, cl. 1, provides that Congress—not the Executive—"shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." "Though Congress's power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or 'retroactive' conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981). States must have fair notice, so they may "voluntarily and knowingly" accept conditions attached to federal spending. *See id.* at 17, 25; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 583-84 (2012); *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175, n.6 (9th Cir. 2019) (applying Spending Clause constraints to "middleman agencies" charged with administering funds). States "cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17). Thus, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. Defendants' Non-Continuation Decision imposes new conditions that fail these requirements in three ways.

*First*, the new priorities announced in the notices of "merit, fairness, and excellence in education" are impermissibly ambiguous. Gustafson Decl., Attach. E; *see Pennhurst*, 451 U.S. at 17. These terms are so broad they are rife with vagueness and ambiguity. Because Defendants have yet to publish or define these new priorities, giving the opportunity to the public to give comment and receive answers from Defendants, it is impossible to discern their meaning. Nor

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

have Defendants provided any clarifying guidance defining more precisely what is meant by these terms. Accordingly, the Non-Continuation Decision, which implements these new priorities, "is fatally ambiguous because it fails to clarify what conduct is proscribed." *See San Francisco Unified Sch. Dist. v. AmeriCorps*, 25-CV-02425-EMC, 2025 WL 1713360, at *18 (N.D. Cal. 2025) (quotation omitted).

 *Second*, Defendants seek to retroactively impose their new priorities. To give grantees sufficient notice of the applicable conditions for these awards, the Department had published priorities, requirements, and definitions in the Federal Register. *See, e.g.*, 87 Fed. Reg. 47,159, 47,164-65 (Aug. 2, 2022); *see also* Range Decl., Attach. P at 8-9 (referencing priorities in application package). The new priorities announced in the Non-Continuation Decision notices are retroactive conditions which the Department has—without explanation—determined Plaintiffs cannot meet. Gustafson Decl., Attach. E.

 *Third*, to the extent that the Department now seeks to eliminate equity measures, this anti-equity condition is also impermissibly retroactive and unrelated to purpose of the Programs, the GEPA Equity Directive, and the final rulemaking priorities governing the Programs. *See South Dakota v. Dole*, 483 U.S. 203, 207, 209 (1987) ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended.").

## B. Grantees in Plaintiff States Will Suffer Irreparable Harm Without Preliminary Relief

 Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Defendants' Non-Continuation Decision has caused Plaintiffs irreparable harm because Defendants' plan to recompete these limited funds will deprive Plaintiffs of the opportunity for relief. In addition, Defendants' actions harm public health and safety throughout Plaintiff States, and shutter critical mental health programs—harming organizational missions in the process.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    If this Court does not grant preliminary relief, and the Department proceeds with

2    recompeting and obligating funds to other grantees, the discontinued grantees will *never* be able

3    to obtain relief. *Cf. Ambach v. Bell*, 686 F.2d 974, 986 (D.C. Cir. 1982) ("Once the chapter 1

4    funds are distributed to the States and obligated, they cannot be recouped. It will be impossible

5    in the absence of a preliminary injunction to award the plaintiffs the relief they request if they

6    should eventually prevail on the merits."); *Population Inst. v. McPherson*, 797 F.2d 1062, 1081

7    (D.C. Cir. 1986) (noting that "if the government in the instant case is permitted to *distribute* the

8    $10 million to other organizations, the appeal will become moot").

9    As these Programs address an epidemic in school violence and mental health illness in

10   our youth, this Court may easily find that the Non-Continuation Decision harms public health

11   and safety. *See State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018)

12   (finding irreparable harm from agency rule that "will have irreparable consequences for public

13   health") (citation omitted); *Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.*, 841 F. Supp.

14   2d 349, 358 (D.D.C. 2012) (threats to public health establish irreparable harm).

15   Likewise, the Non-Continuation Decision causes harm even before the grant funding

16   ends on December 31, 2025. *Planned Parenthood of Greater Washington & N. Idaho v. U.S.

