Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

                    Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

                  Defendants.

CASE NO.  C25-1228KKE

**NOTICE OF MOTION AND
DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE
TO STATE A CLAIM; MEMORANDUM
OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

(ORAL ARGUMENT REQUESTED)

(Note on motion calendar for:
  October 31, 2025)

      Defendants Linda McMahon, in her official capacity, and the United States Department of

Education (collectively, "the Department"), through their attorneys, Teal Luthy Miller, Acting

United States Attorney for the Western District of Washington and Brian C. Kipnis, Assistant United

States Attorney, hereby move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), for an order dismissing this lawsuit for lack of subject matter jurisdiction and failure to

state a claim upon which relief can be granted.

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 1
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

**INTRODUCTION**

Plaintiffs, the States of Washington, California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, New Mexico, New York, Nevada, Oregon, Rhode Island, Wisconsin, the Commonwealth of Massachusetts, and the People of the State of Michigan (collectively, "the States"), bring this action in an effort to invalidate the Department's termination of certain contractual grant agreements entered into with school districts, regional education agencies, state education departments, and universities (collectively, the "Grantees"), and thereby prolong the duration of those grants in order to ensure that Federal grant funds will continue to flow to the recipients of those grants in future years. The States do not allege that they are parties to the grant agreements. Rather, the States seek relief on behalf of every SBMH and MHSP grantee in their respective states whose grant was discontinued last April. The individual grantees themselves are not named plaintiffs in this lawsuit.

While in some cases a grantee of an SBMH or MHSP grant may be a component of the government of one of the States, the Complaint in this case alleges no such relationship. Indeed, it is apparent that most of the grantees whose interests the States seeks to represent here, and for whom they seek specific relief, have no apparent relationship to any one of the States aside from the fact that they happen to reside within the territory of one of them. Regardless, the Complaint is devoid of any allegations establishing the identities of any of the grantees whose interests the States purport to represent, the States' relationship to the individual grantees, or that the States have the legal authority or standing to represent the interests of any grantee.

This is improper for two reasons. First, the States' Complaint has not sufficiently alleged that any State has standing, let alone the authority, to represent the interests of these third parties that are not before the Court. Second, pursuant to Federal Rule of Civil Procedure 17(a)(1), "an action must be prosecuted in the name of the real party in interest." Under this rule, an action must be brought by the person who is entitled to enforce the right and not by third-party interlopers who may have an interest in the outcome but do not hold the right they are seeking to enforce and may not

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 2
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

have the consent of the real party in interest to act on their behalf.[1]  In simple terms, the Complaint before the Court fails to allege that the States are parties to the grant agreements whose termination they are seeking to prevent and thus they do not allege that they have a contractual relationship with the Department.  Accordingly, whatever interest the States may have in seeing Federal funding continue to flow to recipients of SBMH or MHSP grants located in their states, it is those unnamed grantees who hold the right, and thus it is those grantees in whose names the action must be prosecuted.  Accordingly, as to those unnamed grantees, the States have failed to state a claim upon which relief may be granted.

Additionally, as recently reinforced by the U.S. Supreme Court in *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, ___ U.S. ___, 2025 WL 2415669 (U.S. Aug. 21, 2025), and the District of Columbia Circuit in *Climate United Fund v. Citibank, N.A.*, ___ F.4th ___,2025 WL 2502881, at *1 (D.C. Cir. Sept. 2, 2025), the APA's waiver of sovereign immunity does not encompass the States' claims because they seek to compel the Department to continue to pay Federal funds to SBMH and MHSP grantees pursuant to their contractual grant agreements.  Also, the decision to discontinue these grant agreements is committed to agency discretion by law.  Accordingly, for these additional reasons, the States' claims should be dismissed for lack of subject matter jurisdiction.  Lastly, the States' constitutional claims are also contract-based and thus are beyond the subject matter jurisdiction of this Court.

### STATEMENT OF FACTS

On October 4, 2022, the Department's Office of Elementary and Secondary Education ("OESE") issued a Notice Inviting Applications ("NIA") directed at State Educational Agencies

---

[1]  For example, the Board of Education for the Silver Consolidated Schools, located in Silver City, New Mexico, filed its own action in its own name with its own legal representatives in the United States District Court for the District of New Mexico.  The result was a denial of its request for a preliminary injunction.  *See Bd. of Educ. for Silver Consol. Sch. v. McMahon*, 2025 WL 2017177 (D.N.M. July 18, 2025).   Now, the Board is here, seeking a second bite of the apple apparently through this action ostensibly filed on its behalf by Plaintiff State of New Mexico. Dkt.  1, p. 44, ¶ b.  The real party in interest rule is designed to prevent such shenanigans.  *See* 6A Charles Alan Wright & Arther R. Miller, Federal Practice & Procedure § 1541 (3d ed. 2002).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

