The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 2:25-cv-01228-KKE |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | NOTE ON MOTION CALENDAR: October 9, 2025, 1:00 p.m. |
| Defendants. | With Oral Argument |

## I.    INTRODUCTION

This case is about Defendants' unlawful discontinuation of mental health grants in violation of the Administrative Procedure Act (APA), the General Education Provisions Act (GEPA), the Department of Education's (Department) grant regulations, and the U.S. Constitution. On April 29, 2025, the Department sent boilerplate notices that discontinued grants providing mental health services in high-need schools within Plaintiff States. Unbeknownst to Plaintiff States, the Department had made *sub silentio* policy changes prompting these discontinuances, including the unlawful imposition of new unannounced priorities in violation of federal statute and Department regulation: On February 5, 2025, the Department issued a directive to staff to implement its new priorities—merit, fairness, and excellence in education. To effectuate these new, unannounced priorities, Defendants

1

1  discontinued program grants—not based on grantee performance as required by regulation—but

2  based on this new directive's priorities. Defendants' Non-Continuation Decision constitutes

3  unlawful agency action in violation of the agency's own procedural regulations, statutory

4  requirements, and constitutional obligations as well as the standards of reasoned decision-

5  making required by the APA.

6         Defendants' Motion to Dismiss is centered on their mistaken belief that Plaintiffs dispute

7  grant terminations on behalf of all individual grantees. They do not. Sixteen states mobilized to

8  challenge Defendants' unlawful actions based on not only the harm to state entities whose grants

9  were discontinued, but also the harm to their state fiscal interests given education and public

10  health mandates and procedural interests. The Court should deny the motion for three reasons.

11         *First*, Defendants' unsupported belief that an individual grantee is the only party allowed

12  to seek judicial review of an agency action affecting a grant is contrary to statute and case law.

13  Plaintiff States have standing to bring this suit on behalf of themselves because the States have

14  alleged an Article III injury-in-fact arising from the Non-Continuation Decision, and are

15  aggrieved by Defendants' actions under the APA, 5 U.S.C. § 702. Plaintiffs' Complaint

16  allegations provided sufficient notice of the State interests—both their interests as discontinued

17  grantees and their fiscal and procedural interests—at stake from the discontinuance of grants

18  within Plaintiff States. Regardless, Plaintiffs need only show that one plaintiff has standing to

19  seek injunctive and declaratory relief, and there is no real dispute that the Complaint alleges

20  Plaintiff State of Washington has standing because the Department discontinued a University of

21  Washington grant. *See Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006)

22  ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-

23  controversy requirement."); *Biden v. Nebraska*, 600 U.S. 477, 489–94 (2023) ("Because we

24  conclude that the Secretary's plan harms [a state instrumentality] and thereby directly injures

25  Missouri—conferring standing on that State—we need not consider the other theories of

26  standing raised by the States.").

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

*Second*, Plaintiff States are the real parties in interest because they are asserting their substantive rights under the APA and the U.S. Constitution. The fact that other entities, such as private universities, may also have substantive rights does not bar Plaintiffs from asserting their own. *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. DLB-25-1363, 2025 WL 1585051, at *18 n.12 (D. Md. June 5, 2025).

*Third*, the Tucker Act does not bar Plaintiffs' claims for the reasons Plaintiffs discussed in their Preliminary Injunction reply brief, supplemental brief, and at the Preliminary Injunction hearing. *See, e.g.*, Dkt. # 150 at pp. 11–15; Dkt. # 157; Dkt. # 167 (Transcript) at 15:21–18:8, 46:5–51:18. Defendants advance no new arguments on this issue. Nor do Defendants advance any arguments on the issue of whether the Non-Continuation Decision is committed to agency discretion. *See* Dkt. # 161 at p. 3; Dkt. # 150 at pp. 14–15 (explaining how regulations cabin Defendants' discretion).

As States properly bring their APA and constitutional claims on behalf of their own interests, including the interests of the state entities and instrumentalities whose Program grants were discontinued, the Court should deny Defendants' Motion.

## II.    FACTUAL BACKGROUND

### A.    Defendants' Secret Policy Changes Harmed States and State Grantees

Starting with the first Trump Administration, Congress appropriated and the Department awarded funding to the nation's high-need, low-income, and rural schools pursuant to its Mental Health Service Professional Demonstration Grant Program (MHSP) and its School-Based Mental Health Services Grant Program (SBMH) (collectively referred to as "Programs"). Dkt. # 1 (Compl.) ¶¶ 1, 41, 44. Congress funded these grants because they served the government's interests in safe, educational environments for our nation's children. Compl. ¶ 2. Spurred by episodes of tragic and devastating loss from school shootings, Congress established and funded MHSP in 2018 and SBMH in 2020 to provide students access to mental health services: MHSP addresses the shortage of school-based mental health service providers in high

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

need schools by awarding multi-year grants to projects that expand the pipeline for counselors, social workers, and psychologists through partnerships between institutes of higher education and local educational agencies[1]; and SBMH funds multi-year grants, allowing state educational agencies and local education agencies to increase the number of professionals that provide school-based mental health services to students through direct hiring and retention incentives. Compl. ¶¶ 2, 41, 58, 65–66. The ultimate goal of the Programs was to permanently bring 14,000 additional mental health professionals into U.S. schools that needed these services the most—primarily in low-income and rural communities. Compl. ¶ 2.

Despite overall programmatic success and strong grantee performance, Compl. ¶¶ 5, 69, 79, on or about April 29, 2025, the Department decided to discontinue Program grants based on an alleged conflict with the current Administration's priorities, Compl. ¶ 6. The Department applied these new, previously unannounced priorities to discontinue only a subset of Program grants, even though grants that were not discontinued served the same prior Administration's priorities as the grants that were discontinued. *See* Compl. ¶¶ 83–84. The Department implemented its Non-Continuation Decision by sending boilerplate notices to Plaintiffs and other grantees within Plaintiff States, including Plaintiffs' state education agencies, local education agencies, and institutes of higher learning, claiming that their grants conflicted with the Trump Administration's priorities and would not be continued. Compl. ¶¶ 6–7, 80. This Decision reflected a previously unannounced change of position in the Department's approach to the continuation award decision, from one that considered information relevant to a grantee's performance to one that did not. Compl. ¶¶ 11–12, 104.

Defendants' unlawful actions have already caused and will cause immediate and devastating harm to Plaintiffs. Compl. ¶ 15. As of this fall, many schools in Plaintiff states will no longer be able to reliably provide mental health services to the kids that need them most. *Id.*

---

[1] Local education agencies are defined to include school districts and regional education agencies, such as Educational Service Districts in Washington or County Offices of Education in California. *See* 34 C.F.R. §§ 300.28(a)–(b).

