1

Hon. Kymberly K. Evanson

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
9                          AT SEATTLE

10

11   STATE OF WASHINGTON, et al.,              CASE NO. C25-1228-KKE

12                        Plaintiffs,          **DEFENDANTS' REPLY IN SUPPORT
                                                OF MOTION TO DISMISS FOR LACK
13          v.                                  OF SUBJECT MATTER JURISDICTION
                                                AND FOR FAILURE TO STATE A
14                                              CLAIM**
     UNITED STATES DEPARTMENT OF
15   EDUCATION, et al.,                        (Note on motion calendar for:
                                                 October 9, 2025)
16                        Defendants.

17

18                            **INTRODUCTION**

19          In their opposition, the States argue that they are bringing claims *only* on their own behalf

20   and that they are the real parties in interest. But one would never know that from reading their

21   Complaint. The Complaint repeatedly conflates the interests of the States with the interests of the

22   Grantees and includes no allegation establishing that any of the Grantees are sub-components or

23   instrumentalities of the States. Other than a conclusory statement about potential "spillover

24   effects" to state mental health care systems, the States also fail to allege any facts showing harm

25   to state fiscal interests. The States cannot amend their defective complaint with arguments in

26   their brief asserting interests they have not pled, and the Court should reject their effort to do so

27   here.

28   DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR          UNITED STATES ATTORNEY
     LACK OF SUBJECT MATTER JURISDICTION AND                      5220 UNITED STATES COURTHOUSE
     FOR FAILURE TO STATE A CLAIM - 1                                    700 Stewart Street
     (Case No. C25-1228-KKE)                                       Seattle, Washington 98101-1271
                                                                        (206)-553-7970

Much of the States' opposition is devoted to arguing that any "person who is harmed by agency action can bring a claim under the APA." Dkt. 174 at 10. This argument fails because the Complaint neglects to sufficiently allege how the States are, in their words, "among the injured" (i.e., the concrete interests that make them interested parties under the APA). *Id.* at 10, 16. Instead, the Complaint recounts alleged future harm to the well-being of some of the States' citizens, which does not establish "a distinct interest of the [States] as a whole." *Washington v. U.S. FDA*, 108 F.4th 1163, 1178 (9th Cir. 2024). The States' argument that they are real parties in interest fails for the same reason; they have not sufficiently alleged their own injuries for Article III purposes.

The States' APA-standing argument also fails because it begs the jurisdictional question at the heart of this case. Despite how they seek to characterize it, the source of the rights upon which the States base their claims and the type of relief appropriate here require that this case proceed under the Tucker Act and mean that it cannot proceed under the APA.

## ARGUMENT

## THE STATES HAVE NOT ESTABLISHED STANDING

### A.  *The States have not alleged their own injuries*

The States argue that they have "sufficiently alleged facts to establish standing from injury not only to state entity grantees whose grants were discontinued, but also to other state interests." Dkt. 174 at 13. The Complaint belies those assertions. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To begin, the Complaint makes no attempt to distinguish between the States (as the only plaintiffs in this suit) and the Grantees. Instead, the Complaint repeatedly uses the term "Plaintiffs" in a manner that can only be interpreted to refer to the (non-party) Grantees. Consider, for example, this allegation: "Each year, the Department announced the priorities it used to guide its grant selection process for each of the Programs. Plaintiffs designed their projects based on that year's Program priorities and application criteria." Dkt. 1, ¶ 3. Other examples abound. *See, e.g.*, *id.*, ¶¶ 6, 11-14, 16, 67, 145.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 2
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    The States' argument that the "possessive use of 'Plaintiffs'" in one paragraph of the

2    Complaint was sufficient to allege that some Grantees are instrumentalities of the States is not

3    well taken. Dkt. 174 at 19. In the next breath the States argue that "when [they] allege[d] harm to

4    'Plaintiff educational agencies' or 'Plaintiff institutes of higher education,'" it somehow should

5    also be evident that they were "again describing Plaintiff [i.e., state] sub-components or

6    instrumentalities that are grantees," despite *not* using the possessive form. *Id.* But Federal Rule

7    of Civil Procedure 8(a) requires a "short and plain statement showing that the *pleader* is entitled

8    to relief" (emphasis added), and allegations that hinge on fleeting and inconsistent use of the

9    possessive form are anything but "plain."

