1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

                Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

            Defendants.

NO. 2:25-cv-01228-KKE

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT

NOTED FOR HEARING:
DECEMBER 11, 2025, 1:00 PM

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 1

        A.    Defendants Awarded Mental Health Grants, and Grantees are Making
              Substantial Progress Towards Programmatic Goals .................................................. 2

        B.    To Implement the Department's New Grant Priorities Directive, Defendants
              Changed Their Approach to the Continuation Award Process, Discontinued
              Certain Program Grants, and Planned to Recompete the Funds ............................. 3

        C.    The Harmful Impact of Defendants' Non-Continuation Decision on Plaintiff
              States' Grant Recipients, Mental Healthcare System, and Education Systems ........ 6

              1.    Harm to Plaintiff State grantees .......................................................... 7

              2.    Harm to Plaintiff States' mental healthcare systems ......................................... 8

              3.    Harm to Plaintiff States' education systems ........................................ 9

III.    LEGAL STANDARD ............................................................................................... 10

IV.     ARGUMENT .......................................................................................................... 11

        A.    The Court Has Jurisdiction ............................................................................ 11

              1.    Washington establishes standing for Plaintiff States ...................................... 11

              2.    Plaintiffs' claims fall within the zone of interests ........................................... 12

              3.    The Non-Continuation Decision is a final agency action ............................... 13

        B.    The Non-Continuation Decision is Unlawful ................................................... 16

              1.    Defendants' Non-Continuation Decision was arbitrary and capricious ........... 16

                    a.    Defendants' policy change ........................................................ 16

                    b.    Defendants' discontinuances ........................................................ 17

              2.    Defendants' actions were contrary to law ..................................................... 20

                    a.    Defendants violated 34 C.F.R. § 75.253(b) ............................................. 21

                    b.    The Non-Continuation Decision violates the regulatory mandate that
                          Defendants give priority to continuation awards over new grants .......... 24

              3.    Defendants acted without observance of procedure required by law ............... 24

C. The Court Should Vacate the Non-Continuation Decision, Permanently Enjoin Defendants from Enforcing It Against Plaintiff States, and Issue a Declaratory Judgment ........................................................................... 25

1. The Court should vacate the Non-Continuation Decision ............................... 25

2. The Court should permanently enjoin Defendants from implementing or enforcing the Non-Continuation Decision against Plaintiff States ................. 27

   a. Defendants' Non-Continuation Decision inflicts irreparable harm upon Plaintiff States and their instrumentalities ...................................... 27

   b. The balance of the equities and the public interest weigh in Plaintiff States' favor .......................................................................................... 31

3. Plaintiffs are entitled to declaratory relief ........................................................ 31

V. CONCLUSION ............................................................................................................ 32

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) .................................................................................................. 13

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 26

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
  370 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................ 13, 14

*Amoco Prod. Co. v. Village of Gambell, AK*,
  80 U.S. 531 (1987) .................................................................................................... 27

*Aubin v. Bonta*,
  665 F. Supp. 3d 1097 (N.D. Cal. 2023) .................................................................... 31

*Battle v. FAA*,
  393 F.3d 1330 (D.C. Cir. 2005) ............................................................................... 20

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...................................................................................... 11, 12, 13

*Bilbrey by Bilbrey v. Brown*,
  738 F.2d 1462 (9th Cir. 1984) ............................................................................ 31, 32

*Bissonnette v. LePage Bakeries Park St., LLC*,
  601 U.S. 246 (2024) .................................................................................................. 22

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) .................................................................................... 26

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) .............................................................................. 29, 31

*California v. Bureau of Land Mgmt.*,
  286 F. Supp. 3d 1054 (N.D. Cal. 2018) .................................................................... 29

*Certain Named & Unnamed Non-Citizen Children & Their Parents v. Texas*,
  448 U.S. 1327 (1980) ................................................................................................ 29

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
  42 F.4th 1024 (9th Cir. 2022) ................................................................................... 22

*Clarke v. Sec. Indus. Ass'n*,
  479 U.S. 388 (1987) .................................................................................................. 12

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
  780 F. Supp. 3d 897 (N.D. Cal. 2025) ...................................................................... 28

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) ..................................................................................... 22

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ..................................................................................... 25

*Council for Opportunity in Educ. v. U.S. Dep't of Educ.*,
   No. 1:25-cv-03514-TSC, 2025 WL 2797678 (D.D.C. Sept. 30, 2025) ........... 14

*Ctr. for Biological Diversity v. Mattis*,
   868 F.3d 803 (9th Cir. 2017) ....................................................................... 12

*Darby v. Cisneros*,
   509 U.S. 137 (1993) ..................................................................................... 15

*Dickson v. Sec'y of Def.*,
   68 F.3d 1396 (D.C. Cir. 1995) ..................................................................... 18

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021) ...................................................................... 31

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ..................................................................................... 27

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ..................................................................................... 20

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ..................................................................................... 16

*FDA v. Wages & White Lion Invs.*,
   604 U.S. 542 (2025) ..................................................................................... 16

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ..................................................................................... 12

*Griffin v. HM Fla.-ORL, LLC*,
   144 S. Ct. 1 (2023) ....................................................................................... 25

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ..................................................................... 27

*Kern Cnty. Farm Bureau v. Allen*,
   450 F.3d 1072 (9th Cir. 2006) ..................................................................... 20

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) ................................................................................ 21, 22

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ......................................................................... 31

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................. 11

*Martin Luther King, Jr. Cnty. v. Turner*,
   785 F. Supp. 3d 863 (W.D. Wash. 2025) ................................................................ 28

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ................................................................................................. 13

*Michigan v. DeVos*,
   481 F. Supp. 3d 984 (N.D. Cal. 2020) ................................................................... 29

*Michigan v. EPA*,
   576 U.S. 743 (2015) ........................................................................................... 18, 20

*Mid-Atl. Equity Consortium v. U.S. Dep't Of Educ.*,
   --- F. Supp. 3d ---, No. 1:25-cv-1407-PLF,
   2025 WL 2158340 (D.D.C. July 30, 2025) ........................................................... 14

*Montana Wildlife Fed. v. Bernhadt*,
   No. 4:18-cv-00069-GF-BMM,2020 WL 2615631
   (D. Mont. May 22, 2020) *aff'd in part, rev'd in part* .......................................... 26

*Montana Wildlife Fed. v. Haaland*,
   127 F.4th 1 (9th Cir. 2025) ......................................................................... 25, 26, 27

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ........................................................................................... 18, 19

*Nat. Res. Def. Council v. Jewell*,
   749 F.3d 776 (9th Cir. 2014) ................................................................................. 11

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
   567 F.3d 521 (9th Cir. 2009) ................................................................................. 12

*National Mining Ass'n v. U.S. Army Corps of Eng'rs*,
   145 F.3d 1399 (D.C. Cir. 1998) ............................................................................ 25

*Natural Grocers v. Rollins*,
   ---F.4th---, No. 22-16770,
   2025 WL 3040145 (9th Cir. Oct. 31, 2025) ...................................................... 25, 26

*New York v. McMahon*,
   784 F. Supp. 3d 311 (D. Mass. 2025) ................................................................... 29

*Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*,
   817 F. Supp. 2d 1290 (D. Or. 2011) ..................................................................... 10

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
   18 F.3d 1468 (9th Cir.1994) .................................................................................. 10

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Occidental Eng'g Co. v. INS*,
  753 F.2d 766 (9th Cir.1985) ........................................................................... 10

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
  328 F. Supp. 3d 1133 (E.D. Wash. 2018).......................................................... 28

*Pollinator Stewardship Council Council v. EPA*,
  806 F.3d 520 (9th Cir. 2015) ........................................................................... 26

*Preminger v. Peake*,
  552 F.3d 757 (9th Cir. 2008) ........................................................................... 12

*S. Educ. Found. v. U.S. Dep't of Educ.*,
  784 F. Supp. 3d 50 (D.D.C. 2025).................................................................... 15

*Scholl v. Mnuchin*,
  494 F. Supp. 3d 661 (N.D. Cal. 2020).............................................................. 10

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947)......................................................................................... 18

*Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.*,
  841 F. Supp. 2d 349 (D.D.C. 2012).................................................................. 29

*Silvers v. Sony Pictures Ent., Inc.*,
  402 F.3d 881 (9th Cir. 2005) ........................................................................... 22

*Thakur v. Trump*,
  787 F. Supp. 3d 955 (N.D. Cal. 2025)........................................................ 18, 28

*Thompson v. Dep't Of Labor*,
  885 F.2d 551 (9th Cir. 1989) ........................................................................... 10

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ........................................................................... 27

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)......................................................................................... 25

*Tucson v. City of Seattle*,
  91 F.4th 1318 (9th Cir. 2024) .......................................................................... 11

*U.S. Dep't Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)............................................................................................. 17

*U.S. Dep't of Com. v. New York*,
  588 U.S. 752 (2019)......................................................................................... 18

*Utah v. Evans*,
  536 U.S. 452 (2002)......................................................................................... 12

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Valle del Sol Inc. v. Whiting,*
  732 F.3d 1006 (9th Cir. 2013) .......................................................................................... 28

*Washington v. Dep't Homeland Sec.,*
  614 F. Supp. 3d 863 (W.D. Wash. 2020) ........................................................................ 13

*Washington v. Trump,*
  145 F.4th 1013 (9th Cir. 2025) ....................................................................................... 11

*Washington v. U.S. Dep't of Com.,*
  No. 2:25-cv-1507-MJP,
  2025 WL 2978822 (W.D. Wash. Oct. 22, 2025) ...................................................... 19, 23

## Statutes

5 U.S.C. § 702 ....................................................................................................................... 32

5 U.S.C. § 703 ................................................................................................................. 27, 32

5 U.S.C. § 706(2) ................................................................................................................... 25

5 U.S.C. § 706(2)(A) ....................................................................................................... 16, 21

5 U.S.C. § 706(2)(D) ....................................................................................................... 24, 25

20 U.S.C. § 1221e-4 ......................................................................................................... 13, 24

20 U.S.C. § 1228a(b) ............................................................................................................. 19

20 U.S.C. § 1232 ................................................................................................................... 13

20 U.S.C. § 1232(a)(2) .......................................................................................................... 24

20 U.S.C. § 1232(d) .............................................................................................................. 24

20 U.S.C. § 1415(e) .............................................................................................................. 30

20 U.S.C. § 1415(f) .............................................................................................................. 30

20 U.S.C. § 1415(g) .............................................................................................................. 30

20 U.S.C. § 1415(h) .............................................................................................................. 30

20 U.S.C. § 1415(i) ............................................................................................................... 30

20 U.S.C. § 1415(j) ............................................................................................................... 30

28 U.S.C. § 2201(a) .............................................................................................................. 32

31 U.S.C. § 6506(d) .............................................................................................................. 13

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**Regulations**

2  34 C.F.R. § 75.253(a)(5) ....................................................................................... 21

3  34 C.F.R. § 75.253(b) .................................................................................... passim

4  34 C.F.R. § 75.253(c) .................................................................................... passim

5  34 C.F.R. § 79.1(b) ............................................................................................. 13

6  34 C.F.R. § 79.4(a) ............................................................................................. 13

