Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

                         Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

                    Defendants.

CASE NO.  C25-1228KKE

**NOTICE OF MOTION AND
DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT;
CONSOLIDATED MEMORANDUM
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

(Oral argument on cross-motions:
December 11, 2025 @ 1 p.m.)

### NOTICE OF CROSS-MOTION

      Defendants Linda McMahon, in her official capacity, and the United States Department of

Education (hereafter collectively referred to as "Defendants"), by their attorneys, Charles Neil

Floyd, United States Attorney, and Brian C. Kipnis, Assistant United States Attorney, for the

Western District of Washington, hereby move the Court pursuant to Federal Rule of Civil

Procedure 56, for summary judgment of dismissal on the ground that there are no genuine issues of

material fact and Defendants are entitled to judgment as a matter of law.

1       This motion is made and based on the accompanying Memorandum of Points and

2   Authorities, the pleadings, papers and exhibits filed herein, and such oral argument as the Court may

3   entertain.

4

5                   DATED this 21st day of November 2025

6                       Respectfully submitted,

7                       CHARLES NEIL FLOYD
                    Acting United States Attorney

8

9

10                      */s/ Brian C. Kipnis*
                    BRIAN C. KIPNIS

11                      Assistant United States Attorney
                    Office of the United States Attorney

12                      5220 United States Courthouse
                    700 Stewart Street

13                      Seattle, Washington 98101-1271
                    Phone: 206 553 7970

14                      E-mail: brian.kipnis@usdoj.gov

15                      *Attorneys for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 2
(Case No. C25-1228KKE)

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiffs bring this motion on behalf of themselves, a group of states that are parties to non-continued grant agreements in the School-Based Mental Health Services Grant Program (SBMH) and the Mental Health Service Professional Demonstration Grant Program (MHSP), and hundreds of non-continued grantees who reside in their states but who are not plaintiffs in this lawsuit, seeking partial summary judgment on their claims that the Department's individual decisions to non-continue their grant agreements were all arbitrary and capricious within the meaning of the Administrative Procedure Act.  The Department cross-moves for summary judgment.

Despite the undisputed fact that neither of these programs are ending in any sense but will continue to operate through both continuing grantees and new grantees in the plaintiff States and elsewhere in the nation, the Plaintiffs repeatedly assert that the "loss" of the grant funding resulting from these non-continuance decisions will irreparably harm them.  But this is a false proposition.  These programs are not ending, and program funding is not being "lost."  Instead, this program is continuing through grants that were continued, and new grants being awarded by the Department in December.  The unspoken premise of the States' motion--that their claimed irreparable harm can be alleviated only by forcing the Department to fund not only their own grants but those of their preferred nonparty grantees--is unevidenced and preposterous on its face.

For a number of reasons, most critically, because it lacks subject matter jurisdiction, this Court should deny Plaintiffs' motion for partial summary judgment and grant the Department's cross-motion for summary judgment.  Plaintiffs' complaint asks this Court to override the condition attached to each and every one of their grant agreements whereby the grantees accepted that their grants would be subject to an annual review by the Department including a determination that continuation of their grant agreements for an additional year was "in the best interest of the Federal Government."  Because these grant agreements are contracts, and the goal of this lawsuit is to keep federal funds flowing through those contracts to the grantees, this Court lacks subject matter

jurisdiction to grant Plaintiffs the relief they are requesting under the Administrative Procedure Act (APA). Plaintiffs' claims, if otherwise meritorious, may be remedied only by way of an action for damages in the U.S. Court of Federal Claims.

Even if the Court determines for some reason that Plaintiffs' claims are not subject to channeling to the Court of Federal Claims, this Court still lacks jurisdiction under the APA to review the Secretary's decisions to non-continue these grant agreements. The Department's ultimate determination that continuation of each of the grant agreements is not in the best interest of the Federal Government is quintessentially an unreviewable agency action that is committed to agency discretion by law. There are no meaningful standards against which to judge the Department's exercise of discretion in this respect. And even if the Court were, nevertheless, to undertake judicial review under the APA, Plaintiffs have not established that the Department's decisions to non-continue the grants were arbitrary and capricious or contrary to law.

Finally, if the Court determines that Plaintiffs have demonstrated by their motion that they are entitled to some injunctive or declaratory remedy, the Court may only issue a remedy that applies to grants held by the States themselves. The Court lacks the authority in equity to grant relief to nonparties.

## STATEMENT OF FACTS

On October 4, 2022, the Department of Education issued a Notice Inviting Applications ("NIA") directed at State Education Agencies ("SEAs") and Local Education Agencies ("LEAs") to solicit applications for the School-Based Mental Health Services Grant Program ("SBMH"), 87 Fed. Reg. 60,137 (Oct. 4, 2022), and the Mental Health Service Professional Demonstration Grant Program ("MHSP"), 87 Fed. Reg. 60,144 (Oct. 4, 2022). SBMH and MHSP funding is conditioned upon recipients' "various assurances[,] including those applicable to Federal civil rights laws that prohibit discrimination in programs or activities receiving Federal financial assistance from the Department." *Id.* at 60,143, 60,150. Furthermore, the NIAs were explicit that for multi-year awards, funding for future years was not guaranteed and would depend upon the Secretary of Education's decision to make a "continuation award." *Id.* at 60,144, 60,151.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 4
(Case No. C25-1228KKE)

The Department's duly enacted regulations—cited to by the NIAs—govern continuation awards and establish mandatory criteria for award funding to continue. See 87 Fed. Reg. 60,144, 60,151 (citing 34 C.F.R. § 75.253). There are five separate and independent elements of the continuation criteria; they require the grantee to:

> 1. Either "demonstrate it has made substantial progress" toward the project goals or "[o]btain the Secretary's approval for changes to the project." 34 C.F.R. § 75.253.
>
> 2. "Submit all reports as required by [34 C.F.R.] § 75.118[.]" *Id.* at § 75.253.
>
> 3. "Continue to meet all applicable eligibility requirements of the grant program[.]" *Id.*
>
> 4. "Maintain financial and administrative management systems that meet the requirements in 2 CFR [§§] 200.302[,] 200.303[.]" 34 C.F.R. § 75.253.
>
> 5. "Receive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." *Id.*

The Grantees each applied for funding in response to the NIAs and were awarded SBMH grants, MHSP grants, or both. See *e.g.*, Dkt. ## 51-57, 59–106. On April 29, 2025, the Department informed each of the Grantees that they had not qualified for a continuation award for CY2026. See, *e.g.*, Dkt. # 106-2. Each of the Notices of Non-Continuation informed Grantees:

> The Department has undertaken a review of grants and determined that [Grantee's award] provides funding for programs that reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration, in that the programs: violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds.

*Id.* The Notices each concluded that the relevant grant was "therefore inconsistent with, and no longer effectuates, the best interest of the Federal Government and will not be continued." *Id.* The Notices offered Grantees the opportunity to "request reconsideration of this decision," *id.*, pursuant to 34 C.F.R. § 75.253(g), which outlines the procedures for such an appeal. Most of the Grantees requested reconsideration, although many attempted to withdraw their requests when this suit was filed. Decl. of Carr, ¶¶ 4-11.

