Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>                Defendants. | CASE NO. C25-1228KKE<br><br>**NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT**<br><br>(Note On Motion Calendar For: January 20, 2026) |

**NOTICE OF MOTION**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendants hereby respectfully move this Court to alter or amend its December 19, 2025 Judgment, as implemented by its December 23, 2025 Order on Joint Status Report (Dkt. # 273). As explained in the attached memorandum and declarations, it is not possible for Federal Defendants to comply with the terms of the Judgment within the timelines established in the Order on Joint Status Report. To avoid this manifest injustice and allow Federal Defendants sufficient time to exercise their administrative discretion in the matter, Defendants respectfully move the Court to amend the dates for compliance with its judgment as provided in the attached Proposed Amended Judgment.

Given the concern about imminent harm expressed in the Court's order, the Department proposes to provide interim funding to each grantee affected by the Court's judgment for a period of

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND
ORDER ON JOINT STATUS REPORT - 1
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

up to four months from January 9, 2026, or until a new administrative decision on continuation of a grant agreement is made by the Department.

This motion is based upon the pleadings, papers and administrative record on file in this case, the memorandum of points and authorities and the declarations submitted in support of this motion, the attached Proposed Amended Judgment, and such other matters as are properly before the Court at the time of its determination.[1]

## INTRODUCTION

In an order issued hours after federal offices closed in Washington, D.C., for the Christmas holiday, the Court ordered Defendants to make individualized "lawful continuation determinations" with respect to some 138 grant agreements that are the subject of the Court's order, by December 30, 2025. In effect, this is two business days. In doing so, the Court wholly adopted the Plaintiffs' proposal, despite the absence of any demonstration by them that they have any first-hand knowledge of or demonstrated competency in the Department's administrative processes and procedures in making non-competing continuation (NCC) decisions. Correspondingly, the Court wholly disregarded the statement submitted by Defendants, *i.e.,* the persons who *do* possess such knowledge.

To be clear, as demonstrated by the declarations submitted by the Department with this motion, it is impossible for the Department to meaningfully exercise its administrative discretion under the deadlines ordered by the Court. As such, the order is manifestly unjust, and the Court should rectify that injustice by granting this motion and by issuing a revised order that does not require the Defendants to do the impossible.

Moreover, because Defendants now offer to provide provisional NCC awards for an interim period of up to four months from January 9, 2026, with available funds to all grantees covered by the

---

[1] Defendants' counsel will contact the Court to schedule a telephonic motion for the purpose of staying the Court's Order on Joint Status Report (Dkt. # 273) while it considers this motion. Assuming a stay is granted, Defendants agree, commencing on January 9, 2026, to fund all grant agreements affected by the judgment on prorated basis for the estimated 5 weeks required to adjudicate and issue a ruling on this motion to alter or amend the judgment. If, the Court grants this motion, the prorated funding will continue for up to four months, as necessary to reconsider each of the 138 grant agreements covered by the judgment.

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT - 2
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1  Court's judgment, the "imminent harm" that led the Court to issue such an extreme deadline for
2  compliance will be alleviated. Accordingly, the Court can permit this process to play out according
3  to the more reasonable and realistic timeframe proposed by Defendants.

4        For the reasons set forth in this memorandum, the Court should alter or amend its judgment
5  to establish a new deadline that affords the Department sufficient time to meaningfully exercise its
6  administrative discretion with respect to each of the grants in question.

## STATEMENT OF FACTS

8        On Friday, December 19, 2025, the Court entered judgment on the States' claims in this
9  lawsuit. Among other things, the Court ordered the Department to "make a lawful continuation
10  determination as to each Grant, no later than a date to be set after the parties meet and confer *on a*
11  *reasonable timeline for compliance . . .*" Dkt. # 270 (emphasis added). The Court decided to
12  resolve this question without a motion. Instead, the procedure specified by the Court required the
13  parties to file a stipulated motion or alternatively, if agreement could not be reached, a "joint status
14  report," by noon on the following Tuesday, December 23, 2025, setting forth the parties' "respective
15  positions." *Id*. The Court's order did not ask for argument or evidence, did not provide a
16  mechanism or time for arguments to be exchanged, considered and opposed, and did not establish a
17  procedure for hearing and resolving differences, dramatic differences as it turned out, between the
18  parties' opposing proposals.

