The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 2:25-cv-01228-KKE |
| Plaintiffs, | PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | NOTE ON MOTION CALENDAR: JANUARY 30, 2026 |
| Defendants. | ORAL ARGUMENT REQUESTED |

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

    A. Defendants Have No Excuse for Missing the Deadline ............................................ 2

    B. Defendants Recompeted Program Funds to New Grantees and Frontloaded Funds to Their Favored Grantees.................................................................................. 4

    C. Defendants Did Not Comply with the Court's Deadlines ......................................... 5

    D. Defendants' Proposed Compliance Plan Is Ineffective, and Grantees Need at Least Six Months of Funding ................................................................................... 6

III. ARGUMENT .................................................................................................................... 8

    A. The Court Should Enter a Meaningful Compliance Plan to Enforce Its Injunction ................................................................................................................. 8

    B. The Court Should Order an Accounting and Discovery........................................... 10

IV. CONCLUSION ................................................................................................................ 12

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Calif. Dep't of Soc. Servs. v. Leavitt*,
  523 F.3d 1025 (9th Cir. 2008) .................................................................................. 8, 11

*Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc.*,
  774 F.3d 935 (9th Cir. 2014) ......................................................................................... 10

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  524 F.3d 917 (9th Cir. 2008) ........................................................................................... 8

## Statutes

Bipartisan Safer Communities Act,
  Pub. L. 117-159, Title II, 136 Stat. 1313 (2022) ............................................................ 4

Continuing Appropriations Act,
  Pub. L. 119-37, 139 Stat. 496 (2025) ..................................................................... 10, 12

## Other Authorities

*U.S. Department of Education Awards Over $208 Million in Mental Health Grants*,
  ED.gov (Dec. 11, 2025), https://www.ed.gov/about/news/press-release/us-department
  -of-education-awards-over-208-million-mental-health-grants ...................................... 4

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

The Court should use its inherent authority to enforce its orders. These orders require Defendants to "make lawful continuation determinations by December 30, 2025" (Dkt. 273 at 2) and enjoin Defendants from "implementing or enforcing through any means" the unlawful discontinuation of Program grants within Plaintiffs States (Dkt. 269 at 35). To comply with the former, Defendants must make lawful continuation award determinations and any resulting awards by the end of this month and increase their proposed five-week interim awards to six months. As to the latter, Defendants appear to be using questionable accounting measures to circumvent the Court's orders, and Plaintiffs request an accounting and discovery to uncover whether this is so.

There is no dispute Defendants missed the Court's deadline. To remedy their conceded non-compliance, Defendants have proposed a plan under which they would issue five-week interim awards while they made continuation decisions. But a five-week award does not ameliorate the continuing harms from Defendants' unlawful discontinuances—let alone the harm from missing the Court's deadline. Grantees operate on academic terms, not weeks. Graduate students pay tuition for the semester upfront and cannot simply take five weeks of classes. Schools cannot break semester-long employment contracts. To effectuate the remedial purposes of the Court's order, Defendants' compliance plan must, at minimum, provide six months of interim funding, so that grants are funded for the entire academic term.

Defendants also seem to be playing a shell game to contravene the Court's order by hiding funds so Defendants can use lack of funding as a pretext to discontinue the grants. This accounting trick, known as "frontloading," allows Defendants to tie up funds without committing them; although they are technically obligated, the recipient cannot yet access the funds, and Defendants can claw it back. Defendants may be frontloading continuation awards for favored grantees, exceeding amounts they would typically receive. Plaintiffs have additional questions—like why Defendants told the Ninth Circuit they reserved Bipartisan Safer Communities Act

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

(BSCA) FY2025 funds for Plaintiffs' potential continuation awards (which expired on December 31, 2025), then told Plaintiffs they reserved BSCA *FY2026* funds (which don't expire until December 31, 2026).

Plaintiffs request the Court order an accounting and discovery so they can determine if Defendants are manipulating their accounts or taking other actions to implement the unlawful discontinuation of Plaintiffs' grants through other means.

## II. BACKGROUND

### A. Defendants Have No Excuse for Missing the Deadline

Plaintiffs have long sought an order requiring Defendants to make lawful continuation decisions "prior to the next budget period." Dkt. 1 at 44. Plaintiffs have long explained the discontinuances cause ongoing irreparable harm and a speedy resolution was necessary. *See, e.g.*, Dkt. 49 at 21-22, 36-40; Dkt. 150 at 20; Dkt. 168 at 3-7; Dkt. 184 at 1-2. Plaintiffs have repeatedly stated their expectation that a preliminary injunction would restore the status quo for discontinued grantees, resulting in Defendants "revisit[ing] this continuation award decision at the end of this year." Sept. 5, 2025 Hr'g Tr. 7:10-20; *see also* Oct. 9, 2025 Hr'g Tr. 6:7-11.

