IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | CASE NO.  C25-1228KKE |

**DECLARATION OF DANA CARR**

I, Dana Carr, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my information and belief:

1. I am a Supervisory Program and Management Analyst and Group Leader in the Office of Safe and Supportive Schools ("OSSS") of the Office of Elementary and Secondary Education ("OESE") at the United States Department of Education ("Education" or "the Department").  I am a duly authorized Custodian of Records, or other qualified witness for Education.  I am competent to make the statements contained in this declaration.  I make this declaration based on my personal knowledge and based on information provided to me in my official capacity.

2. As a Supervisory Program and Management Analyst and Group Leader, my job responsibilities include managing two federal discretionary grant programs, the School-Based Mental Health Services Program ("SBMH") and the Mental Health Service Professional Demonstration Grant Program ("MHSP").  My responsibilities include supervising staff; grants

management activities related to soliciting, reviewing and selecting applications for funding; overseeing grants monitoring activities and oversight; providing and coordinating technical assistance; program reporting; and administering program budgets as appropriated by Congress. I have been in my current role since August 2024. I previously worked in the Office of Safe and Drug-Free Schools, the precursor to OSSS, at the Department from December 2003 until March 2011.

3. I am informed that counsel for the Department represented during the December 31, 2025 telephonic phone conference with the Court that the Department proposed to provide interim funding to grantees affected by the judgment by January 9, 2026. That date was proposed with my input knowing the processes, and challenges, in awarding expedited funds, as described more below.

4. My January 5, 2025 declaration stated that the Department would make five week interim awards, from January 1, 2026 through February 6, 2026, in the amount of 5/52 of the total award for the grantee's next performance period. At the time of the Declaration, the Department was aware of the Court's January 6, 2026 deadline for funds to be available to grantees, and my staff was actively working to meet that deadline.

5. At the time of my January 6, 2026, filing, despite best efforts to make all funds available by the end of the day, the Department was still actively working to process non-competing continuation ("NCC") awards in the amounts submitted to the Court (and subsequently corrected). Recognizing that we would be unlikely to complete this work by the end of the day, we were striving to complete the process no later than January 7, 2026. Ultimately we were unable to do so until January 8, 2026 for the reasons outlined below.

6.      The process of making five-week interim awards involved several sequential steps, which took days and required multiple staff, including at least seven staff members on my team and three staff on the grants team, to complete. The process of making NCC awards is the same regardless of the size of awards, and this process for interim awards required additional steps for each grant award made because of the unique situation for these grantees.

7.      First, the Department had to create new budget and performance periods for each of the grantees to begin the process of making awards using an "Administrative Action" in the Department's Grants Administration System (G5) because these grants were non-continued. Staff had to create this budget period before we could add funds to the grantees' accounts. As noted in the Plaintiff's Motion to Enforce (Dkt. 288), and email to the Plaintiff's counsel on January 6, 2026, this Administrative Action created a Grant Award Notification (GAN) to document the budget period change that showed a balance of $0 in G5. Each grantee received a GAN that clearly explained in Block 10 the intent of the action: "THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION." Sample screenshots are provided below for reference.

Block 6:

```
AWARD PERIODS
        BUDGET PERIOD        01/01/2026 - 02/06/2026
        PERFORMANCE PERIOD   01/01/2023 - 02/06/2026
```

Block 10:

> (1) THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION.
>
> (2) This budget period is for an interim five week award, pursuant to the litigation in Washington v. ED (2:25-cv-01228-KKE) (W.D. WA).

8. Once the budget periods were created in G5, staff then had to prepare each grantee's award for processing additional funds, which included additional steps in G5 before pro-rated funds could be allocated for each grantee based on their specific requested funding for the project year. Again, these steps ultimately took about one day to complete due to the number of grantees and the administrative processes required.

9. The Department was also simultaneously completing its internal process to finalize the number of awards, the process used for determining funding, and check and re-check the amounts for each award. The budget chart was provided to the Court with an initial administrative error, which resulted from expediting this process to meet the Court's filing deadline with insufficient time for quality checks.

10. As soon as this review process was completed, my staff began entering budget amounts for each grantee and preparing to commit funds. Once the multi-step preparation process was complete, the grants team began committing funds for each recommended award.

11. The grants were committed for the SBMH program on January 7, 2026 at 5:17 PM ET and the MHSP program on January 7, 2026 by 5:32 PM ET.

12. After funds were committed, my staff had to undertake several more steps to prepare the awards for obligation. These steps were complete for the MHSP program on January 7, 2026 at 8:19 PM and for the SBMH program at 9:11 PM ET.

13.     As part of the Department's internal controls, a different person was required to obligate, that is, actually make the award, of grant funds. This process was initiated on January 8, 2026. Because obligating funds takes several hours in G5 for this number of grantees, this process was complete for the SBMH program at 10:25 AM ET and by 2:40 PM ET for the MHSP program on January 8, 2026. Contributing to the time it took to obligate funds, the G5 grants system experienced several crashes and system lockouts that required the involvement of G5 helpdesk personnel to resolve during lengthy phone troubleshooting sessions. Grantees received their GANs and their funds were available in G5 that afternoon.

14.     On January 9, 2026 the Department provided instructions to grantees to request information needed to make individual continuation award decisions, which is due to the Department on January 16, 2026. The information requested in these instructions is the standard information needed to inform continuation award determinations in these programs. Attached hereto and marked as "Exhibit A" is a true and correct copy of the January 9, 2026 letter referred to above.

Executed on this 13th day of January, 2026.

*Dana Carr*
_____
Dana Carr