Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

      Plaintiffs,

 v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

      Defendants.

CASE NO. C25-1228KKE

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS**

## INTRODUCTION

The States' "Motion to Enforce Summary Judgment Orders," should be denied. Key to the States' effort to evade the exclusive jurisdiction of the Court of Federal Claims was their repeated adamant representations, made to this Court and the Court of Appeals, that they were not asking this Court to "directly or indirectly order Defendants to pay monies." *See, e.g.,* Dkt. #157, p. 3, *ll.* 19-21. Accepting the States' representations at face value, both this Court and the Court of Appeals denied relief requested by the Department, expressly citing those representations.

The States' present motion represents a dramatic reversal of their previous stance. Now, with the summary judgment phase behind them, the States are openly requesting this Court issue an order requiring the Department to provide at minimum six months of federal funding to the 138 non-continued grant recipients, even before (and without) a decision by the Department to continue the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 1
(Case No. C25-1228KKE)

grant agreement of any individual grantee under the standards announced in the Court's December 19 ruling.

Invoking the Court's "inherent authority," the States style the relief they seek as part of a "compliance plan" to enforce the summary judgment orders though nothing in those orders requires the Department to fund anything. Primarily, the Court's summary judgment orders require the Department to issue new individual decisions, but they do not require the Department to fund them. Thus, the States' motion is asking the Court to compel "compliance" with requirements found nowhere in the summary judgment orders. Moreover, as has been fully briefed in this action, the Court's subject matter jurisdiction under the APA to conduct judicial review of the Department's non-continuation decisions does not encompass the authority to order the Department to compensate the grantees for funds to which they believe they are entitled under the grant agreements. Thus, the States' request should be denied.

For the same reason, the States' request for an accounting and discovery should be denied. The States say they need an accounting and discovery so they may probe the Department's finances to explore whether the Department is "trying to implement the unlawful discontinuances through means such as hiding funds to avoid issuing continuance awards." Dkt. #288, p. 14, *ll*. 8-10. But the States did not assert a claim for an accounting in their complaint and did not plead or prove they were entitled to one. And even if they did, no waiver of sovereign immunity permits an accounting claim to be heard in a district court against the Government. Moreover, because the summary judgment orders do not contain any terms mandating the funding of the grant agreements, an accounting would be a useless exercise. While the States may be excited at the prospect of engaging in a court-sanctioned probe into the Department's budgetary process, their request promises to open up an entirely new front in the lawsuit that is both unnecessary and entirely avoidable.

In any event, the States' groundless assertions that the Department may be taking actions in its budgetary process for improper purposes is entirely unfounded. The actions the States portray as suspicious are in fact normal and ordinary budgetary operations consistent with the Department's administrative discretion to manage the programs under its supervision. The question of timing

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 2
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1  aside, none of the Department's actions have undermined the Department's ability to ultimately
2  carry out its obligations under the summary judgment orders.

3  In summary, the only aspect of the summary judgment orders as to which compliance is an
4  issue is timing.  The Department recognizes it did not meet the original compliance deadline
5  established by the Court, because it could not, but it is not ignoring its responsibility to do this work.
6  The Department has proposed to issue new compliance decisions in all cases by February 6.  The
7  compliance plan proposed by the States is not needed and in any event is entirely unrelated to the
8  single area in which there is an issue of compliance.  No more complicated or extensive "compliance
9  plan" is called for in this lawsuit.

## ARGUMENT

### I.  THE STATES' DECLARATIONS SHOULD BE VIEWED WITH A SKEPTICISM

In the afternoon of Friday, January 9, Plaintiffs filed the instant motion supported by approximately 51 declarations.  At the States' request, the Court shortened time on this motion and required the Department to respond to the States' motion by January 14.  Because of this expedited schedule, the Department's ability to respond to the factual representations in each declaration is necessarily limited.  Nevertheless, the Court should view these declarations skeptically.  First, while the States' argument implies otherwise, not all grantees are academic institutions nor do all grantees operate on a semester system.  Rather, there is wide variation.  But the States' argument for a minimum of four months of interim funding places all of these grantees in the same basket.  That is not factual.

Moreover, notwithstanding the States' argument, not all grantees are the same.  Many have unexpended funds from past calendar years they can use in the current fiscal year.