17   Dep't of Health & Hum. Servs.,* 328 F. Supp. 3d 1133, 1150 (E.D. Wash. 2018) (finding

18   irreparable harm three months before grant termination became effective because "Plaintiffs

19   based their programs, budgeting, staffing, and partnerships with communities on th[e]

20   understanding" of grant's five-year term); *see also* n.3, *supra* (listing immediate harmful effects

21   of the Non-Continuation Decision on grantees). As detailed in Statement of Facts, Section II.G,

22   *supra*, and accompanying declarations, there can be no doubt that the Non-Continuance Decision

23   is causing serious and irreparable harm to mental health and educational programs, school

24   districts, and the health and safety of children throughout Plaintiff States.

25   In many rural and low-income communities, schools are the only place children can

26   access the mental health services they need. Range Decl., Attach. C at 4; *see also* n.6, *supra*.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE                    29                    ATTORNEY GENERAL OF WASHINGTON
                                                                    Complex Litigation Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                    Seattle, WA 98104
                                                                    206-464-7744

When students have access to mental health clinicians in schools, rates of suicide, substance abuse, behavioral issues, anxiety, and depression decrease. Range Decl., Attach. C at 7; *see also* n.7, *supra*. Additionally, schools see improvements in student academic performance, students' emotional and behavioral outcomes, student-staff engagement, and the school's general social climate when mental health services are available. Range Decl., Attach. C at 6.[15] Said one school psychotherapist hired by a SBMH funded grant, "It is amazing how teaching just one student healthy communication skills and self-compassion can transform the dynamics of an entire family or friend group." Gustafson Decl. ¶16. Discontinuing these Programs constitutes irreparable harm to the health and safety of the students currently being served by grant-funded mental health providers.

Grantees in Plaintiff States are experiencing immediate harm, some tangible and some less quantifiable. For one education service district in Washington, the Non-Continuation Decision will force them to lay off all 19 school-based mental health providers hired thanks to a SBMH grant, leaving 800 students without services. *Id.* ¶¶23, 31-32. Another MHSP grantee's university partner is currently in the middle of becoming accredited as a Master's in Social Work program and the abrupt end of funding will likely derail their accreditation, impacting the grantee's ability to build the mental health workforce in its region. Nelson Decl. ¶¶19, 24. And the Day Health Institute at the Metropolitan State University of Denver reports that the Non-Continuation Decision has caused them to lose hundreds of hours put into creating their program, made only more difficult "[i]n a time of high workloads and understaffing." Matuszewicz Decl. ¶19. Yet another loss MSU Denver describes is the ability to rely on the integrity and continuity of the grant's awarding agency. *Id.*

Threats to an organization's mission and the very existence of programs constitute irreparable harm. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (finding

---

[15] *See also, e.g.*, Ciriza Decl. ¶19; DeOrian Decl. ¶12; Welter Decl. ¶18; Gilge Decl. ¶18; Gustafson Decl. ¶22; Kida Decl. ¶¶27-28.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    irreparable harm where "organizational plaintiffs have shown ongoing harms to their

2    organizational missions"); *Planned Parenthood of Greater Washington & N. Idaho,* 328 F. Supp.

3    3d at 1150 (finding early termination of multi-year grant caused irreparable harm "to the youth

4    [Plaintiffs] serve, their staff, the communities, and Plaintiffs' reputation within those

5    communities"); *Los Altos Boots v. Bonta,* 562 F. Supp. 3d 1036, 1047 (E.D. Cal. 2021). Here,

6    the educational and mental health missions of the grantee's will be harmed.[16] The simple fact is

7    that grantees do not have the resources to make up for the loss in funding and have already begun

8    shuttering programs once intended to carry through to the next school year, and laying off

9    personnel. *See* Stuber Decl. ¶34 (noting the discontinuance has already resulted in layoffs and

10   furloughs); Nelson Decl. ¶¶19, 23 (noting the discontinuance has already resulted in reductions

11   in force, demotions, and a significant reduction in the number of interns hired); Feuerborn Decl.