("SEAs")[2] and Local Educational Agencies ("LEAs")[3] to solicit applications for the School-Based

Mental Health Services Grant Program ("SBMH").  *Applications for New Awards; School-Based*

*Mental Health Services Grant Program*, 87 Fed. Reg. 60,137 (Oct. 4, 2022).  The NIA explained

that the purpose of SBMH is to "increase the number of credentialed … school-based mental health

services providers … providing mental health services to students in LEAs with demonstrated

need[.]"  *Id.* at 60,138.[4]

On the same date, OESE issued an NIA to solicit applications for the Mental Health Service

Professional Demonstration Grant Program ("MHSP").  *Applications for New Awards; Mental*

*Health Service Professional Demonstration Grant Program*, 87 Fed. Reg. 60,144 (Oct. 4, 2022).

That NIA explained that the purpose of MHSP is to "increase the number and diversity of high-

quality, trained providers available to address the shortages of mental health service professionals in

schools served by high-need LEAs[.]"  *Id.* at 60,145.[5]

SBMH and MHSP funding is conditioned upon recipients' "various assurances[,] including

those applicable to Federal civil rights laws that prohibit discrimination in programs or activities

receiving Federal financial assistance from the Department."  *Id.* at 60,143, 60,150.  Furthermore,

the NIAs were explicit that for multi-year awards, funding for future years was not guaranteed and

would depend upon the Secretary of Education's decision to make a "continuation award."  *Id.* at

60,144, 60,151.  The Secretary's decision-making authority was delegated to OESE.  20 U.S.C.

§ 3414.

The Department's duly enacted regulations—cited to by the NIAs—govern continuation

awards and establish mandatory criteria for award funding to continue.  *See* 87 Fed. Reg. 60,144,

---

[2]  As defined at 20 U.S.C. § 7801(49).

[3]  As defined at 20 U.S.C. § 7801(30).

[4]  The Department repeated this process for fiscal year 2024.  *See* 89 Fed. Reg. 15,173 (Mar. 1, 2024).

[5]  The Department repeated this process for fiscal years 2023 and 2024.  *See* 87 Fed. Reg. 72,976 (Nov. 28, 2022); 89 Fed. Reg. 15,180 (Mar. 1, 2024).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 4
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

60,151 (*citing* 34 C.F.R. § 75.253).  There are five separate elements of the continuation criteria;

they require the grantee to:

1. Either "demonstrate it has made substantial progress" toward the project goals or "[o]btain the Secretary's approval for changes to the project."  34 C.F.R. § 75.253.

2. "Submit all reports as required by [34 C.F.R.] § 75.118[.]"  *Id.* at § 75.253.

3. "Continue to meet all applicable eligibility requirements of the grant program[.]"  *Id.*

4. "Maintain financial and administrative management systems that meet the requirements in 2 CFR [§§] 200.302[,] 200.303[.]"  34 C.F.R. § 75.253.

5. "Receive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government."  *Id.*

The Grantees each applied for funding in response to the NIAs and were awarded SBMH

grants, MHSP grants, or both.  *See generally* Dkts. 51-57, 59–106.  On April 29, 2025, the

Department informed each of the Grantees that they had not qualified for a continuation award for

the 2026 calendar year.  *See, e.g.*, Dkt. 106-2 ("Notice of Non-Continuation").  The Notice of Non-

Continuation informed Grantees:

> The Department has undertaken a review of grants and determined that [Grantee's award] provides funding for programs that reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration, in that the programs: violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds.

*Id.*  The Notices each concluded that the relevant grant was "therefore inconsistent with, and no

longer effectuates, the best interest of the Federal Government and will not be continued."  *Id.*[6]  The

Notices also offered Grantees the opportunity to "request reconsideration of this decision," *id.,*

---

[6]  The States disparage these discontinuation notices, calling them" boilerplate notices," and assert that they are faulty because they did not provide individualized reasons to justify the terminations. Dkt. 1, ¶¶ 6-9, 100. However, this is simply part and parcel of the States' effort to repackage their contract claims as APA claims and to have this Court improperly analyze them under the APA's arbitrary and capricious standard of review. *See Climate United Fund*, 2025 WL 2502881, at *7 (rejecting similar argument as an attempt to "manufacture district court jurisdiction by framing contract claims as violations of the APA's bar on arbitrary and capricious action."). The States have not shown that they are legally or contractually entitled to a more detailed discontinuation notice than the one they received.

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 5
(Case No. C25-1228KKE)

pursuant to 34 C.F.R. § 75.253(g), which outlines the procedures for such an appeal.