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

These discontinuances threaten the very purpose of these Programs—to protect the safety of our children by permanently increasing the number of mental health professionals providing mental health services to students in low-income and rural schools. *Id.*

If the discontinuances are not rescinded, Plaintiff educational agencies will be forced to lay off the very same professionals they recruited and hired to provide mental health services at their rural and low-income schools using Program funds. Compl. ¶ 16. Plaintiff institutes of higher education will be forced to terminate financial support for graduate student internships to provide mental health services to rural and low-income schools. *Id.* As a result, hundreds of graduate students will make the difficult choice whether they should enter or continue a graduate program no longer able to offer tuition assistance—drying up a workforce pipeline Congress recognized needed development. *Id.*

The Department's Non-Continuation Decision and apparent abandonment of Congressional directives for these Programs to promote equity and mental health services in low-income schools are causing irreparable harm to our children, schools, and school-based mental health service providers. Compl. ¶ 85. The cost to our children's safety, well-being, and academic success is incalculable. *Id.* The Department made this Decision amid an unprecedented mental health crisis for our youth following years of isolation during the pandemic. *Id.* These grants were designed to respond to America's school shooting crisis and fill a critical need in schools. *Id.* Without them, many children in rural and lower-income schools will go without mental health services and will suffer the attendant consequences: short- and long-term health problems; lower grades; increased absenteeism, suspensions, and expulsions; and a higher risk of suicide and drug overdose. *Id.* (citing Independent School Management, Understanding the Impact of Mental Health on Academic Performance (Feb. 12, 2023), https://isminc.com/advisory/publications/the-source/understanding-impact-mental-health-academic-performance).

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    If Defendants are not enjoined from implementing the Non-Continuation Decision,

2    grantees in Plaintiff states will be forced to lay off school-based mental health service providers,

3    reducing access to much-needed mental health services at their rural and low-income schools.

4    Compl. ¶ 86. These grantees will lose qualified mental health service providers; and the benefits

5    of the relationships their students have developed with these providers. *Id.* The spillover effect

6    of students turning to community mental health services—to the extent they are available—will

7    tax Plaintiffs' already-strained mental health care system. *Id.*

8    For instance, upon information and belief, in California, 21 county offices of education

9    and local education agencies received letters discontinuing their SBMH grants. Compl. ¶ 88.

10    These grantees will collectively lose at least $98 million. *Id.*

11    Additionally, in California, 28 MHSP grantees are set to lose at least $69 million.

12    Compl. ¶ 91. These grantees include county offices of education and local education agencies;

13    the University of California, Santa Barbara, which planned to partner with four high-need local

14    education agencies; and five California State University (CSU) campuses, which collectively

15    sought to partner with at least 21 high-need local education agencies. *Id.* Without these

16    collaborative partnerships, these grantees will lose valuable pathways for behavioral health and

17    social work professionals to serve the mental and emotional health needs of youth. *Id.*

18    Seven California grantees applied for their MHSP grants in 2024 and thus did not receive

19    their awards until January 2025. Compl. ¶ 92. As a result, they barely had time to implement any

20    of their planned efforts and will be denied most of the five-year funding—a total loss of

21    approximately $26.7 million—on which they had relied. *Id.* For example, CSU East Bay

22    Foundation, Inc.—a nonprofit corporation affiliated with CSU, East Bay—will lose $4 million.

23    *Id.* The university intended to use that funding to help three high-need local education agencies

24    hire and retain 145 school psychologists and school counselors. *Id.* The grant funding would

25    enable the university to place 145 credential program and graduate students in practicums in

26    high-need elementary and secondary schools. *Id.* Another grantee, Solano County Office of

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1  Education, will lose over $2.3 million, including $595,408 that it expected to receive for the

2  spring semester of the 2025–2026 school year. *Id.* Grantee Santa Clara County Office of

3  Education, which also received its initial award in 2023, will lose over $2.1 million. *Id.*

4      In sum, Defendants' Non-Continuation Decision and its implementation resulted in

5  immediate and irreparable harm to Plaintiffs—their youth experiencing mental health crises,

6  their school-based mental health service provider workforce pipelines, their education

7  agencies, their mental health care systems, and partnering institutions of higher education.

8  Compl. ¶¶ 15–16, 41, 58, 94.

9  **B.    Plaintiffs' Claims and Relief Sought**

10     On June 30, 2025, Plaintiffs filed this lawsuit, asserting claims under the APA and

11  U.S. Constitution and an ultra vires claim, and seeking declaratory and injunctive relief.

12  Compl. ¶¶ 95–159.

13     The Complaint alleges that Defendants' actions were "arbitrary and capricious" under

14  the APA, 5 U.S.C. § 706(2)(A). Compl. ¶¶ 95–107. Defendants' Non-Continuation Decision

15  was arbitrary and capricious because the Department did not examine the relevant data and

16  articulate a satisfactory explanation for its action including a "rational connection between the

17  facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. 43; *Dep't of Com. v.*

18  *New York*, 588 U.S. 752, 773 (2019); Compl. ¶ 100. Notices providing the same boilerplate

19  explanations untethered to specific grants and the performance of specific grantees show an

20  obvious lack of this type of assessment. *Id.* Defendants' actions were also arbitrary and

21  capricious because they: relied on factors Congress did not intend for it to consider under the

22  General Education Provisions Act's Equity Directive, Compl. ¶ 101; did not apply the same

23  standards to all Program grants, Compl. ¶ 102; and violated the change-in-position doctrine by

24  not recognizing or explaining changes in policies and priorities and by not considering Plaintiffs'

25  reliance interests or alternatives, Compl. ¶¶ 103–05.

26

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Defendants' Decision was "not in accordance with law" under the APA because they violated 34 C.F.R. § 75.253(b) and (c), the Department's continuation regulation that it invoked as its source of authority in the April 29 discontinuances. Compl. ¶¶ 80, 108–15.

Defendants' Decision failed to follow a "procedure required by law" under the APA because they violated the notice-and-comment rulemaking procedure when implementing new priorities without publishing them. Compl. ¶¶ 121–29.

Defendants' Decision violated the Spending Clause, U.S. Const. Art. I, § 8, cl. 1, as well as Separation of Powers doctrine and was ultra vires, claims that all stem from the same course of conduct—namely Defendants' implementation of new priorities retroactively that imposed new and ambiguous terms on Plaintiffs, and discontinued grants inconsistent with the purpose of the Programs, GEPA's requirement that grant recipients ensure "equity," *see* 20 U.S.C. § 1228a(b), Congress's oversight authority, and the final rulemaking priorities governing the Programs issued pursuant to GEPA and 34 C.F.R. § 75.105(b). Compl. ¶¶ 130–56.