10    Moreover, the cases the States cite do not help them, both because they cannot amend

11    their complaint via legal argument in their opposition, *see, e.g.*, *Schneider v. Cal. Dep't of Corr.*,

12    151 F.3d 1194, 1197 n.1 (9th Cir. 1998), and because the underlying complaints in those cases

13    included detailed factual allegations plainly outlining the relevant relationships. In *Biden v.*

14    *Nebraska*, 60 U.S. 477 (2023), for example, the complaint included 21 paragraphs alleging the

15    relationship between MOHELA and the State of Missouri, including a paragraph stating that

16    MOHELA "is a 'body politic and corporate' that is 'a public instrumentality and body corporate'

17    of the State of Missouri that performs 'an essential public function.' Mo. Rev. Stat. § 173.360."

18    *See* 2022 WL 4594457, ¶¶ 93-114 (Complaint) (E.D. Mo. Sept. 29, 2022).

19    The same is true for *Tennessee v. Department of Education*, 104 F.4th 577 (6th Cir.

20    2024), where Tennessee dedicated seven paragraphs to alleging how the state was subject to

21    Title VII and Title IX, to establishing the legal relationship between the state and its public and

22    private schools and postsecondary educational institutions "including public institutions of

23    higher learning," and to listing the amount of federal funding Tennessee would lose under the

24    regulations it challenged. *See* 2021 WL 3861204, ¶¶ 8-14 (Complaint) (E.D. Tenn. Aug. 30,

25    2021). Even the complaint in *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), alleged that

26    "The University of Washington ('UW') and Washington State University ('WSU') are the two

27    largest public universities in the State," and then alleged the many harms, pecuniary and

28    DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 3
(Case No. C25-1228-KKE)

otherwise, those state institutions would suffer under the challenged Executive Order. *See* 2017 WL 10774827, ¶¶ 35-46 (Third Amended Complaint) (W.D. Wash. Oct. 16, 2017). The *Trump* complaint shows that when Washington intends to assert the interests of its instrumentalities, it knows how to do so with more than the occasional and inconsistent use of an apostrophe.

The States' assertion that the "Complaint alleges harm to state fiscal interests given state education and public health mandates" fares no better. Dkt. 174 at 14. Those mandates are not alleged in the Complaint. The States cannot introduce new facts about state-law mandates in their opposition and then claim that "[g]iven these mandates, loss of school-based mental health service providers means that the Plaintiff States would need to come up with funds to provide these services once the Programs have ended." *Id.* at 15.[1] The States characterize this as "a classic pecuniary state interest" in the standing analysis but ignore that "the Supreme Court has specifically cautioned [courts] to be wary of theories of state standing that rely on the 'indirect effects' of federal policy on state revenue or state spending." *Washington v. FDA*, 108 F.4th at 1175 (citations omitted). Regardless, it is an interest that the States did not plead and thus cannot rely on now to save their Complaint.

The States suggest that they alleged fiscal harm by stating that a "spillover effect of students turning to community mental health services—to the extent they are available—will tax Plaintiffs' already-strained mental health care system" (Dkt. 1, ¶ 86). *See* Dkt. 175 at 14. But again, their own cited cases show that this conclusory statement is insufficient. It is also too speculative. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013).