7  34 C.F.R. § 79.4(b) ............................................................................................. 13

8  34 C.F.R. § 79.8(b)(2) ......................................................................................... 13

9  34 C.F.R. § 300.101 ............................................................................................ 30

10  34 C.F.R. § 300.151 ............................................................................................ 30

11  34 C.F.R. § 300.152 ............................................................................................ 30

12  34 C.F.R. § 300.153 ............................................................................................ 30

13  34 C.F.R. § 300.506 ............................................................................................ 30

14  34 C.F.R. § 300.507 ............................................................................................ 30

15  34 C.F.R. § 300.508 ............................................................................................ 30

16  34 C.F.R. § 300.509 ............................................................................................ 30

17  34 C.F.R. § 300.510 ............................................................................................ 30

18  34 C.F.R. § 300.511 ............................................................................................ 30

19  34 C.F.R. § 300.512 ............................................................................................ 30

20  34 C.F.R. § 300.513 ............................................................................................ 30

21  34 C.F.R. § 300.514 ............................................................................................ 30

22  34 C.F.R. § 300.515 ............................................................................................ 30

23  34 C.F.R. § 300.516 ............................................................................................ 30

24  34 C.F.R. § 300.517 ............................................................................................ 30

25  34 C.F.R. § 300.518 ............................................................................................ 30

26  45 Fed. Reg. 22552 (April 3, 1980) .................................................................... 24

59 Fed. Reg. 30258 (June 10, 1994) ........................................................................ 3

87 Fed. Reg. 60083 (Oct. 4, 2022) .......................................................................... 8

87 Fed. Reg. 72976 (Nov. 28, 2022) ...................................................................... 5

89 Fed. Reg. 1982 (Jan. 11, 2024) ........................................................................ 23

90 Fed. Reg. 46573 (Sept. 29, 2025) ...................................................................... 6

90 Fed. Reg. 46584 (Sept. 29, 2025) ...................................................................... 6

**<u>Rules</u>**

Fed. R. Civ. P. 57 ................................................................................................... 32

**<u>Other Authorities</u>**

10B Wright & Miller,
*Federal Practice and Procedure* § 2759 (4th ed. 2025) ...................................... 12

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

ix

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

On April 29, Defendants sent identical discontinuance notices to over 200 grantees, informing them that their projects—designed to meet the mental health needs of elementary, middle, and high school students—were not in the best interest of the government and would not continue past December 31, 2025. There were no factual findings—just a list of possible reasons, requiring grantees to guess at the basis for this sudden discontinuation. These carbon-copy notices were just the tip of the iceberg that is Defendants' Non-Continuation Decision—a decision that began on February 5 with a directive to implement new priorities; required a policy change in Defendants' long-standing, reliable approach to continuation award decisions; and culminated with arbitrary and capricious discontinuances and reconsideration request denials. The Non-Continuation Decision is also contrary to law—Defendants violated their own continuation regulation and failed to vet their new priorities through notice-and-comment as required by the General Education Provisions Act (GEPA).

Defendants' unlawful actions cause irreparable harm to Plaintiff States by ending much-needed funding and subjecting them to a broken, unlawful continuation award process.

This Court should grant summary judgment to Plaintiff States as to their Administrative Procedure Act (APA) claims,[1] and order Plaintiffs' requested relief.

# II.    BACKGROUND

Plaintiffs incorporate by reference the factual background this Court set forth in the Preliminary Injunction Order, Dkt. 193 at 2-11, and the factual background set forth in Plaintiffs' Motion for Preliminary Injunction, Dkt. 49 at 10-23.

---

[1] Plaintiff States reserve moving for summary judgment on their constitutional claims, as the parties have not yet conducted discovery. *See* Dkt. 198 at 1-2; Dkt. 200 at 1. As such, this motion may be understood as a motion for partial summary judgment.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**A.    Defendants Awarded Mental Health Grants, and Grantees are Making Substantial Progress Towards Programmatic Goals**

State education agencies (SEAs), local education agencies (LEAs), and institutions of higher education (IHEs) applied for grants from the Mental Health Service Professional Demonstration (MHSP) and School-Based Mental Health Services (SBMH) programs (collectively, Programs), tailoring their projects to make their applications competitive based on the Department of Education's (Department's) published priorities and compliant with 20 U.S.C. § 1228a (the GEPA Equity Directive). Dkt. 202-1 at 82-2135; Dkts. 202-2 to 202-15.

For example, in 2022, one competitive priority for Defendants' MHSP grant competition was to increase the number of qualified school-based mental health services providers from diverse backgrounds. Dkt. 202-1 at 38. All applications contained notices informing applicants of the GEPA Equity Directive:

> Section 427 requires each applicant . . . to include in its application a description of the steps the applicant proposes to take to ensure equitable access to, and participation in, its Federally-assisted program…. The statute highlights six types of barriers that can impede equitable access or participation: gender, race, national origin, color, disability, or age…. Consistent with program requirements and its approved application, an applicant may use the Federal funds awarded to it to eliminate barriers it identifies.

*See* Dkt. 202-1 at 88*; Dkt. 201 ¶49 (admitting MHSP and SBMH are "applicable programs" under GEPA and subject to § 1228a(b)). In alignment with this competitive priority and in compliance with the GEPA Equity Directive, Vancouver School District, submitted its Equity Policy, stating it was "committed to educational equity" and would "prioritiz[e] . . . resources to achieve equitable outcomes" and "promote workforce diversity." Dkt. 202-1 at 88-89. As a result, the Department awarded Vancouver School District an MHSP grant. Dkt. 203-1 at 1.

Generally, after selecting an applicant for a multi-year Program grant, the Department awarded funding for the first budget year, *see, e.g.*, *id.*, followed by annual one-year continuation awards awarded at the end of the budget year in December, *see, e.g.*, Dkt. 204-3 at 1274-77 (dated December 18, 2024).

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Once the grants were awarded, grantees got to work—improving the mental health of

2    thousands of students and making substantial progress towards Congress's goal of permanently

3    adding 14,000 additional mental health professionals into high-need schools. *See* Dkt. 50-2 at 3;

4    Dkt. 50-3 at 3. Defendants' Administrative Record (AR) does not generally include performance

5    reports, but the programs have been successful.[2] *See, e.g.*, Dkt. 49 at 17-19; Dkt. 204-1

6    at 909-28 (student testimonials discussing the positive impacts of school-based mental health

7    services); Dkt. 151-2 (emails confirming grantees' "substantial progress" toward achieving the

8    goals and objectives of the project); Parkin Decl. ¶13 (same); Schmidt Decl. ¶9 (same).

9    **B.    To Implement the Department's New Grant Priorities Directive, Defendants
         Changed Their Approach to the Continuation Award Process, Discontinued**

10   **Certain Program Grants, and Planned to Recompete the Funds**

11   Defendants' long-standing practice has been to consider grantee performance when

12   determining whether to issue a continuation award, as required by 34 C.F.R. § 75.253(b). In

13   1994, the Department updated regulations governing the continuation award process—including

14   the requirement "that continuation of the project is in the best interests of the Federal

15   Government"—to make continuation decisions "based entirely" on performance reports.

16   59 Fed. Reg. 30258, 30259 (June 10, 1994). Since at least 2010, the Department's "Grantmaking

17   at ED: Answers to Your Questions About the Discretionary Grants Process" has explained to

18   grantees that program staff make continuation award decisions by "review[ing] the information

19   in the performance report and the grant's financial and project management activities to

20   determine if a grantee has made substantial progress in reaching the project's objectives . . . and

21   if continuation of the project is in the best interest of the federal government." Dkt. 151-4 at 42;

22   *see also* Dkt. 50-14 at 33 (2024 guidance) (the Discretionary Grantmaking Guidance).

23   _____

24   [2] Defendants did not provide an AR index. The AR appears to comprise: (1) rulemaking for discretionary grant program priorities and notices inviting Program applications, Dkt. 202-1 at 1-79; (2) the February 5, 2025, Directive on Department Grant Priorities, *id*. at 80-81; (3) Program applications, *id*. at 82-2135; Dkts. 202-2

25   to 202-15; (4) Grant Award Notification (GANs) for initial multi-year Program awards, Dkt. 203-1 at 1-6846; (5) boilerplate Non-Continuation letters, *id*. at 6847-7122; (6) GANs for two grants that were reinstituted,

26   *id*. at 7123-7206; (7) GANs reflecting discontinuation of other grants, *id*. at 7207-8622; and (8) reconsideration request materials and responses, Dkts. 204-206.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    On February 5, 2025, the Department issued a "Directive on Department Grant

2    Priorities" that asserted new priorities of "merit, fairness, and excellence in education" (the Grant

3    Priorities Directive). Dkt. 202-1 at 80. Defendants then enacted a policy change to base

4    continuation awards on these new priorities instead of grantee performance, which it

5    implemented on April 29, 2025, by sending *en masse* "Notice[s] of Non-Continuation of Grant

6    Award," notifying 70 out of 134 SBMH grantees and 153 out of 205 MHSP grantees that their

7    Program grants would be discontinued. *See* Dkt. 148 ¶¶3-4, 6-7. All notices stated the following:

8        This letter provides notice that the United States Department of Education has
         determined not to continue your federal award, S184[xxxxxxx], in its entirety,
9        effective at the end of your current grant budget period. *See*, *inter alia*, 34 C.F.R.
         § 75.253(a)(5) and (f)(1).

10                                       ***

11       The Department has undertaken a review of the grants and determined that the
         grant specified above provides funding for programs that reflect the prior
12       Administration's priorities and policy preferences and conflict with those of the
         current Administration, in that the programs: violate the letter or purpose of
13       Federal civil rights law; conflict with the Department's policy of prioritizing
         merit, fairness, and excellence in education; undermine the well-being of the
14       students these programs are intended to help; or constitute an inappropriate use
         of federal funds. The grant is therefore inconsistent with, and no longer
15       effectuates, the best interest of the Federal Government and will not be continued.

16   Dkt. 203-1 at 6847-7122; Dkt. 201 ¶¶6, 9 (admitting "each discontinued grantee received the

17   same explanation"). These notices made no mention of the grantee's performance. Dkt. 203-1

18   at 6847-7122. The notices also reminded grantees to "carefully review and discharge your

19   closeout responsibilities" and "submit all final reports by no later than 120 calendar days after

20   the end of the grant period of performance." *Id.*

21       That same day, the Department informed Congress that only "certain recipients" received

22   notices and touted $1 billion in savings. Dkt. 50-1 at 2; *see* Dkt. 201 ¶81. The Department

23   claimed the discontinued grants "reflect the prior Administration's priorities and policy

24   preferences" and "[t]he prior Administration's preferences are not legally binding," and it told

25   Congress that it planned to "re-envision and re-compete" the funds. Dkt. 50-1 at 2-3.

26

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Defendants offered discontinued grantees the option of requesting reconsideration within

2    30 days. *Id*. at 4. Some grantees requested reconsideration, but the complete lack of explanation

3    precluded them from meaningfully engaging with this process. *See* Dkt. 193 at 14 n.6. Moreover,

4    Defendants doubled down by applying the Non-Continuation Decision during the

5    reconsideration process, purporting to deny reconsideration based on the same new priorities of

6    "merit, fairness, and excellence"—not grantee performance. *See* Range Decl., Ex. 1. The denials

7    go on to quote specific "diversity," "equity," or "inclusion"-related excerpts from grantees'

8    applications. *See, e.g.*, *id.* at 2 ("committed to educational equity . . . ", "[p]romoting workforce

9    diversity"); *id.* at 30 ("ensur[ing] attention to diversity, equity, and inclusivity"). The denials do

10   not show how the grant applications fit into any of the categories in the prior disjunctive list or

11   explain how these excerpts support Defendants' conclusion that the grant was not in the

12   government's best interest. *See* Range Decl., Ex. 1. Like the April 29 discontinuance notices,

13   there is no discussion of grantee performance. *Id.* This motion refers to Defendants' policy

14   change and its subsequent implementation through its notices of discontinuance and

15   reconsideration denials as the "Non-Continuation Decision."