After issuing non-continuation notices, the Department announced a new grant competition, with new published priorities, which closed last month. Decl. of Carr, ¶ 12; *and see* Applications for

---

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 5
(Case No. C25-1228KKE)

New Awards; School-Based Mental Health Services Grant Program, 90 Fed. Reg. 46,573 (Sept. 29, 2025); Applications for New Awards; Mental Health Service Professional Demonstration Grant Program, 90 Fed. Reg. 46,584 (Sept. 29, 2025). Eligible applications are currently being evaluated by non-federal peer reviewers. *Id.* at ¶ 14. Any eligible applicants may receive a new award if their applications receive scores that are high enough to be in the funding range. *Id.* Funding for the new grants is scheduled to begin on January 1, 2026. At least five of Plaintiffs' preferred grantees have applied for new grants. *Id.* at ¶ 13.

## ARGUMENT

### I. SUBJECT MATTER JURISDICTION TO ADJUDICATE PLAINTIFFS' CLAIMS IS EXCLUSIVELY IN THE COURT OF FEDERAL CLAIMS

"The Court has an independent duty to assure itself of subject-matter jurisdiction." *MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 735 F. Supp. 3d 1203, 1205 (C.D. Cal. 2024). The Court does not have jurisdiction here. The States' claims are based entirely on grant agreements, a form of contract, challenge a decision of the Secretary to terminate those grant agreements by way of a non-continuation determination, and allege harms that results entirely from "a loss of funding." Thus, they can only be remedied through relief that improperly forces the Department to "keep paying up." Regardless of the labels Plaintiffs attach to their claims, they all stem from their contractual relationship with the Department rather than an "independent, non-contractual source." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 376 (2d Cir. 1999). Indeed, in the absence of the grants, "'no cause of action would exist at all.'" *Id.* at 377; *and see Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) ("General Dynamics's CSA claims do not exist independent of the Modification Center Contract.").

Under these circumstances, a United States District Court has no subject matter jurisdiction to hear the case. *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025); *Nat'l Institutes of Health v. Am. Pub. Health Ass'n,* ___ U.S. ____, 145 S. Ct. 2658, 2659 (2025). The Tucker Act, 28 U.S.C. § 1491(a)(1), which vests exclusive jurisdiction over such claims in the U.S. Court of Federal Claims, "impliedly forbids" judicial review under the APA. *Tucson Airport Auth.*, 136 F.3d at 646 (citing 5 U.S.C § 702).

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 6
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

The States have disingenuously denied that the purpose of their lawsuit is to force the Department to continue funding their grant agreements. However, acceptance of the States' argument requires one to put on blinders. Indeed, their lawsuit makes no sense otherwise. Repeatedly, the States rely on the loss of federal funding resulting from the termination of the grants as the source of their claimed irreparable harm. *See, e.g.* Dkt. # 206, pp. 18, 19, 23, 26, 40 ("[t]he sudden loss of funding has discouraged these students and others from pursuing careers as school-based mental health providers," "loss of these grants directly affect States' mental healthcare and education systems," loss of federal grants will "hurt[ ] both the supply and demand side of Plaintiff States' mental healthcare systems," "cause students to suffer mental health problems," and "increase costs to public health agencies.") Likewise, the States' declarants all identify the loss of federal funding from the SBMH and MHSP programs as the source of their injuries. *See, e.g.*, Dkt. # 209, ¶ 23; Dkt. # 210, ¶ 18; Dkt. # 211, ¶16 ("loss of these federally funded services" means harm to New Mexico).

The harm that the States identify as the source of their injury, the loss of federal funding, cannot possibly be remedied without an order from this Court directing the Department to keep the federal funds flowing to the States and their preferred grantees. Indeed, if all that the grantees were seeking was redress for their supposed "procedural injury," which in this context is code language for the Department's supposed breach of their grant agreements, Plaintiffs would have requested much more limited relief in their complaint. But the entire purpose of this lawsuit is to keep federal program funds flowing to themselves and their preferred grantees. Thus, in deliberately nuanced language, Plaintiffs ineffectively disguise the nature of their request by asking the Court to enjoin "all actions to effectuate" the Department's not-continuation decisions. Dkt. # 1, p. 44. No one can genuinely doubt what this means. And, lest there be any ambiguity in this respect, Plaintiffs ask the Court to obstruct the Department's authority to make discretionary determinations as to how its program funds are best allocated by enjoining the Department from "recompete[ing] program funding," effectively reserving those funds for Plaintiffs and their favored grantees.

These inescapable facts, that the grantees are parties to a contractual agreement with the

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 7
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Federal Government, that they are seeking to override a wholly discretionary contract-based right of the Department to cease doing business with them and, in the process, are asking the Court not only to force the Department to continue funding their preferred grant agreements but also to put a hold on federal funds thereby preventing the reallocation of those funds to other grantees, trigger the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act.  *See NIH*, 145 S. Ct. at 2659.

Regardless of how a claim is styled, a district court lacks jurisdiction if a case is "essentially contractual."  *Climate United Fund v. Citibank, N.A.,* 154 F.4th 809, 819 (D.C. Cir. 2025).  Thus, the States cannot escape the Tucker Act's jurisdictional bar by formulating their contract claims as APA claims.  *Dep't of Educ. v. California,* 604 U.S. 650, 651 (2025); *see also Tucson Airport Auth.*, 136 F.3d at 646.  This jurisdictional bar extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients."  *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *Climate United Fund*, 154 F.4th at 821 (grant agreements are contracts for Tucker Act purposes).  The proper recourse for asserted violations of these grant agreements is a "suit in the Claims Court for damages relating to [the] alleged breach."  *Boaz Housing Authority,* 229 F.2d at 1368; *NIH,* 145 S. Ct. at 2661 (Barrett, J., concurring).

Courts apply a straightforward test, followed in the Ninth Circuit and elsewhere, to determine whether a claim falls within the exclusive Tucker Act jurisdiction of the Court of Federal Claims. For each claim, courts consider "(1) whether 'the source of the rights' asserted is contractual or is 'based on truly independent legal grounds' and (2) whether "the type of relief sought' is a typical contract remedy.  *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 820 (D.C. Cir. 2025); *see also United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023).

Here, both factors support a finding that the Court lacks jurisdiction over what are essentially claims that lie in contract: (1) the source of grantees' rights to the funds are their contractual grant agreements, and (2) the relief sought in this case is specific performance of their grant agreements. Dkt. # 1, p. 44.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 8
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    The conclusion that the States are seeking to enforce contractual agreements on behalf of

2    grantees, regardless of their creative framing of their claims, accords with recent Supreme Court

3    direction.  In *NIH*, 145 S. Ct. 2658, the Supreme Court stayed a district court's order vacating the

4    Government's termination of various research-related grants, holding that "[t]he Administrative

5    Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with

6    jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to

7    enforce any 'obligation to pay money' pursuant to those grants.  *Id.* at 2658.  *NIH* was preceded by

8    *California*, 145 S. Ct. 966, in which the Court granted a stay of an order compelling the Government

9    to make payments based on certain grant agreements, concluding that the Department was likely to

10   succeed in showing that the district court "lacked jurisdiction to order the payment of money under

11   the APA."  *Id.* at 968.