19        In a meeting between counsel for the opposing parties, it became immediately apparent that
20  there would be no agreement on a "reasonable timeline for compliance." Declaration of Kipnis, ¶ 2.
21  Accordingly, counsel for the parties agreed that the alternative method of proposing a reasonable
22  timeline for compliance was required. *Id.*

23        In compliance with the Court's order, the Department provided a proposed timeline for
24  compliance, based on information provided by sources within the Department, setting forth the steps
25  necessary to reconsider continuation decisions for the 138 grant agreements at issue. Declaration of
26  Kipnis, ¶ 3. The time proposed to complete this task was a reasonable and relatively modest
27  timeline of 105 days. Dkt. # 272, pp. 8-9. In contrast, the States' portion of the joint status report

28  NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND
ORDER ON JOINT STATUS REPORT - 3
(Case No. C25-1228KKE)

1  contained eight pages of argument, unsupported by evidence of any personal knowledge of the

2  Department's internal processes, proposing a deadline of December 30, 2025.  *Id.* at pp. 1-8.  In

3  effect, the States' proposal meant that the Department would have only two business days to comply

4  with the Court's order as to all 138 grantees.  Decl. of Kipnis, ¶ 4.

      Under the procedure chosen by the Court, the Department had no opportunity to respond to the States' arguments.  Indeed, Defendants' counsel did not see the States' lengthy argument until approximately 15 minutes before the Court's filing deadline.  Decl. of Kipnis, ¶ 5.[2]

      At 4:10 p.m. PST (7:10 p.m. EST), the Court issued its "Order on Joint Status Report." Dkt. # 273.  Because of the timing of this order, federal offices in Washington, D.C., were already officially closed for the day, and many Federal employees would not be returning to work until the following Monday, December 29, 2025, when Federal offices officially reopened.[3]  Indicating that it "finds that Plaintiffs' proposal is appropriate given the Court's finding of imminent harms to Plaintiff States and the grantees, as the grants are set to expire on December 31, 2025," the Court ordered the Department to make lawful individualized continuation determinations by December 30, 2025.  Dkt. # 273, p. 2.

      In effect, the Court's order requires the Department to make 138 individualized non-continuation decision in just two business days, December 29 and December 30, under

---

[2] According to the Court's order, "Defendants do not explicitly object to Plaintiffs' timeline as not feasible for practical reasons such as upcoming government closures for the holidays, or loss of staff at the Department of Education." Dkt. # 273, p. 2, *ll.* 3-5.  However, the Department's proposal accounts for those contingencies.  Neither the procedure prescribed by the Court, not the timing of Defendants' receipt of the States' portion of the Joint Status Report allowed for a comprehensive rebuttal of the States' arguments.  The Court also indicated its belief that the deadline it chose was justified because "Defendants have been on notice since October 2025 that Plaintiffs were likely to prevail in this action." *Id.* at p. 2, *n.*1.  However, the preliminary injunction was issued on the basis of more limited grounds.  The Department could not have known the new legal rules established by the Court for reconsidered continuation decisions until the Court issued its ruling on the summary judgment motions.  For example, the Department could not have known at the preliminary injunction stage that the Court would determine at the summary judgment stage that the Department would be limited in the types of information it could consider in making an NCC decision.

[3] On December 18, 2025, Executive Order 14371 was issued, providing that "[a]ll executive departments and agencies of the Federal Government shall be closed and their employees excused from duty on Wednesday, December 24, 2025, and Friday, December 26, 2025, the day before and the day following Christmas Day, respectively." *See Providing for the Closing of Executive Departments and Agencies of the Federal Government on December 24, 2025, and December 26, 2025*, 90 FR 60545.