On October 27, 2025, the Court granted a preliminary injunction (PI), enjoining Defendants from "implementing or enforcing through any means the discontinuation decisions as to [certain grantees], including recompeting Program funds," and ordered Defendants to "immediately take every step necessary to effectuate this Order." Dkt. 193 at 24. Defendants set aside program funds to fund the PI grantees' potential continuation awards. Dkt. 195 at 1.

On October 31, 2025, the parties submitted competing proposals for the summary judgment briefing. Dkt. 198. Defendants proposed briefing be completed by December 22, 2025. *Id*. at 5. Plaintiffs argued that "an expedited briefing schedule is necessary for Plaintiffs to obtain relief before the current budget periods expire on December 31, 2025," *id*. at 2, and Defendants represented the Department would be able to "fully comply" under their proposed schedule: "Notwithstanding Plaintiffs' representations to the contrary, there is nothing to indicate that the

PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Department will be unable to fully comply with a ruling of the Court…if the Court adopts…the
2  briefing schedule proposed by Defendants." *Id*. at 4-5. The Court set briefing to be completed
3  by December 5. Dkt. 200.

4  Plaintiffs then filed their Motion for Summary Judgment, Dkt. 208, and, consistent with
5  the requested relief in their Complaint, requested the Court order Defendants to make lawful
6  continuation determinations by December 26, 2025, Dkt. 1 at 44; Dkt. 208-1 at 2-3. Defendants
7  did not raise any concerns about this deadline in their briefing. *See* Dkts. 256, 264.

8  On November 12, 2025, Defendants appealed the PI, then sought an emergency stay so
9  Defendants could award the funds set aside by the PI to new grantees. Dkt. 252; App. Dkt. 7.1.
10 Defendants represented they had not identified any other reason to discontinue the grants and,
11 without a stay, would therefore "have little choice" but to issue any continuation awards before
12 the appropriations expired on December 31, 2025. App. Dkt. 43.1 at 9, 12-13; *see also*
13 App. Dkt. 31.1 at 2 (appeal would be mooted shortly because "the funds are likely to be
14 obligated…to one set of recipients or another").

15 At oral argument, Defendants again represented that if the PI were not stayed, they would
16 be issuing continuation awards by the end of the year: "We can't use the same money for two
17 purposes. That's why we're coming to the court and saying we need resolution of this relatively
18 quickly because ***we need to be able to parcel this out in an orderly fashion before the end of***
19 ***the year.***" Hr'g Emer. Mot. Stay PI, *Washington v. Dep't of Educ.*, No. 25-7157, at 6:37-6:51
20 (Dec. 2, 2025), https://www.ca9.uscourts.gov/media/video/?20251202/25-7157/. Two days
21 later, the Ninth Circuit denied Defendants' emergency motion. Dkt. 263.

22 At the summary judgment hearing, Plaintiffs again explained, "the Department should
23 already be going through the continuation-award process" for PI grantees, including any reports.
24 Dec. 11, 2025 Hr'g Tr. 39:2-41:9. But in response to the Court's question, Defendants, for the
25 first time, expressed doubt about their ability to meet an end of year compliance deadline,
26 claiming it would take "months." *Id*. 63:4-64:18.

B. **Defendants Recompeted Program Funds to New Grantees and Frontloaded Funds to Their Favored Grantees**

On the same day as the summary judgment hearing, Defendants awarded over $208 million in new grant awards.[1] Defendants issued first-year grant awards to the new grantees as well as "frontloaded" second and third-year continuation awards that the new grantees could not yet access. *See* Dkt. 272 at 6-7; Range Decl. ¶5.

Defendants also frontloaded funds to their favored continuing grantees. For instance, in early December 2025, Defendants issued a continuation award for year 4 (2026), then issued a separate "frontloaded" continuation award for year five (2027). *See, e.g.*, Sharp Exs. A-B; Range Exs. A-B. The second award includes a term that restricts the grantee's access to the frontloaded funds:

> The grantee is receiving an award of $733,582. $370,126 is a frontload for the Year 5 funding. The grantee may not draw down any Year 5 funds prior to the start of the relevant budget period and must (1) demonstrate that it is making substantial progress toward meeting the project objectives, and (2) expend all prior year funds.