Most importantly, while the States would have this Court believe a favorable continuation decision automatically creates an entitlement to full year's funding of a grant agreement from day one, this is not the case.  As budget needs dictate, the Department may provide only partial funding of a grant, anticipating it will provide additional funding as the year progresses.  In that sense therefore, the 5/52 interim funding the 138 grantees received is very much in line with the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 3
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1  Department's budget discretion and in no way a violation of any law, regulation, or the grant
2  agreements themselves. While the States complain the grantees should receive at least six months
3  funding that is a wish, not a legal obligation. The Department is not obligated to fund the
4  agreements on a schedule the grantees believe is best for them. The grantees are only entitled to
5  funding on the schedule the Department, in its administrative discretion, allocates the funds.

### II.    THE DEPARTMENT TOOK REASONABLE ACTIONS IN RESPONSE TO A DEADLINE IT WAS INCAPABLE OF MEETING

The States contend the Department has "no excuse" for being unable to comply with the Court's order to issue 138 individual new continuation decision in two business days. It was not possible for the Department to comply with this deadline, Dkt. #278, ¶ 4, and such a deadline should be adjusted to avoid manifest injustice. *See Delta Smelt Consol. Cases,* 2011 WL 1740308, at *6 (E.D. Cal. May 4, 2011).

The States' motion resorts to the same litany of unproductive finger-pointing and blame-shifting found in their opposition to the Department's Rule 59(e) motion. A more detailed response to those arguments is set forth in the Department's reply to that opposition.

Ultimately, the Department's inability to obtain new continuation decisions by the end of the calendar year was most importantly the complicated legal questions involved in this lawsuit, including, but not limited to, the very difficult jurisdictional questions the parties briefed and the Court adjudicated early in this case. Working through those issues caused the filing of the State's motion for summary judgment to be delayed to November 10. As a consequence, even with the expedited briefing schedule ordered by the Court, a dispositive ruling on the merits setting aside the 138 grant agreements and requiring the Department to make 138 new individual grant determinations was not issued until December 19.

After this ruling was issued, the States proposed, and the Court issued, an order requiring the Department to issue individual continuation decisions on each of these 138 grant agreements in two

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 4
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

business days. This was an impossible task.[1] The Department thus sought relief from this deadline and has committed to issue new continuation decisions by February 6, 2026, while at the same time voluntarily making prorated interim grant awards to all of the affected grantees. While the Department was unable to issue the new decisions by the Court's deadline, it is not refusing to do the work required by the Court's order. Accordingly, the Department's motion to alter or amend the judgment should be granted. This motion should be denied.

### III. THE STATES ARE NOT ENTITLED TO A COMPLIANCE PLAN REQUIRING THE DEPARTMENT TO PROVIDE SIX-MONTHS OF FEDERAL FUNDING TO AFFECTED GRANTEES

The Court should deny the States' request for a "compliance plan" to enforce compliance with an order this Court has never made. Nothing in the summary judgment orders requires the Department to fund any agreement let alone to provide six months of interim funding to any grantee who is awaiting a new continuation decision. This is because, to support their argument that this Court had jurisdiction under the Administrative Procedure Act, the States structured their argument to avoid any overt demand for the payment of money. In supplemental briefing on the Tucker Act issue, the States argued:

> Plaintiffs in this case seek nothing more than for the Court to order Defendants to follow the lawful process for making grant continuation decisions as directed by applicable statutes and regulations. They do not seek contract damages or reinstatement of previously terminated grant funds.

Dkt. #157 at p. 1, *ll.* 16-21; *and see Id.* at pp. 6-8 ("Unlike the grant terminations in *California* and *NIH,* the Court in this case will not order the disbursement of funds.").

These representations were dispositive in persuading the Court to grant the States' motion for a preliminary injunction, deny the Department's motion to dismiss, and ultimately to award summary judgment to the States. *See, e.g.,* dkt. #190, p. 17, *ll.* 5-8. ("Plaintiff States acknowledge

---

[1] Contrary to the States' representations the Department never stated the Department would be fully able to comply with an order by the end of the year that had not yet been issued by the Court and whose contours were at that time unknown to the parties. Rather, the Department argued that its inability to comply with an order had not been shown by the States. Dkt. #198, pp. 4-5. As the States concede, in responding to a question from the Court at the summary judgment hearing, the Department's counsel expressed doubt about Department's ability to reconsider a large number of grant agreements by December 31, 2025.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 5
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1 that new decisions must be made, but seek only to require the Department to make 'lawful'
2 decisions, rather than to require continuation of Grantee funding.") (citations omitted); *and see*
3 dkt. #193, p. 23, *l.* 23 – p. 24, *l.* 4 (denying an injunction bond and concluding Defendants had
4 mischaracterized the relief sought by the States as potentially mandating the Executive spend money
5 that may not be recouped).