12   ¶20 (noting the discontinuance has forced the program to terminate the Project Coordinator role

13   and four Graduate Research Assistants); *see also* n.8, *supra.* Critically, because the staff cuts

14   that grantees are already making include highly trained and specialized employees who

15   developed key relationships with students and who will be difficult to hire back, this loss of staff

16   itself is irreparable harm—one that, even if discontinued grantees were to apply for and receive

17   new grants in a future grant competition, grantees will never be able to recover. *See Los Altos

18   Boots*, 562 F. Supp. 3d at 1047 (loss of employees with "specialized skills" constitutes

19   irreparable harm); *see also* n.12, *supra.*

20        In addition to cutting staff, affected grantees have already had to make adjustments to

21   their programs and are feeling the immediate consequences. *See* n.4, *supra.* MHSP grantee

22   University of Washington Tacoma reported the loss of funding is negatively impacting the

23   program's ability to recruit students and has limited the number of students the program was

24   able to admit—with students declining acceptance because of the uncertainty in funding.

25   Feuerborn Dec. ¶19. The discontinuance has strained program relationships with graduate

26

---

[16] *See e.g.,* Eklund Decl. ¶23; Piazza Decl. ¶19; Gilge Decl. ¶24; Sanders Decl. ¶26; Garcia-Diaz ¶25.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

students as well as district and community partners. *See, e.g.,* Matuszewicz ¶19 (causing community agencies to "question if it is 'worth the effort' to collaborate only to have the project discontinued without cause"); Feuerborn Decl. ¶21 (the discontinuance has "created frustration, skepticism, and confusion" with community partners); Piazza Decl. ¶18; Rimkunas Decl. ¶¶20, 25; Parr Decl. ¶16; Lengsfeld Decl. ¶33. For all these reasons, even if the Department were to recompete Program funds and affected grantees were to receive a new grant award, the harm would already be done.

Simply put, Defendants' Non-Continuation Decision is causing substantial immediate irreparable harm.

**C.    The Balance of Equities Tips in the States' Favor and an Injunction Is in the Public Interest**

The final two *Winter* factors—the balance of the equities and the public interest—merge when the government is a party. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). Here, both factors tip sharply in Plaintiffs' favor. The threat of harm to Plaintiffs' mental healthcare infrastructure in public schools far outweighs the Federal Government's interests in ending programmatic mental health care funding in schools. *See Jaffee v. Redmond*, 518 U.S. 1, 11 (1996) ("The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (promoting the health and safety of students constitutes a public interest). The balance of equities supports a preliminary injunction, and the Court should preserve the status quo until the case can be decided on the merits.

Whatever interest the federal government may have in cutting off mental health care services to students attending some of our States' most rural and low-income schools during the pendency of this case is negligible compared to Plaintiffs' irreparable harm. In contrast to the irreparable harms faced by Plaintiffs' schools and students, a preliminary injunction would not harm the Federal Government at all but merely maintain the status quo by requiring the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1  Department to administer appropriated funds as directed by Congress until the Court can

2  properly review the merits of this case. *Planned Parenthood of Greater Washington & N. Idaho,*

3  328 F. Supp. 3d at 1150 (finding public interests weigh in favor of continued grant funding to

4  "prevent harm to the community . . . and prevent loss of data regarding the effectiveness of

5  [grant-funded program]"). The Programs have successfully served students since the first Trump

6  Administration. Indeed, Congress has already funded the Programs for fiscal year 2026.

7  Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313, 1342 (June 25, 2022).

8  Defendants' interest in discontinuing funding for vital mental health school-based programs in

9  some states but not others does not outweigh the public's interest in providing all students the

10  mental health services they need. The balance of harms and the public interest weigh decidedly

11  in the States' favor.

12  **D.    Grantees in Plaintiff States Are Entitled to Preliminary Relief**

13       Considering the serious and irreparable harm resulting from Defendants' unlawful

14  actions, grantees in Plaintiff States are entitled to a preliminary injunction to preserve the *status*

15  *quo ad litem*—not just the situation before Plaintiff States filed the instant matter, but "the last

16  uncontested status which preceded the pending controversy." *Flathead-Lolo-Bitterroot Citizen*

17  *Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024). Accordingly, Plaintiffs respectfully

18  request that Defendants be enjoined (1) from implementing or enforcing through any means the

19  Non-Continuation Decision, including recompeting Program funds; and (2) from reinstituting

20  the Non-Continuation Decision based on the same or similar reasons, including denying a

21  continuation award based on performance issues, if any, caused by the Department's Non-

22  Continuation Decision and its disruptive effects.

23                          **V.    CONCLUSION**

24       For these reasons, Plaintiffs respectfully request a preliminary injunction order as this

25  case proceeds.