## STANDARDS OF REVIEW

The federal rules do not contain a specific procedure for raising an objection that a plaintiff is not the real party in interest.  However, it has been recognized that "a real-party-in-interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that plaintiff does not have the substantive right to enforce the claim being made."  *New York ex rel. Schneiderman v. Intel Corp.*, 827 F. Supp. 2d 369, 374 (D. Del. 2011) (*quoting* 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1554 (3d ed.)).  Thus, it is appropriate to raise a real party in interest defense in a motion pursuant to Rule 12(b)(6). Fed. R. Civ. P.  *Siemens USA Holdings, Inc. v. United States*, 960 F. Supp. 2d 221, 224 (D.D.C. 2013) (noting that dismissal can be avoided by joining the real party in interest in the lawsuit).

The Department's assertion of sovereign immunity constitutes a motion to dismiss for lack of subject-matter jurisdiction.  *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether [of] whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction.").  Plaintiffs carry the burden to find and prove an explicit waiver of sovereign immunity.  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (holding that because the plaintiff sought relief, "it follows that he must carry throughout the litigation the burden of showing that he is properly in court").  Similarly, a question of standing is appropriately raised pursuant to Rule 12(b)(1), Fed. R. Civ. P.  *Leo v. AppFolio, Inc.*, 2018 WL 623647, at *6 (W.D. Wash. Jan. 30, 2018).  Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element establishing standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The Department's motion to dismiss for lack of subject matter, like its motion to dismiss for failure to state a claim, constitutes a facial attack on the complaint that is unaccompanied by supporting evidence and challenges jurisdiction based solely on the pleadings.  *See Safe Air for*

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 6
(Case No. C25-1228KKE)

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Accordingly, the inquiry is confined to the allegations in the complaint.  *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).  The court considers the well-pleaded factual allegations of the complaint to be true and determines whether they establish subject matter jurisdiction.  *Id.*

## ARGUMENT

I.    THE STATES' COMPLAINT FAILS TO ESTABLISH THAT THEY HAVE STANDING IN RELATION TO ANY GRANTEE

As this case is at the pleading stage, the States must "clearly ... allege facts demonstrating each element [of standing]."  *Spokeo, Inc.*, 578 U.S. at 338.  Yet the States' Complaint is essentially devoid of any allegations that they have standing to represent any individual grantee.  The only allegations in the States' Complaint remotely relating to standing are contained in paragraphs 15 and 16.  Paragraph 15 of the Complaint contains a string of conclusory (and hyperbolic) allegations, *e.g.*, that "Defendants' unlawful allegations have already caused and will cause immediate and devastating harm to Plaintiffs," and that the discontinuances "threaten the very purpose of these Programs."  These allegations must be disregarded in assessing the sufficiency of the States' Complaint.  *See Roberts v. Khounphixay*, 2018 WL 5013780, at *1 (W.D. Wash. Oct. 16, 2018).

Paragraph 16 of the Complaint, while somewhat more specific, is still insufficient to establish that the States have standing to represent the interest of any grantee.  It states:

> If the discontinuances are not rescinded, Plaintiff educational agencies will be forced to lay off the very same professionals they recruited and hired to provide mental health services at their rural and low-income schools using Program funds.  Plaintiff institutes of higher education will be forced to terminate financial support for graduate student internships to provide mental health services to rural and low-income schools.  As a result, hundreds of graduate students will make the difficult choice whether they should enter or continue a graduate program no longer able to offer tuition assistance–drying up a workforce pipeline Congress recognized needed development.

Dkt. 1, ¶ 16.  The obvious defect in this allegation is that there is no "Plaintiff educational agencies" or "Plaintiff institutes of higher education" in this case.  The only plaintiffs in the case are individual states.  The Complaint does not allege that they fall into either category.  *See, id.* at ¶¶ 21-36.  While

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 7
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    *some* of the grantees may be components of the state governments of the Plaintiff States, the

2    relationship of any particular state to any individual grantee is not alleged anywhere in the

3    Complaint.  Neither the Court nor the Department is required to guess at those relationships in order

4    to determine which grantees are properly represented by the States in this lawsuit and which grantees

5    are not.  Those facts must be plead in the Complaint, and here, they are not.  *See Spokeo, Inc.*,

6    578 U.S. at 338.

7        Thus, to the extent that the States contend that they have any standing to represent the

8    interests of any SBMH or MHSP grantee, the basis for that contention finds no support in the

9    allegations of the Complaint.  Accordingly, this Court should dismiss the Complaint for lack of

10    subject matter jurisdiction.

11

12    II.    THE STATES' COMPLAINT IS NOT BROUGHT IN THE NAMES OF THE
             REAL PARTIES IN INTEREST

13        Rule 17(a)(1), Fed. R. Civ. P. states that "an action must be prosecuted in the name of the

14    real party in interest."  The effect of this passage is that the action must be brought by the person

15    who, according to the governing substantive law, is entitled to enforce the right.  The real party in

16    interest requirement is discrete from the standing requirement and, to maintain a case in federal

17    court, both requirements must be satisfied.  *See Fund Liquidation Holdings LLC v. Bank of Am.*

18    *Corp.*, 991 F.3d 370, 386 (2d Cir. 2021).  Rule 17(a) performs the useful function of protecting

19    individuals from harassment and multiple suits by persons who would not be bound by the principles

20    of claim preclusion if they were not prevented from bringing subsequent actions by a real-party-in-

21    interest rule.  Thus, the purpose of this rule is to enable the defendant to present his defenses against

22    the proper persons, to avoid subsequent suits, and to proceed to finality of judgment.  *Crigger v.*

23    *Fahnestock & Co.*, 2005 WL 774240, at *3 (S.D.N.Y. Apr. 6, 2005).