As relief, Plaintiffs seek in part: (1) an order pursuant to 5 U.S.C. § 705 postponing the effective date of the Defendants' Non-Continuation Decision and actions to effectuate it, including the Department's plan to recompete Program funds, pending the conclusion of this Court's review; (2) preliminary and permanent injunctive relief barring implementation of the Non-Continuation Decision as to grantees residing within Plaintiff states; (3) equitable relief requiring the Department to make a new continuation award decision prior to the next budget period without considering performance issues—if any—caused by the Department's Non-Continuation Decision and its disruptive effects; (4) an order pursuant to 5 U.S.C. § 706(2) holding unlawful and vacating the Non-Continuation Decision and actions to effectuate it; (5) a declaratory judgment pursuant to 28 U.S.C. § 2201 holding that Defendants' Non-Continuation Decision and actions to effectuate it are unlawful because they violate the APA; and (6) a declaratory judgment pursuant to 28 U.S.C. § 2201 holding that, under 34 C.F.R. § 75.253(b), Defendants may only consider information relevant to a grantee's performance when

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    determining whether the grantee has met the requirements of 34 C.F.R. § 75.253(a), and this

2    excludes consideration of Defendants' new priorities. Compl., Prayer for Relief at pp. 44–45.

### III.    LEGAL STANDARD

4         A motion to dismiss under Rule 12(b)(6) tests the *legal* sufficiency of the claim stated in

5    the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003) (emphasis added).

6    "To survive a motion to dismiss ...under Rule 12(b)(6), a complaint generally must satisfy only

7    the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494

8    (9th Cir. 2003). Rule 8(a)(2) requires only a "short and plain statement of the claim showing the

9    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Porter,* 319 F.3d at 494. "To survive a

10   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

11   a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

12   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

13        For jurisdictional facial challenges—as made by Defendants here—accepting the

14   plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the

15   court determines whether the allegations are sufficient as a legal matter to invoke the Court's

16   jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); Dkt. # 161 at pp. 6–7.

17        For both 12(b)(1) facial challenges to subject matter jurisdiction and 12(b)(6) motions,

18   courts must consider the complaint in its entirety, and may also consider other sources, including

19   documents incorporated into the complaint by reference, and matters of which a court may take

20   judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Watch,*

21   *Inc. v. Read*, No. 6:24-cv-01783-MC, 2025 WL 2242876, at *4 (D. Or. Aug. 5, 2025).

### IV.    ARGUMENT

23   **A.    Plaintiff States Have Standing to Bring APA Claims on Their Own Behalf**

24        In their motion to dismiss, Defendants attempt to recast Plaintiffs' claims as disguised

25   breach-of-contract claims that belong in the Court of Federal Claims under the Tucker Act,

26   28 U.S.C. § 1491. Because they fail to recognize that Plaintiffs' claims are based on the APA,

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

they also misapprehend the nature of APA remedies and the proper standing analysis. *Cf. Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 679–80 (9th Cir. 2007) (rejecting standing challenge where plaintiff sought "to remedy the violation of a public law— the Administrative Procedure Act" rather than "a violation of private law (e.g., a breach of contract)," even though plaintiff would not be the recipient of funds).

Any person who is harmed by agency action can bring a claim under the APA. "To show standing under the [APA], 5 U.S.C. § 702, a plaintiff must allege (a) an injury in fact and (b) 'that the interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Apter v. Richardson*, 510 F.2d 351, 353 (7th Cir. 1975) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Further, Plaintiffs need only show standing for one Plaintiff, which is satisfied by Plaintiff State of Washington. *Biden*, 600 U.S. at 489 ("If at least one plaintiff has standing, the suit may proceed.")

### 1.    Any "aggrieved" person can bring an APA claim

Defendants assert that "[t]he grantees… are the only parties with enforceable rights resulting from a claim that their rights have been abridged by the Department's decision to discontinue their grants." Dkt. # 161 at p. 9. They provide no support for this proposition and make no attempt whatsoever to analyze the asserted claims. In fact, the APA broadly entitles any "person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action" to seek judicial review of that action. 5 U.S.C. § 702. "The fact that the alleged wrong may also have injured third parties does not deprive plaintiff of standing so long as she as well is injured in fact." *Apter*, 510 F.2d at 354 (citing *Sierra Club v. Morton*, 405 U.S. 727, 737–38 (1972)).

As such, courts roundly reject Defendants' argument that only grant or contract signatories may bring APA claims. *See, e.g.*, *Washington v. Trump*, 441 F. Supp. 3d 1101, 1113 (W.D. Wash. 2020) (rejecting argument that Plaintiff State lacked standing "because

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Washington is not a direct recipient of the money" and concluding State had standing to pursue APA and constitutional claims); *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422 (1942) (broadcasting network had standing to sue over agency's announced plan to deny licenses to broadcasting stations that conducted certain business with broadcasting networks, even though the broadcasting networks were not parties to the broadcasting stations' licenses); *Nw. Env't. Def. Ctr.*, 477 F.3d at 679 (environmental groups had standing to challenge an agency's failure to renew a grant for a fish protection program under the APA, even though they were not parties to the grant); *Apter*, 510 F.2d at 352–55 (prospective program director had standing to challenge denial of grant application under APA even though medical center, not director, was the applicant); *Thakur v. Trump*, No. 25-cv-04737-RFL, 2025 WL 1734471, at *22 (N.D. Cal. June 23, 2025) (finding standing for professors that had projects halted as the result of the termination of grants made to the school); *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 146 (D.D.C. May 2, 2025) (rejecting government's argument that law firm did not have standing because it was not a party to the contractors' agreements with the government); *Maryland*, 2025 WL 1585051, at *18 n.12 (plaintiff states had standing to challenge termination of grants disbursed to entities or citizens other than the states because the plaintiff states were "among the injured").

### 2. Plaintiffs have alleged an injury in fact sufficient to meet the requirements for Article III standing

The "irreducible constitutional minimum" of Article III standing consists of three elements: (1) the plaintiff has suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For violations of procedural rights, such as those alleged by Plaintiff States, relaxed standards apply to the traceability and redressability requirements. *See Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 782 (9th Cir. 2014) (en banc) ("One who challenges the violation of 'a procedural right to protect

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1    his concrete interests can assert that right without meeting all the normal standards' for

2    traceability and redressability." (citing *Lujan*, 504 U.S. at 572 n.7)); *Maryland*, 2025 WL

3    1585051, at *18.