The States again cite *Biden v. Nebraska* for the proposition that "pecuniary harm to state instrumentality gives state standing." Dkt. 174 at 15. But there, Missouri alleged far more than a speculative "spillover effect." The complaint alleged that MOHELA "services roughly $59 billion in federal direct loans representing over 2.7 million accounts" and that mass debt

---

[1] And, of course, state laws cannot be used to impose obligations on the Federal government. *Cf. Boeing v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) ("Under the Supremacy Clause, 'the activities of the Federal Government are free from regulation by any state.'" (quoting *Mayo v. United States*, 319 U.S. 441, 445 (1943))).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 4
(Case No. C25-1228-KKE)

1   cancellation would deprive MOHELA, among other things, of "asset[s] (the . . . loans

2   themselves) that it currently owns," "the ongoing interest payments that those loans generate,"

3   and "ongoing revenue it earns from servicing those loans." 2022 WL 4594457, ¶¶ 96, 105-106,

4   109. The States also rely on the statement that Tennessee's "'interest in continuing to provide

5   services' at public schools that separate programs and activities based on biological sex" is a

6   "'concrete interest[]' that the 'procedural requirements of notice and comment prior to

7   rulemaking . . . certainly protect.'" *Tennessee*, 104 F.4th at 596 (citation omitted). But Tennessee

8   alleged that its inability to provide services would be due to the halting of $1.5 billion in direct

9   federal funding to the Tennessee Department of Education and $88 million in federal funding to

10  "public higher educational institutions in Tennessee." 2021 WL 3861204, ¶ 14. Contrasted with

11  those quantified and certain pecuniary losses, the States' general assertion of some "spillover

12  effect" here is insufficient to establish a concrete fiscal interest that gives them standing.

13         The States' remaining asserted interests—e.g., the "well-being, safety, and academic

14  success" of students and the interests of graduate students who might be unable to afford their

15  graduate programs—"concern the well-being of individual citizens—not a distinct interest of the

16  state as a whole." *Washington v. FDA*, 108 F.4th at 1178. And the States expressly disclaim any

17  invocation of the *parens patriae* doctrine (Dkt. 174 at 16), so these interests cannot demonstrate

18  their standing, nor do they show how the States are real parties in interest for the claims in this

19  suit.

20              B.  *Procedural-rights claims still require the States to allege injuries sufficient*
21                  *for Article III standing*

22         The States argue that even if they are not parties to the grant agreements, they are

23  "aggrieved" and "interested parties under the APA" who seek redress for "violations of

24  procedural rights." Dkt. 174 at 11, 16. But the States still must show that they have Article III

25  standing—that is, an imminent injury to their concrete interests. The host of APA and

26  environmental cases they cite make this clear. For instance, the plaintiff in *Apter v. Richardson*

27  had standing to bring her APA claims because she "alleged sufficient economic and non-

28  DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
    LACK OF SUBJECT MATTER JURISDICTION AND
    FOR FAILURE TO STATE A CLAIM - 5
    (Case No. C25-1228-KKE)

1    economic harm to show injury in fact," including the denial of the "salary she would have

2    received as Program Director." 510 F.2d 351, 354 (9th Cir. 1975).

3         In *Washington v. Trump*, although it was not a direct recipient of the money appropriated

4    for the Bangor Project, Washington alleged it was injured by the President's diversion of those

5    funds to construct a border wall. 441 F. Supp. 3d 1101, 1113 (W.D. Wash. 2020). Washington

6    alleged it would suffer a total tax loss of "$2.6 million, with an additional loss of approximately

7    $880,000 in local taxes." *Id.* The loss of the Bangor Project was also "an independently sufficient

8    injury for purposes of Article III" because the project was being undertaken to "provide adequate

9    facilities to support the secure transit of the ballistic submarines" carrying "nuclear warheads"

10   through Washington's waters.[2] *Id.* at 1114. Similarly, the plaintiff broadcaster's injury was

11   sufficiently alleged in *Columbia Broadcasting System v. United States*, 316 U.S. 407, 423

12   (1942), because CBS alleged that its "affiliates are cancelling or threatening to cancel their

13   contracts in order to conform to" the FCC's new regulations. Ditto for the plaintiff law firm in

14   *Perkins Coie LLP v. U.S. Department of Justice*, 783 F. Supp. 3d 105, 146 (D.D.C. 2025).