16   Defendants did not apply their Non-Continuation Decision consistently. For instance,

17   following the Non-Continuation Decision, "[t]he Indiana Department of Education, Fort Wayne

18   Community Schools in Indiana, and Norma[n] Public Schools in Oklahoma" had not been

19   discontinued. Dkt. 50-9 at 4-5; Dkt. 201 ¶83 (admitting to media report's content). But these

20   projects competed with and served the same diversity and inclusion priorities as the discontinued

21   projects. *See, e.g.*, Dkt. 50-10 at 9 (Fort Wayne project would meet diversity and inclusion

22   competitive preference priorities) *and cf.* 87 Fed. Reg. 72976, 72977-78 (Nov. 28, 2022);

23   Dkt. 201 ¶84 (admitting Norman project met competitive preference priority for diversity and

24   that Indiana Department of Education "seeks to . . . recruit and retain school counseling

25   candidates by creating a talent pipeline of mental health service providers whose racial and ethnic

26   backgrounds parallel their students") *and cf.* Dkt. 1 ¶84.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

The Department's new grant competitions exclude many, if not all, affected grantees. *See* 90 Fed. Reg. 46573 (Sept. 29, 2025); 90 Fed. Reg. 46584 (Sept. 29, 2025). The new MHSP competition expressly limits "Eligible Applicants" to SEAs and LEAs, meaning IHEs are not eligible. 90 Fed. Reg. 46584 (Sept. 29, 2025). The competitions are limited to school psychologists, meaning that grants addressing shortages in school social workers, school counselors, or other state-certified mental health providers are not eligible. 90 Fed. Reg. 46573, 46575 (Sept. 29, 2025). And current grantees face an additional hurdle: the competition FAQs explain that although "[c]urrent grantees may apply for a grant . . . proposed project should be substantively different from the current project." Eklund Decl., Ex. 1 at 5-6. The FAQ suggests grantees can meet this requirement by "serving different students"— as if there were something wrong with the kids previously served. *Id.*

## C.    The Harmful Impact of Defendants' Non-Continuation Decision on Plaintiff States' Grant Recipients, Mental Healthcare System, and Education Systems

Defendants' Non-Continuation Decision, and apparent disregard for Congress's GEPA Equity Directive, is causing irreparable harm to Plaintiff States' instrumentalities that were grant recipients, as well as Plaintiff States' mental healthcare systems, mental health workforce pipelines, and educational systems. Program funding will be discontinued on December 31, 2025, but the harmful effects of the Non-Continuation Decision—which disrupt multi-year, multi-million-dollar grant projects operating on the academic year throughout Plaintiff States—were immediate and are still ongoing.[3] Without this funding, the Program projects—and the critical services they provide—will come to an end.[4]

---

[3] *See, e.g.*, Dkt. 49 at 21 n.3; Dkt. 170 ¶¶4-7; Barris Decl. ¶¶18-19; Brown Decl. ¶¶22-26; Clauson Decl. ¶29; Gilfillan Decl. ¶18; Johnson-Smith Decl. ¶18; Johnston Decl. ¶17; Nocero Decl. ¶16; Pratt Decl. ¶18; Ragsdale Decl. ¶24; Ruiz Decl. ¶20; Sahakian Decl. ¶17; Santamaria Decl. ¶¶19-20; Soto-Delgado Decl. ¶¶24-25; Vinson Decl. ¶¶16-17; Yancsurak Decl. ¶22.

[4] *See, e.g.*, Dkt. 49 at 21 n.4; Barris Decl. ¶17; Branson Decl. ¶23; Brown Decl. ¶21; Clauson Decl. ¶28; Claussen Decl. ¶17; Gilfillan Decl. ¶17; Jimerson Decl. ¶17; Johnson-Smith Decl. ¶17; Johnston Decl. ¶14; Judson Decl. ¶17; MacCallum-Ceballos Decl. ¶26; Nocero Decl. ¶15; Parkin Decl. ¶17; Polo Decl. ¶17; Pratt Decl. ¶17; Ragsdale Decl. ¶23; Rios Decl. ¶17; Ruiz Decl. ¶19; Sahakian Decl. ¶16; Santamaria Decl. ¶19; Schmidt Decl. ¶14; Soto-Delgado Decl. ¶23; Temple Decl. ¶15; Vinson Decl. ¶15; Yancsurak Decl. ¶21.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1          **1.    Harm to Plaintiff State grantees**

2          If the Non-Continuation Decision is not reversed, SBMH SEA and LEA grantees will be

3    forced to lay off project staff and mental health service providers, reducing access to much-

4    needed mental health services for students.[5] These grantees will lose qualified mental health

5    service providers who were hired, retained, and trained using Program funds as part of

6    Congress's goal to permanently add thousands of new providers to schools throughout Plaintiff

7    States.[6] Grantees will lose the benefits of the relationships and trust that these providers have

8    developed with students and school staff members.[7]

9          MHSP IHE grantees will lose robust tuition assistance for their mental health graduate

10   programs, causing enrollment to drop and loss of funds to the IHEs.[8] IHE grantees will also

11   suffer reputational harm to their graduate programs as a result of ending these programs

12   dependent on federal funding.[9] Grantees' relationships with community partners will be

13   irreparably damaged because they can no longer honor the commitments they made to provide

14   mental health services to the children in their communities.[10] MHSP SEA and LEA grantees will

15   be forced to lay off project staff and will lose mental health graduate interns, reducing access to

16   much needed mental health services for students.[11]

17

18

---

19   [5] *See, e.g.*, Dkt. 49 at 22 n.8; Dkt. 201 ¶86; Allen Decl. ¶25; Barris Decl. ¶18; Clauson Decl. ¶29; Claussen
20   Decl. ¶21; Johnson-Smith Decl. ¶18; Johnston Decl. ¶15; Judson Decl. ¶18; Ragsdale Decl. ¶24; Rios Decl. ¶¶18,
     22; Vinson Decl. ¶17.
21   [6] *See, e.g.*, Dkt. 49 at 22 n.9; Barris Decl. ¶18; Clauson Decl. ¶36; Claussen Decl. ¶21; Johnson-Smith
     Decl. ¶¶18, 20; Johnston Decl. ¶¶15-17; MacCallum-Ceballow ¶35; Ragsdale Decl. ¶24; Rios Decl. ¶¶18, 22;
     Vinson Decl. ¶17.
22   [7] *See, e.g.*, Dkt. 49 at 22 n.10; Allen Decl. ¶26; Barris Decl. ¶18; Clauson Decl. ¶37; Claussen Decl. ¶¶18,
     20; Johnson-Smith Decl. ¶23; MacCallum-Ceballos ¶32; Ragsdale Decl. ¶¶25-26.
23   [8] *See, e.g.*, Dkt. 49 at 22 n.12; Dkt. 170 ¶4; Dkt. 59 ¶24; Brown Decl. ¶22; Gilfillan Decl. ¶20; Jimerson
     Decl. ¶18; Polo Decl. ¶18; Pratt Decl. ¶¶18, 20-21; Dkt. 201 ¶87 (conceding grantees may need to cut financial
24   assistance to graduate students).
     [9] *See, e.g.*, Dkt. 59 ¶24; Brown Decl. ¶23; Temple Decl. ¶18.
25   [10] *See, e.g.*, Dkt. 49 at 23 n.14; Lord Decl. ¶29; Temple Decl. ¶18.
     [11] *See, e.g.*, Dkt. 49 at 22 n.8; Brown Decl. ¶22; Gilfillan Decl. ¶24; Jimerson Decl. ¶18; Nocero Decl. ¶18;
26   Polo Decl. ¶18; Ruiz Decl. ¶20; Sahakian Decl. ¶17; Santamaria Decl. ¶20; Soto-Delgado Decl. ¶25; Temple Decl.
     ¶16; Yancsurak Decl. ¶22; Dkt. 201 ¶86 (conceding layoffs).

1    Grantees also invest considerable time and resources when preparing a multi-year grant

2    application.[12] Grantees have been willing to make these investments because they understood

3    they had a right to a continuation award process that was based on grantee performance, rather

4    than factors outside the grantee's control, such as new priorities.[13] They also understood that

5    continuation awards would be prioritized over new awards.[14] The Non-Continuation Decision

6    harms grantees' procedural rights and calls into question grantees' rights and expectations as to

7    the continuation award process for multi-year discretionary grants.[15]

8    **2.    Harm to Plaintiff States' mental healthcare systems**

9    The loss of Program grants within Plaintiff States hurts both the supply and demand side

10   of Plaintiff States' mental healthcare systems in the midst of local and national mental health

11   crisis for our youth.[16] School-based mental healthcare acts as meaningful prevention and early

12   intervention for our states' children.[17] Demand for state-funded mental health services will

13   increase after the federally funded services end, further straining Plaintiff States' mental health

14   service network.[18] By congressional design, these mental health grants funded services in low-

15   income areas where the majority of kids are enrolled in Medicaid or the State's Children's Health

16   Insurance Program (CHIP). *See, e.g.*, 87 Fed. Reg. 60083, 60089-90 (Oct. 4, 2022). With the

17   lapse of federal funding for mental health care, Plaintiff States will incur increased costs through

18   the state share of Medicaid and CHIP funding.[19] Further, with fewer preventative school-based

19   mental health services available in Plaintiff States, young people's mental health needs will go

20

21   [12] *See, e.g.*, Dkt. 49 at 27-28; Sharp Decl. ¶20.

    [13] *See, e.g.*, Dkt. 49 at 27-28; Sharp Decl. ¶¶17, 21-23.

22   [14] *See, e.g.*, Sharp Decl. ¶17; 34 C.F.R. § 75.253(c).

    [15] *See, e.g.*, Sharp Decl. ¶¶17, 23.

23   [16] *See e.g.*, Boukas Decl. ¶7; Gagné-Holmes Decl. ¶¶6-9; Halsey Decl. ¶7; Kirschbaum Decl. ¶¶6, 7; Lord Decl. ¶¶8, 12; Sandoe ¶19.

24   [17] *See, e.g.*, Boukas Decl. ¶12; Gagné-Holmes Decl. ¶¶10, 20; Halsey Decl. ¶14; Kirschbaum Decl. ¶32; Sandoe Decl. ¶¶13, 19.