12       The reasoning of those cases applies with full force here.[1]  The States' effort to nullify the

13   Department's rights under its agreements with the grantees to non-continue their grants based on the

14   Department's determinations that continuation of the grant agreements is not in the best interest of

15   the Federal Government, and to enjoin the Department from taking any "actions to effectuate" those

16   determinations, is in substance a claim for breach of contract seeking a specific performance remedy.

17   Such a claim may only be adjudicated in the Court of Federal Claims.  *Doe v. Tenet*, 329 F.3d 1135,

18   1141 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005).[2]

19       It is no answer to say that cases such as *NIH* involved the "termination" of a grant and the

20   Plaintiffs' claims concern non-continuations.  For jurisdictional purposes, there is no discernible

21

22   [1] The Supreme Court pointedly clarified that its "interim orders," like that in *California*, should "inform how a court
     should exercise its equitable discretion *in like cases*." *Trump v. Boyle*, ___ U.S., ___, 145 S. Ct. 2653, 2654 (2025)
23   (emphasis added).  This was reinforced by Justice Gorsuch in his concurring opinion in *NIH*, 145 S. Ct. at 2664
     ("Moreover, even probabilistic holdings—such as *California's* top-line conclusion that "the Government is likely to
24   succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA," must inform
     how a lower court proceeds in like cases.") (cleaned up).

25   [2] As explained in Defendants' Supplemental Brief in Opposition to Motion for Preliminary Injunction (Dkt. # 156), to
26   the extent that *Thakur v. Trump*, 148 F.4th 1096, 1101 (9th Cir. 2025), may be construed to hold differently, that case
     was effectively overruled by the Supreme Court's decision in *NIH*, which was issued a few hours later on the same day.
27   The Government's Motion for Panel Reconsideration or Reconsideration En Banc from the Ninth Circuit's order
     denying the Government's motion for a stay in *Thakur* was argued on November 14 and is awaiting a ruling by the
     Court.
28

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 9
(Case No. C25-1228KKE)

functional or legal difference between a grant that an agency decides to "terminate" before its completion and a grant that an agency decides to "non-continue" before its completion. Moreover, the terminations of Plaintiffs' grants were not future events. As in *NIH*, the Department's non-continuation decisions here were completed actions at the time they were made, and the grants were effectively terminated at that point in every relevant sense. After the non-continuation decisions, the only path left opens to the grantees was to complete the tasks for which they were funded in the current calendar year and wind up their affairs. Insofar as relevant here, the supposed breach of the grant agreements, which Plaintiffs endeavor to characterize as "final agency actions," occurred on the date that the Department decided that the grants would not continue into the next calendar year. This has to be so. Otherwise, Plaintiffs' APA claims have been brought prematurely. APA jurisdiction only exists when there is a "final agency action." 5 U.S.C. § 704; and see *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1104 (9th Cir. 2007). If the Court concludes that the non-continuation decisions were not final and effective on the date they were made, then they were not final agency actions and the States' APA-based claims should be dismissed for that alternative reason. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).[3]

Finally, while the States claim that the grantees' agreements were non-continued in violation of their constitutional and statutory rights, the Court of Federal Claims can consider those constitutional and statutory issues in the context of determining whether the States are entitled to relief, *e.g.*, whether the agreements were improperly non-continued. *Cf. Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 680 (1986) ("we will not indulge the . . . assumption that Congress contemplated review . . . of 'trivial' monetary claims but intended no review at all of substantial statutory and constitutional challenges"); *Tucson Airport Auth.*, 136 F.3d at 647 ("[B]ecause General Dynamics's constitutional claims are contractually-based, the district court lacks jurisdiction under

---

3  This Court has no subject matter jurisdiction to adjudicate the State of Nevada's APA claim for this additional reason. As Plaintiffs admit, Nevada was not a recipient of a non-continuation decision, and its grant is continuing. Dkt. ## 208, p. 22, n.30; 245, ¶15. There is thus no final agency action in Nevada's case. The States cannot avoid this fact by asserting that Nevada has suffered a "procedural injury." Even if true, and it is not, the States cannot overcome the absence of an adverse final agency action in Nevada's case by arguing that Nevada has suffered some ephemeral and peripheral injury. *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017), upon which the States rely, concerns a question of standing and not the separate question of final agency action.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 10
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

the Tucker Act."). The States cannot evade the Court of Federal Claim's mandatory jurisdiction over the Grantees' contract claims through tactical briefing, and this Court should "not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims." *Consol. Edison Co.*, 247 F.3d at 1385.

At bottom, in seeking to enjoin the non-continuation decisions, the States seek an injunction to maintain payments pursuant to their grant agreements with the Department. In other words, the States "want[] the Government to keep paying up." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C.), *injunction pending appeal denied*, (D.C. Cir. Mar. 28, 2025) (per curiam). Because the claims here are "founded upon a contract" they "must be heard in Claims Court." *Id.* at 165 (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.)). ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")).

## II.    THE DEPARTMENT'S NON-CONTINUATION DECISIONS WERE EXERCISES   OF UNREVIEWABLE AGENCY DISCRETION

APA review is unavailable when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Spencer Enters., Inc. v. United States*, 345 F.3d 638, 691 (9th Cir. 2003). The test to determine whether an action is committed to agency discretion asks whether there is a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); see also *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (discussing Chaney).

*Lincoln v. Vigil* is the seminal case concerning § 701(a)(2) in the context of an agency's decision to repurpose lump sum appropriations. 508 U.S. 182 (1993). There, the Supreme Court reviewed the Indian Health Service's (IHS) decision to discontinue funding for mental health treatment centers for Indian children in the Southwest United States, which had been supported by appropriations under the Snyder Act, 25 U.S.C. § 13. The Snyder Act authorized the Service to "expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians," and for the "relief of distress and conservation of health." *Id.* Ultimately,

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 11
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

the Service decided to "discontinue[] the direct clinical services to Indian children in the Southwest" in order to repurpose the funding to align with the agency's new priority of providing services nationwide. *Vigil*, 508 U.S. at 188.

When recipients of services in the Southwest sued to enjoin the Service from repurposing the funds, the Service argued that the decision was committed to agency discretion by law under APA § 701(a)(2). *Id*. at 189. The district court and court of appeals rejected the argument based on the understanding that there is a presumption of reviewability under the APA; however, they were reversed by the Supreme Court, which held that such a presumption was overcome in this context and that "[t]he allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion. After all, the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Vigil*, 508 U.S. at 189–192.