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND
ORDER ON JOINT STATUS REPORT - 4
(Case No. C25-1228KKE)

circumstances in which many of the employees involved in the process would not know that they were facing this deadline until they walked in the door on Monday morning.

As set forth in the attached declarations of Defendants' employees, it is not possible for the Department to exercise its administrative discretion and comply with the Court's deadline. Declaration of Carr, ¶ 4. As already noted, the issuance of the Court's order occurred on December 23, after the close of the Department's headquarters in offices in Washington, D.C. *Id.* Due to an executive order, many Department employees would not return to work until the Department officially reopened on December 29. Thus, the Court's order effectively gives the Department only two business days to comply with the Court order. Relatedly, because many of the grantees were expected to be unavailable due to the holidays, the Department would be unable to gather additional information from them necessary to fulfill its obligations. *Id.* Also, the Department has limited resources and staff available to apply to the task. *Id.*

Those problems aside, because the Department adheres to a stringent protocol and process for grant-making designed to ensure compliance with grantmaking regulations, policies, and processes, the Department will be unable to exercise its administrative discretion to determine whether a grant should be continued by the deadline established by the Court. *Id.* at ¶ 4. The steps necessary to complete this process are as follows.

First, the program office would review current available information, such as the most recently submitted Annual Performance Report (APR) and notes from the grantee's file. *Id.* at ¶ 8. The program office could, as necessary, also request additional information from the grantee as well as administrative sources to determine eligibility for NCC awards. *Id.* APRs include information on the previous year's activities, budget information, such as expenditures and encumbered funds, and progress towards the grantee's goals and objectives. *Id.* at ¶ 9. Because some grantees submitted APRs several months ago (either in April or June, depending on the cohort), while others have not at all, the program office could request updates to the reports to ensure that all information and progress is considered in assessing NCC eligibility. *Id.* at ¶ 8. The program office would assess each grantee's progress towards their goals and objectives using the standard process of determining

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT - 5
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

"substantial progress." *Id.* at ¶ 10.  The program office would also check each grantee for active System for Award Management (SAM.gov) registration, as required by 2 C.F.R. § 200.206.  *Id.*

The program office also needs to analyze each grantee's compliance and risk history, consistent with 2 C.F.R. § 200.206.  *Id.* at ¶ 11.  This analysis combines grantee records with the Department's Entity Risk Review and addresses reporting and financial management requirements, including but not limited to internal controls and associated risks, grant oversight, and financial risk and expenditure history, such as excessive drawdowns or large available balances (LABs).  *Id.*

Following the review and analysis of grantees' progress, the program office would assess the grantees' available balances, requested budgets, and their proposed activities for the next performance period.  If the grantee has a large available balance (LAB), the program office will determine if the NCC award should be reduced accordingly.  *Id.* at ¶ 12.

Following these steps, the program office would prepare the internal NCC slate memorandum or memorandums, using approved NCC templates, to document the process, recommended total awards, and special conditions or considerations.  *Id.* at ¶ 13.  The program office would coordinate with the Department grants policy team to facilitate the multi-level Departmental review and clearance process, including edits and changes based on comments.  *Id.* at ¶ 14.  This process requires concurrence from all Department offices responsible for ensuring compliance with legal, budget, and program components, as well as alignment with policy and administrative priorities.  *Id*.  Once the slate is approved, the program office would work with appropriate offices to allot and commit funds, complete Congressional Notification, and prepare the awards for obligation and grantee notification.  *Id.* at ¶ 15.

The steps outlined above are necessary to ensure compliance with relevant regulations and the Department's internal policies and procedures, as well as to reduce the likelihood of errors in the grant award process.  *Id.* at ¶ 16.