Sharp Decl. ¶5. Frontloading is highly unusual. *See, e.g., id.* ¶7; Kilgus Decl. ¶11.

When the PI was entered, there remained BSCA appropriations of $200 million per year of FY2025 funds (to be used in 2026) and FY2026 funds (to be used in 2027), so $400 million total. Bipartisan Safer Communities Act, Pub. L. 117-159, Title II, 136 Stat. 1313, 1390 (2022). As such, the amounts set aside under the PI should have covered two years of operations for the PI grantees—2026 and 2027.

Instead, Defendants admitted they only set aside "enough money to fully fund the preliminary injunction grantees for a year." Dec. 31, 2025 Hr'g Tr. (Emer. Tr.) 25:4-5; *see also* Dkt. 281-2 at 2. Defendants claim the only funds available now are the funds set aside for PI grantees. Emer. Tr. 25:2-4. Defendants have indicated the PI funding pool may only have enough

---

[1] *U.S. Department of Education Awards Over $208 Million in Mental Health Grants*, ED.gov (Dec. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-awards-over-208-million-mental-health-grants.

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

money to provide four months of funding for all affected grants. *Id.* 25:8-9. Defendants told this Court that additional funding might be available from FY2026 appropriations, *id.* 26:1-11, but the Department did not request any funds for the Program's account (School Safety National Activities) for FY2026. Range Ex. C.

**C.      Defendants Did Not Comply with the Court's Deadlines**

On December 19, 2025, the Court granted summary judgment to Plaintiffs. Dkt. 269 at 29. As a remedy, the Court ordered Defendants issue new continuation decisions by a deadline agreed to by the parties or proposed in a joint status report. *Id.* at 33, 35-36. The Court's primary concern was that it was unclear whether grantees had submitted necessary performance reports. *See, e.g.*, *id.* at 33.

After review of the parties' joint status report, and "consistent with the remedial purpose of the Court's injunction," the Court set the deadline for continuation determinations by December 30, 2025, and continuation awards by December 31, 2025. Dkt. 273 at 2. Defendants had a full week to make continuation decisions and issue any awards.

Although this period fell over several federal holidays, Defendants knew that Plaintiffs had been suffering increasingly irreparable harm that would skyrocket if funding ended on December 31, 2025. *See, e.g.*, Dkt. 208 at 16-20; Dkt. 269 at 31-32. This Court had previously recognized these harms were entitled to more weight than Defendants' inconveniences. *See* Dkt. 172 at 2; Dkt. 186 at 2. Defendants also knew they were ordered to treat PI grantees as if they had not been discontinued and Plaintiffs were likely to win on the merits. Most damningly, Defendants claimed they could "fully comply" with the Court's ruling if the parties completed summary judgment briefing as late as December 22. Dkt. 198 at 4-5. If Defendants didn't want Department staff to work over the holidays (despite having proposed that schedule themselves), they could—and should—have planned ahead.

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Instead of complying with the deadlines, Defendants filed a motion to amend judgment on December 30. Dkt. 276. Defendants also requested an emergency telephonic hearing so that it could move to stay the deadlines. *Id*. at 2 n.1; *see* Emer. Tr. 2:15-17.

At the emergency hearing, the Court stated that Defendants had not complied with the December 30 deadline. Emer. Tr. 2:23-3:4. The Court raised "the question of what to do with the government's noncompliance." *Id*. 4:8-10. The Court noted Defendants had proposed offering an interim award while they made continuation decisions, and that this was the minimum needed to ameliorate Defendants' noncompliance. *Id*. 4:11-18. The Court recognized this proposal might not be sufficient and invited additional briefing. *Id*. 33:10-15. The Court ordered Defendants to issue interim awards by January 6, 2026. Dkt. 282. Defendants stated that these interim awards would likely exhaust the funds that they had reserved under the preliminary injunction order. *Id.* 25:2-7.

On January 5, 2026, Defendants updated its compliance proposal to provide each grantee with five weeks of interim funding and make determinations by February 6, 2026. Dkt. 285 ¶3.

On January 6, Defendants filed an exhibit showing the grantees were supposed to receive nonzero amounts, they issued interim awards in the amount of $0.[2] Dkt. 286-1. Defendants then filed another exhibit correcting the amounts. Dkt. 287-1. Defendants' noncompliance with the interim award deadline has caused confusion and chaos.[3]

**D.    Defendants' Proposed Compliance Plan Is Ineffective, and Grantees Need at Least Six Months of Funding**

The Court has issued injunctions, protecting grantees in Plaintiff States caused by Defendants unlawful conduct, and set compliance deadlines that Defendants failed to meet. Dkts. 193, 269, 273, 276.