6     In opposing the Department's motion to stay the preliminary injunction pending appeal, the
7 States made very similar representations to the Court of Appeals in opposing the Department's
8 motion for a stay of the preliminary injunction. The Department argued the preliminary injunction
9 would cause the Department to expend money on the grants the Government might never recover.
10 Dkt. #7.1, p. 26. In response the States said:

> [T]he relief sought by Plaintiffs cannot be construed as contractual in nature. Plaintiffs request declaratory relief, injunctive relief, and vacatur of the Non-Continuation Decision. These are "run-of-the-mill APA requests" that a court cannot construe as contractual because they do not also order Defendants to pay money.

14 Dkt. #35.1 pp. 13-14. This affirmative representation also played a dispositive role in the decision of
15 the Ninth Circuit to deny the Department's motion for a stay:

> Because Plaintiff States' claims seek purely prospective relief regarding multiyear grant discontinuations that do not take effect until December 31, 2025—and vacatur would not result in the automatic reinstatement or continuance of those grants or the payment of any money to grantees—the Government has not demonstrated a strong showing of success on the merits of its Tucker Act jurisdictional claim.

19 *Washington v. United States Dep't of Educ.*, 161 F.4th 1136, 1140 (9th Cir. 2025).

20     Having represented to this Court and to the Court of Appeals that no part of their claim in
21 this lawsuit has as its purpose obtaining an order from this Court requiring the payment of money to
22 the discontinued grantees, the States are judicially estopped from seeking that relief now. The
23 factors for judicial estoppel are flexible and may include: (1) whether a party's later position is
24 clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to
25 accept its earlier position; and (3) whether the party seeking to assert an inconsistent position would
26 derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New*
27 *Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 6
(Case No. C25-1228KKE)

1  Each of these factors are operative here.  The States' position it is entitled to an order
2  requiring the Department to provide six months of funding to the non-continued grantees is plainly
3  inconsistent with the position it has previously taken throughout this lawsuit, *i.e.,* the relief they were
4  seeking did not include an order requiring the Department to pay money.  Second, both this Court
5  and the Court of Appeals, relying on the States' characterization of its claims, acted favorably on the
6  States' arguments based on those representations.  Third, and finally, the States clearly would derive
7  an unfair advantage if not estopped.  But for their representation that no part of their claim was for
8  the purpose of obtaining an order requiring the Department to fund the grants in question, the States
9  likely would have been denied a preliminary injunction, and their case would have been dismissed
10 for lack of subject matter jurisdiction.  And if those things did not occur, the Court of Appeals would
11 likely have stayed the preliminary injunction as the Department requested.  The States should thus be
12 judicially estopped from arguing they are entitled under any circumstances to an order requiring the
13 Department to fund the grant agreements through interim grant awards for any period, much less a
14 six-month period.

15  Additionally, the law is very clear that this Court, pursuant to the Tucker Act, has no
16 jurisdiction to order relief designed to enforce any obligation to pay money pursuant to grants.
17 *Washington*, 161 F.4th at 1140 (*citing Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, ___ U.S. ___,
18 145 S. Ct. 2658 (2025)); *and see Thakur v. Trump,* ___ F.4th ___, 2025 WL 3760650, at *3 (9th Cir.
19 Dec. 23, 2025).

20  The States attempt to circumvent this limitation on its subject matter jurisdiction by invoking
21 the Court's "inherent power to enforce its orders."  However, the orders issued by the Court in this
22 case do not include any requirement that the Department fund the grant agreements of the affected
23 grantees for some interim amount of time.  This was not an oversight.  As noted above, in an effort
24 to maintain subject matter jurisdiction here, the States represented, and the Court accepted the
25 States's representation, that they were not seeking an order requiring the Department to pay any sum
26 of money in this lawsuit.  And, based on that representation, no such order was entered by this Court.

27
28
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 7
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Nor do the Court's "inherent powers" allow the Court to override limitations on its jurisdiction. *See United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000) (rejecting argument that federal courts have the inherent power to expunge criminal records because "[t]he power of federal courts may not be expanded by judicial decree."); *and see Barber v. Ohana Mil. Communities, LLC*, 694 F. App'x 583, 584 (9th Cir. 2017) (district court does not have the inherent authority to enlarge its own subject matter jurisdiction).