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

DATED this 8th day of July 2025.

I certify that this memorandum contains 11,142 words, and that a motion to file overlength brief has been filed concurrently, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Ellen Range*
ELLEN RANGE, WSBA #51334
JENNIFER K. CHUNG, WSBA #51583
LUCY WOLF, WSBA #59028
Assistant Attorneys General
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitor General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Ellen.Range@atg.wa.gov
Jennifer.Chung@atg.wa.gov
Lucy.Wolf@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

ROB BONTA
Attorney General of California

/s/ Crystal Adams
CRYSTAL ADAMS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KATHLEEN BOERGERS*
Supervising Deputy Attorney General
KATHERINE MILTON*
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7522
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

Attorneys for State of California

KATHLEEN JENNINGS
Attorney General of Delaware

/s/ Vanessa L. Kassab
IAN R. LISTON*
Director of Impact Litigation
JENNIFER-KATE AARONSON*
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Vanessa.Kassab@delaware.gov
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

Attorneys for the State of Delaware

WILLIAM TONG
Attorney General of Connecticut

/s/ Andrew Ammirati
ANDREW AMMIRATI
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

Attorney for State of Connecticut

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Michael Drezner
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

Attorney for State of Maryland

KWAME RAOUL
Attorney General of Illinois

/s/ Emily Hirsch
EMILY HIRSCH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Emily.Hirsch@ilag.gov

Attorney for State of Illinois

AARON M. FREY
Attorney General of Maine

/s/ Sarah A. Forster
SARAH A. FORSTER
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

Attorney for the State of Maine

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*


ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS
Chief State Trial Counsel
YAEL SHAVIT
Chief, Consumer Protection Division
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2277
Katherine.Dirks@mass.gov
Yael.Shavit@mass.gov

*Counsel for the Commonwealth of Massachusetts*


LETITIA JAMES
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Special Counsel for Federal Initiatives
MARK LADOV
Special Counsel
28 Liberty Street
New York, NY 10005
212-416-8240
Rabia.Muqaddam@ag.ny.gov
Mark.Ladov@ag.ny.gov

*Attorneys for the State of New York*


RAÚL TORREZ
Attorney General of New Mexico

*/s/ Aletheia V.P. Allen*
ALETHEIA V.P. ALLEN
Solicitor General
LAWRENCE M. MARCUS
Assistant Solicitor General
New Mexico Department of Justice
201 Third St. NW, Suite 300
Albuquerque, NM 87102
505-527-2776
Aallen@nmdoj.gov
Lmarcus@nmdoj.gov

*Attorneys for State of New Mexico*


DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorney for the People of Michigan*


AARON FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
702-486-3420
HStern@ag.nv.gov

*Attorney for State of Nevada*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:25-cv-01228-KKE

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    DAN RAYFIELD                           PETER F. NERONHA
     Attorney General of Oregon             Attorney General of Rhode Island
2
     */s/ Coby Howell*                       */s/ Kyla Duffy*
3    COBY HOWELL*                           KYLA DUFFY
     BRIAN SIMMONDS MARSHALL*               Special Assistant Attorney General
4    Senior Assistant Attorneys General     150 South Main Street
     Trial Attorneys                        Providence, RI 02903
5    Oregon Department of Justice           401-274-4400, Ext. 2809
     100 SW Market St.                      Kduffy@riag.ri.gov
6    Portland, OR 97201
     971-673-1880                           *Attorney for State of Rhode Island*
7    Coby.Howell@doj.oregon.gov
     Brian.S.Marshall@doj.oregon.gov
8
     *Attorneys for State of Oregon*
9

10   JOSHUA L. KAUL
     Attorney General of Wisconsin
11
     */s/ Frances Reynolds Colbert*
12   FRANCES REYNOLDS COLBERT
     Assistant Attorney General
13   Wisconsin Department of Justice
     Post Office Box 7857
14   Madison, Wisconsin 53707-7857
     608-266-9226
15   Frances.Colbert@wisdoj.gov

16   *Attorney for State of Wisconsin*

17   *Pro hac vice pending*

18

19

20

21

22

23

24

25

26