24        The States' Complaint violates this pleading requirement.  Instead of bringing this case in the

25    names of the real parties in interest, *i.e.*, the many unnamed grantees residing in their states whose

26    SBMH or MHSP grants were terminated in April, they have filed this Complaint in their own names

27

28    NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
      LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
      STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
      IN SUPPORT THEREOF - 8
      (Case No. C25-1228KKE)

1  purporting to represent the interests of all discontinued grantees in their states without alleging in the

2  Complaint that any state constitutes a discontinued grantee or that any state attorney general has the

3  legal right or authority much less the consent of any unnamed grantees to represent their interests in

4  this lawsuit.

5      In their Complaint, the States assert that each named state attorney general is authorized to

6  pursue legal actions on behalf of the state.  *See* Dkt. 1, ¶¶ 21–36.  Just so, perhaps, but that authority

7  does not confer any authority on the States' attorney generals to represent the interests of unnamed

8  third parties in their states in an action filed against the Federal Government in a United States

9  District Court.  *See Murthy v. Missouri*, 603 U.S. 43, 76 (2024); *and Haaland v. Brackeen*, 599 U.S.

10  255, 295 (2023) ("[a] State does not have standing as *parens patriae* to bring an action against the

11  Federal Government") (simplified).  Further, to the extent that the States have argued in briefing on

12  their motion for a preliminary injunction that *some* of the grantees are state entities who are properly

13  represented by them in this action, no allegation in their Complaint identifies which of the grantees

14  are in that category.  In any event, the States may not prop up their defective complaint with legal

15  argument.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In

16  determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to

17  a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

18  dismiss."); *Car Carriers v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[T]he complaint

19  may not be amended by the briefs in opposition to a motion to dismiss."); *Krefting v. Kaye-Smith*

20  *Enters. Inc*., 2023 WL 4846850, at *8 (W.D. Wash. July 28, 2023).

21      The States cannot be heard to argue that individual grantees who entered into contractual

22  grant agreements with the Department are not the real parties in interest here.  The grantees are the

23  only parties to their agreements with the Department and, consequently, they are the only parties

24  with enforceable rights resulting from a claim that their rights have been abridged by the

25  Department's decision to discontinue their grants.  On the face of the States's Complaint, no

26  allegation supports a conclusion that any one of the States is a real party in interest.  Aside from the

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 9
(Case No. C25-1228KKE)

1  conclusory allegation that the Department's decision has caused them "immediate and devastating

2  harm," that supposed harm is wholly derivative of the harm allegedly suffered by third-parties, *i.e.,*

3  the grantees, who are not named plaintiffs in this lawsuit.  The Complaint does not allege any factual

4  basis for a conclusion that the States themselves are proper parties to bring actions on behalf of

5  third-parties who are not plaintiffs in this case and, for all the States apparently know, may not wish

6  at all to challenge the termination of their grants. *See Armour Pharm. Co. v. Home Ins. Co.,*

7  60 F.R.D. 592 (N.D. Ill. 1973) ("Merely because one may benefit by the result in litigation does not

8  make him a "real party in interest" within the purview of Rule 17(a).")

9

10   III.   THE COURT OTHERWISE LACKS SUBJECT-MATTER JURISDICTION OVER
           THIS ACTION

11         "The Court has an independent duty to assure itself of subject-matter jurisdiction."  *MSC*

12  *Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 735 F. Supp. 3d 1203, 1205 (C.D. Cal. 2024)

13  (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004)).  The Court does not have

14  jurisdiction here because the States' claims are based on grant agreements and seek relief designed

15  to enforce an obligation to pay money pursuant to those agreements.  *Nat'l Insts. of Health*,

16  2025 WL 2415669, at *1.

17         The States argue that the Grantees are entitled to the continued payment of millions of dollars

18  of federal funds that would otherwise go away if their grant agreements were discontinued.  In

19  challenging these discontinuations, the States seek an order to enforce the Department's alleged

20  contractual obligations to pay.  Specifically, they seek a preliminary injunction ordering that the

21  Department be enjoined "(1) from implementing or enforcing through any means the Non-

22  Continuation Decision, including recompeting Program funds; and (2) from reinstituting the Non-

23  Continuation Decision based on the same or similar reasons, including denying a continuation award

24  based on performance issues, if any, caused by the Department's Non-Continuation Decision and its

25  disruptive effects."  Dkt. 49 at 33.  While the States assert that the discontinuation decisions violate

26  the APA or the Constitution, their requested relief is premised on—and ultimately seeks to

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
    LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
    STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
    IN SUPPORT THEREOF - 10
    (Case No. C25-1228KKE)

enforce—existing contracts with the United States.  In short, the States ask for specific performance of a contractual agreement.