4        To establish injury-in-fact, a plaintiff must demonstrate an injury that is "concrete,

5    particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)

6    (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). A plaintiff may

7    allege a "future injury" if he or she shows that the threatened injury is "certainly impending," or

8    there is a "substantial risk" that the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S.

9    149, 158 (2014); *see also Clapper*, 568 U.S. at 409, 414 n.5 (2013).

10       Plaintiffs' burden to establish redressability is "relatively modest." *Bennett v. Spear*,

11   520 U.S. 154, 171 (1997); *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024).

12   "Plaintiffs need not demonstrate that there is a guarantee that their injuries will be redressed by

13   a favorable decision." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (citation omitted).

14   Rather, Plaintiffs need only show that a favorable decision would result in a "change in a legal

15   status," and that a "practical consequence of that change would amount to a significant increase

16   in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."

17   *Utah v. Evans*, 536 U.S. 452, 464 (2002).

18       A special standing doctrine applies when litigants attempt to vindicate procedural rights.

19   "[T]o show a cognizable procedural injury for standing purposes, [a plaintiff] must allege . . .

20   that (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's]

21   concrete interests; and (3) it is reasonably probable that the challenged action will threaten their

22   concrete interests." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70

23   (9th Cir. 2003). For procedural violations, a plaintiff "need not show that the result of the

24   agency's deliberations will be different if the statutory procedure is followed." *Pye v. United*

25   *States*, 269 F.3d 459, 471 n.7 (4th Cir. 2001). Rather, if the plaintiffs can "demonstrate a causal

26   relationship between the final agency action and the alleged injuries," the court will "assume[ ]

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1  the causal relationship between the procedural defect and the final agency action." *Ctr. for Law*
2  *& Educ. v. U.S. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005). Here, Plaintiffs allege
3  procedural injuries based on the continuation regulation subsections that bind Defendants, not
4  Plaintiffs, the notice-and-comment statutes. Compl. ¶¶ 95–129.

5        Plaintiff States have sufficiently alleged facts to establish standing from injury not only
6  to state entity grantees whose grants were discontinued, but also to other state interests. "[W]hen
7  standing is challenged on the basis of the pleadings, [courts] 'accept as true all material
8  allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'"
9  *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 501
10  (1975). For a motion to dismiss, courts "presume that general allegations embrace those specific
11  facts that are necessary to support the claim." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094,
12  1100 (9th Cir. 2024) (quoting *Lujan*, 504 U.S. at 561).

13        As an initial matter, Plaintiff States have standing as recipients of discontinued grants.
14  Plaintiffs' Complaint alleges that Program grants funded partnerships between institutes of
15  higher education and high-need school districts to place graduate students in these school
16  districts; and funded state education agencies and local education agencies with demonstrated
17  need, allowing them to hire mental health service providers. Compl. ¶¶ 2, 58, 63, 65. It alleges
18  that Defendants *en masse* discontinued grants for "Plaintiff grantees, including state education
19  agencies, local education agencies, and institutes of higher education." Compl. ¶ 7. It provided
20  examples, including state institutes of higher education (the University of Washington),
21  Compl. ¶¶ 74–77; state education agencies (Michigan Department of Education), Compl. ¶ 78;
22  and local education agencies (Madera County Office of Education), Compl. ¶ 89. It describes
23  how Defendants' Non-Continuation Decision harmed Plaintiff grantees and would further harm
24  them if Defendants are not enjoined. Compl. ¶¶ 15–16, 86–94. These harms conferred standing.
25  *See Thakur*, 2025 WL 1734471, at *21; *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019)
26  ("los[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    Article III"). By setting aside the Non-Continuation Decision and providing declaratory relief

2    regarding Plaintiffs' rights under the continuation decision, Plaintiffs sought a fair process that

3    would more than likely result in Defendants granting Plaintiffs' continuation awards.

4    Compl. ¶¶ 50–57 (alleging lawful process), 69–79 (alleging grantees were meeting performance

5    expectations), Prayer for Relief at pp. 44–45. Therefore, Plaintiffs sufficiently alleged standing

6    for Plaintiff State grantees.

7       Additionally, the Complaint alleges harm to state fiscal interests given state education

8    and public health mandates, as protected by procedural and substantive rights. *See, e.g.*,

9    Compl. ¶¶ 1–2, 15–16, 50–57, 69–79, 85–87, 94. Plaintiffs described the loss of mental health

10    services critical to students' well-being, safety, and academic success as a result of Defendants'

11    Non-Continuation Decision. Compl. ¶¶ 1–2. Plaintiffs explained that these grants addressed a

12    shortage of school-based mental health service providers in low-income schools by training new

13    providers. Compl. ¶ 2. And Plaintiffs alleged that without these grants, children would go

14    without mental health services critical to their academic success. Compl. ¶¶ 5, 74 (e.g.,

15    Washington state audit detailing "a significant lack of school mental health providers"), 85

16    (citing Independent School Management, Understanding the Impact of Mental Health on

17    Academic Performance (Feb. 12, 2023), https://isminc.com/advisory/publications/the-

18    source/understanding-impact-mental-health-academic-performance).[2] Plaintiffs also alleged

19    harms to States' mental healthcare systems from the continued shortage in providers.

20    Compl. ¶¶ 16, 87, 94. Because the Programs served high-need school districts, stoppage of these

21    federal funds means that students would have to turn to community mental health services—

22    taxing Plaintiffs' already strained mental health care system—amidst an unprecedented mental

23    health crisis for our youth. Compl. ¶¶ 85–86, 94.

24       States Legislatures, such as Washington, have officially recognized that "students' unmet

25    mental health needs pose barriers to learning and development, and ultimately student success

26

---

[2] Review of this document is permissible under *Tellabs, Inc.*, 551 U.S. at 322.

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    in school." 2018 Wash. Sess. Laws, ch. 200, § 1, 1. As a result, they have mandated professional

2    collaboration between school-based mental health service providers and community mental

3    health centers in certain school districts. Wash. Rev. Code § 28A.320.290. And in California, a

4    threat to the operation of local educational agencies is a threat to the State's proprietary interests.

5    *See Butt v. California*, 4 Cal.4th 668, 680 (1992). "Since its admission to the Union, California

6    has assumed specific responsibility for a statewide public education system open on equal terms

7    to all." *Id.* Given these mandates, loss of school-based mental health service providers means

8    that the Plaintiff States would need to come up with the funds to provide these services once the

9    Programs have ended. This fiscal harm is a classic pecuniary state interest that gives Plaintiff

10   States standing to assert both their substantive and procedural injuries. *See Biden*, 600 U.S. at

11   490 (pecuniary harm to state instrumentality gives state standing); *State of Tennessee v. Dep't of

12   Educ.*, 104 F.4th 577, 596–97 (6th Cir. 2024) (harm to state's provision of services gives states

13   standing for procedural rights injury).