15        None of the other cases that the States cite supports their claim of standing, either. In

16   each of them, either the sufficiency of the alleged injury to confer standing was not at issue, *see,*

17   *e.g.*, *Northwest Environmental Defense Center v. Bonneville Power Administration*, 477 F.3d

18   668, 679 (9th Cir. 2007), or else an injury sufficient for purposes of Article III was plainly

19   alleged, *see, e.g.*, *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094, 1100 (9th

20   Cir. 2024). In short, the "relaxed standards" (Dkt. 174 at 11) for alleged violations of procedural

21   rights do not relieve the States from their burden to plead an Article III injury.[3]

22   _____

[2] That injury was to the "quasi-sovereign interest" of Washington's residents in general, *id.* at 1115, rather than a
23   *parens patriae* interest in the well-being of individual citizens or groups of citizens. *See Washington v. FDA*, 108
     F.4th at 1177 (state has a quasi-sovereign interest in the health and welfare "of state residents generally, which may
24   be endangered by harms to the land or environment within a state's sovereign territory").

[3] Given this conclusion, the States' assertion that they have satisfied the "zone-of-interests" requirement for APA
25   standing is beside the point. "The 'zone-of-interests' requirement is a standing-like limitation on claims that can be
     brought under the APA," but "a person suing under the APA" still "must satisfy . . . Article III's standing
26   requirements." *Washington v. Trump*, 441 F. Supp. 3d at 1117 (citations omitted). The States' assertion is wrong in
     any event given that they omitted from their Complaint any allegations that they satisfy the zone-of-interests test
27   because, as they newly argue, "the reliability of continued funding affects Plaintiff States' ability to forecast
     educational funding needs." Dkt. 174 at 17.

28   DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR                                UNITED STATES ATTORNEY
     LACK OF SUBJECT MATTER JURISDICTION AND                                            5220 UNITED STATES COURTHOUSE
     FOR FAILURE TO STATE A CLAIM - 6                                                          700 Stewart Street
     (Case No. C25-1228-KKE)                                                             Seattle, Washington 98101-1271
                                                                                              (206)-553-7970

*C.  The States misapply the one-plaintiff rule*

The States cannot save their Complaint via their (mis)application of the one-plaintiff rule, which rests on the fallacy that there is *one* Non-Continuation Decision at issue here that affects every non-party Grantee in every State. On this basis, the States cite cases like *National Association of Optometrists & Opticians Lenscrafters, Inc., v. Brown*, 567 F.3d 521 (9th Cir. 2009), and argue that this action can go forward because in their view, at the very least, the Complaint alleged standing as to the University of Washington. Dkt. 174 at 18. But that is not right.

*Lenscrafters* considered whether *one* set of California laws regulating all licensed opticians violated the dormant Commerce Clause and should be enjoined. 567 F.3d at 522. Because the standing of at least one plaintiff was uncontested, and because the remedy sought was an injunction of the statutes and regulations, which would benefit all opticians in the state equally, the court did not need to address every plaintiff's standing. *Id.* at 523. The situation was similar in *Maryland v. Corporation for National and Community Service*, where *one* order removed all National Civilian Community Corps members from their posts at all plaintiff states' service projects. 785 F. Supp. 3d 68, 92 (D. Md. 2025). Only one plaintiff with standing was necessary to challenge that decision.

Here, though, the Department has not made *one* Non-Continuation Decision that affects every grant recipient in the plaintiff States. Rather, the Department has made individual decisions for each grant recipient, after individualized review. There is no legal basis to suggest that the University of Washington has standing to represent the interests of—that is, seek the rescission of a decision not to continue the grants issued to—a non-profit based in and operating in California, for example, or the education department of another state.

The error at the heart of the States' proposed application of the one-plaintiff rule is also evident from their arguments about complete relief. Dkt. 174 at 20. The University of Washington does not need the rescission of a non-continuation decision in California to obtain complete relief for *its* purported harms, or even purported harms to Washington as a whole. The

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM - 7
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

States say that they "seek statewide injunctive relief on each State's own behalf, and this relief may (and must) be extended to non-party grantees within Plaintiff States in order to offer 'complete relief to the plaintiffs.'" *Id.* (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)). Perhaps that would be true if each plaintiff State had sufficiently alleged its relationship to its resident grantees, the fiscal harm flowing to the state from the non-continuation decisions affecting resident grantees, the concrete interests harmed by the purported violation of its procedural rights, or something beyond *parens patriae* concerns. But the States have not done so. The Court should dismiss for lack of subject-matter jurisdiction.