25   [18] *See, e.g.*, Dkt. 49 at 22 n.11; Boukas Decl. ¶13; Bylica Decl. ¶13; Gagné-Holmes Decl. ¶¶24-25; Halsey Decl. ¶¶22-25; Kirshbaum Decl. ¶21; Lord Decl. ¶25; Sandoe ¶21.

26   [19] *See, e.g.*, Boukas Decl. ¶¶9, 16; Bylica Decl. ¶13; Gagné-Holmes Decl. ¶24; Halsey Decl. ¶18; Kirschbaum Decl. ¶¶17, 27-34; Lord Decl. ¶26; Sandoe Decl. ¶¶9, 10.

1    untreated and rise to an acute level, forcing young people and their families to seek crisis care,

2    which often comes at a higher cost to the state Medicaid Program than outpatient care.[20]

3    Tragically, unmet mental health needs in children can also escalate and lead to acts of aggression

4    and self-harm using firearms.[21]

5            Compounding this harm, the supply of school-based mental health service providers will

6    decrease. Graduate students, losing significant tuition assistance funds, are departing from these

7    programs.[22] The sudden loss of funding has discouraged these students and others from pursuing

8    careers as school-based mental health providers.[23] States attribute an ongoing behavioral health

9    crisis to the shortage of qualified mental health care workers.[24] The loss of qualified mental

10   health providers harms state Medicaid authorities' mission to provide effective accessible mental

11   healthcare and increases their administrative burden in ensuring network adequacy.[25]

12           **3.    Harm to Plaintiff States' education systems**

13           Without Program grants, Plaintiff States' education agencies will suffer the effects of a

14   shortage of mental health service providers, particularly for those schools serving children with

15   disabilities and children in rural and/or lower-income districts.[26] States' education systems will

16   suffer the attendant consequences: more students with short- and long-term health problems;

17   lower grades and graduation rates; increased absenteeism, learning loss, suspensions, and

18   expulsions; and a higher risk of drug overdose and suicide.[27] And because public schools receive

19

20

---

21           [20] *See, e.g.*, Boukas Decl. ¶16; Bylica Decl. ¶13; Gagné-Holmes Decl. ¶¶27, 30; Halsey Decl. ¶21;
     Kirschbaum Decl. ¶¶22, 29, 33; Sandoe Decl. ¶24.

22           [21] *See, e.g.*, Boukas Decl. ¶18; Gagné-Holmes Decl. ¶28; Kirschbaum Decl. ¶30.

             [22] *See supra* n.8.

23           [23] *See, e.g.*, Dkt. 49 at 22 n.13; Dkt. 104 ¶21; Kirschbaum Decl. ¶¶22, 31.

             [24] *See, e.g.*, Boukas Decl. ¶¶13, 19; Gagné-Holmes Decl. ¶23; Kirshbaum Decl. ¶25; Lord Decl. ¶24.

24           [25] *See, e.g.*, Bylica Decl. ¶13; Gagné-Holmes Decl. ¶¶23, 29; Kirshbaum Decl. ¶¶3, 23-26, 31; Lord Decl.
     ¶¶24, 29-31.

25           [26] *See, e.g.*, Dkt. 49 at 21 n.6; Dkt. 170 ¶4; Boukas Decl. ¶14; Branson Decl. ¶¶21-22; McKeon Decl. ¶20;
     Morrison Decl. ¶22; Ongart Decl. ¶28; Rios Decl. ¶23; Sanders Decl. ¶19; Wetherell ¶¶19, 27.

26           [27] *See, e.g.*, Dkt. 49 at 22 n.7; Branson Decl. ¶24; Kirschbaum Decl. ¶12; May Decl. ¶29; McKeon Decl.
     ¶9; Morrison Decl. ¶9; Ongart Decl. ¶¶10-11.

1   funding allocations based on attendance, absenteeism leads to loss of funding for our states'

2   public schools.[28]

3       These consequences will interfere with Plaintiff States' mission to provide a public

4   education to their students and obligations to provide behavioral health services to students under

5   Individualized Education Plans (IEPs) and 504 plans—leading to increased administrative and

6   cost burdens to Plaintiffs due to the increase in dispute resolution requests, including mediations,

7   relating to mental health services, such as hiring additional special education complaint

8   investigators and adjudicators, and paying for increased translation services, court reporter

9   services, and other costs.[29]

10                      **III.    LEGAL STANDARD**

11      "Summary judgment is appropriate" in APA cases. *Nw. Motorcycle Ass'n v. U.S. Dep't*

12  *of Agric.*, 18 F.3d 1468, 1472 (9th Cir.1994). The court's role "is to determine whether or not as

13  a matter of law the evidence in the administrative record permitted the agency to make the

14  decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985). Materials not

15  compiled by Defendants may be treated as part of the Administrative Record where they were

16  "directly or indirectly considered by agency decision-makers." *Scholl v. Mnuchin*, 494 F. Supp.

17  3d 661, 683-84 (N.D. Cal. 2020) (quoting *Thompson v. Dep't Of Labor*, 885 F.2d 551, 555 (9th

18  Cir. 1989) (considering agency documents submitted by the plaintiffs). Courts may also

19  "consider extra-record evidence in determining whether a party will suffer irreparable harm in

20  the absence of injunctive relief." *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp.

21  2d 1290, 1300 (D. Or. 2011).

---

[28] *See* May Decl. ¶18; *see e.g.*, Nocero Decl. ¶11; Santamaria Decl. ¶21.

[29] *See, e.g.*, Branson Decl. ¶¶21-22; May Decl. ¶¶23, 25-28, 30; McKeon Decl. ¶¶19-20; Morrison Decl. ¶¶22-23; Ongart Decl. ¶¶27-35; Sanders Decl. ¶19; Wetherell ¶¶16-18.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE                    10                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1

## IV.    ARGUMENT

2

### A.    The Court Has Jurisdiction

3      The Court has already rejected Defendants' jurisdictional challenges based on the Tucker

4  Act, Fed. R. Civ. P. 17(a)(1), and *Lincoln v. Vigil*. Dkt. 190 at 13-21. The Court has also rejected

5  Defendants' standing challenge based on the pleadings. *Id*. at 9-13. Plaintiffs' evidence shows

6  they continue to have standing at summary judgment, and the Non-Continuation Decision is a

7  final agency action for which Plaintiffs are entitled to seek judicial review under the APA.

8

### 1.    Washington establishes standing for Plaintiff States

9      Plaintiff States have suffered injuries-in-fact that are fairly traceable to the challenged

10  conduct of Defendants and likely to be redressed by a favorable judicial decision. *Lujan v.*

11  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When challenging "the violation of a

12  procedural right," relaxed standards apply to traceability and redressability. *Nat. Res. Def.*

13  *Council v. Jewell*, 749 F.3d 776, 782 (9th Cir. 2014) (en banc). Plaintiffs need only establish

14  standing through one party, Dkt. 190 at 10-11, which they readily establish through Washington.

15      Washington has demonstrated pocketbook injuries both as a grantee and as a funding

16  administrator for its mental healthcare system and education system. *See supra* § II.C;

17  *Washington v. Trump*, 145 F.4th 1013, 1023-24 (9th Cir. 2025) (loss of funds and added

18  expenses established standing for states). It also suffered procedural injuries from Defendants'

19  application of its unlawful Non-Continuation Decision in violation of the continuation regulation

20  and the GEPA notice-and-comment rulemaking. *See supra* § II.C.1.

21      Defendants' Non-Continuation Decision caused these injuries, and these injuries will be

22  redressed by an order against the Non-Continuation Decision. Plaintiffs' burden to establish

23  redressability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997); *Tucson v. City*

24  *of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024). Plaintiffs need only show that a favorable

25  decision would result in a "change in a legal status," and that a "practical consequence of that

26  change would amount to a significant increase in the likelihood that the plaintiff would obtain

1   relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

2   Vacating or enjoining the unlawful process imposed by the Non-Continuation Decision would

3   significantly increase the likelihood that Washington and its grantees would not suffer further

4   economic and procedural injuries posed by the Non-Continuation Decision. *Id.*; *Ctr. for*

5   *Biological Diversity v. Mattis*, 868 F.3d 803, 816-21 (9th Cir. 2017) (noting relaxed standards

6   for procedural injury). And, in the face of Defendants' assertions and the Grant Priorities

7   Directive, *see* Dkt. 201 ¶¶6, 12 *and* Dkt. 202-1 at 80, declaratory relief would "serve a useful

8   purpose in clarifying and settling the legal relations in issue" and will also "afford relief from

9   the uncertainty, insecurity, and controversy giving rise to the proceeding." *See* 10B Wright &

10   Miller, *Federal Practice and Procedure* § 2759 (4th ed. 2025); *see also Franklin v.*

11   *Massachusetts*, 505 U.S. 788, 802-03 (1992) (affirming standing for declaratory relief because

12   it was substantially likely that government officials would abide by an authoritative

13   interpretation).[30]

14      As Washington has standing, this Court may find that all Plaintiffs have standing. *See*

15   *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th

16   Cir. 2009) (citing *Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008)).

17      **2.    Plaintiffs' claims fall within the zone of interests**

18      In addition to Article III standing, Plaintiffs satisfy the "not . . . especially demanding"

19   burden, *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987), of demonstrating that the

20   "interest[s] sought to be protected by the complainant [are] arguably within the zone of interests

21   to be protected or regulated by the statute or constitutional guarantee in question," *Bennett*,

22   520 U.S. at 163 (citation omitted). The word "arguably" "indicate[s] that the benefit of any doubt

23   goes to the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,

24      [30] Although Plaintiff Nevada did not receive a discontinuance, Dkt. 203-1 at 6847-7122, as a possessor of

25   a Program multi-year grant, it suffered a procedural injury of a continuation award decision governed by Defendants' Non-Continuation Decision and faces the ongoing threat of this unlawful process and thus a loss of

26   funds in the future. *See* Sharp Decl. ¶¶10, 17-18. This procedural injury warrants declaratory relief. *Ctr. for Biological Diversity*, 868 F.3d at 816-21.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE
12
ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    567 U.S. 209, 225 (2012)*. "The test forecloses suit only when a plaintiff's 'interests are so

2    marginally related to or inconsistent with the purposes implicit in the statute that it cannot

3    reasonably be assumed that Congress intended to permit the suit.'" *Id.* (citation omitted).

4        Here, Plaintiffs' suit satisfies this standard because Plaintiff States have a clear interest

5    in the Department's financial assistance programs and the governing regulatory and statutory

6    schemes that protect recipients, as they themselves are recipients and loss of these grants directly

7    affect States' mental healthcare and education systems. *See supra* § II.C. Moreover, by their own

8    regulations, the Department grants States an opportunity to review proposed federal financial

9    assistance programs during the program planning cycle and provide input during the grant

10   selection process. *See* 34 C.F.R. §§ 79.1(b), 79.4(a)-(b), 79.8(b)(2); 31 U.S.C. § 6506(d). As

11   recognized stakeholders, States are much more than *arguably* affected by Defendants' failure to

12   follow the procedural requirements ensuring a fair continuation process for awards that are

13   selected. *See* 34 C.F.R. §§ 75.253 (b)-(c); 20 U.S.C. §§ 1221e-4, 1232. Plaintiff States therefore

14   fall within the zone of interests that these regulations and statutes were designed to protect.