While the Department acknowledges that the Court concluded otherwise in denying the Department's motion to dismiss, the Department respectfully disagrees and submits that *Vigil* is squarely on point with respect to the States' claims here. The Department, like the IHS, received a lump sum appropriation to help improve youth mental health. The Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313, 1342 (June 25, 2022)—which funds MHSP and SBMH and shares similar goals as the Snyder Act to improve health outcomes—authorized the agency to spend appropriated funds on "activities under section 4108 of the ESEA" which in turn directs funds to be used to develop, implement, and evaluate comprehensive programs and activities that "foster safe, healthy, supportive, and drug-free environments that support student academic achievement." 20 U.S.C. § 7114. Congress, however, left it to the agency to determine how those objectives are best achieved.

The Department, like the IHS before it, carried out Congress's marching orders to craft specific programing that sought to address Congress's goals. Where the Service determined to use the appropriations to fund health centers in the Southwest there, the Department determined to use

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 12
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

its appropriations to fund SBMH and MHSP grants here.  In both instances, when the agencies concluded that they could better effectuate Congress's goals a different way, the IHS and the Department sought to discontinue the current use of funding and repurpose it.  Because this is "the very point of a lump-sum appropriation," it is committed to the agency's discretion.  *Vigil*, 508 U.S. at 192.  It is incumbent upon the Department to "meet its statutory responsibilities in what it sees as the most effective or desirable way," *id.*; therefore, it is not just appropriate but indeed required that the Department exercise its discretion to constantly reevaluate its use of lump sum appropriations to ensure Congress's objectives are advanced.

Key to the Department's decision to non-continue the Plaintiffs' grants was its determination under an express condition of the grants that their continuation was not in the "best interest of the Federal Government."  *See also* 34 C.F.R. § 75.253(a)(5).  What is the "best interest of the government" is a policy question best left to the Executive Branch to determine, see *Milk Train v. Veneman*, 310 F.3d 747, 751–52 (D.C. Cir. 2002), and language authorizing the Executive to determine what is "in the interests of the United States" has repeatedly been recognized as judicially unreviewable.  See *Webster v. Doe*, 486 U.S. 592, 600–01 (1988) (holding that a statute authorizing the CIA Director to terminate an employee "whenever he shall deem such termination necessary or advisable in the interests of the United States" was unreviewable under the APA because that language "fairly exudes deference to the Director, and appears … to foreclose the application of any meaningful judicial standard of review"); *cf. United States v. Barajas-Guillen*, 632 F.2d 749, 753 (9th Cir. 1980) (describing in the immigration context a determination of "the best interests of the United States" to be "a wide range of discretion").  There are many different conceptions of what the "best interest" could be, and thus it does not provide a "meaningful standard against which to judge the agency's exercise of discretion."  *Heckler*, 470 U.S. at 830.

Plaintiffs have never identified any meaningful standard that the Court could apply in order to judge the Department's determinations not to continue their grants in the best interest of the Federal Government.  They have simply argued, circularly, that the Department's decision was "cabined by the continuation regulation."  Dkt. # 150, p. 15.  However, nothing in the continuation

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 13
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

regulation purports to limit that discretion.  To the contrary, the regulation codifies, rather than constrains, the agency's discretion by authorizing the Secretary to determine whether the continuation of a grant is in the best interests of the federal government.  It is pure sophistry to argue that the Department's discretionary authority is "cabined" by a regulation that itself provides no meaningful standards limiting the exercise of that discretion.  The regulation simply leads one to the very same place.[4]

Without meaningful standards by which to judge the Secretary's exercise of discretion in discontinuing the grants as not in the best interest of the Federal Government, the Court has no basis for concluding that the Secretary's decision to non-continue the grants was arbitrary and capricious.

III.    PLAINTIFFS ARE INCORRECT ON THE MERITS

i.    *Even if the APA permits review, the Department's Non-Continuation decisions were not arbitrary and capricious.*

A court's review under the arbitrary and capricious standard is "deferential," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) and merely examines whether the agency's decision "was the product of reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983).  A court must "uphold [even] a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (quotation marks omitted).  Here, because the Department's actions were reasonable and reasonably explained, *FCC v. Prometheus Radio Project*, 592 U.S. 414, 417 (2021), they satisfy the deferential "arbitrary and capricious" standard.

Notwithstanding the questionable premise that an agency must explain a decision not to spend its lump sum appropriation in a certain manner, the Department's review of SBMH and MHSP grant awards was individualized and well-reasoned.  In conducting its review, the Department identified four policy priorities that it used as the criteria for determining the "best interest of the Federal Government": (1) advancing civil rights, (2) prioritizing merit, fairness and

---

4  Plaintiffs offer an erroneous reading of the regulation that essentially attempts to read out of existence entirely the independent standalone requirement for continuation of grant agreements that the grantees "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government."  34 C.F.R. § 75.253(a)(5).  This contention is rebutted later in this memorandum.  *See* Argument, *infra*, pp. 20-24.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 14
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

excellence in education, (3) supporting the well-being of students the program intends to help, and (4) ensuring the appropriate use of federal funds.  See Notice of Non-Continuation at 1 (Dkt. # 106-2).  Moreover, in its notices, the Department explained that the grants were ending based on non-continuation authorities available when the Grantees received the grant awards.  *Id*.  So, the agency, pursuant to terms previously laid out, effectuated a long-held authority to determine whether grant awards are in conformity with current policy.  That is well within the bounds of reasonable explanation.

Moreover, the Department was explicit in its NIAs seeking applicants that funding for future years was not guaranteed but contingent upon a "continuation award under 34 CFR 75.253." 87 Fed. Reg. at 60,144, 60,151.  And the continuation requirement was also included in each grant's terms and conditions.  Thus, from the very beginning of the contractual relationship, Grantees were on notice that future years' funding was not guaranteed.

Throughout Plaintiffs' brief they refer to a supposed "change of policy" by the Department as if it was an established fact in the lawsuit, but without pointing anywhere in the Administrative Record or elsewhere to a supposed change in a relevant Department policy.  For example, Plaintiffs assert, without pointing to the record, that "[t]he April 29 notices discontinuing grants not based on performance, but rather, on new priorities represented an unannounced change of this approach." Dkt # 208, p. 27, *ll*. 1-2.  This argument, which neither demonstrates the existence of either an "old policy" or a "new policy," is simply a convenient device by which the States are attempting to use arguments of counsel as a substitute for the existence of any evidence in the record.