The Court's order indicates that it chose Plaintiffs' proposal over Defendants' proposal because of "imminent harms to Plaintiff States and the grantees, as the grants are set to expire on December 31, 2025."  Dkt. # 273.  To mitigate this concern, the Department offers to provide

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND
ORDER ON JOINT STATUS REPORT - 6
(Case No. C25-1228KKE)

provisional NCC awards for an interim period of up to four months from January 9, 2026, with available funds to all grantees covered by the Court's judgment. *Id.* at ¶ 5. During this time, the Department would individually review each grant for continuation in accordance with relevant laws and regulations and established Department procedures and criteria. *Id.*

Under this proposal, the Department would take immediate steps to make interim NCC awards no later than January 9, 2026, to comply with the Court's order. *Id.* at ¶ 6. The source of these funds would be the program funding reserved pursuant to the Court's October 27, 2025 preliminary injunction. *Id.*

## LEGAL STANDARDS

A motion to alter or amend the judgment is timely if filed within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 59(e). The district court "has considerable discretion when considering a motion to amend a judgment." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citing Fed. R. Civ. P. 59(e)). Although Rule 59(e) itself does not state the grounds on which relief may be granted, the Court of Appeals has established that altering or amending the judgment is proper where "the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Circuit City Stores. v. Mantor*, 417 F.3d 1060, 1064 (9th Cir. 2005) (*citing Sch. Dist. No. 1J, v. Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

## ARGUMENT

### I. AMENDMENT OF THE DEADLINES IN THE JUDGMENT IS NECESSARY TO ALLOW DEFENDANTS TO FULLY EXERCISE THEIR ADMINISTRATIVE DISCRETION AND THEREFORE AVOID MANIFEST INJUSTICE.

The scope of this Rule 59(e) motion is limited to one discrete issue in the Court's Judgment that warrants amendment – the deadlines by which the Defendants must comply with the substantive terms of the Judgment. Such an amendment is proper because the consequences of leaving the Judgment in place without alteration are "manifestly unjust" as explained in the attached declaration of Dana Carr. *Circuit City*, 417 F.3d at 1064. As set forth in the Carr declaration, it is not possible

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT - 7
(Case No. C25-1228KKE)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

for the Department to meaningfully exercise its administrative discretion in making the new individualized continuation decisions required by the Court's judgment in just two business days. An injunction containing requirements as to which compliance is not possible constitutes manifest injustice. *Delta Smelt Consol. Cases*, 2011 WL 1740308, at *6 (E.D. Cal. May 4, 2011) ("Federal Defendants have demonstrated that the existing Final Judgment would cause manifest injustice, as it would require FWS and Reclamation to complete their duties on remand in a time frame impossible for them to achieve."). Since Defendants did not have the chance to argue or brief the justification for the longer compliance period requested in the Joint Status Report, a motion under Rule 59(e) is the proper vehicle for raising such concerns.

Federal Defendants have demonstrated that the existing Final Judgment would cause manifest injustice, as it would require Defendants to complete their duties on remand in a time frame impossible for them to achieve.

## II. THE DEPARTMENT WILL MITIGATE THE IRREPARABLE HARM THAT PERSUADED THE COURT TO ORDER COMPLIANCE ON AN SUCH A SHORT DEADLINE

The Court's order indicates that it felt compelled to set such a short deadline for compliance "given the Court's finding of imminent harms to Plaintiff States and the grantees, as the grants are set to expire on December 31, 2025." Dkt. # 273, p. 2. The Department proposes to minimize the imminent harm identified by the Court by agreeing to fund the grant agreements of all 138 grantees on a prorated basis for a period of up to four months starting on January 9, 2026. Thus, the urgency to complete reconsideration of all 138 grant agreements by December 30, 2025, is mitigated. If the Court alters the deadline as proposed by Defendants, the Department will be able to exercise its administrative discretion as to each grantee on a case-by-case basis, consistent with legal and regulatory requirements, each affected grantee will receive funding on an interim basis during the reconsideration process, and manifest injustice can be avoided.

///

///

///

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT - 8
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court grant the Department's motion and alter or amend its judgment to require Defendants to make new continuation decisions on a case-by-case basis as to all grantees covered by the judgment within 105 days.

## CERTIFICATION

I certify that this memorandum contains 2,935 words, in compliance with the Local Rules.

DATED this 30th day of December 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
E-mail: brian.kipnis@usdoj.gov

Attorneys for Defendants

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT AND ORDER ON JOINT STATUS REPORT - 9
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970