---

[2] *See, e.g.*, Sahakian Ex. B.
[3] Beaudoin Decl. ¶8; Brogan-Baranski Decl. ¶7; Brown Decl. ¶9; Burton Decl. ¶9; Chamberlin-Scholle Decl. ¶11; Clauson Decl. ¶11c; Furedi Decl. ¶10; Giannini-Previde Decl. ¶8; Gragg Decl. ¶10; Johnson-Smith Decl. ¶9; Nocero Decl. ¶9; Ragsdale Decl. ¶11; Rodriguez Decl. ¶9; Webb Decl. ¶9.

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Defendants' proposal to provide a five-week interim award does nothing to address these ongoing harms. Grantees operate by academic terms—not by weeks.[4] MHSP grantees cannot offer scholarships or recruit for the upcoming semesters.[5] SBMH grantees cannot hire mental health professionals whose employment contracts require their positions to be funded for the full academic term.[6] Grantees *will* lose graduate students and mental health staff.[7] Worst of all, a five-week award creates special burdens because if a grantee is lawfully discontinued partway through the semester, the sudden loss of funding will disrupt mental health services to kids and may require grantees to divert resources to transitioning students' treatment to other providers in order to minimize the harm.[8]

A five-week interim award prolongs the uncertainty that Plaintiffs have suffered since April 2025, and that should have been resolved on December 30, 2025. Grantees cannot meaningfully budget and plan their activities.[9] Projects have been stalled for months.[10] A five-

---

[4] Beaudoin Decl. ¶8a; Burton Decl. ¶11; Dishongh Decl. ¶13; Eklund Decl. ¶10; Hawkins Decl. ¶9j; Kilgus Decl. ¶10; Temple Decl. ¶9; Yancsurak Decl. ¶9.

[5] Beaudoin Decl. ¶8a; Brown Decl. ¶10a; Ciriza Decl. ¶10d; Dishongh Decl. ¶12a; Knight-Teague Decl. ¶9a; Ostendorf Decl. ¶8; Rodriguez Decl. ¶10a; Sahakian Decl. ¶10; Santamaria Decl. ¶9b; Strear Decl. ¶¶9a, 10; TISP Decl. ¶13c; Toston Decl. ¶12; Webb Decl. ¶¶10a-c; Yancsurak Decl. ¶8.

[6] Brogan-Baranski Decl. ¶8a; Chamberlin-Scholle Decl. ¶12a; Clauson Decl. ¶11; DeOrian Decl. ¶11; Furedi Decl. ¶11a; Giannini-Previde Decl. ¶9a; Gustafson Decl. ¶9a; Hawkins Decl. ¶9b; Hire Decl. ¶13a; Iversen Decl. ¶10a; Johnson-Smith Decl. ¶10a; Judson Decl. ¶10c; Miller Decl. ¶8; Ongart Decl. ¶11h; Ragsdale Decl. ¶12a; Welter Decl. ¶9.

[7] Amoussou Decl. ¶10a; Beaudoin Decl. ¶8h; Brogan-Baranski Decl. ¶8a; Brown Decl. ¶10a; Chamberlin-Scholle Decl. ¶12a; Clauson Decl. ¶¶11a, c-d, k; Dishongh Decl. ¶¶12a-b; Furedi Decl. ¶11a; Giannini-Previde Decl. ¶9a; Gustafson Decl. ¶9a; Hawkins Decl. ¶¶9a-b; Hire Decl. ¶13a; Iversen Decl. ¶10a; Johnson-Smith Decl. ¶¶10a, c; Johnston Decl. ¶10; Knight-Teague Decl. ¶¶9a-d; MacCallum-Ceballos Decl. ¶11; Miller Decl. ¶7; Mocarski Decl. ¶11; Nadler Decl. ¶8; Ongart Decl. ¶¶11a-h; Ragsdale Decl. ¶12a; Rodriguez Decl. ¶¶10a-c; Sahakian Decl. ¶¶9-10; Santamaria Decl. ¶¶9b-c; Shaia Decl. ¶13; Soto-Delgado Decl. ¶10; Strear Decl. ¶¶9a-b; Webb Decl. ¶¶10a-c; Welter Decl. ¶9a; Yancsurak Decl. ¶8.