The States' demand for an order requiring the Department to provide six months of interim funding to the affected grantees should be denied.

### IV. THE STATES ARE NOT ENTITLED TO AN ORDER REQUIRING THE DEPARTMENT TO MAKE AN ACCOUNTING OR AUTHORIZING DISCOVERY

The States also request an order granting an accounting of how the Department allocates its appropriated funding in the MHSP and SMHP programs. Not only are the States not entitled to this relief, but such relief is also unnecessary: the States, and this Court, are now fully aware of the Department's available funding authority from the Byrd Declaration accompanying this brief.

In any event, no cause of action for an accounting was alleged in the States' complaint nor did their Complaint pray for an accounting as a remedy. Nor did the States allege or prove any entitlement to an accounting in this lawsuit and, in any event, such a claim is jurisdictionally barred. *See Flute v. United States*, 67 F. Supp. 3d 1178, 1188 (D. Colo. 2014), *aff'd*, 808 F.3d 1234 (10th Cir. 2015) (having failed to establish the existence of an enforceable trust, the APA's waiver of sovereign immunity did not encompass plaintiff's claim for an accounting). Moreover, the APA does not countenance a district court exercising the kind of continuous management over the affairs of an Executive Branch agency the States' motion envisions.[2]

The APA is a procedural, not a substantive statute. *Furlong v. Shalala*, 156 F.3d 384, 394 (2nd Cir. 1998). Thus, while the APA affords litigants a procedure for challenging the legality of a final agency action, and to have that action set aside when arrived at by a process that is contrary to

---

[2] Similarly, in the event of a lapse of funding, district courts have no jurisdiction to order federal agencies to make funding available to the affected grantees. *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev*., 24 F.3d 1421, 1424 (D.C. Cir. 1994).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 8
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

law, nothing in the APA guarantees a party any particular substantive form of relief. Rather, it is a fundamental tenet that a court sits only to review an agency's determination, not to make the decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). Consequently, the role of the courts in cases involving judicial review of agency action "is limited to considering whether the announced grounds for the agency decision comport with the applicable legal principles." *Port of Portland v. United States*, 408 U.S. 811, 842 (1972).

"[T]he guiding principle" of such review "is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." *FPC v. Idaho Power Co.*, 344 U.S. 17, 20 (1952); *and see, Nat'l Assoc. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657 (2007) (after finding agency decision to be arbitrary and capricious, the proper course would have been to remand to the agency). Accordingly, where an agency action is determined to have been arbitrary and capricious, remand to the agency is ordinarily required. *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *and see Gonzales v. Thomas*, 547 U.S. 183, 186 87 (2006) (same).³

At this juncture, the "error has been laid bare." The error identified by the Court concerned the manner in which the Department decided not to continue certain grants – it did not concern the legality of the Department's funding decisions. Indeed, as the claims were portrayed by the States, they did not in any way concern or seek funding. Given the above, it now falls to the Department to exercise its administrative discretion, applying the guidance of the Court, to decide anew the 138 grant agreements affected by the Court's judgment. The funding decisions the States would like to probe by an accounting and discovery have nothing to do with that process.⁴

---

3  The States have also not demonstrated any entitlement to conduct discovery in support of their APA claim. *See Bark v. Northrop*, 2 F. Supp. 3d 1147, 1153 (D. Or. 2014) (reciting relevant standards). And their vague request for weekly status reports would be a purposeless exercise.

4  The States represent the Department should have set aside two years of funding for the operations of the PI grantees. Dkt. #288, p. 7, *ll.* 18-19. This is incorrect. The Court's preliminary injunction did into require this and for those grantees whose grants could be extended into CY2027, they would be required to receive a new continuation decision from the Department in order to qualify for CY2027 funding (see 34 CFR § 75.251(a): "The Secretary usually approves a budget period of not more than 12 months, even if the project has a multi-year project period."). All budget periods for all MHSP and SBMH grantees are for only 12 months.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 9
(Case No. C25-1228KKE)