Those essential facts—that the States seek to enforce contractual rights and are seeking contractual remedies—triggers the exclusive jurisdiction in the Court of Federal Claims under the Tucker Act.  *Nat'l Insts. of Health*, 2025 WL 2415669, at *1.  Where a party seeks funding that it believes the government is obligated to pay pursuant to a contract or grant, the Tucker Act "impliedly forbids" judicial review under the APA.  5 U.S.C § 702; *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998).[7]  The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  And, as noted above, the Tucker Act's jurisdiction, and its waiver of sovereign immunity for monetary relief, is exclusive.  *Tucson Airport Auth.*, 136 F.3d at 646.

Regardless of how a claim is styled, a district court lacks jurisdiction if a case is "essentially contractual."  *Climate United Fund,* 2025 WL 2502881, at *4.  Thus, the States cannot escape the Tucker Act's jurisdictional bar by formulating their contract claims as APA claims.  *Dep't of Educ. v. California*, ___ U.S. ___, 145 S. Ct. 966, 968, 221 L. Ed. 2d 515 (2025) ("[T]he APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money . . .. Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.' 28 U.S.C. § 1491(a)(1).")"; *see also Tucson Airport Auth.*, 136 F.3d at 646.  This jurisdictional bar extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients."  *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *and see Climate United Fund*, 2025 WL 2502881, at *5 (D.C. Cir. Sept. 2, 2025) (grant agreements are contracts for Tucker Act purposes).  The proper recourse for asserted violations of

---

[7]  The APA also precludes judicial review if a party has an adequate legal remedy elsewhere.  5 U.S.C. § 704.  However, this should not be conflated with the requirement that a cause of action not be "impliedly forbidden" under 5 U.S.C. § 702.  They are "two distinct concepts."  *Tucson Airport Auth.*,136 F.3d at 646.

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 11
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    these grant agreements is a "suit in the Claims Court for damages relating to [the] alleged breach."

2    *Id.*; *Nat'l Institutes of Health*, 2025 WL 2415669, at *2 (Barrett, J., concurring) ("[I]f the CFC has

3    exclusive jurisdiction over the grant terminations . . . the plaintiffs cannot end-run that limit simply

4    by packaging them with a challenge to agency guidance.") (citation omitted).

5         Courts apply a straightforward test, followed in the Ninth Circuit and others, to determine

6    whether a claim falls within the exclusive Tucker Act jurisdiction of the Court of Federal Claims.

7    For each claim, courts consider "(1) whether 'the source of the rights' asserted is contractual or is

8    'based on truly independent legal grounds' and (2) whether "the type of relief sought' is a typical

9    contract remedy. *Climate United Fund*, 2025 WL 2502881, at *4 (D.C. Cir. Sept. 2, 2025) (citing

10   *Megapulse*, 672 F.2d at 968); *see also United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017,

11   1026 (9th Cir. 2023) (applying *Megapulse*).

12        Here, both factors support a finding that the Court lacks jurisdiction over what are essentially

13   claims that lie in contract: (1) the source of grantees' rights to the funds are contractual grant

14   agreements, and (2) the relief sought in this case is specific performance of their grant agreements.

15        Underlying the grant agreements upon which the States bring their challenges are (1) an

16   application, *i.e.*, offer, to use the funding to provide mental health services; and (2) an acceptance by

17   the government, once it has determined that the activity proposed in the application serves the

18   government's interest. *See Applications for New Awards; School-Based Mental Health Services*

19   *Grant Program*, 87 Fed. Reg. 60,137 (Oct. 4, 2022); *Applications for New Awards; Mental Health*

20   *Service Professional Demonstration Grant Program*, 87 Fed. Reg. 60,144 (Oct. 4, 2022). The

21   payments of the grant awards are premised upon a series of terms and conditions that allow the

22   government to oversee the grantees and ensure stewardship of taxpayer dollars. The very first term

23   of the awards' terms and conditions states: "THIS AWARD SUPPORTS ONLY THE [ONE YEAR]

24   BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE

25   SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF: [six

26   requirements are met, including] THE DEPARTMENT DETERMINES THAT CONTINUING THE

27

28   NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
     LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
     STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
     IN SUPPORT THEREOF - 12
     (Case No. C25-1228KKE)

1  PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT."  Dkt. 100-1 at 5

2  (MHSP grant); *see also* Dkt. 102-2 at 5 (SBMH grant).