14       The Non-Continuation Decision serves as a basis for all six causes of action.

15   Compl. ¶¶ 95–159. All of these harms would likely be resolved by the relief sought by Plaintiffs,

16   offering grantees in Plaintiff States a fair process based on information relevant to their

17   performance and, therefore, a fair chance at continuing to provide critical mental health services

18   to students and train new school-based mental health providers within Plaintiff States.

19   Compl. ¶¶ 50–57 (alleging lawful process involved review of performance), 69–79 (alleging

20   grantees met performance expectations), Prayer for Relief at pp. 44–45. Therefore, Plaintiffs

21   sufficiently alleged standing for Plaintiff States.[3]

22       Defendants' Motion to Dismiss suggests that Plaintiff States represent all grantees within

23   their States but do not sufficiently allege that any State has standing to represent the interests of

---

[3] Defendants attack a few paragraphs from the introduction alleging harm to Plaintiffs as "conclusory" and "hyperbolic." Dkt. # 161 at p. 7 (citing Compl. ¶¶ 15–16). Allegations are considered conclusory when they merely recite the elements of a claim. *Ashcroft*, 556 U.S. at 681. Plaintiffs' introductory paragraphs do more than that, but also these paragraphs are later supported by an entire section dedicated to describing harm to Plaintiffs—paragraphs completely ignored by Defendants. *See* Dkt. # 161; Compl. ¶¶ 85–94.

third parties that are not before the Court. Dkt. # 161 at pp. 2, 8. However, contrary to Defendants' unsupported assertions, States are not suing in a third-party *parens patriae* capacity based on alleged injuries "to an identifiable group of individual residents." *Washington v. FDA*, 108 F.4th 1163, 1177 (9th Cir. 2024) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982)). Those allegations are not there precisely because Plaintiffs States do not purport to represent all grantees within our respective states. This case can thus be distinguished from *Haaland v. Brackeen*, 599 U.S. 255 (2023), cited by Defendants. In *Haaland*, the State of Texas did not challenge the Indian Child Welfare Act (ICWA) through the APA, or any other statute that conferred standing on any interested parties. Rather Texas' claim was strictly a constitutional one, under the Equal Protection Clause. 599 U.S. at 294–95. As Texas' Equal Protection rights were not violated, its only source of standing was the inapplicable *parens patriae* doctrine. *Id.* Because Plaintiff States are interested parties under the APA, there is no need to invoke *parens patriae*. Rather, as shown above, Plaintiff States represent their own interests, as well as those of State grantees, and it is in the States' interest to obtain complete relief by obtaining statewide injunctive relief.

### 3.    Plaintiffs' claims fall within the zone of interests

In addition to Article III standing, Plaintiffs satisfy their "not … especially demanding" burden, *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987), of demonstrating that the "interest[s] sought to be protected by the complainant [are] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question," *Bennett*, 520 U.S. at 163 (quoting *Ass'n of Data Processing Serv. Orgs.* 397 U.S. at 153). Courts apply this test "in keeping with Congress's 'evident intent' when enacting the APA 'to make agency action presumptively reviewable'" and "do not require any 'indication of congressional purpose to benefit the would-be plaintiff.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clarke*, 479 U.S. 399–400). The word "arguably" in the test indicates that the benefit of any doubt goes to the plaintiff. *Id.* The test forecloses suit

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

only when a plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*

Here, Plaintiffs' suit satisfies this standard because the States have a clear interest in the Department's financial assistance programs and the governing regulatory and statutory schemes that protect recipients, as they themselves are recipients and these grants directly impact the health, safety, and quality of education for the students within Plaintiff States. Compl. ¶¶ 1–2, 5, 58, 63, 79, 85. As such, the reliability of continued funding affects Plaintiff States' ability to forecast educational funding needs. For example, the States were a source of cost-sharing funds required for SBMH grants. Compl. ¶ 44; 85 Fed. Reg. 32025, 32026–27 (May 28, 2020) (cost-sharing source including state funds).

Moreover, through their own regulations, Defendants have recognized States' interests in the fair and lawful administration of these funds. The Department allows States to review proposed federal financial assistance programs during the program planning cycle and provide input during the grant selection process. *See* 34 C.F.R. §§ 79.1(b), 79.4(a)–(b), 79.8(b)(2)[4]; 31 U.S.C. § 6506(d) (requiring federal agencies to consider state objectives concerning economic development, human resources development, and the general improvement of living environments).[5] Previously, when the Department announced new Program grant competitions, States were given an opportunity to review and give feedback on their state applicants. *See, e.g.*, 89 Fed. Reg. 15173, 15178 (Mar. 1, 2024) (addressing intergovernmental review); 34 C.F.R. § 79.8(b)(2). Therefore, as recognized stakeholders, States are easily, *arguably* affected by Defendants' failure to follow the procedural requirements ensuring a fair continuation process

---

[4] 34 C.F.R. § 79.8(b)(1) refers to "continuation award applications," but the Department did away with applications for this process in 1994. *See* 59 Fed. Reg. 30258, 30261 (June 10, 1994).

[5] These regulations and statutes implement Executive Order 12372, "Intergovernmental Review of Federal Programs," which the Regan Administration issued with the desire to "foster the intergovernmental partnership and strengthen federalism by relying on State and local processes for the coordination and review of proposed Federal financial assistance and direct Federal development." 47 Fed. Reg. 30959 (July 14, 1982).

1   for awards that are selected, including reservation of Defendants' application of new priorities

2   to new grants after they have been published. *See* 34 C.F.R. §§ 75.253 (b)–(c); 20 U.S.C.

3   §§ 1221e-4, 1232. The Plaintiff States therefore fall within the zone of interests that these

4   regulations and statutes were designed to protect. *Match-E-Be-Nash-She-Wish Band of*

5   *Pottawatomi Indians,* 567 U.S. at 227–28.

6   **B.      The Court May Find Plaintiff States' Standing Based on One Plaintiff**

7           For all six causes of action, Plaintiff States have established standing based on the State

8   of Washington, as Washington's agency, the University of Washington, had a discontinued

9   grant. In cases involving multiple parties, especially cases seeking injunctive or declaratory

10  relief, courts do not require each plaintiff to demonstrate standing for each claim pressed or form

11  of relief sought; instead, courts check to make sure that every claim pressed or form of relief

12  sought is supported by at least one litigant with constitutional standing. *See Nat'l Ass'n of*

13  *Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("[I]n

14  an injunctive case this court need not address standing of each plaintiff if it concludes that one

15  plaintiff has standing."); *Maryland*, 2025 WL 1585051, at *17 ("When there are multiple

16  plaintiffs, the Court need only determine that there is at least one plaintiff with standing for a

17  particular claim to consider the claim."); *Sch. Dist. of Kansas City v. Missouri*, 460 F. Supp. 421,

18  437 (W.D. Mo. 1978) (contrasting with plaintiffs seeking money damages); 15 James Wm.