## II.    SEPARATELY, THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION BECAUSE THE STATES' CLAIMS PRESENT ESSENTIALLY A CONTRACT DISPUTE

The Court also must dismiss because the Court of Federal Claims has exclusive jurisdiction over this action. The States agree that, in determining whether a case presents essentially a contract dispute governed by the Tucker Act, courts look to "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." Dkt. 174 at 22 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Despite acknowledging this test, the States fail to apply it.

### A.  *The only "rights" identified are rights to federal funding, and the sources of those alleged rights are the grant agreements*

The States assert that the sources of the alleged rights upon which they base their claims are "statutes, regulations, and the Constitution." Dkt. 174 at 23. But they argue only that the Department has *violated* these authorities. For instance, the States claim the Department violated "regulations addressing continuation funding for multi-year grant awards," and they allege numerous ways that the non-continuation of the Grantees' grants was arbitrary and capricious agency action. Dkt. 1, ¶¶ 100-05, 110. The States do not, by contrast, claim that these laws vest them with the *rights* that they seek to vindicate. Even if the Department violated certain laws (which it did not), that does not mean that it violated the States' rights. To determine the source of the right asserted, the States must identify *what* they allegedly have a right to.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 8
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    None of the laws the States cite provides a right to federal funding. Rather, "it is the

2 operative grant agreements which entitle any particular Plaintiff to receive federal funds."

3 *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025). The

4 States protest that the Department has "not established that the financial assistance grants are

5 contracts and fail[s] to identify a contractual term that Plaintiffs seek to enforce." Dkt. 174 at 24.

6 But the question is not whether the States seek to enforce a specific contract term. Rather, the

7 dispositive point is that they seek the continued enforcement of the Department's alleged

8 obligation to pay funds, and such an obligation can *only* come from the grant agreements. Unlike

9 in *Bowen v. Massachusetts*, 487 U.S. 879, 887 (1988), where the state sought to enforce a

10 provision of the Medicaid Act that required payment to participating states, no provision in the

11 Constitution, statutes, or regulations cited by the States requires the Department to pay funds to

12 the Grantees, only the grant agreements do that. *See Spectrum Leasing Corp. v. United States*,

13 764 F.2d 891, 894 (D.C. Cir. 1985) (other source of law "might impose procedural requirements

14 on the government having some impact on the contract[s]," but those laws "in no way create[]

15 the substantive right to the remedy" sought); *see also Nat'l Insts. of Health v. Am. Pub. Health

16 Ass'n*, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J, concurring in part).

17    Nor do the States have a free-floating right to direct the government to follow the law.

18 The APA itself cannot provide the relevant source of the rights asserted. *See El Rescate Legal

19 Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) ("Section 702 does

20 not create substantive rights."); *cf. NIH*, 145 S. Ct. at 2664 n.1 (Gorsuch, J., concurring in part)

21 (noting the dissent's "mistaken" suggestion "that individuals enjoy a free-floating 'right' under

22 the APA to ensure the government 'engage[s] in reasoned decisionmaking"). When assessing

23 whether a lawsuit may proceed under the APA or must proceed under the Tucker Act, courts ask

24 whether the rights being asserted derive from contracts *as opposed to some other source of

25 substantive law*—not the APA. If the APA itself supplied the relevant right, the entire inquiry

26 would be circular and meaningless. *See Megapulse*, 672 F.2d at 967 n.34 (citation omitted). The

27 States thus "cannot manufacture an APA claim by asking the court to declare that" the non-

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 9
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

continuation of funding "was an arbitrary or capricious act." *Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *2 (1st Cir. Nov. 12, 2020).

The States are also mistaken that the Department's argument that this case belongs in the Court of Federal Claims is an affirmative defense for which the Department bears the burden. The Tucker Act question is a jurisdictional one, not an affirmative defense, and the States must establish that this Court has jurisdiction to hear their claims.