15   *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians,* 567 U.S. at 227-28.

16   **3.    The Non-Continuation Decision is a final agency action**

17       Defendants' Non-Continuation Decision constitutes "final agency action" subject to

18   review under the APA. Final agency actions (1) "mark the consummation" of agency decision-

19   making, and (2) determine "rights or obligations . . . from which legal consequences will flow."

20   *Bennett*, 520 U.S. at 177-78 (citation modified). Finality is interpreted in a "pragmatic" and

21   "flexible" manner. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967). "Agency action ...

22   need not be in writing to be final and judicially reviewable." *Washington v. Dep't Homeland*

23   *Sec.,* 614 F. Supp. 3d 863, 872 (W.D. Wash. 2020) (citations omitted); *see also id*. at 872 n.11

24   (citing cases); *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 26 n.6 (D.D.C. 2019)

25   (reviewing agency's unwritten adoption of new standards).

26

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Two distinct kinds of final agency action make up the Non-Continuation Decision:

2    (1) Defendants' policy change to the Program continuation grant process where they consider

3    the new priorities identified in the Grant Priorities Directive rather than grantee performance;

4    and (2) Defendants' discontinuation of Program grants using the new continuation process in the

5    initial discontinuances and reconsideration request denials. Both constitute final agency action.

6    *See Am. Bar Ass'n*, 370 F. Supp. 3d at 26 n.6.

7    *First*, the new policy changed the Department's approach from its longstanding

8    practice—memorialized in decades of rulemaking, guidance documents, and the plain language

9    of 34 C.F.R. § 75.253(b)—of making continuation award decisions based on grantee

10   performance to one based on new priorities. *See supra* § II.B. Defendants certainly consummated

11   their new Program continuation award policy on or before April 29 when they issued

12   discontinuation notices in reliance of the new policy (*e.g.*, Dkt. 203-1 at 6847-7122). *See Am.*

13   *Bar Ass'n*, 370 F. Supp. 3d at 26 n.6 (adoption of new standards reflected in letters was itself

14   final agency action). Indeed, the change in the Program grant continuation policy challenged

15   here appears to be just a piece of Defendants' efforts to remake federal grantmaking agencywide.

16   *See, e.g.*, *Mid-Atl. Equity Consortium v. U.S. Dep't Of Educ.*, --- F. Supp. 3d ---,

17   No. 1:25-cv-1407-PLF, 2025 WL 2158340 at *16 (D.D.C. July 30, 2025) (grants arbitrarily and

18   capriciously terminated based on "merit, fairness, and excellence in education" priorities);

19   *Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, No. 1:25-cv-03514-TSC,

20   2025 WL 2797678, Dkt. 1, Complaint ¶¶142-46 (D.D.C. Sept. 30, 2025) (discontinuing TRIO

21   grants based on same priorities).

22   The Program's continuation policy change is reflected in Defendants' boilerplate

23   discontinuance notices, which repeat the language in the Grant Priorities Directive by stating

24   that Program grants are being discontinued because they conflict with the current

25   Administration's new priorities of "merit, fairness, and excellence in education." *Compare*

26   Dkt. 202-1 at 80, *with* Dkt. 203-1 at 6847; Dkt. 201 ¶¶7, 9. Defendants repeated this reason in

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1   their reconsideration request letters. Range Decl., Ex. 1. The policy change also has clear legal

2   consequences: grantees have lost the benefit of a fair continuation award determination based on

3   their performance under 34 C.F.R. § 75.253(b) and the priority of continued funding over new

4   grant awards promised by 34 C.F.R. § 75.253(c). *See infra* § IV.B.2. The policy change

5   component of the Non-Continuation Decision is final agency action and reviewable under the

6   APA.

7       *Second*, Defendants' discontinuance of grants within Plaintiff States based on the new

8   policy, whether through discontinuation notices or denials of reconsideration, are also

9   reviewable as final agency actions. In the April 29 notices, the Department drew its definitive

10  conclusion that Program grants were not in the government's best interest, using Defendants'

11  changed continuation process based on new priorities rather than grantee performance.

12  Dkt. 203-1 at 6847-7122. There is no indication Defendants intend to reverse course, or that any

13  further steps are required to make this determination. Dkt. 204-3 at 523 (email from the

14  Department refusing to provide more information and stating, "The letter of non-continuation

15  contains all the information I have about the reason . . . "). Although Defendants offered

16  discontinued grantees the opportunity to request reconsideration, Dkt. 203-1 at 6847-7122, they

17  failed to identify a basis for grantees to meaningfully engage in this process. *See* Dkt. 193

18  at 14 n.6. Moreover, this reconsideration process is voluntary and not necessary for the

19  discontinuance to be considered final. *See S. Educ. Found. v. U.S. Dep't of Educ.,*

20  784 F. Supp. 3d 50, 73 (D.D.C. 2025); *see also Darby v. Cisneros*, 509 U.S. 137, 137 (1993)

21  (if reconsideration is voluntary, administrative exhaustion is not required for the agency action

22  to be considered final). For grantees that did not submit a reconsideration request or withdrew

23  their reconsideration request, this discontinuance is the final agency action.

24      Defendants employed the same unlawful continuation process when they prepared

25  reconsideration request letters, and the result for nearly all grantees was the same: a denial.

26

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Range Decl., Ex. 1 at 36-37 (one approval); *id.* at 1-35, 38-147 (seventy-two denials). And there

2    is no indication Defendants intend to reverse course on these denials, either.

3        And as with Defendants' policy change, the legal consequences of the discontinuances

4    include grantees' loss of procedural rights under 34 C.F.R. § 75.253(b)-(c), as well as the loss of

5    millions of dollars in prospective funding. *See* Dkt. 203-1 at 1-6846 (initial GANs listing future

6    budget periods); Dkt. 203-1 at 6847-7122 (ending projects on December 31, 2025); Range Decl.

7    Ex. 1 (same).

8        Both components of the Non-Continuation Decision are final agency actions.

9    **B.    The Non-Continuation Decision is Unlawful**

10       **1.    Defendants' Non-Continuation Decision was arbitrary and capricious**

11       This Court should hold and set aside both parts of the Non-Continuation Decision as

12   arbitrary and capricious. 5 U.S.C. § 706(2)(A); *see* Dkt. 193 at 12-13 (holding Plaintiffs were

13   likely to succeed on the merits of this claim).

14                **a.    Defendants' policy change**

15       Defendants' policy change is arbitrary and capricious for two independent reasons. They

16   executed a major change in policy (1) without any notice or concrete explanation and (2) without

17   considering the impacts or reliance interests or consider alternatives. As the Supreme Court

18   recently reiterated, "[t]he change-in-position doctrine" prevents agencies from "mislead[ing]

19   regulated entities." *FDA v. Wages & White Lion Invs.*, 604 U.S. 542, 567 (2025) (citation

20   omitted). It may not depart from its prior position *sub silentio. FCC v. Fox Television Stations,*

21   *Inc.*, 556 U.S. 502, 515 (2009).

22       Here, Defendants changed their approach to the Program continuation award process

23   without notice or explanation. In its 2024 Discretionary Grantmaking Guidance, Defendants had

24   explained: "The program staff uses the information in the performance report in combination

25   with the project's fiscal and management performance data to determine subsequent funding

26   decisions." Dkt. 50-14 at 33. It had been this way since at least 2010. Dkt. 151-4 at 42; *see*

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*supra* § II.B. The April 29 notices discontinuing grants not based on performance, but rather, on new priorities represented an unannounced change of this approach. Defendants violated the change-in-position doctrine by not announcing or explaining this change. Dkt. 203-1 at 6847-8622. Similarly, the reconsideration request process implemented this changed approach, using new priorities to deny or approve requests but not recognizing or explaining this policy change. *See* Range Decl., Ex. 1.

Defendants also failed to account for the substantial reliance interests of discontinued grantees when making this significant policy change. "When an agency changes course, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *U.S. Dep't Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified). The agency must also consider alternatives to its change in position that are "within the ambit of the existing policy." *Id.* Based on Defendants' prior practice, *see supra* § II.B, grantees structured their projects and budgets with the understanding that Defendants would make annual continuation awards based on grantees' project performance. *See* Dkt. 49 at 27. Believing that discontinuances would be based on criteria within their control—i.e., their performance—grantees invested time and resources that will be lost based on improper criteria outside their control. 34 C.F.R. § 75.253(b); *see supra* § II.B; *infra* § IV.B.2. Defendants did not express consideration of any of these reliance interests, much less weigh them against competing policy concerns (if any), or consider any alternatives when discontinuing grants or denying reconsideration requests. *See* Dkt. 203-1 at 6847-8622 (initial continuation decision files); Dkts. 204-206 (reconsideration request files). As such, Defendants' Non-Continuation Decision is arbitrary and capricious. *See Regents of the Univ. of Cal.*, 591 U.S. at 30-33.

**b.    Defendants' discontinuances**

The Administrative Record affirms the conclusion already reached by this Court that Defendants' discontinuation decisions were arbitrary and capricious as applied to the affected

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  grants within Plaintiff States. Dkt. 193 at 14-15. Indeed, Defendants' discontinuances were

2  arbitrary and capricious for at least three independently sufficient reasons.

3      *First,* the Non-Continuation Decision was not reasonable or reasonably explained. In

4  making this determination, courts look to the "grounds that the [Department] invoked" when it

5  discontinued the grant. *Michigan v. EPA*, 576 U.S. 743, 758 (2015); *see also Motor Vehicle Mfrs.*

6  *Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Defendants

7  have an obligation to "examine[] 'the relevant data' and articulate[] 'a satisfactory explanation'

8  for [the] decision, 'including a rational connection between the facts found and the choices

9  made.'" *U.S. Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (citation omitted). Notices

10  providing the same boilerplate explanations untethered to specific grants and the performance of

11  specific grantees are the epitome of an arbitrary and capricious action because they show an

12  obvious lack of individualized assessment. *See Thakur v. Trump*, 787 F. Supp. 3d 955, 982-83

13  (N.D. Cal. 2025) (*en masse* terminations are arbitrary and capricious); *Dickson v. Sec'y of Def.*,

14  68 F.3d 1396, 1405 (D.C. Cir. 1995) (faulting boilerplate language for making it impossible to

15  discern agency's rationale).

16      On or around April 29, Defendants sent the same boilerplate notices to all grantees.

17  Dkt. 201 ¶9; Dkt. 203-1 at 6847-7122. This notice provides no factual findings, much less a

18  rational connection between any facts and the Department's conclusion that the grant was not in

19  the Federal Government's best interest. Instead, the Department disjunctively lists four

20  theoretical bases for the grant discontinuances and does not identify which, if any, of these bases

21  apply specifically to the grantee. *See* Dkt. 203-1 at 6847-7122. Even Defendants are at a loss as

22  to which bases applied. Dkt. 201 ¶9 ("lack[ing] sufficient information" to respond to allegation).