Even so, that a new Administration may have goals and priorities that do not align precisely with those of a past Administration do not amount to a "policy change."  Any other view of the law would require the Government to justify the different goals and priorities of a new administration with prior consideration of reliance interests, no matter how reasonable, every time the new administration takes an action, no matter how inconsequential, if that action is portrayed as being "different," no matter how minutely, from the goals or priorities of a predecessor administration.  That cannot be the law.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 15
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

As all relevant times, grant continuation has depended on a determination by the Department that it serves the best interests of the Government.  Plaintiffs point to nothing in the record evidencing a change of policy that is remotely akin to the formal order under review in *F.C.C. v. Fox Television Stations*, Inc., 556 U.S. 502, (2009), which overtly and radically changed the FCC's interpretation of the indecency standard.  While different administrations may vary in their respective assessments of what is in the best interests of the Federal Government, differing views on such an expansive topic do not constitute a "policy change" as envisioned by *Fox Television*.

Lacking evidence, the States resort to argument.  But the Department has never had a policy of limiting its non-continuation decisions to a performance-based analysis alone and Plaintiffs point to no evidence in the record that establishes either the existence of a prior policy to that effect or a change from that prior policy.

Moreover, because the grantees were clearly forewarned before they entered into the grant agreements of the potential non-continuation of their grants during annual reviews if they did not receive a determination from the Secretary that continuation of their project was in the best interest of the Federal Government, the Department cannot be faulted for having "failed" to take into account "*serious* reliance interests."  *See Fox Television,* 556 U.S. at 515 (emphasis added).  It was an express condition of these grants that non-continuation would follow if the grantee did not receive a determination by the Secretary that continuation of their grants was in the "best interest of the Federal Government."  Any reliance on a contrary understanding could not be, by definition, "serious."  *See Boydstun Metal Works, Inc. v. Parametric Tech. Corp.*, 1999 WL 476265, at *5 (D. Or. May 19, 1999) (applying Oregon law and concluding that a reliance interest did not arise where a contract contained an integration clause forewarning the plaintiff against relying on prior representations).

Where, as here, the grantees knew, or should have known, that their grants were subject on an annual basis to a condition that continuation of the grant must be determined to be in the best interest of the Federal Government, any "reliance" that any grantee may have developed in the continuation of their grants in any given year could not be "serious," and the Department had no

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 16
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

obligation under *Fox Television* to take non-serious reliance interests into account before deciding to non-continue the grant agreements pursuant to an express condition of the grant authorizing it to do so.

The States' remaining arbitrary-and-capricious arguments rest on pure conjecture. The States weakly attempt a comparison of the circumstances of the hundreds of grantees they purport to represent to those of the Indiana Department of Education, Fort Wayne Community Schools in Indiana and Norman Public Schools in Norman Oklahoma whose grants they learned through media reports were not non-continued. Dkt. # 208, p. 15, *ll.* 16-26. (Plaintiffs conveniently ignore the fact that the grant award to one of their own, *i.e.*, the Nevada State University, was also not non-continued. Dkt. # 245, ¶ 15). They imply that there is some arbitrary inconsistency in the Department's treatment of those grantees as compared to their preferred set of grantees simply because of the different outcomes. However, the States point to nothing in the record that demonstrates any inconsistency in the Department's decision-making process, and such an inference cannot be drawn simply because their preferred grantees, and their distinct programs, had a different result from other grantees and their distinct programs.[5]

Similarly, the States rely on a provision in the General Education Provisions Act, 20 U.S.C. § 1228a (GEPA), to support their claims, but the only obligation placed on the Department by that statute is "to require each applicant for assistance under an applicable program . . . to develop and describe in such applicant's application the steps such applicant proposes to take to ensure equitable access to, and equitable participation in, the project or activity . . ." Plaintiffs do not show that the Department violated this statue in any way, nor could they. Instead, Plaintiffs argue that "because Defendants discontinued Program grants based on applicants' compliance with the GEPA Equity Directive, the discontinuances were arbitrary and capricious."

---

[5] The States have various gripes about the process for choosing new grant recipients for the coming calendar year. Dkt. # 208, p. 16, *ll.* 1-11. However, no claim in their operative complaint is directed to the legality of the competition for new grants and so it is not properly an issue for the Court to consider. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Insofar, as the FAQ's caution new applicants to submit applications for grants that "serve different students," the advice is directed to grantees who are seeking an award of multiple grants. Those applicants are cautioned to avoid proposing grants that serve overlapping communities because that would place them at risk of receiving unfavorable reviews in the scoring process.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 17
(Case No. C25-1228KKE)

Dkt. # 208, p. 30, *ll.* 2-4.  But nothing put forward by the States establishes that any grants were non-continued for this reason.  Rather Plaintiffs ask the Court to draw this conclusion in gross from isolated denials of reconsideration requests that individually identify defects in certain of the Grantees' programs.  Plaintiffs assert that the identified defects result from the Grantees' efforts to comply with the "GEPA Equity Directive."  Dkt. # 208, p. 30, n.31.  From that premise, the States ask the Court to draw the unsubstantiated conclusion that *all* of the hundreds of grants the States put at issue in this case were non-continued because of statements included in their grant applications in response to an obligation the Department imposed on them to comply with 20 U.S.C. § 1228a.

This improper extrapolation aside, Plaintiffs overlook that 20 U.S.C. § 1228a(d) provides that "[n]othing in this section shall be construed to alter in any way the rights or responsibilities established under the laws cited in section 1221(d) of this title."  In turn, 20 U.S.C. § 1221(d) provides that "[n]othing in this chapter shall be construed to affect the applicability of title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, title V of the Rehabilitation Act of 1973, the Age Discrimination Act, or other statutes prohibiting discrimination, to any applicable program."

The defects in the non-continued grants identified by the Department, on which Plaintiffs' argument relies, reflect circumstances in which the Department construed the grantees' program to cross a line from inclusivity to potentially discriminatory exclusivity.  *See, e.g.,* AR0259927 (noting that practices followed by grantee were "inherently exclusionary and do[] not provide equal access to clinicians outside of the promoted category or preferred group."); AR026478 (reserving resources to 10 candidates with diverse backgrounds); AR027305 (plan for "at least 40% of counselors to be from traditionally underrepresented groups (Latinx, AAPI, other).").  The Department acted well within its authority in determining that the continuation of grants that included such exclusionary provisions, was not "in the best interest of the Federal Government."  Thus, even if the Department's individual decisions to non-continue these grants are reviewable under the APA, and they are not, the Department's reliance on these grounds to non-continue the grants in question was not "arbitrary and capricious."  Moreover, even if the Court were to question the Department's rationale for

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 18
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

refusing to grant reconsideration in some cases, and there is no reason that it should, there is no basis for the Court to extrapolate issues it may identify in one or more grant discontinuances to the entire universe of Plaintiffs' preferred grantees.