[8] Beaudoin Decl. ¶8k; Brown Decl. ¶10b; Brogan-Baranski Decl. ¶8b; Chamberlin-Scholle Decl. ¶12b; Clauson Decl. ¶¶11e-h; Dishongh Decl. ¶12c; Furedi Decl. ¶11c; Giannini-Previde Decl. ¶10; Gustafson Decl. ¶9d; Hawkins Decl. ¶9c; Iversen Decl. ¶10b; Knight-Teague Decl. ¶9e; Johnson-Smith Decl. ¶11; Nelson Decl. ¶9d; Nocero Decl. ¶10b; Ragsdale Decl. ¶12c; Rodriguez Decl. ¶10d; Sahakian Decl. ¶12; Santamaria Decl. ¶¶9b-c; Soto-Delgado Decl. ¶11; Welter Decl. ¶10; Yancsurak Decl. ¶9.

[9] Babler Decl. ¶¶9-10; Beaudoin Decl. ¶8; Brogan-Baranski Decl. ¶8c; Brown Decl. ¶10; Chamberlin-Scholle Decl. ¶13; Ciriza Decl. ¶10e; Clauson Decl. ¶11; CRISP Decl. ¶3; Furedi Decl. ¶13; Gragg Decl. ¶13; Giannini-Previde Decl. ¶11; Gustafson Decl. ¶11; Hire Decl. ¶14; Johnson-Smith Decl. ¶12; Knight-Teague Decl. ¶10; Ongart Decl. ¶11; Ragsdale Decl. ¶12; Rodriguez Decl. ¶10; Santamaria Decl. ¶9; Strear Decl. ¶¶9, 11; Webb Decl. ¶11.

[10] Babler Decl. ¶9; Johnson-Smith Decl. ¶10b; Sahakian Decl. ¶9a; Toston Decl. ¶10a.

PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

week award will continue to disrupt grantees' ability to meet their performance targets—effectively sabotaging grantees' progress for the second year in a row.[11]

Only a six-month interim award, covering the second half of the school year, will provide sufficient certainty, allow grantees to fund semester-long activities, and ameliorate the harms caused by Defendants' unlawful discontinuances and failure to comply with orders.[12]

### III.   ARGUMENT

**A.   The Court Should Enter a Meaningful Compliance Plan to Enforce Its Injunction**

"[T]here is no question that courts have inherent power to enforce compliance with their lawful orders." *Calif. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (quotations omitted). "The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008) (quotations omitted). When remanding to an agency, this relief can include regular status reports and deadlines. *Id*. at 937 (quotations omitted). Courts may require specific, carefully tailored actions where "in order to bring about any progress…the [agency] would have to be directed to take specific steps." *Id*. Such remedies fall within the district court's "traditional, equitable, and interstitial role to fashion a remedy for the agencies' dereliction of their statutory duties." *Id*. (quotations omitted). Defendants' misconduct warrants enforcement and proper remediation not provided by the five-week interim awards.

---

[11] Beaudoin Decl. ¶8k; Brogan-Baranski Decl. ¶9; Clauson Decl. ¶12; Eklund Decl. ¶11; Furedi Decl. ¶12; Giannini-Previde Decl. ¶11; Gragg Decl. ¶13; Gustafson Decl. ¶11; Hire Decl. ¶14; Johnson-Smith Decl. ¶13; Knight-Teague Decl. ¶10; Ongart Decl. ¶13; Ragsdale Decl. ¶12c; Santamaria Decl. ¶9a.

[12] Amoussou Decl. ¶13; Beaudoin Decl. ¶10; Brogan-Baranski Decl. ¶11; Brown Decl. ¶13; Burton Decl. ¶13; Chamberlin-Scholle Decl. ¶14; Ciriza Decl. ¶13; Clauson Decl. ¶16; Claussen Decl. ¶13; Curran Decl. ¶9; DeOrian Decl. ¶13; Dishongh Decl. ¶15; Furedi Decl. ¶14; Giannini-Previde Decl. ¶12; Gragg Decl. ¶14; Gustafson Decl. ¶12; Hawkins Decl. ¶13; Hire Decl. ¶16; Iversen Decl. ¶12; Johnson-Smith Decl. ¶16; Johnston Decl. ¶13; Judson Decl. ¶13; Knight-Teague Decl. ¶11; Matuszewicz Decl. ¶11; MacCallum-Ceballos Decl. ¶14; Miller Decl. ¶10; Mocarski Decl. ¶12; Nadler Decl. ¶11; Nelson Decl. ¶12; Nocero Decl. ¶12; Ongart Decl. ¶15; Ostendorf Decl. ¶10; Ragsdale Decl. ¶15; Rodriguez Decl. ¶13; Sahakian Decl. ¶12; Santamaria Decl. ¶12; Schmidt Decl. ¶11; Shaia Decl. ¶21; Soto-Delgado Decl. ¶13; Strear Decl. ¶12; Temple Decl. ¶11; Toston Decl. ¶15; Webb Decl. ¶13; Welter Decl. ¶12; Yancsurak Decl. ¶11.