1    In any event, the States' suspicions are unfounded. The Department has not taken any
2 measures in its budgeting process necessitating the intrusive investigative probe into the
3 Department's budgeting decisions requested by the States. For FY2026, the Department has
4 statutory authority to expend up to $200,000,000 through December 31, 2026, for carrying out
5 SBMH and MHSP grants by virtue of the Bipartisan Safer Communities Act ("BSCA") (2022),
6 Pub. L. 117-159. Byrd Decl., ¶ 4.[5] Of the funds available in BSCA for FY2026, approximately $64
7 million dollars remains unobligated. *Id.* at ¶¶ 7-8. These funds are available to provide funding for
8 any grant agreements affected by the Court's judgment that the Department decides to continue.
9 Moreover, through the continued obligation authority afforded by BSCA through December 31,
10 2026, and the agency's discretion to engage in the process of de-obligating and re-obligating
11 unexpended funds, *id.* at ¶ 9, the Department possesses additional flexibility to move appropriated
12 funds around to address shortfalls.

13    With respect to the Department's annual funding, the Department currently is operating
14 under a continuing resolution ("CR") expiring on January 30, 2026, absent other congressional
15 action. *Id.* at ¶¶ 10-13. Under the CR, approximately $72 million remains available for the "School
16 Safety National Activities" account under which SBMH and MHSP grants may be funded. *Id.* at
17 ¶ 13.

18    The States argue the Department's budget request for $0 of funding for the "Safe Schools
19 and Citizenship Education" account, under which "School Safety National Activities" and the
20 SBMH and MHSP grants may be funded, is cause for concern. It is not. The proposal was simply to
21 combine these activities into the K–12 Simplified Funding Program ("K–12 SFP"). *Id.* at ¶ 19. As
22 stated in the FY2026 Budget Request, "K-12 SFP provides the discretion to support any activity that
23 was previously allowable under the consolidated programs including activities supported by the
24 SSNA program such as mental health […]." *Id.* at ¶ 19. Moreover, notwithstanding the

---

5  The Department acknowledges the Court's December 19, 2025 order suspends any lapse in grant funding while the lawsuit plays out, dkt. #269, p. 35. The effect of this order would be to prevent BSCA funding available in FY2025 from lapsing. However, at the time this order was entered, only a nominal amount of funds from that appropriation--less than $1--were remaining. Nevertheless, as explained in this memorandum, the Department has other sources from which to draw funding for decisions to continue grants affected by the Court's judgment.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 10
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1 Department's proposal, the most recently approved versions of the appropriations bills from both the
2 House and the Senate, if enacted, fund the "School Safety National Activities" account for the
3 Department at $190 million for FY2026. *Id.* at ¶ 20.
4     The States also cast aspersions on the practice of "frontloading" and assert the use of this
5 practice appears to them to be a tactic to avoid funding continued grant agreements resulting from
6 this Court's order. Frontloading is an informal term describing the use of appropriated funds
7 available for obligation in a particular fiscal year to fund, in whole or in part, future budget periods
8 of the award. Dkt. #15. Notwithstanding the States' assertion that frontloading is "highly
9 unusual" – it is in fact a quite common practice used by the Department in its budgeting process for
10 more than two decades. *Id.*; *and see* ¶ 18 (providing illustrative examples). Also, contrary to the
11 States' baseless allegations, the Department is not using this funding to benefit "favored grantees" at
12 the expense of grantees whose grant agreements may be continued as a result of this lawsuit. To the
13 contrary, in frontloading SBMH and MHSP grants, the Department does not exceed the allowable
14 cost for each grantee's budget. *Id.* at ¶ 17. And, as noted previously, the Department's ability to de-
15 obligate and re-obligate funding as needed to adjust for budgeting shortfalls means these budgeting
16 decisions are not fixed in stone and appropriated funds can be moved around as driven by agency
17 need.
18     In summary, not only have the States failed to plead and prove a claim for an accounting, the
19 Court lacks jurisdiction to either entertain such a claim or order such relief against the Federal
20 Government. Nor, in any event is there a need for an accounting because this case does not concern
21 the grantees' entitlement to federal funding. Lastly, the States' suspicions about the Department's
22 budgetary decisions are unfounded in any event.
23 ///
24 ///
25 ///
26 ///
27 ///
28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 11
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

# CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court deny the States' Motion to Enforce Summary Judgment Orders.

# CERTIFICATION

I certify that this memorandum contains 4,115 words, in compliance with local rule LCR 7(d)(2).

DATED this 14th day of January 2026.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
Email: brian.kipnis@usdoj.gov

Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SUMMARY JUDGMENT ORDERS - 12
(Case No. C25-1228KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970