3       The conclusion that the States are seeking to enforce contractual agreements on behalf of

4  grantees, regardless of the framing of their claims, accords with recent Supreme Court direction.  In

5  *Nat'l Insts. of Health*, 2025 WL 2415669, the Supreme Court stayed a district court's order vacating

6  the Government's termination of various research-related grants, holding that "[t]he Administrative

7  Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with

8  jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to

9  enforce any 'obligation to pay money' pursuant to those grants.  *Id.* at *1.  *NIH* was preceded by

10 *California*, 145 S. Ct. 966, in which the Court granted a stay of an order compelling the Government

11 to make payments based on certain grant agreements, concluding that the Department was likely to

12 succeed in showing that the district court "lacked jurisdiction to order the payment of money under

13 the APA."  *Id.* at 968.  The reasoning of those cases, which applies with full force here,[8] requires a

14 finding that the States' claims seeking to force a continuation of the payment of Federal funds too

15 grantees by asserting that the Department's decision to discontinue that funding was unlawful is, in

16 substance, a claim for breach of contract.[9]

17      *NIH* involved grant terminations.  The NIH and its constituent agencies make grants to fund

18 research at universities, hospitals, laboratories, and other research institutions.  *See* Application to

19 Stay the Judgments of the United States District Court for the District of Massachusetts and Request

20 for an Immediate Administrative Stay, 2025 WL 2146619, at *8.  NIH grants are awarded on a

21

22 [8] The Supreme Court recently clarified that its "interim orders," like that in *California*, should "inform how a court should exercise its equitable discretion *in like cases*." *Trump v. Boyle*, ___ S. Ct. ___, 2025 WL 2056889 (July 23, 2025) (emphasis added).  This point was reinforced by Justice Gorsuch in his concurring opinion in *NIH*, 2025 WL 2415669, at

23 *3-5 ("Moreover, even probabilistic holdings—such as *California's* top-line conclusion that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA," must inform

24 how a lower court proceeds in like cases.") (cleaned up).

25 [9] As set forth in Defendants' Supplemental Brief in Opposition to Motion for Preliminary Injunction (Dkt. 156) the Court of Appeals' decision in *Thakur v. Trump*, ___ F.4th ___, 2025 WL 2414835 (9th Cir. Aug. 21, 2025), issued hours

26 before the Supreme Court's order in *NIH*, which arrived at a different conclusion, was effectively overruled by *NIH*. Dkt. 156, pp. 6-8 (citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)).

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 13
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

competitive basis, and NIH memorializes the grant terms in a Notice of Award -- a formal legal document issued by the NIH entity to the recipient.  *Id.* at *9.  The Notice of Award sets out "the amount of funds awarded" and the "terms and conditions" of the award, which the recipient accepts "by drawing or requesting funds."  The NIH's standard grant terms incorporate express caveats that awards can be terminated if they do not support agency objectives or policies.  *Id.*  For instance, all NIH grants incorporate by reference the NIH Grants Policy Statement, which in turn incorporates OMB's guidance for federal financial assistance in 2 C.F.R. Pt. 200.  *Id.*  OMB's guidance states that a "Federal award may be terminated" by the agency, "to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities.  2 C.F.R. 200.340(a)(4)."  *Id.*  Further, all NIH grants are subject to HHS's uniform administrative requirements for federal awards.  *Id.*  Following a review of the specific aims of each project for compliance with the NIH's priorities, the NIH terminated numerous grants.  *Id.* at *11.  Letters were sent to affected grant recipients explaining that the OMB guidelines incorporated into their grants permit termination "if an award no longer effectuates the program goals or agency priorities" and, in standardized language, identified why the grantees' projects no longer effectuated agency priorities.  *Id*. at *11-12.

The court of appeals upheld the district court's preliminary injunction because it had "simply declared that the Department unlawfully terminated certain grants" without relying on any particular grant terms.  *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 51 (1st Cir. 2025).  On the merits, it also agreed with the district court that the grant terminations were likely arbitrary and capricious, seeing "no obvious error" in the district court's conclusion that the NIH engaged in an unexplained "about-face" that "entirely ignored significant reliance interests."  *Id.* at 54.

As noted previously, on these facts, a majority of the justices determined that a stay of the district court's preliminary injunction should be granted.  As Justice Kavanaugh stated succinctly in his concurring opinion:

> The reason is straightforward: The core of plaintiffs' suit alleges that the Government unlawfully terminated their grants.  That is a breach of contract claim.  And under the Tucker Act, such claims must be brought in the Court of Federal Claims, not federal district court.  28 U.S.C. § 1491(a)(1).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 14
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1  *Nat'l Insts. of Health*, 2025 WL 2415669, at *5.