19  Moore et al., *Moore's Federal Practice* § 101.23 (3d ed. 2017) (same). Here, the one-plaintiff

20  rule for standing applies, because Plaintiffs seek prospective relief, not monetary damages. *See*

21  Compl., Prayer for Relief at pp. 44–45; *Camp v. Pitts*, 411 U.S. 138, 143 (1973) ("If [the agency's

22  action] is not sustainable on the administrative record made, then the [agency's] decision must

23  be vacated.").

24          The State of Washington, a party to this lawsuit and a discontinued grantee through its

25  agency, the University of Washington, satisfies this rule. Defendants have already conceded that

26  the University of Washington is a component of the government of Plaintiff State of Washington.

18

1    *See* Dkt. # 147 at p. 5 (recognizing University of Washington is a state entity). And Plaintiffs

2    allege the University of Washington has been injured by the discontinuation of its grant. Compl.

3    ¶¶ 74–77 (describing University of Washington grant), 87 (describing harm to graduate school

4    programs). These injuries stem from Defendants' unlawful actions that serve as the bases for

5    Plaintiff States' six causes of action and the relief requested would address these harms. Compl.

6    at pp. 30–45.

7        Defendants complain that Plaintiffs did not allege that relationship. Dkt. # 161 at

8    pp. 2, 8. But this is incorrect. When Plaintiffs alleged that "Plaintiffs' grantees[] include[ed] state

9    education agencies, local education agencies, and institutes of higher education," Compl. ¶ 7,

10   Plaintiffs through the possessive use of "Plaintiffs'" alleged that relationship. Also, when

11   Plaintiffs allege harm to "Plaintiff educational agencies" or "Plaintiff institutes of higher

12   education," Compl. ¶ 16. Plaintiffs are again describing Plaintiff sub-components or

13   instrumentalities that are grantees.[6] States may bring actions on behalf of themselves or their

14   instrumentalities. *See Dep't of Educ.*, 104 F.4th at 588, 590 ("[F]or 70 years a state has been able

15   to assert Article III standing via injuries to a state university—the state's 'agency in the

16   educational field.'"); *see also Biden*, 600 U.S. at 489–93 (2023) (holding state had standing

17   where government harmed a state public corporation, a state instrumentality); *Arkansas v. Texas*,

18   346 U. S. 368, 371 (1953) (holding state protects its own interests when harm is to the university,

19   a state instrumentality); *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam)

20   (Washington had standing based on injuries to its public universities—a branch of the State

21   under state law) (citing *Hontz*, 714 P.2d at 1180).

22   _____

23       [6] *See, e.g.*, *Hontz v. Washington*, 714 P.2d 1176, 1180 (Wash. 1986) (University of Washington is a state agency); *McNamara v. Honeyman*, 546 N.E.2d 139, 142 (Mass. 1989) ("The university [of Massachusetts] is an agency of the State, and not a separate entity."); Md. Code Ann., Educ. § 12-102(a) (2018) (state universities are state instrumentalities); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775–76 (6th Cir. 2015) (state universities are arms of the state); N.Y. Educ. L. § 352 (2021) (State University of New York established within the state's education department); *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007) (county offices of education and school districts are arms of the state in California); *Watts v. Gateway Pub. Schs.*, No. 24-cv-09417-LB, 2025 WL 1827897, at *4 (N.D. Cal. July 2, 2025) (charter schools are arms of the state in California).

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

**C.    Plaintiff States Are Real Parties In Interest for Their Claims**

Defendants' argument that individual grantees, not the Plaintiff States, are the real parties in interest once again relies on their misunderstanding of APA claims. Dkt. # 161 at pp. 8–10. "In order to apply Rule 17(a)(1) properly, it is necessary to identify the law that created the substantive right being asserted by plaintiff." 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.). As Wright & Miller explains, "***anyone*** possessing the right to enforce a particular claim is a real party in interest." *Id*. (emphasis added). For instance, a third-party beneficiary could bring an action based on its own enforceable contract right, and bailors can bring suit even though Rule 17 lists the bailee as the real party in interest. *Id*. At least one circuit court has rejected a real party in interest objection where it concluded the plaintiff, despite not being the grant applicant, had standing to challenge a federal agency's denial of the grant under the APA on her own behalf. *See Apter*, 510 F.2d at 353–54.

Defendants do not dispute that the Complaint properly alleges that the Attorneys General are authorized to pursue legal actions on behalf of their states. *See* Dkt. # 161 at p. 9 (citing Compl. ¶¶ 21–36). But as just explained, Plaintiff States have their own substantive right to challenge the Non-Continuation Decision under the APA and the U.S. Constitution, both as sovereigns and as discontinued state entity grantees. *See supra* § IV.A. Plaintiff States are not representing private grantees and do not purport to do so. Instead, Plaintiff States seek statewide injunctive relief on each State's own behalf, and this relief may (and must) be extended to non-party grantees within Plaintiff States in order to "offer complete relief to the plaintiffs." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). "There is no general requirement that an injunction affect only the parties in the suit." *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987) (citing *Evans v. Harnett Cnty. Bd. Of Educ.*, 684 F.2d 304, 306 (4th Cir. 1982)).

Defendants raise the Board of Education for the Silver Consolidated Schools as an example of a party that is improperly before this Court. Dkt. # 161 at p. 3 n.1. In support, it cites to Plaintiffs' Prayer for Relief, seeking an injunction for grantees residing in Plaintiff States. *Id.*

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1    (citing Compl. at p. 44). However, the Board of Education for Silver Consolidated Schools is

2    not a party before this Court.[7] New Mexico, alleged its own state interests, *see supra* § IV.A.2.

3    And as a party before this Court, it has a right to complete relief. *CASA*, 606 U.S. at 852; *see*

4    *Washington v. Trump*, 145 F.4th 1013, 1038–39 (9th Cir. 2025). Plaintiff States possess this right

5    independent of individual non-state grantees that have litigated their own interests.