In *Department of Education v. California*, 145 S. Ct. 966, 968 (2025), the Supreme Court recognized that the assertion that a claim against the government belongs in the Court of Federal Claims under the Tucker Act goes to the court's authority to decide the case. The Court said that "the Tucker Act grants the Court of Federal Claims *jurisdiction* over suits based on 'any express or implied contract with the United States.'" *Id.* (citing 28 U.S.C. § 1491(a)(1)) (emphasis added); *see also NIH*, 2025 WL 2415669, at *1. The States challenge the Department's decision not to continue grants, but because their claims arise—if at all—out of the grants themselves (*see infra*), their claims are a challenge to a decision on a grant that must be brought in the Court of Federal Claims.

### B. The States essentially seek the contractual remedy of specific performance

The States argue that they "do not seek an order requiring Defendants to pay pursuant to their grants." Dkt. 174 at 23. But this dispute is about whether the Department must continue grant agreements with Grantees. The States dismiss that notion as if continuing the grant agreements would amount to no more than an unintended and incidental byproduct of their *real* desire: "postponing," "barring implementation" of, and "vacating" the Department's non-continuation decisions, and requiring the Department to make "new continuation award decisions" in accordance with the States' view of the law. Dkt. 1 (Prayer for Relief). But the substance and effect of those requests—however phrased—would require the Department to keep paying the money due under the grant agreements.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 10
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

It remains genuinely unclear what type of relief the States would want—or have standing to seek—if not "to enforce a contractual obligation to pay money." *California*, 145 S. Ct. at 968 (cleaned up). The States claim that the Department's allegedly "unlawful actions have already caused and will cause immediate and devastating harm to Plaintiffs" through the loss of tens of millions of dollars of funding. Dkt. 174 at 4, 6-7 (describing loss of $98 million to grantees in California). The States' asserted injuries must correlate to the remedies being sought. If the remedies sought would not redress the injuries asserted, the States would not have standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek").

According to the States, "where there is no court ordering the government to pay up, [their] APA rights and remedies should be respected." Dkt. 174 at 23. But their repeated invocation of the APA does not advance the inquiry. To be sure, the Supreme Court has acknowledged that an APA claim "is not barred by the possibility that an order setting aside an agency's action may result in the disbursement of funds." *California*, 145 S. Ct. at 968 (cleaned up). Still, the Court found that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" the States request here. *Id.* (citation omitted). And this Court should look to the substance of the States' requested relief "irrespective of how it is packaged." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989).

Two final arguments advanced by the States also fail. First, the States say that "the logical conclusion of [the Department's] argument is that neither a federal district court nor the Court of Federal Claims can set aside or enjoin" the government's actions here, "which would create an intolerable jurisdictional void." Dkt. 174 at 22. Far from "intolerable," that is the *intended function* of Section 702 of the APA, which "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). There is no dispute that the Tucker Act impliedly forbids granting specific performance of contracts with the United

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 11
(Case No. C25-1228-KKE)

States. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023). The States therefore cannot go to federal district court to obtain indirectly the injunctive or declaratory relief the Court of Federal Claims could not provide directly. *See Consol. Edison Co. of N.Y., Inc. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2010).

Finally, it is unclear why the States attach importance to their view that the Department has "already conceded that [they] only seek prospective relief." Dkt. 174 at 23. Specific performance of a contract *is* prospective relief—i.e., an order requiring the Department to keep on performing the grants moving forward. And as just explained, *no court* has jurisdiction to order the prospective relief of specific performance against the government that the States seek.

## CONCLUSION

For the foregoing reasons, the Department requests that the Court grant the Department's motion and dismiss this action.

## CERTIFICATION

I certify that this memorandum contains 4179 words, in compliance with the Local Civil Rules.

DATED this 30th day of September 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Teal Luthy Miller*
TEAL LUTHY MILLER
BRIAN C. KIPNIS
Assistant United States Attorneys
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
Email: brian.kipnis@usdoj.gov

Attorneys for Defendants

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FOR FAILURE TO STATE A CLAIM - 12
(Case No. C25-1228-KKE)