23  As recognized by this Court, where a grantee cannot identify the basis for its discontinuance, the

24  agency has impaired any right to appeal, and the agency's action is arbitrary and capricious. *See*

25  Dkt. 193 at 14 n.6; *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (holding agency action

26  is arbitrary and capricious where party is "compelled to guess at the theory underlying the

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    agency's action"); *Washington v. U.S. Dep't of Com.*, No. 2:25-cv-1507-MJP,

2    2025 WL 2978822, at *8 (W.D. Wash. Oct. 22, 2025) ("One is effectively left to guess at what

3    the new priorities are and why the awards are now misaligned with them—this violates the

4    APA."). Accordingly, the April 29 discontinuances provided no reasoned explanation.

5        The discontinuances resulting from the reconsideration request denial process are no

6    better. Although they pull specific "diversity," "equity," and "inclusion" excerpts from the

7    applications, they do not tie these excerpts to a basis in the disjunctive list, so grantees are still

8    left to guess as to which bases Defendants' conclusion rested. Range Decl., Ex. 1. Such

9    guesswork renders Defendants' actions arbitrary and capricious.

10        *Second*, the discontinuances were without reason because the Department did not apply

11    the same standards to all Program grants in deciding which grants to discontinue. Although its

12    purported reason—the "conflict" between the prior and current Administration's Program

13    priorities—applied to all grantees, Defendants' Non-Continuation Decision only discontinued

14    "certain" grants and has permitted others to continue. Dkt. 201 ¶12. Yet those continued grants

15    are a part of the same Programs, were awarded using the same application criteria, and

16    necessarily reflect the same prior Administration's priorities and policy preferences as Plaintiffs'

17    grants. *See supra* § II.B; *see also* Dkt. 204-2 at 319, 385 (continued grantee "would address

18    barriers to recruitment" to support "recruiting a professional from a diverse background").

19    Defendants' Administrative Record fails to account for this discrepancy. *See* Dkt. 203-1

20    at 6847-8622; Dkt. 204-2 at 319, 385 (determining that continued grantee recruiting from a

21    diverse background is consistent with "current Department priorities").

22        *Third*, the discontinuances relied on factors which Congress did not intend for it to

23    consider. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Per the GEPA Equity Directive, Congress

24    requires grant applicants to describe in their applications the steps they "propose[] to take to

25    ensure equitable access to, and equitable participation in," their projects. 20 U.S.C. § 1228a(b).

26    Defendants have admitted that these Program grants are subject to the GEPA Equity Directive.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    *See* Dkt. 201 ¶49. Defendants' Administrative Record reveals that they discontinued grants

2    based on their applications addressing the GEPA Equity Directive.[31] Because Defendants

3    discontinued Program grants based on applicants' compliance with the GEPA Equity Directive,

4    the discontinuances were arbitrary and capricious.

5         In sum, Defendants failed to engage in any "reasoned decision making" whatsoever and

6    Defendants' Non-Continuation Decision was arbitrary and capricious. *See Michigan*, 576 U.S.

7    at 750; *Encino Motorcars, LLC v. Navarro*, 579 U.S.211, 222 (2016) ("[A] reasoned explanation

8    is needed for disregarding facts and circumstances that underlay or were engendered by the prior

9    policy.").

10        **2.    Defendants' actions were contrary to law**

11        Judicial review of an agency's procedural compliance is "exacting." *See Kern Cnty. Farm*

12   *Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). "[A]gencies may not violate their own rules

13   and regulations to the prejudice of others." *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005).

14        As this Court recognized, the Program grants are subject to "regulatory criteria for

15   continuation" that "cabin[] the Department's authority to discontinue funding." Dkt. 190 at 20.

16   The Administrative Record confirms Defendants decided to use a new process for continuation

17   decisions for Program grants based on new priorities rather than grantee performance, then

18   applied that process to grantees throughout Plaintiff States. Dkt. 203-1 at 6847-7122

19   (discontinuing grants based on alleged conflict with current Administration priorities); *see also*

20   Range Decl., Ex. 1; Dkt. 204-2 at 385 (approving reconsideration request because it is

21   "consistent with current Department priorities"). This decision violates the continuation

22

23        ⸻

          [31] Defendants' grant application form notified applicants that "**ALL APPLICANTS … MUST INCLUDE
          INFORMATION IN THEIR APPLICATIONS TO ADDRESS [GEPA SECTION 427]….**" Dkt. 204-1 at 7

24        (emphasis in original). Grantees could comply with a single narrative or as part of their application. *Id.* In multiple
          instances, the reconsideration request denials cited the "General Education Provisions Act (GEPA) Statement"

25        following this direction. *See* Dkt. 204-1 at 172 (cited in Range Decl., Ex. 1 at 6); *see also, e.g.*, Range Decl., Ex. 1
          at 2 (quoting Dkt. 204-1 at 8), 8 (quoting Dkt. 204-1 at 281, 284), 12 (quoting Dkt. 204-1 at 457, 478), 34 (quoting

26        Dkt. 204-2 at 134, 150), 64 (quoting Dkt. 204-3 at 1339). *See generally* Range Decl., Ex. 1 (reconsideration requests
          denied because "approved grant application" contained phrases supporting equity).

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE                    20                    ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
                                                              Seattle, WA 98104-3188
                                                              206-464-7744

1  regulation and should be set aside. 5 U.S.C. § 706(2)(A); 34 C.F.R. § 75.253(b). The Non-

2  Continuation Decision should also be set aside because it violates the regulatory requirement to

3  prioritize continuation awards over new grants. 5 U.S.C. § 706(2)(A); 34 C.F.R. § 75.253(c).

4        a.        **Defendants violated 34 C.F.R. § 75.253(b)**

5        Defendants' Non-Continuation Decision violates § 75.253(b) because they enacted a

6  policy to impermissibly consider information not relevant to grantee performance—the current

7  Administration's new priorities of "merit, fairness, and excellence in education"—and then

8  implemented that policy in direct violation of the regulation. Dkt. 203-1 at 6847-8622;

9  Range Decl., Ex. 1.

10        In order to receive a continuation award, a grantee must meet the requirements of

11  34 C.F.R. § 75.253(a), including a requirement that the grantee "[r]eceive a determination from

12  the Secretary that continuation of the project is in the best interest of the Federal Government."

13  34 C.F.R. § 75.253(a)(5). Defendants contend they can determine whether the best interest

14  requirement is met based on new priorities, "without any consideration of grantee performance."

15  Dkt. 201 ¶¶6, 12. That violates 34 C.F.R. § 75.253(b), which limits Defendants' consideration

16  to "any relevant information regarding grantee performance."

17        "[A] court must 'carefully consider' the text, structure, history, and purpose of a

18  regulation" when determining whether to defer to an agency's interpretation of a regulation.

19  *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (citation omitted). Defendants' new interpretation goes

20  against all four.

21        *First*, the plain text of the regulation cabins the information that the Department "may

22  consider" when "determining whether the grantee has met the [§ 75.253(a)] requirements."

23  34 C.F.R. § 75.253(b). Specifically, the regulation only permits the Department to consider

24  "relevant information regarding grantee performance":

25        Information considered in making a continuation award. In determining whether
         the grantee has met the requirements described in paragraph (a) of this section,
26        the Secretary may consider any relevant information regarding grantee

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE                          21                    ATTORNEY GENERAL OF WASHINGTON
                                                                            Complex Litigation Division
                                                                          800 Fifth Avenue, Suite 2000
                                                                            Seattle, WA 98104-3188
                                                                                206-464-7744

> performance. This includes considering [performance] reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and any other relevant information.

*Id*. Because "best interest" is one of "the requirements described in paragraph (a) of this section," the § 75.253(b) limitation applies, and the "relevant information" is that "regarding grantee performance" when determining whether continuing a multi-year grant is in the Federal Government's best interest.

This conclusion does not change because the regulation uses the word "may." "Depending on the context, 'may' can be limiting, meaning '*may only*.'" *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1034-35 (9th Cir. 2022) (emphasis added). The "natural meaning" of § 75.253(b) is that the Department "may only" consider the "specified" information when determining whether the grantee has met the § 75.253(a) requirements. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004). To read otherwise would "render part of the [regulation] entirely superfluous." *Id*.

Nor can the Department consider new priorities under "any other relevant information." New priorities do not fit the common attributes of the performance-related items in the list. *See, e.g.*, *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (explaining doctrine of *expressio unius est exclusio alterius*); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024). Quite the opposite—because priorities are set at the outset of a grant competition, and grantees design, propose, and execute their projects based on those priorities, it would be nonsensical to evaluate a grantee's performance using a different set of priorities.

This is the only "reasonable construction of [the] regulation," and therefore, the Court cannot "defer[] to any other reading, no matter how much the agency insists it would make more sense." *Kisor*, 588 U.S. at 575. Otherwise, that would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id*.

*Second*, the regulatory framework also shows the § 75.253(b) limitation applies to the "best interest" requirement and prohibits consideration of new priorities as part of a grantee's

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

performance. The parties agree the Department uses a competitive process when awarding new grants, and a non-competitive process when making continuation awards. Dkt. 201 ¶53. The parties agree that "priorities" are "specific to the awarding of a *new* grant," not a continuation award. Dkt. 147 at 19; Dkt. 201 ¶¶51-53. As such, the regulatory framework does not support the use of new priorities as part of a continuation decision. *Accord Washington*, 2025 WL 2978822, at *7 (rejecting argument that agency could use new priorities to terminate grants, when regulations required priorities to be set at the start of a grant competition). The regulation also requires Defendants to prioritize continuation awards over new awards—further showing that new priorities (applying to new grant competitions) are simply irrelevant to the continuation determination. *See* 34 C.F.R. § 75.253(c).

*Third*, Plaintiffs' interpretation is supported by the regulatory history. *See supra* § II.B (discussing change to continuation process to use performance reports). Indeed, just last year, the Department updated § 75.253 to "clarify" "the process and requirements for making continuation awards." 89 Fed. Reg. 1982, 1990 (Jan. 11, 2024). The Department explained: "These proposed changes would reflect existing Department practices and provide a clearer description of the relevant requirements and procedural rights of grantees in the continuation awards process." *Id.* at 1991. Among other things, the Department clarified the information considered under § 75.253(b) applied not just to one of the § 75.253(a) requirements (substantial progress), but to *all* of the § 75.253(a) requirements. *Compare* 34 C.F.R. § 75.253(b), *with* Dkt. 151-3 (earlier version). And the Department's Discretionary Grantmaking Guidance confirms the Department's longstanding practice limits consideration to grantee performance when determining whether a grantee has met the "best interest" requirement. *See supra* § II.B.

*Fourth*, as expressed by the Department, the purpose of 34 C.F.R. § 75.253 would be served only by Plaintiffs' interpretation. Since the very beginning, the Department has strived to "ensure consistent treatment" of continuation decisions, has stated that multi-year grants "will not be subject to competition with other applications" for continuation funding, and has

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    prioritized continuation funding over new grants. 45 Fed. Reg. 22552, 22559 (April 3, 1980).

2    This purpose of consistency and fairness is not served by allowing the Department to interfere

3    with the grantee's project—and interjecting factors outside the grantee's control—by changing

4    the rules and imposing new priorities partway through a multi-year grant.