In summary, because the Department conducted an individualized review to determine alignment with articulated criteria for what it understood to be the government's best interest, and the Grantees knew from the very inception of their grants that continuing funding was contingent and should not be relied upon, the Department's decisions pass the APA's deferential arbitrary and capricious review standard.

ii.    *The Non-Continuation Decision were not contrary to law.*

Even if the States' APA claims were subject to APA review, and they are not, they have not shown that the Department's non-continuation decisions were contrary to law under 5 U.S.C. § 706(2)(A).  Plaintiffs accuse the Department of "changing the rules and imposing new priorities partway through a multi-year grant." Dkt. # 208, p. 234.  But the grantees did not receive unlimited five-year grants.  They were given grants that were funded for a maximum duration of five years but subject to review for continuation on an annual basis.  And regardless of any non-serious expectations that the grantees may have developed, they were never given a guarantee that their grants would be renewed each year.  Indeed, the opposite is true.  The grantees received only annually renewable grants subject to, among other conditions, a determination by the Department that a renewal of the grant was "in the best interest of the Federal Government."  34 C.F.R. § 75.253(a)(5).

The States' effort to characterize the Department's decision to not renew their grants as an application of new unlawful "priorities" also fails.  The "priorities" to which the States refer are selection criteria that are applicable only to the awarding of a *new* grant.  34 C.F.R. § 75.217 ("The Secretary selects *applications for new grants* on the basis of applicable statutes and regulations, the selection criteria, *and any priorities* or other requirements that have been published in the Federal Register *and apply to the selection of those applications.*") (emphasis added).  After selection and award of a grant, those priorities have no application.  Rather, the five discrete factors in 34 C.F.R.

§ 75.253 come into play and are determinative.  Thus, a decision not to renew a grant because the Department, under new leadership, determines that renewal of a grant is not in the best interest of the federal government is not the unlawful imposition of a "new priority" on the Grantees, nor any violation of a any requirement to publish new priorities *via* notice and comment regulations.  The grantees were already selected for grant awards pursuant to a process that they do not challenge here.  Having received a grant from the Department, the requirement that continuation of their grants be in the best interest of the federal government is a condition of renewal to which the grants were subject at the time they were awarded.  Thus, Plaintiffs' contention that the Department somehow acted contrary to law by failing to follow the APA's notice and comment procedures in applying the "best interests" criterion in deciding whether to continue their grants, Dkt. # 208, p. 34, *ll.* 16-24, should be rejected

The States repeatedly say that the Department acted contrary to law in non-continuing their grants because the Department considered factors other than grantee performance.  *See, e.g.,* Dkt. # 208, p. 36, *ll.* 6-9 ("The continuation regulation requires decisions about whether to continue the grants at issue to be made on the basis of the grantee's performance, as measured against published priorities, not mid-stream changes in the administration's policy preferences.").  The number of times that the States' repeat this erroneous premise in their memorandum does not make it true.  To the contrary, as properly incorporated in their grant agreements as a separate and independent condition which Plaintiffs must satisfy for their grants to be renewed is the requirement that they "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government."  34 C.F.R. § 75.253(a)(5).  Stated otherwise – even if a grantee is making substantial progress, submitting all required reports, and continuing to meet the eligibility requirements of the program, the Department's regulations impose a clear and separate requirement that each project receive an annual determination that continuation is in the best interest of the Federal Government.

The States contend, however, that this requirement means something other than what it clearly and straightforwardly says.  In the process they endeavor to interpret the regulations so that

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 20
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

that this separate and independent requirement is written out of existence.  Such contortions are

unnecessary and improper here because the reservation of this authority by the Department is clear

and unambiguous.  *Pac. Mar. Ass'n v. Loc. 63, Int'l Longshoremen's & Warehousemen's Union*,

198 F.3d 1078, 1081 (9th Cir. 1999) ([I]f the statute is clear, one looks no further."); *and*

*Diefenderfer v. Merit Sys. Prot. Bd.*, 194 F.3d 1275, 1278 (Fed. Cir. 1999) ("If the terms of the

statute or regulation are unambiguous, no further inquiry is usually required.").  The Department's

authority under the regulation is plain and unambiguous and thus the Court need "look no further."

However, because a straightforward application of this requirement is distinctly unhelpful to

their case, the States skip over their obligation to demonstrate ambiguity and proceed directly to an

argument that the regulation means something opposite of what it clearly says, using this maneuver

in an effort to judicially eliminate the Secretary's reserved discretion.  This argument should be

flatly rejected.

Even if the Court were to overlook the absence of any ambiguity in the regulation, the States'

effort to restrict the Department's purview in its renewal decisions to considering only the Grantees'

past performance fails.  An examination of the history of this regulation demonstrates that the best

interest determination has, since as far back as 1980, always been a separate and independent

requirement of the regulation.  45 Fed. Reg. 22,497 (Apr. 3, 1980), redesignated at 45 Fed. Reg.

77,368 (Nov. 21, 1980).  In 1997, for example, 34 C.F.R. § 75.253 provided, in pertinent part, as

follows:

> (a) The Secretary may make a continuation award for a budget period after the first
> budget period of an approved multi-year project if:
>
> (1) The Congress has appropriated sufficient funds under the program;
> (2) The recipient has either—
>     (i) Made substantial progress toward meeting the objectives in its approved
>         application; or
>     (ii) Obtained the Secretary's approval of changes in the project that—
>      (A) Do not increase the cost of the grant; and
>      (B) Enable the recipient to meet those objectives in succeeding budget periods;
>
> (3) The recipient has submitted all reports as required by § 75.118, and
>
> *(4) Continuation of the project is in the best interest of the Federal Government.*

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 21
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

(b) Subject to the criteria in paragraph (a) of this section, in selecting applications for funding under a program the Secretary gives priority to continuation awards over new grants.

*Id*. (emphasis added).

The subsection of the current version of the regulation relied upon by the States as the basis for their argument that the Department's may only consider Grantee performance in its best interest determination, 34 C.F.R. § 75.253(b), was added to the regulation much later. It was first proposed as an amendment to the current regulation in 2012 (77 Fed. Reg. 74,392), and the regulation was amended to include it in 2013 (78 Fed. Reg. 49,338). In other words, the requirement that continuation decisions were subject to the discrete requirement that continuation is in the best interest of the federal government long preceded the newer provision of the regulation that the States argue completed swallowed up the Secretary discretion to make a best interest determination on some other ground beside grantee performance.

To support their argument, the States would need to identify some clear indication in the Notice of Proposed Rulemaking (NPRM) that the Department's purpose in proposing this new subsection was to limit the Department's preexisting unrestricted authority under the regulation in making a best interest determination. They cannot, and do not.

The NRPM states that:

Under current § 75.253(a), a grantee may only receive a continuation award if the grantee has met certain requirements, *including the requirement that the grantee make substantial progress toward the objectives of the grant*. If a grantee does not make substantial progress, it must obtain permission from the Department to make changes to the project that would help the grantee make substantial progress during the remainder of the project period.

77 FR 74,392, 74,399 (emphasis added). The NPRM explains that the reason for the proposed new subsection is because "current § 75.253 does not describe the standards used *to determine whether a grantee has made substantial progress on its grant.*" Id. (emphasis added). Thus, according to the NPRM, the purpose of the change is "to clarify the Department's standards." *Id*. *Nowhere* in the NPRM does the Department indicate that the purpose of this new subsection of the regulation was to limit its preexisting discretion under a discrete and independent subsection of the regulation making

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 22
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

renewal of an existing grant agreement contingent on a determination that continuation is in the best interest of the federal government.