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

The Court ordered Defendants to make lawful continuation decisions by December 30, 2025, and issue any continuation awards by December 31, 2025. Dkt. 273. Defendants admitted, and the Court found, that Defendants violated this specific and definite order. Emer. Tr. at 2:23-3:4. The only question that remains is what can be done to ameliorate the damage from Defendants' violation of the deadline and bring Defendants into compliance.

Defendants have no excuse. *See supra* §II.A. Defendants repeatedly represented they could comply with an end of year deadline. *See id*. And if they could not, they chose to remain silent—even though Defendants filed their summary judgment briefs during the same period they were making continuation decisions for other grantees. *See* Range Ex. A. They made these decisions based upon the annual performance report filed in the spring. Sharp Decl. ¶¶11-13.

To get into compliance, Defendants propose providing interim awards for five weeks and making continuation determinations by February 6, 2026. Dkt. 285 ¶¶3-4. This proposal does not address the harm Defendants have caused, because grantees operate on semesters or quarters—not weeks. *See supra* §II.D. Even if a five-week interim award weren't a complete non-starter due to the gross mismatch with grantees' term-based budget needs, the continued uncertainty and delay makes it impossible for grantees to meaningfully plan or execute what were supposed to be multi-year projects to increase school-based mental health services to our kids. *See id*. Further, given the delays Defendants have manufactured throughout this litigation, Plaintiffs fear Defendants will create new excuses before they issue any continuation awards, resulting in the slow drip of another few weeks of interim funding, then another, requiring the Court to resolve each new dispute.

If Defendants had complied with the deadlines, Plaintiffs would have known, before the academic term began, where things stood. If Defendants had lawfully determined that a grant could not be continued, that would be disappointing—but at least graduate students would know they needed to find a new funding source or drop out; mental health staff would know they needed to find new jobs; grantees would be able to meaningfully revise their projects and

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

budgets; schools could smoothly transition mental health treatment when the kids returned from winter break. Lawfully discontinued grantees would not be pulling interim awards from the limited pool of funds available for grants that could be continued. If, in fact, Defendants did not have enough money to fully fund all continuable grants, grantees would have information and numbers to support requests to their Congressional representatives before the FY2026 appropriations process concludes at the end of January. *See* Emer. Tr. 25:21-26:11.

Defendants were required to, and should have, made continuation decisions by December 30 and issued any awards by December 31. Plaintiffs are suffering the consequences of Defendants' noncompliance. The only path forward is to ensure Defendants' compliance plan meaningfully reduces harm by setting a compliance deadline of January 30 that is mindful of a potential government shutdown, *see* Continuing Appropriations Act, Pub. L. 119-37, 139 Stat. 496 (2025), and by providing interim awards for six months, so grantees have funding certainty for the rest of the academic school year.[13] Plaintiffs have provided overwhelming evidence that five weeks of funding will provide no benefit to grantees, while six months of funding will dramatically help. *See supra* §II.D.

Further, because PI grantees should not be penalized for Defendants' failure to timely determine which grantees, if any, would be lawfully discontinued and no longer entitled to funds, Defendants' interim awards cannot prejudice PI grantees' ability to receive full year continuation awards for 2026 and 2027.

Finally, the Court should order Defendants to provide weekly status reports so that Plaintiffs can raise issues of any further noncompliance with the Court.

**B.    The Court Should Order an Accounting and Discovery**

"As part of its inherent power to enforce its judgment," district courts may grant a request for "limited discovery to aid the court in determining whether [a party] has complied with a

---

[13] Defendants' misconduct satisfies the requirements for contempt, which provides the Court with another basis for awarding this remedy. *Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc.*, 774 F.3d 935, 949 (9th Cir. 2014).

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

judgment." *Leavitt*, 523 F.3d at 1033. When considering whether to permit this discovery, "the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id*. at 1034.

Plaintiffs have serious concerns about Defendants' compliance with the Court's orders enjoining Defendants from "implementing or enforcing through any means" the unlawful discontinuances. Dkt. 269 at 35. In particular, Defendants' management of its accounts raises significant questions about whether they are trying to implement the unlawful discontinuances through means such as hiding funds to avoid issuing continuation awards.