2          In *California*, a number of states challenged the Department's termination of various

3  education-related grants for "discriminatory practices—including in the form of DEI" as violative of

4  the APA.  Application to Vacate the Order Issued by U.S. Dist. Ct. for the Dist. of Mass. & Request

5  for an Immediate Admin. Stay at *5, *California*, 145 S. Ct. 966, 2025 WL 945313 (Mar. 2025)

6  (quotation omitted).  The district court temporarily enjoined the grant terminations, and the district

7  court and the First Circuit denied motions to stay that injunction.  *See California v. Dep't of Educ.*,

8  132 F.4th 92, 101 (1st Cir. 2025).  The Supreme Court, however, concluded that the lower court

9  likely lacked jurisdiction because the remedy sought was ultimately an order to "enforce [the

10  Government's] contractual obligation to pay money."  *California*, 145 S. Ct. at 968 (quoting *Great-*

11  *West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  The contracts at issue in

12  *California* were government grants awards.  *Id.*  The Court identified the contractual grant award,

13  considered the remedy sought, and concluded jurisdiction was likely precluded.

14          After *NIH,* the District of Columbia Circuit concluded that a district court judge abused her

15  discretion by granting a preliminary injunction enjoining the termination of certain grants issued by

16  EPA.  *Climate United Fund*, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025).  The Court's opinion that

17  the plaintiffs' APA claims were impliedly forbidden by the Tucker Act was reinforced by *NIH* and

18  *California*.  *Id.* at *8.

19          Likewise, the Fourth Circuit recently stayed a district court injunction nearly identical to the

20  one sought here.  *Sustainability Inst. v. Trump*, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025).

21  Plaintiffs there brought APA and *ultra vires* constitutional claims against federal defendants and, by

22  virtue of those purported legal infirmities, sought to reverse or prevent grant terminations.  *Id.*

23  Looking to *California*, and the law it applied, the Fourth Circuit concluded that those defendants

24  were likely to succeed in showing that the district court lacked jurisdiction.  "While the

25  appropriation statutes authorize the agencies to award grants, it is the operative grant agreements

26  which entitle any particular Plaintiff to receive federal funds."  *Id.*  The same is true here.  Moreover,

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 15
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

the Circuit concluded that the *ultra vires* claims that alleged constitutional violations did not change this calculus, as they were still subsumed by the contracts and foreclosed by Congress's statutory scheme.  *See id.*

Other courts—and most notably a district court in New Mexico deciding a nearly identical case to this one—have since followed suit in finding claims barred by the Tucker Act.  *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon, et al.*, ___ F. Supp. 3d ___, 2025 WL 2017177 (D.N.M. July 18, 2025).  In *Silver Consolidated Schools*, the plaintiff—a SBMH grant recipient— challenged the Non-Continuation decision on constitutional and APA grounds.  *Id.* at *2.  The court found that the plaintiff's claims "belong in the Court of Federal Claims" because "ultimately the controversy is over a contract."  *Id.* at *7.  The court stated that "at the end of the day, the reasoning of [*California*] controls."  *Id.* at *8.[10]  *See also Amica Ctr. for Immigrant Rights v. U.S. Dep't of Just.*, 2025 WL 1852762, at *17 (D.D.C. July 6, 2025) ("Plaintiffs . . . may not circumvent the Tucker Act or the APA's reviewability bar by reframing an alleged statutory violation as a constitutional claim."); *and President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.,* 2025 WL 2528380, at *12 (D. Mass. Sept. 3, 2025) ("[G]iven the current guidance from the Supreme Court, [this Court] lacks jurisdiction over the arbitrary and capricious claims as they pertain to the Termination Letters, and that any such claim based on the grant terminations must be brought in the Court of Federal Claims.").

To be sure, the States assert that the grantees' agreements were discontinued in violation of their constitutional and statutory rights—but the Court of Federal Claims can consider those constitutional and statutory issues in the context of determining whether the States are entitled to relief, *e.g.*, whether the agreements were improperly discontinued.  *Cf. Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 680 (1986) ("we will not indulge the . . . assumption that Congress

---

[10]  In the alternative, the court addressed the claims on their merits and concluded that the plaintiff had failed to show a likelihood of success on the merits or irreparable harm.  *Id.* at * 8–12.  And it "decline[d] to formally conclude the balance of equities and public interest factors weigh in Plaintiff's favor," explaining that "these factors are a wash because the 'wisdom' of decisions by the Executive branch is 'none of [the Court's] concern.'"  *Id.* at *13 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020)).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 16
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

contemplated review . . . of 'trivial' monetary claims but intended no review at all of substantial statutory and constitutional challenges").  Here, while the States nominally bring Spending Clause claims, the substance of their claims is that the terminations of the agreements violate contracts; such claims are properly within the scope of the Tucker Act.  *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,* 38 F.4th 1099, 1107 (D.C. Cir. 2022); *Consol. Edison Co. of N.Y., Inc. v. U.S, Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2010).  The States cannot evade the Court of Federal Claim's mandatory jurisdiction over the Grantees' money claims through tactical briefing, and this Court should "not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims."  *Id.* at 1385.[11]

The States' claims also satisfy the second factor of the *Megapulse* analysis because the relief they seek is essentially a monetary remedy.  This inquiry "boils down to whether the plaintiff effectively seeks to attain monetary damages in this suit."  *Crowley*, 38 F.4th at 1107.  Here, the States purport to seek equitable relief—but the effect of that relief is to order specific performance of grant agreements, *i.e.*, for the government to pay money.