6        Here too, Defendants' arguments that States are not real parties in interest cannot be

7    squared with Supreme Court precedent. In *Arkansas v. Texas*, for example, Arkansas brought a

8    suit against Texas, alleging Texas had wrongfully interfered with a contract between the

9    University of Arkansas and a Texas charity. 346 U.S. at 370. Similar to Defendants here, Texas

10   argued that the harm was to the university and Arkansas could not sue in its own name. The

11   Court disagreed with Texas, concluding Arkansas was the real party in interest because the

12   university was a state instrumentality, and thus "any injury under the contract to the University

13   [was] an injury to Arkansas." *Id.* at 371. *See also Biden*, 600 U.S. at 493 (rejecting argument

14   "that because [a Missouri state instrumentality] can sue on its own behalf, it—not Missouri—

15   must be the one to sue"). Defendants' argument that Plaintiffs States are not real parties in

16   interest lack merit.

17   **D.    The Tucker Act Does Not Bar This Court's Jurisdiction Over Plaintiffs' Claims**

18       The APA waives sovereign immunity for suits "seeking relief other than money

19   damages" against a federal agency, so long as no other statute "expressly or impliedly forbids

20   the relief which is sought." 5 U.S.C. § 702. As to the APA claims, Defendants do not argue that

21   Plaintiffs seek "money damages" under 5 U.S.C. § 702, *see* Dkt. # 161. Instead, Defendants rely

22   on the Tucker Act, 28 U.S.C. § 1491(a)(1), which gives the Court of Federal Claims jurisdiction

23   over certain claims for damages based on contracts with the United States. Contrary to

---

[7] In New Mexico, school districts are not state instrumentalities, but its local education agencies, education
cooperatives, are a part of the state's education department. *See Daddow v. Carlsbad Mun. School Dist.*, 898 P.2d
1235, 1243–44 (N.M.1995) (holding school districts are not state instrumentalities in New Mexico), *but see* N.M.
Stat. Ann. § 22-2B-3(A) (2009) ("Cooperatives [like the Central Regional Educational Cooperative] shall be
deemed individual state agencies administratively attached to the [Public Education] department."); *cf.* Dkt. # 91.

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    Defendants' arguments, the Tucker Act does not expressly or impliedly forbid the relief that

2    Plaintiffs seek. Plaintiffs' claims are based on statutory, regulatory, and constitutional violations,

3    not contractual rights, and they seek declaratory and injunctive relief. *See supra* § II.B. And the

4    constitutional and ultra vires claims and demand for declaratory relief only underscore why this

5    Court has jurisdiction. *Id.* Indeed, the logical conclusion of Defendants' argument is that neither

6    a federal district court nor the Court of Federal Claims can set aside or enjoin the government's

7    unlawful actions here, which would create an intolerable jurisdictional void.

8        In determining whether claims belong in the Court of Federal Claims, the Ninth Circuit

9    has identified as central the question whether a case is essentially a contract dispute. *North Star*

10   *Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994). In so doing, the Ninth Circuit has looked

11   at "(1) 'the source of the rights upon which the plaintiff bases its claims' and (2) 'the type of

12   relief sought (or appropriate).'" *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017,

13   1026 (9th Cir. 2023) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). In

14   the Ninth Circuit, courts review the complaint when making this determination and reject

15   consideration of contractual defenses. *Id.* ("The Tucker Act does not bar an APA action if the

16   plaintiff's rights and remedies, as alleged, are noncontractual—even if it is inevitable that the

17   government will raise a contract provision as a defense."). However, where a court orders the

18   government to pay grantees pursuant to a grant, APA claims and remedies will be considered

19   contractual remedies for contractual claims. *See NIH v. Am. Pub. Health Ass'n*, No. 25A103,

20   2025 WL 2415669, at *1 (U.S. Aug. 21, 2025); *Dep't of Educ. v. California*, 604 U.S. 650,

21   650–51 (2025). Plaintiff States bear the burden to establish jurisdiction in district court, but once

22   jurisdiction is established, Defendants bear the burden of proving its affirmative defense—that

23   the case belongs in the Court of Federal Claims instead. *See Cody v. Cox*, 509 F.3d 606, 610

24   (D.C. Cir. 2007); *cf. Pacito v. Trump*, 772 F. Supp. 3d 1204, 1215 (W.D. Wash. 2025)

25   (reviewing defendants' failure to show a cooperative agreement was a contract).

26

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1    Here, consideration of these two factors—the source of the right and the relief

2    requested—makes clear this is not a breach of contract case in disguise. The Complaint makes

3    no mention of any contract term that would need construal or enforcement by this Court.

4    *See generally* Complaint. Plaintiffs seek injunctive, declaratory, and prospective relief based on

5    statutes, regulations, and the Constitution. Compl. at pp. 30–45. Plaintiffs do not seek an order

6    requiring Defendants pay pursuant to their grants. Compl., Prayer for Relief at pp. 44–45. Indeed,

7    Defendants have already conceded that Plaintiffs only seek prospective relief.

8    Hrg. Tr. 32:25–33:2 (Sept. 5, 2025). This should dispose of the issue. *See NIH*, 2025 WL

9    2415669, at **2–3 (Barrett, J., concurring); *see also California*, 604 U.S. at 651; *Bowen v.*

10   *Massachusetts*, 487 U.S. 879, 905 (1988) (approving district court jurisdiction over claims

11   seeking prospective relief). Under *NIH*, where there is no court ordering the government to pay

12   up, Plaintiff States' APA rights and remedies should be respected and the Court should deny

13   Defendants' motion to dismiss based on the Tucker Act. And without contractual claims, this

14   Court should retain Plaintiffs' constitutional and ultra vires claims as well. *Contra* Dkt. # 161 at

15   pp. 18–19.

16   Defendants erroneously change the facts or look outside of the Complaint to support their

17   argument. For a facial challenge, the Court must accept the plaintiff's allegations as true and

18   draw all reasonable inferences in the plaintiff's favor. *See Leite v. Crane Co.*, 749 F.3d 1117,

19   1121 (9th Cir. 2014). Instead of acknowledging that they discontinued Plaintiffs' grants, as

20   alleged, Compl. ¶ 80, Defendants continue to characterize the discontinuances as grant

21   terminations, *see* Dkt. # 161 at p. 2 ("Plaintiffs . . . bring this action in an effort to invalidate the

22   Department's termination of certain contractual grant agreements."). But Plaintiffs' Complaint

23   does not support this factual assertion. Defendants contort this material fact, because otherwise

24   their Tucker Act defense fails. Unlike grant terminations, grant discontinuances do not involve

25   a contractual breach of the obligation to pay for the obvious reason that grantees are still getting

26   paid. Compl. ¶ 80. Vacatur of the Non-Continuation Decision requires Defendants to revisit the

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

grant continuation determination for the affected grants. There would be an intervening agency action that, if the proper continuation requirements are satisfied, would provide money; not vacatur (or an APA § 705 stay). Given this material distinction, Defendants citation of grant termination cases should not persuade this Court that Plaintiffs' claims belong in the Court of Federal Claims.