5           **b.    The Non-Continuation Decision violates the regulatory mandate that
                  Defendants give priority to continuation awards over new grants**

6

7           Defendants' Non-Continuation Decision is also contrary to law because the Secretary

8    does not give priority to new grants over continuation awards. 34 C.F.R. § 75.253(c) ("Subject

     to the criteria in paragraphs (a) and (b) of this section, in selecting applications for funding under

9    a program, the Secretary gives priority to continuation awards over new grants."). But

10   Defendants plan to give funds from discontinued grants to new grants that reflected their new

11   priorities. *See* Dkt. 50-1 at 2-3; Dkt. 148 ¶9. Yet Defendants have conceded that multi-year

12   grantees do not have to compete with other applicants to receive a continuation award. Dkt. 201

13   ¶56. Defendants violated § 75.253(c) by prioritizing new grants over continued funding of multi-

14   year projects.

15          **3.    Defendants acted without observance of procedure required by law**

16          Defendants' Non-Continuation Decision clearly violates procedural mandates and may

17   therefore be set aside under the APA. *See* 5 U.S.C. § 706(2)(D). Defendants are required to

18   follow the APA's notice-and-comment rulemaking procedure when changing priorities for grant

19   programs. *See* 20 U.S.C. §§ 1221e-4; 1232(a)(2), (d); Dkt. 201 ¶¶49-50 (admitting GEPA

20   applies to the Programs). In violation of these requirements, the new priorities listed in the Grant

21   Priorities Directive and referenced in the Non-Continuation Decision notices and reconsideration

22   denials, Dkt. 203-1 at 6847-7122 *and* Range Decl., Ex. 1, have never been published,

23   Dkt. 202-1 at 1-79. Additionally, Defendants plan to evaluate grant applications for its new grant

24   competition "based on, among other factors, 'merit, fairness, and excellence in education.'"

25   Dkt. 201 ¶6. As just discussed, Defendants' policy to discontinue these grants based on changed

26

1    priorities is unlawful, but even if it were not, they enacted the new priorities without following

2    the proper procedures. As the Non-Continuation Decision relies on unpublished priorities

3    contrary to procedures required by law, it must be set aside. 5 U.S.C. § 706(2)(D).

4    **C.    The Court Should Vacate the Non-Continuation Decision, Permanently Enjoin**
         **Defendants from Enforcing It Against Plaintiff States, and Issue a Declaratory**
5        **Judgment**

6         **1.    The Court should vacate the Non-Continuation Decision**

7         The APA authorizes a court to "hold unlawful and set aside agency action." 5 U.S.C.

8    § 706(2). "The Federal Government and the federal courts have long understood § 706(2) to

9    authorize vacatur" of an unlawful agency action. *Corner Post, Inc. v. Bd. of Governors of Fed.*

10   *Rsrv. Sys.*, 603 U.S. 799, 826-27 (2024) (Kavanaugh, J., concurring); *see also Montana Wildlife*

11   *Fed. v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (vacatur is the "default remedy under the APA").

12   "When a federal court sets aside an agency action, the federal court vacates that order in much

13   the same way that an appellate court vacates the judgment of a trial court." *Corner Post, Inc.*,

14   603 U.S. at 830 (Kavanaugh, J., concurring). The vacated "agency action is treated as though it

15   had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J.,

16   respecting denial of stay). This means the parts of the agency action held unlawful are vacated

17   as a whole—"not that their application to the *individual* petitioners is proscribed." *National*

18   *Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *see also*

19   *Corner Post, Inc.*, 603 U.S. at 830-31 (Kavanaugh, J., concurring) (collecting cases affirming

20   decisions that "vacated the challenged agency rules rather than merely providing injunctive

21   relief . . . [for] the specific plaintiffs").[32] This traditional APA remedy is appropriate here.

22        While courts "retain[] equitable discretion in limited circumstances to remand a decision

23   without vacatur while the agency corrects its errors," *Haaland*, 1274 F.4th at 50, those "limited

---

24        [32] *See also Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025) (stating that "[n]othing" in that decision

25   "resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal
     agency action"); *Natural Grocers v. Rollins*, ---F.4th---, No. 22-16770, 2025 WL 3040145 at \*19 n.7 (9th Cir.

26   Oct. 31, 2025) (holding Ninth Circuit precedent regarding vacatur of unlawful agency action is reconcilable with
     intervening Supreme Court precedent).

1    circumstances" are not met here. In deciding whether to deviate from the usual remedy

2    of vacatur, courts consider two factors: (1) "how serious the agency's errors are," and (2) "the

3    disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against*

4    *Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear*

5    *Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

6          As argued above, Defendants' error here is fundamental. The continuation regulation

7    requires decisions about whether to continue the grants at issue to be made on the basis of the

8    grantee's performance, as measured against published priorities, not mid-stream changes in the

9    administration's policy preferences. *See supra* § IV.B.2. And the over-arching policy itself was

10   arbitrary and capricious and contrary to law "infecting everything that followed." *Montana*

11   *Wildlife Fed. v. Bernhadt*, No. 4:18-cv-00069-GF-BMM, 2020 WL 2615631 at *11 (D. Mont.

12   May 22, 2020) *aff'd in part, rev'd in part by Haaland*, 1274 F.4th 1. Defendants' error is not

13   merely "a technical or procedural one" but instead demonstrates "fundamental flaws . . .

14   mak[ing] it unlikely" that Defendants would take the same actions on remand. *Natural Grocers*,

15   2025 WL 3040145 at *19 (quoting *Pollinator Stewardship Council Council v. EPA*, 806 F.3d

16   520, 532 (9th Cir. 2015)).

17         As to the second factor, it is the challenged agency actions that cause disruptive

18   consequences, not vacatur of them. As this Court has recognized, the Non-Continuation Decision

19   causes numerous disruptive consequences

20         such as the immediate cessation of mental health services to students in rural and
          underserved parts of Plaintiff States, staff layoffs in Grantee programs, a steep
21         decline in graduate student retention in Grant-funded training programs, the mid-
          year termination of scholarships and research projects, the halt to a Grantee
22         university's accreditation process, and the dismantling of the workforce
          development programs in Plaintiff States that the Grants were intended to
23         promote.

24   Dkt. 193 at 17. This Court has already preliminarily enjoined the Non-Continuation Decision as

25   to some grantees. *See generally id.* There is no basis to except it from the "default remedy" under

26

                                    26

the APA. *Haaland*, 127 F.4th at 51-52 (holding district court did not abuse its discretion in vacating unlawful agency action).

> **2.    The Court should permanently enjoin Defendants from implementing or enforcing the Non-Continuation Decision against Plaintiff States**

This Court should also issue a permanent injunction prohibiting future implementation or enforcement of the Non-Continuation Decision—or a materially similar policy—against Plaintiff States, including their instrumentalities. *See* 5 U.S.C. § 703 (authorizing actions for "prohibitory or mandatory injunction" in addition to vacatur). The criteria for permanent injunctive relief mirror those for preliminary injunctions, except that a plaintiff must prevail on the merits. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The scope of an injunction is within the broad discretion of the district court." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011).

> **a.    Defendants' Non-Continuation Decision inflicts irreparable harm upon Plaintiff States and their instrumentalities**

Just as Plaintiff States showed "likely" irreparable harm sufficient to meet the preliminary injunction standard, so, too, do Plaintiff States adequately show "actual" irreparable harm to meet the permanent injunction standard. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (standard for preliminary injunction "is essentially the same as for a permanent injunction except that 'likelihood of' is replaced with 'actual'") (quoting *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 546 n.12 (1987)). Defendants' Non-Continuation Decision has caused actual irreparable harm to Plaintiff States' grantees, mental healthcare systems, and education systems.

As the Court and Defendants (in part) recognize, the Non-Continuation Decision harms grantees because it forces them to lay off mental health providers, project staff, and lose mental health graduate interns,[33] lose the relationships that students and staff have developed with those

---

[33] *See supra* nn.5, 11.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1 providers,[34] cut financial assistance to graduate students and thus loss of funds to graduate

2 programs,[35] and cease mental health services to students in rural and underserved parts of

3 Plaintiff States;[36] it also creates a steep decline in graduate student retention in Grant-funded

4 training programs,[37] halts a grantee university's accreditation process,[38] and generally harms

5 grantees' organizational missions and reputations.[39] *See* Dkt. 193 at 17; Dkt. 201 ¶¶86-87; *Cmty.*

6 *Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 780 F. Supp. 3d 897, 925

7 (N.D. Cal. 2025) (finding irreparable harm satisfied by ongoing harms to organizational mission

8 including "the non-speculative loss of substantial funding") (quoting *Valle del Sol Inc. v.*

9 *Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013)); *Thakur,* 787 F. Supp. 3d at 996 (layoffs and loss

10 of funding causes irreparable reputational harm).

11 Grantees' procedural rights are also harmed by Defendants' unlawful contravention of a

12 fair continuation award process, when grantees have invested time and resources in reliance on

13 that process.[40] Grantees have "designed their budgets, programming, staffing, and partnerships

14 with community organizations based on the understanding that [the Department] would fulfill

15 its obligations." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health &*

16 *Hum. Servs.*, 328 F. Supp. 3d 1133, 1150 (E.D. Wash. 2018). The Non-Continuation Decision

17 disrupts grantees' ability to continue those "operations as planned" and threatens relationships

18 and goodwill with local community partners which constitutes irreparable harm. *Id*. at 1150-51;

19 *Martin Luther King, Jr. Cnty. v. Turner,* 785 F. Supp. 3d 863, 890 (W.D. Wash. 2025) (the

20 "injury of acute budgetary uncertainty is irreparable").

21 Moreover, the Non-Continuation Decision causes Plaintiff States, as Medicaid funders

22 to suffer fiscal injury, unrecoverable and irreparable under the APA, *California v. Azar*, 911 F.3d

23

24 [34] *See supra* n.7.
[35] *See supra* nn.8.
[36] *See supra* n.6, 26.
25 [37] *See supra* nn.8, 23.
[38] *See* Dkt. 103 ¶¶19, 24.
26 [39] *See supra* nn.9-10.
[40] *See supra* nn.12-15; Dkt. 193 at 17.