The earlier regulatory history relied on by the States (59 Fed. Reg. 30,258) is not to the contrary. To support their flawed argument, the States unfortunately resort to the device of pulling sentences out of context to change their meaning. The States assert:

> In 1994, the Department updated regulations governing the continuation award process—including the requirement "that continuation of the project is in the best interests of the Federal Government"—to make continuation decisions "based entirely" on performance reports. 59 Fed. Reg. 30258, 30259 (June 10, 1994).

Dkt. # 208, p. 13, *ll.* 13-16 (citing 59 Fed. Reg. 30258, 30259 (June 10, 1994)). In context, however, the recommendation under consideration was "to make non-competing continuation awards on the basis of acceptable and timely performance reports *without requiring the recipient to submit applications for those awards*." 59 Fed. Reg. at 30258 (emphasis added). The Department noted continuation funding would be based on evidence that the grantee has "met the standards for continuation included in 34 CFR 75.253," including that continuation of the project is in the best interest of the federal government, and mentioning last that "the grantee submit, as required by § 75.118, every report that it must submit to get the continuation award." *Id*. at 30,259. In the next sentence, quoted out of context by the States, the Department said:

> This last standard will take on increased importance under the amended regulations because the continuation award decision—including the decision about whether the grantee has made substantial progress—will be based entirely on the submission of reports as specified by the Secretary, *rather than on the submission of a continuation award application.*

*Id*. (emphasis added). Regrettably, the emphasized clause, key to understanding the meaning of this sentence, was purposely omitted by the States from their memorandum. Read in context, this statement clearly means that the requirement that the grantees submit the reports required by § 75.118 will take on more importance because the decision whether or not the grantee has made substantial progress will "be based entirely" on the submission of those reports rather than a "continuation award application" *because grantees will no longer be required to submit continuation award applications* under the amended regulations. It certainly does not have the meaning attributed

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 23
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

to it by the States, *i.e.*, that grant renewal decisions will thereafter be based entirely on performance reports.

The States' effort to undermine the plain meaning of the regulation by relying on a passage in a guidance document is also unavailing. *See* Dkt. # 208, p. 13, *ll.* 16-22. The guidance text does not support the Grantee's interpretation of the regulation. Certainly, one reason that renewal of a grant might not be in the best interest of the federal government is poor performance by the grantee. However, nowhere in the passage of the document relied on by the grantee is there any indication that poor grantee performance is the *only* factor that the Department can consider in deciding that renewal of a grant is not in the best interest of the federal government. And, in the event of ambiguity, particularly in determining whether the Department has acted contrary to law as the States contend, district courts must rely on regulations, which have the force and effect of law, not informal agency guidance, which does not. Thus, an agency cannot be held to have violated the APA by acting in contravention of agency guidance. *See Columbia Snake River Irrigators Ass'n v. Lohn*, 2008 WL 750574, at *2 (W.D. Wash. Mar. 19, 2008) (citing *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1135-36 (9th Cir.1982)); *Stork v. United States*, 278 F. Supp. 869, 876 (S.D. Cal. 1967), *aff'd*, 430 F.2d 1104 (9th Cir. 1970) ("The instructions in this manual were not promulgated in accordance with the Administrative Procedures Act, therefore, the regulations control over any conflicting provisions in the manual.")

Lastly, in deciding not to renew the grants, the Department did not violate 34 C.F.R. § 75.253(c). That regulation simply affords continued grantees a priority to received available program funding over new grantees. Specifically, this provision provides "*Subject to the criteria in paragraphs (a) and (b) of this section,* in selecting applications for funding under a program, the Secretary gives priority to continuation awards over new grants." (emphasis added). The reference in the emphasized clause of the regulation is to the requirements in 34 C.F.R. § 75.253(a) and (b) for a grant to be continued, including the requirement that the Department determine that renewal is in the best interest of the federal government. Because prioritization is "subject to" the requirements for continuation under the regulation, the regulation only affords a priority to grants that the

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 24
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Department determines should be continued.  In substance what this means is that *continued*

grantees do not have to compete against new grantees for available program funding.  Contrary to

Plaintiffs' argument, this regulation was not violated by the decision not to renew their grant

agreements because as non-continued grantees the regulation affords them no priority to anything.

IV.    THE OTHER *WINTER* FACTORS FAVOR DENIAL OF THE INJUNCTION

To obtain an injunction, the moving party must establish it is likely that it will suffer

irreparable harm without an injunction.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22

(2008).  Monetary harm typically does not constitute irreparable harm, as economic losses can

generally be recovered.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197,

1202 (9th Cir. 1980); *cf. Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297

(D.C. Cir. 2006) ("Mere injuries, however substantial, in terms of money, time and energy

necessarily expended in the absence of a stay are not enough.").

The States' motion places heavy reliance on irreparable injuries that will allegedly be

suffered by non-plaintiff third parties.  Indeed, they have put hundreds of declarations of nonparties

into the record for the purpose of making a case that those third parties will suffer harm, allegedly

irreparable, in various and sundry ways.  However, in the irreparable harm analysis, these

declarations are all irrelevant.  The States can satisfy this element of the *Winter* factors only by

showing a likelihood that they, *i.e.*, the States themselves, will suffer irreparable injury.  *CMM Cable

Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 622 (1st Cir. 1995) ("[T]he issuance of a

preliminary injunction requires a showing of irreparable harm to the movant rather than to one or

more third parties.") (emphasis in original); *California v. Kennedy*, ___ F.Supp.3d ___, 2025 WL

2807729, at *5 (D. Mass. Oct. 1, 2025); *Exeltis USA Inc. v. First Databank, Inc*., 2017 WL 6539909,

at *9 (N.D. Cal. Dec. 21, 2017).

As to the States, the Supreme Court's order in *California*, 145 S. Ct. at 969, supports finding

that the States have not shown irreparable injury here.  The Supreme Court held it was appropriate to

stay a temporary restraining order enjoining the government from terminating various education-

related grants, reasoning that "if [the grantees] ultimately prevail, they can recover any wrongfully

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 25
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

withheld funds through suit in an appropriate forum." *Id.* Accordingly, the States have not demonstrated irreparable injury for which the extraordinary remedy of a preliminary injunction is either necessary or appropriate.

The States' say that the discontinuances of their grants will cause irreparable harm from the "the immediate cessation of mental health services" and other related harms. However, because it is untrue, they have no evidence that such services will stop. The Department intends to continue funding the programs and has already solicited and received applications for grants in 2026. Decl. of Carr, ¶¶ 12-14.

*Winter* also requires the Plaintiffs to demonstrate that the balance of equities tips in their favor, and that the injunction they seek is in the public interest. 555 U.S. at 20. These factors merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Having failed to demonstrate imminent irreparable harm or likely success on the merits, the States fare no better as to the public interest at stake. The States assert that the public interest is served "by agencies complying with the APA" but that proposition leads nowhere as it simply collapses the public interest inquiry into the merits inquiry.