For instance, the PI order enjoined Defendants from "implementing or enforcing through any means the discontinuation decisions as to [PI grantees], *including recompeting Program funds*." Dkt. 193 at 24 (emphasis added). When the Court entered the PI, there were still two years of appropriated BSCA funds available. *See supra* §II.B. As such, Defendants could not recompete the BSCA funds that would be awarded to PI grantees if they received continuation awards for 2026 and 2027.

But Defendants only reserved one year of funds—not two. *See* Emer. Tr. 25:4-5. Defendants also told the Ninth Circuit they reserved FY2025 funds when it served them to create an urgent December 31, 2025, deadline, *see, e.g.*, App. Dkt. 43.1 at 12-13, then told Plaintiffs they had actually reserved *FY2026* funds which expire on December 31, 2026. Dkt. 282-1 at 2.

Defendants appear to have given away the remaining BSCA funds by frontloading future year continuation awards to new grantees and to Defendants' favored continuing grantees in excess of their budgetary needs. *See supra* §II.B.

Frontloading is highly unusual, *see, e.g.*, Sharp Decl. ¶7, but Defendants have apparently started using this technique to obligate funds on other programs, allowing them to tie up funds so other plaintiffs cannot reach them. *See, e.g.*, Dkt. 272 at 6-7. Because the recipient cannot use

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the frontloaded funds without Defendants' approval, Defendants can de-obligate the funds. Defendants are apparently hiding Program funds in frontloaded grant awards, so they can claim they cannot continue Plaintiffs' grants because there is no more money.

Defendants also told the Court that Congress might appropriate FY2026 funds that would allow them to issue Plaintiffs' continuation awards for longer than four months. Emer. Tr. 25:21-26:11. But Defendants requested $0 for the Program's account in their FY2026 budget request. Range Ex. C. However, Defendants may have additional money available to them from the Continuing Resolution, which expires on January 30, 2026. *See* Continuing Appropriations Act, Pub. L. 119-37, 139 Stat. 496-497 (2025).

Further, Defendants have reserved the right to "consider reducing interim awards" by "existing available balances" to the extent grantees have such balances. Dkt. 285 ¶ 4. Plaintiffs have concerns about Defendants' reduction of interim award amounts without transparency.

Plaintiffs also have grave concerns about Defendants' intentions. For instance, Defendants' counsel told Plaintiffs that Defendants needed time to review grants for discriminatory practices, work with grantees to remove these practices from the grants, and to downgrade the award amounts. Dkt. 279 at 3. Yet neither Carr declaration makes any reference to such review. *See* Dkts. 278, 285.

Further, on December 17, 2025, Department staff instructed at least one PI grantee, the Colorado Department of Education, to close out its grant—even though the grantee was protected by the October 27, 2025, PI order. Ongart Decl. ¶7; Dkt. 193 at 25.

Given the significant questions raised, Plaintiffs request the Court order an accounting and allow Plaintiffs discovery as requested in the accompanying Proposed Order.

## IV. CONCLUSION

The Court should grant Plaintiffs' motion.

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DATED this 9th day of January 2026.

I certify that this memorandum contains 4198 words in compliance with Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Ellen Range*
ELLEN RANGE, WSBA #51334
JENNIFER K. CHUNG, WSBA #51583
LUCY WOLF, WSBA #59028
Assistant Attorneys General
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitors General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Ellen.Range@atg.wa.gov
Jennifer.Chung@atg.wa.gov
Lucy.Wolf@atg.wa.gov
William McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

ROB BONTA
Attorney General of California

*/s/ Crystal Adams*
CRYSTAL ADAMS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KATHLEEN BOERGERS*
Supervising Deputy Attorney General
KATHERINE MILTON*
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7522
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

*Attorneys for State of California*

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON*
Director of Impact Litigation
JENNIFER-KATE AARONSON*
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Vanessa.Kassab@delaware.gov
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