At bottom, in seeking to enjoin the Non-Continuation decisions, the States seek an injunction to maintain payments pursuant to contracts with the United States.  In other words, the States "want[] the Government to keep paying up."  *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C.), *injunction pending appeal denied*, (D.C. Cir. Mar. 28, 2025) (per curiam).  Because the claims here are "founded upon a contract" they "must be heard in Claims Court."  *Id.*  at *7 (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")).  The States' request would

---

[11]  While Plaintiffs' contract-based claims are clearly money-mandating and therefore fully cognizable by the Court of Federal Claims under the Tucker Act, the Ninth Circuit has never made that a requirement for the Tucker Act's preclusion of APA claims.  Thus, in *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, a contract that was not money-mandating but instead imposed a duty on the federal government to provide plaintiff a defense in actions brought by a third-party was the basis for Tucker Act preclusion.  *Id.* at 648; *and see Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005) ("The fact that the Court of Federal Claims has no power to grant specific enforcement of a contract does not mean that a suit for specific enforcement can be brought in district court.").

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 17
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

amount to an order to "enforce [the Government's] contractual obligation to pay money." *California*, 145 S. Ct. at 968 (citation omitted), and cannot move forward in this Court.[12]

### IV.    THE STATES' CONSTITUTIONAL AND *ULTRA VIRES* CLAIMS ARE ALSO WITHIN THE EXCLUSIVE JURISDICTION OF THE COURT OF FEDERAL CLAIMS

Simply placing a constitutional label on a contract-based claim does make it justiciable under the APA.  *See Tucson Airport Auth.*, 136 F.3d at 647 (declining to follow *Transohio v. Dir., Off. of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992)); *see also Doe v. Tenet*, 329 F.3d 1135, 1142 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 ("Our circuit has taken a stricter view, however, and has held that constitutional claims based on a contractual property interest fall within the Tucker Act and may not be brought in district court.").

Both of the States' constitutional claims rest on the theory that Department did not fulfill its end of the bargain to the grantees when it decided to discontinue their grants.  Thus, their Spending Clause claim alleges that the Constitution was violated because the Department "now asserts authority to unilaterally discontinue a grant on grounds not authorized by Congress."  Dkt. 1, ¶ 135. The States' Separation of Powers clause claim alleges that "[i]n discontinuing Program grants based on the Administration's priorities and policy preferences, irrespective of congressional intent, laws and its own regulations, the Department violates separation of powers constraints."  Dkt. 1, ¶ 147. These claims represent an effort by the States to constitutionalize what is in essence a garden variety breach of contract claim.  Regardless, because these claims are based on the grants in that they ultimately rest upon a theory that the Department violated its agreement with the grantees, they can only be adjudicated by the Court of Federal Claims.  *Tucson Airport Auth.*, 136 F.3d at 648 (The Tucker Act "prevents constitutional claims that are dependent on rights under a government contract from being brought in the district court.")

Likewise, the States's *ultra vires* argument does not apply to contract claims.  *Climate United*

---

[12] Notwithstanding the States' efforts to mask the fact that they are seeking an order to compel the Department to continue to make payments indefinitely to grantees within their states with careful wording, *i.e.,* seeking orders to vacate the terminations "and actions to effectuate it," their purpose is clearly evident.

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 18
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*Fund*, 2025 WL 2502881, at *9. (D.C. Cir. Sept. 2, 2025) (*citing Larson v. Domestic & Foreign Com. Corp.,* 337 U.S. 682, 704 (1949) ("The Government, as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right."). The States claims essentially allege the government (1) violated the terms of the grant agreements and (2) acted with impunity. If proven, these claims establish breach of contract. They do not establish that the government (or any official) acted in excess of statutory limits or in contravention of the Constitution, as is required to invoke the *Larson-Dugan* exception. *See Larson*, 337 U.S. at 695 (squarely rejecting the contention that "an officer given the power to make decisions" only has sovereign immunity when he "make[s] correct decisions"). The States cannot bootstrap district court jurisdiction through the *ultra vires* exception to sovereign immunity because their claims are essentially contractual. *See Climate United Fund,* 2025 WL 2502881, at *10.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court grant the Department's motion and dismiss this action.

## CERTIFICATION

I certify that this memorandum contains 7,089 words, in compliance with the Local Civil Rules.

DATED this 5th day of September 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
Email: brian.kipnis@usdoj.gov

Attorneys for Defendants

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF - 19
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970