Also, Plaintiffs' Complaint does not support Defendants' Tucker Act assertions that Plaintiffs seek to enforce contractual rights and remedies. *See, e.g.*, Dkt. # 161 at p. 18 n.12 (arguing that Plaintiffs seek an "order to compel the Department to continue to make payments" without citation). Defendants' argument that Plaintiffs seek specific performance of a contractual agreement falls short because Defendants have not established that the financial assistance grants are contracts and fail to identify a contractual term that Plaintiffs seek to enforce. Instead, Defendants looks outside of the Complaint, citing terms from inactive 2023 grants. *See* Dkt. # 161 at p. 13 (citing 2023 grants). But even active grants do not set forth terms similar to the procedural requirements under 34 C.F.R. § 75.253(b)–(c). *See, e.g.*, Dkt. # 102-3 at pp. 5–6. Plaintiffs must look to regulations, statutes and the U.S. Constitution to get relief. Where Plaintiffs' Complaint is devoid of contractual claims and remedies, the authority Defendants rely on does not assist Defendants at the motion to dismiss stage, where the Court is confined to the allegations in the Complaint.

The Tucker Act has no place here.

## V.    CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss, conclude that it has jurisdiction to hear Plaintiffs' claims and reach Plaintiffs' Motion for Preliminary Injunction.

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1    DATED this 23rd day of September 2025.

2                                                    I certify that this memorandum contains 8367
                                                     words in compliance with Local Civil Rules.
3
                                                     NICHOLAS W. BROWN
4                                                    Attorney General of Washington

5                                                    _/s/ Ellen Range_
                                                     ELLEN RANGE, WSBA #51334
6                                                    JENNIFER K. CHUNG, WSBA #51583
                                                     LUCY WOLF, WSBA #59028
7                                                    Assistant Attorneys General
                                                     CYNTHIA ALEXANDER, WSBA #46019
8                                                    Deputy Solicitor General
                                                     Complex Litigation Division
9                                                    Washington State Office of the Attorney
                                                     General
10                                                   800 Fifth Avenue, Suite 2000
                                                     Seattle, WA 98104-3188
11                                                   206-464-7744
                                                     Ellen.Range@atg.wa.gov
12                                                   Jennifer.Chung@atg.wa.gov
                                                     Lucy.Wolf@atg.wa.gov
13                                                   Cynthia.Alexander@atg.wa.gov

14                                                   _Attorneys for State of Washington_

15

16  ROB BONTA                                       KATHLEEN JENNINGS
    Attorney General of California                  Attorney General of Delaware
17
    _/s/ Crystal Adams_                             _/s/ Vanessa L. Kassab_
18  CRYSTAL ADAMS*                                  IAN R. LISTON*
    Deputy Attorney General                         Director of Impact Litigation
19  NELI PALMA*                                     JENNIFER-KATE AARONSON*
    Senior Assistant Attorney General               VANESSA L. KASSAB*
20  KATHLEEN BOERGERS*                              Deputy Attorneys General
    Supervising Deputy Attorney General             Delaware Department of Justice
21  KATHERINE MILTON*                               820 N. French Street
    Deputy Attorney General                         Wilmington, DE 19801
22  1300 I Street                                   302-683-8899
    Sacramento, CA 95814                            Vanessa.Kassab@delaware.gov
23  916-210-7522                                    Jennifer.Aaronson@delaware.gov
    Crystal.Adams@doj.ca.gov                        Ian.Liston@delaware.gov
24  Neli.Palma@doj.ca.gov
    Kathleen.Boergers@doj.ca.gov                    _Attorneys for State of Delaware_
25  Katherine.Milton@doj.ca.gov

26  _Attorneys for State of California_

WILLIAM TONG
Attorney General of Connecticut

*/s/ Andrew Ammirati*
ANDREW AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorney for State of Connecticut*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Michael Drezner*
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

*Attorney for State of Maryland*

KWAME RAOUL
Attorney General of Illinois

*/s/ Emily Hirsch*
EMILY HIRSCH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Emily.Hirsch@ilag.gov

*Attorney for State of Illinois*

AARON M. FREY
Attorney General of Maine

*/s/ Sarah A. Forster*
SARAH A. FORSTER*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

*Attorney for State of Maine*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS*
Chief State Trial Counsel
YAEL SHAVIT*
Chief, Consumer Protection Division
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2277
Katherine.Dirks@mass.gov
Yael.Shavit@mass.gov

*Counsel for Commonwealth of Massachusetts*

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

LETITIA JAMES
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Special Counsel for Federal Initiatives
MARK LADOV*
Special Counsel
28 Liberty Street
New York, NY 10005
212-416-8240
Rabia.Muqaddam@ag.ny.gov
Mark.Ladov@ag.ny.gov

*Attorneys for State of New York*


DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorney for People of Michigan*


DAN RAYFIELD
Attorney General of Oregon

*/s/ Coby Howell*
COBY HOWELL*
BRIAN SIMMONDS MARSHALL*
Senior Assistant Attorneys General
Trial Attorneys
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
971-673-1880
Coby.Howell@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov

*Attorneys for State of Oregon*


RAUL TORREZ
Attorney General of New Mexico

*/s/ Aletheia V.P. Allen*
ALETHEIA V.P. ALLEN*
Solicitor General
LAWRENCE M. MARCUS*
Assistant Solicitor General
New Mexico Department of Justice
201 Third St. NW, Suite 300
Albuquerque, NM 87102
505-527-2776
Aallen@nmdoj.gov
lmarcus@nmdoj.gov

*Attorneys for State of New Mexico*


AARON FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
702-486-3420
HStern@ag.nv.gov

*Attorney for State of Nevada*


PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Kyla Duffy*
KYLA DUFFY*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2809
Kduffy@riag.ri.gov

*Attorney for State of Rhode Island*

PLS.' RESP. TO DEFS.'
MOT. TO DISMISS
NO. 2:25-cv-01228-KKE

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1    JOSHUA L. KAUL
     Attorney General of Wisconsin
2
     */s/ Frances Reynolds Colbert*
3    FRANCES REYNOLDS COLBERT*
     Assistant Attorney General
4    Wisconsin Department of Justice
     Post Office Box 7857
5    Madison, Wisconsin 53707-7857
     608-266-9226
6    Frances.Colbert@wisdoj.gov

7    *Attorney for State of Wisconsin*

8    *Admitted pro hac vice*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26