558, 581 (9th Cir. 2018), and harm to its mental healthcare system. *See supra* § II.C.2; Dkt. 193 at 17 (recognizing the dismantling of the workforce development programs as irreparable harm); *California v. Bureau of Land Mgmt.,* 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018) (finding irreparable harm from agency rule that "will have irreparable consequences for public health") (citation omitted); *Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.,* 841 F. Supp. 2d 349, 358 (D.D.C. 2012) (threats to public health establish irreparable harm). School-based mental healthcare acts as meaningful prevention and early intervention for our states' children.[41] Without the Program grants, Medicaid and CHIP eligible youth will instead turn to state-funded mental health services, the cost of which State Medicaid Agencies are obligated to cover.[42] Further, with fewer preventative school-based mental health services in Plaintiff States, young people's mental health needs will go untreated and rise to an acute level, forcing young people and their families to seek crisis care, which often comes at a higher cost to the state than outpatient care.[43] And other intensive programs, such as wraparound programs, intensive outpatient care, and partial hospitalization services likewise carry a higher cost to the state.[44] Since Congress created the Programs specifically to address the tragedy of school shootings, their loss also presents an increased risk of students engaging in aggression and self-harm using firearms causing costs covered by the State.[45]

The Non-Continuation Decision additionally causes irreparable harm to Plaintiff States' public education systems. *See, e.g., Michigan v. DeVos*, 481 F. Supp. 3d 984, 996 (N.D. Cal. 2020) (delaying or hampering students' participation in school is irreparable harm) (citing *Certain Named & Unnamed Non-Citizen Children & Their Parents v. Texas*, 448 U.S. 1327, 1332-33 (1980)); *New York v. McMahon*, 784 F. Supp. 3d 311, 360-61 (D. Mass. 2025) (financial uncertainty and delay constitutes irreparable injury to states because their student populations

---

[41] *See supra* n.17.
[42] *See supra* nn.19, 25.
[43] *See supra* n.20.
[44] *See, e.g.*, Kirschbaum Decl. ¶29.
[45] *See supra* n.21.

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

are harmed and states have a clear interest in ensuring and protecting the education of its citizens). The loss of Program grants will cause students to suffer mental health problems, including long-term or acute issues.[46] A decrease in school-based mental health providers will also lead to increased absenteeism and learning loss.[47] Absenteeism and learning loss can lead to lower grades and graduation rates and, at times, suspensions and expulsions.[48] And because public schools receive funding allocations based on attendance, absenteeism leads to loss of funding for our states' public schools.[49]

Apart from the devastating harms diminished access to mental health services cause to students and public education, the loss of Program grants will increase other costs to state public education agencies, too. States must provide a Free Appropriate Public Education (FAPE) to their students, 34 C.F.R. § 300.101, and SEAs are often tasked with facilitating special education dispute resolution programs for students who receive behavioral and mental health services under IEPs and 504 plans.[50] The Non-Continuation Decision and the resulting shortage of school-based mental health providers will lead to increased spending to ensure students receive a FAPE. In the meantime, a predictable cascading effect will occur: fewer students, including disabled students, will receive the mental health services they require under their IEP or 504 plan, leading to an increased burden to SEAs in facilitating dispute resolution.[51] By contrast, when school districts have the funds to prioritize mental health programs, the number of special education and due process complaints decreases. As one example, a Washington school district created a Wellness Center in part using grant funding, training, and support from an MHSP grantee. May Decl. ¶11. Since the Wellness Center was created, the number of special education and due process complaints has reduced to almost none, because students are now receiving the

---

[46] *See supra* nn.20-21, 27.
[47] *See supra* nn.27-28.
[48] *See supra* n.27.
[49] *See supra* n.28.
[50] *See* 20 U.S.C. § 1415(e); 34 C.F.R. §300.506 (mediation); 20 U.S.C. § 1415(f)-(j); 34 C.F.R. §§ 300.507-.518 (due process); 34 C.F.R. §§ 300.151-.153 (state complaint procedures); *see* May Decl. ¶21.
[51] *See supra* n.29.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    mental health support they need and the Wellness Center has created trust between families and

2    school leadership. May Decl. ¶28.

3            Defendants' Non-Continuation Decision causes irreparable harm to Plaintiff States'

4    grantees, mental healthcare systems, and education systems and should be permanently enjoined.

5                    **b.        The balance of the equities and the public interest weigh in Plaintiff
                            States' favor**

6
7            The balance of the equities and the public interest factors, which merge when the

8    government is a party, *Aubin v. Bonta*, 665 F. Supp. 3d 1097, 1106 (N.D. Cal. 2023), "easily

9    favor injunctive relief." Dkt. 193 at 20. Because Plaintiff States greatly depend on federal

10   funding to carry out the Congressional purpose of the Programs, the harm caused by the Non-

11   Continuation Decision outweighs any potential hardship to Defendants should the Court order

12   Defendants to follow through with the process of issuing lawful continuation decisions. The

13   public interest is likewise served by agencies complying with the APA. *See Azar*, 911 F.3d

14   at 581; *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The Non-

15   Continuation Decision will cause Plaintiff States to lose funding for common-sense and effective

16   programs increasing the number of school-based mental health services and providers in line

17   with Congress' intent. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir.

18   2021) (promoting the health and safety of students constitutes a public interest). And the threat

19   to these programs far outweighs Defendants' interest in reallocating funds without lawful

20   continuation decisions. The balance of equities and public interest factors therefore support a

21   permanent injunction.

22           **3.        Plaintiffs are entitled to declaratory relief**

23           Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in

24   clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief

25   from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by*

26   *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). "The existence of another

1  adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."
2  Fed. R. Civ. P. 57; *see* 28 U.S.C. § 2201(a); 5 U.S.C. §§ 702-03. Defendants' interpretation of
3  the continuation award presents an active controversy. Dkt. 201 ¶¶12, 55 (affirmatively alleging
4  that continuation award decision may be "made without any consideration of grantee
5  performance").

6      The Court should declare that Defendants may only consider "relevant information
7  regarding grantee performance" when determining whether the § 75.253(a) continuation
8  requirements are met. 34 C.F.R. § 75.253(b); s*ee supra* § IV.B.2.a. Declaratory relief will settle
9  legal rights and remove uncertainty by confirming that grantees are entitled to a continuation
10 award decision based on performance, not new priorities. It will provide certainty not only to
11 Program grants (including next year's continuation award process), but to any discretionary
12 multi-year grant issued by Defendants—resolving a contested issue that affects whether a
13 grantee decides to spend time and resources on a grant application. *See supra* § II.C.1.
14 The declaration will also have "significant educational and lasting importance" that will provide
15 guidance to grantees outside Plaintiff States who apply for multi-year grants. *Bilbrey*, 738 F.2d
16 at 1471. The Court should exercise its discretion to grant declaratory relief.

17                          **V.    CONCLUSION**

18     The Court should grant Plaintiffs' motion for summary judgment on their APA claims;
19 declare that Defendants' Non-Continuation Decision is unlawful and that Defendants may only
20 consider information relevant to grantee performance when determining whether a grantee has
21 met the continuation requirements under 34 C.F.R. § 75.253(a); vacate and set aside the Non-
22 Continuation Decision; and permanently enjoin Defendants from implementing or enforcing the
23 Non-Continuation Decision against grantees within Plaintiff States.

24
25
26

DATED this 10th day of November 2025.

I certify that this memorandum contains 10,982 words in compliance with this Court's Scheduling Order, Dkt. 200.

NICHOLAS W. BROWN
Attorney General of Washington

/s/ Ellen Range
ELLEN RANGE, WSBA #51334
JENNIFER K. CHUNG, WSBA #51583
LUCY WOLF, WSBA #59028
Assistant Attorneys General
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitors General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Ellen.Range@atg.wa.gov
Jennifer.Chung@atg.wa.gov
Lucy.Wolf@atg.wa.gov
William.McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

ROB BONTA
Attorney General of California

/s/ Crystal Adams
CRYSTAL ADAMS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KATHLEEN BOERGERS*
Supervising Deputy Attorney General
KATHERINE MILTON*
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7522
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

*Attorneys for State of California*

KATHLEEN JENNINGS
Attorney General of Delaware

/s/ Vanessa L. Kassab
IAN R. LISTON*
Director of Impact Litigation
JENNIFER-KATE AARONSON*
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Vanessa.Kassab@delaware.gov
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

*Attorneys for the State of Delaware*

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

WILLIAM TONG
Attorney General of Connecticut

*/s/ Andrew Ammirati*
ANDREW AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorney for State of Connecticut*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Michael Drezner*
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

*Attorney for State of Maryland*


KWAME RAOUL
Attorney General of Illinois

*/s/ Emily Hirsch*
EMILY HIRSCH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Emily.Hirsch@ilag.gov

*Attorney for State of Illinois*

AARON M. FREY
Attorney General of Maine

*/s/ Sarah A. Forster*
SARAH A. FORSTER*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

*Attorney for the State of Maine*


PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS*
Chief State Trial Counsel
YAEL SHAVIT*
Chief, Consumer Protection Division
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2277
Katherine.Dirks@mass.gov
Yael.Shavit@mass.gov

*Counsel for the Commonwealth of Massachusetts*

PLAINTIFF STATES' MOTION
FOR SUMMARY JUDGMENT
NO. 2:25-cv-01228-KKE

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  LETITIA JAMES                                RAUL TORREZ
   Attorney General of New York                 Attorney General of New Mexico

2
   /s/ Rabia Muqaddam                           /s/ Aletheia V.P. Allen
3  RABIA MUQADDAM*                              ALETHEIA V.P. ALLEN*
   Special Counsel for Federal Initiatives      Solicitor General
4  MARK LADOV*                                  LAWRENCE M. MARCUS*
   Special Counsel                              Assistant Solicitor General
5  28 Liberty Street                            New Mexico Department of Justice
   New York, NY 10005                           201 Third St. NW, Suite 300
6  212-416-8240                                 Albuquerque, NM 87102
   Rabia.Muqaddam@ag.ny.gov                     505-527-2776
7  Mark.Ladov@ag.ny.gov                         Aallen@nmdoj.gov
                                                lmarcus@nmdoj.gov
8  Attorneys for the State of New York

9                                               Attorneys for State of New Mexico

10
   DANA NESSEL                                  AARON FORD
11 Attorney General of Michigan                 Attorney General of Nevada

12 /s/ Neil Giovanatti                          /s/ Heidi Parry Stern
   NEIL GIOVANATTI*                             HEIDI PARRY STERN*
13 Assistant Attorney General                   Solicitor General
   Michigan Department of Attorney General      Office of the Nevada Attorney General
14 525 W. Ottawa                                1 State of Nevada Way, Suite 100
   Lansing, MI 48909                            Las Vegas, NV 89119
15 517-335-7603                                 702-486-3420
   GiovanattiN@michigan.gov                     HStern@ag.nv.gov
16
   Attorney for the People of Michigan          Attorney for State of Nevada
17

18

19 DAN RAYFIELD                                 PETER F. NERONHA
   Attorney General of Oregon                   Attorney General of Rhode Island
20
   /s/ Coby Howell                              /s/ Kyla Duffy
21 COBY HOWELL*                                 KYLA DUFFY*
   Senior Assistant Attorney General            Special Assistant Attorney General
22 Oregon Department of Justice                  150 South Main Street
   100 SW Market St.                            Providence, RI 02903
23 Portland, OR 97201                           401-274-4400
   971-673-1880                                 Kduffy@riag.ri.gov
24 Coby.Howell@doj.oregon.gov
                                                Attorney for State of Rhode Island
25 Attorney for State of Oregon

26

1 | JOSHUA L. KAUL
Attorney General of Wisconsin

2

*/s/ Frances Reynolds Colbert*
3 | FRANCES REYNOLDS COLBERT*
Assistant Attorney General
4 | Wisconsin Department of Justice
Post Office Box 7857
5 | Madison, Wisconsin 53707-7857
608-266-9226
6 | Frances.Colbert@wisdoj.gov

7 | *Attorney for State of Wisconsin*

8 | *Admitted pro hac vice*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26