There is a significant public interest in allowing the democratically accountable leaders at the Department exercise their discretion to spend a lump sum appropriation in the way they determine best serves the American people and the objectives of Congress by pooling the grant funding from non-continued grants and allocating it to new grantees who are better positioned to move the programs forward. *See Climate United Fund*, 154 F.4th at 830. While the Department appreciates that the States would like to keep federal funding flowing to themselves and their preferred grantees, that is a weaker interest. *Id.* The Government also has a strong interest in safeguarding the public fisc. *Climate United Fund,* 154 F.4th at 830. Thus, in *California*, the Court found irreparable harm where the government risked paying millions in grants and "[n]o grantee 'promised to return withdrawn funds should its grant termination be reinstated.'" 145 S. Ct. at 969. The States likewise make no such promise here.

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 26
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Here, the States suffer no irreparable injury and the equities and the public interest weigh against the injunctive relief they seek.

## V.    THE INJUNCTIVE REMEDY SOUGHT BY PLAINTIFFS FAR EXCEEDS THE RELIEF TO WHICH THEY ARE ENTITLED IF ANY OF THEIR CLAIMS ARE MERITORIOUS

It is blackletter law that a district court may not determine the rights of persons not before it. *See Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916).  Moreover, injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  Applying those principles in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), the Supreme Court, in a case concerning a "universal" injunction, clarified that district courts lack authority to issue orders "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 839-841.  Under this complete-relief principle, "the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief to *the plaintiffs* before the court." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025) (emphasis added).  Moreover, in *CASA*, the Court emphasized that "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 853-854.

The injunctive relief that Plaintiffs request in this action goes well beyond the scope of complete relief.  It is also disallowed by clear precedent in this Circuit.  *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983) (district court's injunction vacated and remanded because the relief granted was not limited to apply only to plaintiffs.)

The States' complaint asks the Court to enjoin the Department's non-continuation decisions for *all* grantees residing within their states, including grantees who are not plaintiffs in this lawsuit. Dkt # 1, p. 44.  It also specifically requests an order freezing program funds in favor of these non-plaintiff grantees by enjoining the Department from awarding them to other program grantees. *Id.* They argue that in order to afford them "complete relief," it is necessary for the Court to enjoin the non-continuance of grants to third parties who are not plaintiffs in this case.  However, as the Supreme Court observed, while "the complete-relief principle has deep roots in equity," *to the extent*

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 27
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*respondents argue that it justifies the award of relief to nonparties, they are mistaken*." *CASA*, 606 U.S. at 851 (emphasis added); *see also Zepeda*, 753 F.2d at 728 n.1. The Court acknowledged that there may be instances where "afford[ing] the plaintiff complete relief[] [leaves] the court [with] only one feasible option," which "might have the practical effect of benefiting nonparties," but any such "benefit[] [to] nonparties . . . '[is] merely incidental.'" *Id*. at 852 (citation omitted). *CASA* makes clear, however that relief providing incidental benefits to nonparties is only warranted where "it is all but impossible for courts to craft relief that is complete and benefits only the named plaintiff." *Id*. at 852, n.12.[6]

The injunction that the States would have the Court enter here contravenes these principles. It goes beyond simply enjoining the Department with respect to grants held by the States' own component entities and thereby affording a "mere incidental" benefit to nonparties under circumstances in which it is all but impossible to craft relief that is complete and benefits only the States. Rather, the States are asking the Court to provide relief not only to themselves but also directly to non-plaintiffs, overturning hundreds of individual decisions to non-continue the grant agreements held by these nonparties *en masse*.

In prosecuting this action on behalf of nonparty grantees on the theory that the non-continuation of their grants has a negative impact on the States' need for school-based mental health services, the States are attempting to surreptitiously prosecute a *parens patriae* lawsuit against the Federal Government. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The doctrine of *parens patriae* allows a sovereign to bring suit on behalf of its citizens when the sovereign alleges injury to a sufficiently substantial segment of its population, articulates an interest apart from the interests of particular private parties, and expresses a quasi-sovereign interest."). However, the law is clear that a state is prohibited from bringing a *parens patriae* action against the Federal Government. *See, e.g., Haaland v. Brackeen,* 599 U.S. 255, 294–95 (2023); *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1177 (9th Cir. 2024) ("[S]tates do not have standing to

---

6  The Court gave as "an archetypal case" where "one neighbor sues another for blasting loud music at all hours of the night," providing "complete relief" to the plaintiff—*i.e*., an order to turn the music off—would "necessarily benefit the defendant's surrounding neighbors too." *Id.* at 851-852

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 28
(Case No. C25-1228KKE)

sue the federal government in a third-party *parens patriae* capacity based on alleged injuries "to an identifiable group of individual residents.").

This court should not countenance the States' effort to circumvent this rule. The States could have joined all of the nonparty grantees in this action, or they could have sought the Court's approval to prosecute a class action. Instead, they chose neither option. They are bound by their own strategic choices. Regardless, the States are not entitled to obtain a remedy for non-plaintiffs via a shortcut that attempts to circumvent the *parens patriae* ban. Similarly, they should not be permitted to bypass restrictions on third party standing and class certification in order to obtain relief on behalf of parties who are not plaintiffs in this lawsuit. *See CASA, Inc.*, 606 U.S. at 868 (Alito, J., concurring).

Thus, if the Court determines that the States are entitled to a remedy in this action, only the States themselves are entitled to an injunction with respect to grants held by them. To the extent that any non-continued grantee is not shown by Plaintiffs to be an agency of their governments, they are not entitled to obtain relief in this lawsuit.

## VI.     ANY INJUNCTIVE RELIEF SHOULD BE STAYED PENDING

If the Court issues an injunction, the Department respectfully requests that it be stayed pending a determination by the Solicitor General whether to appeal and, if appeal is authorized, pending any appeal.

///
///
///
///
///
///
///
///
///

1

**CONCLUSION**

2      For the foregoing reasons, the Department respectfully requests that the Court deny the

3  Plaintiffs' motion for summary judgment, grant the Department's cross-motion for summary

4  judgment and enter a judgment of dismissal in favor of Defendants.

5

**CERTIFICATION**

6      I certify that this memorandum contains 10,572 words, in compliance with this Court's order

7  of November 3, 2025 (Dkt. # 200).

8          DATED this 21st day of November 2025.

9          Respectfully submitted,

10

11          CHARLES NEIL FLOYD
            United States Attorney

12

            */s/ Brian C. Kipnis*
13          BRIAN C. KIPNIS
            Assistant United States Attorney
14          Office of the United States Attorney
            5220 United States Courthouse
15          700 Stewart Street
            Seattle, Washington 98101-1271
16          Phone: 206 553 7970
            E-mail: brian.kipnis@usdoj.gov
17
            Attorneys for Defendants
18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION …[etc.] - 30
(Case No. C25-1228KKE)