*Attorneys for State of Delaware*

PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| | |
|---|---|
| WILLIAM TONG<br>Attorney General of Connecticut<br><br>*/s/ Andrew Ammirati*<br>ANDREW AMMIRATI*<br>Assistant Attorney General<br>165 Capitol Ave<br>Hartford, CT 06106<br>860-808-5090<br>Andrew.Ammirati@ct.gov<br><br>*Attorney for State of Connecticut* | ANTHONY G. BROWN<br>Attorney General of Maryland<br><br>*/s/ Michael Drezner*<br>MICHAEL DREZNER*<br>Senior Assistant Attorney General<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>410-576-6959<br>Mdrezner@oag.state.md.us<br><br>*Attorney for State of Maryland* |
| KWAME RAOUL<br>Attorney General of Illinois<br><br>*/s/ Emily Hirsch*<br>EMILY HIRSCH*<br>Assistant Attorney General<br>Office of the Illinois Attorney General<br>115 S. LaSalle St<br>Chicago, IL 60603<br>773-835-0148<br>Emily.Hirsch@ilag.gov<br><br>*Attorney for State of Illinois* | AARON M. FREY<br>Attorney General of Maine<br><br>*/s/ Sarah A. Forster*<br>SARAH A. FORSTER*<br>Assistant Attorney General<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006<br>207-626-8800<br>Sarah.Forster@maine.gov<br><br>*Attorney for State of Maine* |
| PHILIP J. WEISER<br>Attorney General of Colorado<br><br>*/s/ Sarah H. Weiss*<br>SARAH H. WEISS*<br>Senior Assistant Attorney General<br>Colorado Department of Law<br>Ralph L. Carr Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>720-508-6000<br>Sarah.Weiss@coag.gov<br><br>*Attorney for State of Colorado* | ANDREA JOY CAMPBELL<br>Attorney General of Massachusetts<br><br>*/s/ Katherine Dirks*<br>KATHERINE DIRKS*<br>Chief State Trial Counsel<br>YAEL SHAVIT*<br>Chief, Consumer Protection Division<br>Office of the Massachusetts Attorney General<br>1 Ashburton Place Boston, MA 02108<br>617-963-2277<br>Katherine.Dirks@mass.gov<br>Yael.Shavit@mass.gov<br><br>*Counsel for Commonwealth of Massachusetts* |

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| | |
|---|---|
| LETITIA JAMES<br>Attorney General of New York<br><br>*/s/ Rabia Muqaddam*<br>RABIA MUQADDAM*<br>Special Counsel for Federal Initiatives<br>MARK LADOV*<br>Special Counsel<br>28 Liberty Street<br>New York, NY 10005<br>212-416-8240<br>Rabia.Muqaddam@ag.ny.gov<br>Mark.Ladov@ag.ny.gov<br><br>*Attorneys for State of New York* | RAÚL TORREZ<br>Attorney General of New Mexico<br><br>*/s/ Aletheia V.P. Allen*<br>ALETHEIA V.P. ALLEN*<br>Solicitor General<br>LAWRENCE M. MARCUS*<br>Assistant Solicitor General<br>New Mexico Department of Justice<br>201 Third St. NW, Suite 300<br>Albuquerque, NM 87102<br>505-527-2776<br>Aallen@nmdoj.gov<br>lmarcus@nmdoj.gov<br><br>*Attorneys for State of New Mexico* |
| DANA NESSEL<br>Attorney General of Michigan<br><br>*/s/ Neil Giovanatti*<br>NEIL GIOVANATTI*<br>Assistant Attorney General<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, MI 48909<br>517-335-7603<br>GiovanattiN@michigan.gov<br><br>*Attorney for People of Michigan* | AARON FORD<br>Attorney General of Nevada<br><br>*/s/ Heidi Parry Stern*<br>HEIDI PARRY STERN*<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119<br>702-486-3420<br>HStern@ag.nv.gov<br><br>*Attorney for State of Nevada* |
| DAN RAYFIELD<br>Attorney General of Oregon<br><br>*/s/ Coby Howell*<br>COBY HOWELL*<br>Senior Assistant Attorney General<br>Trial Attorney<br>Oregon Department of Justice<br>100 SW Market St.<br>Portland, OR 97201<br>971-673-1880<br>Coby.Howell@doj.oregon.gov<br><br>*Attorney for State of Oregon* | PETER F. NERONHA<br>Attorney General of Rhode Island<br><br>*/s/ Kyla Duffy*<br>KYLA DUFFY*<br>Special Assistant Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>401-274-4400, Ext. 2809<br>Kduffy@riag.ri.gov<br><br>*Attorney for State of Rhode Island* |

| | |
|---|---|
| 1 | JOSHUA L. KAUL<br>Attorney General of Wisconsin |
| 2 | |
| 3 | /s/ Frances Reynolds Colbert<br>FRANCES REYNOLDS COLBERT* |
| 4 | Assistant Attorney General<br>Wisconsin Department of Justice |
| 5 | Post Office Box 7857<br>Madison, Wisconsin 53707-7857 |
| 6 | 608-266-9226<br>Frances.Colbert@wisdoj.gov |
| 7 | *Attorney for State of Wisconsin* |
| 8 | *Admitted pro hac vice* |

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

PLAINTIFFS' MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744