The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

STATE OF WASHINGTON, et al.,

               Plaintiffs,

   v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

               Defendants.

NO. 2:25-cv-01228-KKE

PLAINTIFFS' SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS

NOTE ON MOTION CALENDAR: APRIL 7, 2026

ORAL ARGUMENT REQUESTED

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

      A.   The Court's Permanent Injunction Stands ................................................... 2

      B.   Despite Repeated Representations, Defendants Did Not Award Funds Needed
           to Perform Activities for the Current Budget Period ................................... 2

      C.   Defendants Continue to Treat Affected Grantees Differently Than Others ............. 4

      D.   Defendants' Measures Will Effectively End Some Grantees' Projects .................... 5

III.  ARGUMENT .......................................................................................................... 7

      A.   The Court Should Enforce its Orders ......................................................... 7

           1.   Defendants are implementing the discontinuances through other means .......... 9

           2.   Defendants failed to make "continuation awards" ................................... 10

      B.   In the Alternative, the Court Should Order Defendants to Set Aside Funds,
           Respond to Post-Judgment Discovery, and Provide a Witness for Deposition ....... 11

IV.   CONCLUSION ...................................................................................................... 12

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

i

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
(510) 879-3098

# TABLES OF AUTHORITIES

**CASES**

*Al Otro Lado, Inc. v. Mayorkas*
No. 17-cv-2366-BAS-KSC, 2021 WL 4357492 (S.D. Cal. Sept. 24, 2021) 11

*Blackberry Ltd. v. Typo Products LLC*
No. 14-cv-00023-WHO, 2014 WL 4136586 (N.D. Cal. Aug. 21, 2014) .....11

*Calif. Dep't of Soc. Servs. v. Leavitt*
523 F.3d 1025 (9th Cir. 2008) ................................................................7, 11

*California v. U.S. Dep't of Lab.*
155 F. Supp. 3d 1089 (E.D. Cal. 2016) .........................................................8

*City of Chicago v. U.S. Dep't of Homeland Sec.*
No. 25 C 5463, 2026 WL 353581 (N.D. Ill. Feb. 9, 2026)...........................8

*Illinois v. Fed. Emergency Mgmt. Agency*
No. 25-206 WES, 2025 WL 2908807 (R.D.I. Oct. 14, 2025) .................7, 10

*Illinois v. Vought*
No. 26-CV-1566, Dkt. 50 (N.D. Ill. Feb. 25, 2026) ...................................11

*Melendres v. Maricopa Cnty.*
897 F.3d 1217 (9th Cir. 2018) .......................................................................8

*New York v. Trump*
No. 25-1236, 2026 WL 734941 (1st Cir. Mar. 16, 2026)..............................8

**COURT RULES**

Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 30(b)(6) ..................................................11

**REGULATIONS**

34 C.F.R. § 75.253(a) ...................................................................................2, 10

34 C.F.R. § 75.253(b) .......................................................................................2

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

ii

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
(510) 879-3098

## I.    INTRODUCTION

Defendants continue to violate this Court's summary judgment orders. In their most recent act of noncompliance, Defendants imposed ungrounded and unnecessary "grants management measures" that punish affected grantees,[1] and effectively implement the vacated Discontinuation Decision[2] via other means. Although Defendants purported to extend grantees' budget period through December 31, 2026, and repeatedly represented they would fund these grants for the full calendar year, Defendants have now imposed a "risk mitigation measure" to fund only half the budget period. In addition, Defendants impose a burdensome reimbursement procedure normally used for grantees who have mismanaged funds, require grantees to prepare a meaningless performance report before data is even available, and assert that the grants at issue "will continue under protest." Furthermore, Defendants have threatened not to provide the remaining six months of funding and have refused to confirm that funds will even be available.

At bottom, Defendants continue to deny grantees the certainty they should have had by December 31, 2025. Defendants are well aware these measures will force projects to end, achieving precisely the unlawful aim the Court enjoined. Grantees in California have been forced to issue advanced layoff notices; the longer Defendants' non-compliance continues, the more likely it is that grant-funded employees will find new jobs, decreasing grantees' capacity to provide vital services. Grantees cannot secure graduate student internships at high-need schools because grantees cannot guarantee interns will receive financial assistance in the fall semester.

Because Defendants have violated this Court's injunction, the Court should order Defendants to immediately lift the onerous measures imposed on affected grantees' awards. In the alternative, Plaintiffs request the Court order Defendants to set aside sufficient funds to fully fund grantees through the end of 2026, respond to Plaintiffs' discovery requests, and make a

---

[1] "Affected grantees" and "grantees" refer to the grantees in Plaintiff States whose grants the Department discontinued on April 29, 2025. *See* Dkt. 269 at 8 n.3.

[2] "Discontinuation Decision" refers to the Directive procedure, discontinuation notices, and reconsideration denial letters the Court vacated and enjoined. *See* Dkt. 269 at 34-35.

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

1

witness available for a deposition so Plaintiffs can gather any additional evidence they need to show Defendants' noncompliance with the Court's summary judgment orders.

## II.    BACKGROUND

### A.    The Court's Permanent Injunction Stands

In its summary judgment orders, the Court enjoined Defendants from "[i]mplementing or enforcing through any means the Directive procedure, the discontinuation notices, or reconsideration denial letters, including recompeting Grant funds, with respect to any discontinued Grant within Plaintiff States." Dkt. 269 at 35. The Court also enjoined Defendants from "[c]onsidering new priorities or any other information that is not relevant and similar to the information listed in 34 C.F.R. § 75.253(b) when determining whether a grant within Plaintiff States has met the requirements for a continuation award" and from "[d]enying a continuation award based on performance issues, if any, caused by the Department's actions challenged in this case and their disruptive effects." *Id*. The Court ordered Defendants to "issue new continuation determinations no later than March 2, 2026" and "issue any new continuation awards no later than March 5, 2026." Dkt. 363 at 3. "Continuation awards" are awarded for a "budget period." 34 C.F.R § 75.253(a); *see id.* § 75.251; Stuber Decl., Ex. D (standard Department form dividing budget into project years). The Department has determined the budget period for these grants is a full calendar year. Stuber Decl., Ex. A at 2. Defendants sought emergency stays from the Ninth Circuit twice and were denied both times. *See* Dkt. 364 at 6.

### B.    Despite Repeated Representations, Defendants Did Not Award Funds Needed to Perform Activities for the Current Budget Period

On March 2, 2026, Defendants sent boilerplate Notices of Continuation of Grant Award to 118 grantees. *See* Dkt. 365 at 1; Stuber Decl., Ex. A. Defendants informed grantees their "federal award[s] will continue *under protest*." Stuber Decl., Ex. A at 2 (emphasis added). Further, "[t]o address concerns about the rapid use of federal funds and the difficulty for the Department to recover those funds once spent," continued grants "will operate under a

2

reimbursement pay status." *Id*. Under the special reimbursement procedure, grantees must pay expenditures in advance, submit a detailed budget form and supporting documentation for each reimbursement request, and receive Department approval before they are paid. *Id*., Exs. C-D.

Although Defendants purported to extend grantees' budget period "to a full 12-month budget period," they provided only "approximately 6 months of funding." *Id*., Ex. A at 2-3. Defendants claimed this was a "risk mitigation measure" related to "ongoing concerns regarding the financial stability and uncertainty about the continued operation of these grants while litigation is pending." *Id*. at 3. Additionally, due to those concerns, "an updated performance and budget report will be required by **June 1, 2026**." *Id.* (alteration in original). "After reviewing the submitted report, the Department *may* award additional funds and/or take further risk mitigation actions." *Id*. (emphasis added). Defendants make clear that they may decline to provide funding after June 1, effectively using this measure to shorten the budget period to six months and require grantees to receive a second, mid-year continuation decision.

A Department program officer confirmed the continuation award did not guarantee that Defendants would fund activities in the second half of the budget period:

> I understand the challenges you face with long-term planning. Unfortunately, I am not able to provide any assurances of funding beyond June 1, 2026. Funding decisions are made by the Secretary, and in some instances, Congress. As such, I would not be able to speak on such matters.

*Id*., Ex. B at 2. Nor has Defendants' counsel verified that Defendants have set aside sufficient funds to fully fund all affected grantees through the end of 2026. Chung Decl., Ex. B at 3. ("The Department is still finalizing its spending plans for fiscal 2026….").

Defendants' counsel justified the measures, citing concerns about the grants' viability following Defendants' discontinuances and the hope that Defendants would prevail on appeal:

> The Department implemented these prudent grants management measures— consistent with its grant monitoring authorities—to help ensure the continued viability of these grantees after they were notified that most of their funding would not continue in 2025 and given the challenges of recovering grant funds once awarded if the Department ultimately prevails in the litigation.

*Id.*

The measures are completely contrary to Defendants' prior position. Defendants repeatedly represented to this Court and to Plaintiffs that if the Department decided to continue a grantee's program, the grant would be funded for the full year. Dkt. 360 at 4:2-4 ("[F]or grantees that are now decided to be continued, . . . they would receive full funding for the calendar year…."); *id*. at 31:6-8 ("[I]f the Department decides to continue a grant agreement, its intention is to fund those agreements for the entirety of calendar year 2026."); *id*. at 39:6-8 ("[I]f [grantees] have a favorable continuation, they can start acting on that, and the money will be there presumably in the next two to three days is what we're expecting.").

Defendants also previously rejected the idea of providing grantees "six months of interim funding" because "the Department is committed to making [continuation] decisions not later than February 6th" and "it's the Department's intention to fund those grantees for calendar year 2026." *Id*. at 27:16-24. Defendants made clear that any interim or partial funding to grantees in this litigation was only intended to mitigate harm while Defendants made new continuation decisions after failing to meet the original deadlines. *See, e.g.*, Dkt. 276 at 2-3. In sum, Defendants committed to comply with the Court's orders by stating they would provide continued grantees full-year funding.

## C.   Defendants Continue to Treat Affected Grantees Differently Than Others

Defendants' measures are only the most recent example of Defendants' disfavor of affected grantees, as compared to Defendants' favored grantees who were not discontinued.

First, when Defendants continued their favored grantees' projects, Defendants funded the entire 2026 budget year. *See, e.g.*, Dkt. 332 ¶ 4. Not only that, but Defendants also frontloaded favored grantees' funding for the 2027 budget year. *See, e.g.*, Dkt. 332 ¶¶ 5-7; Dkt. 326 ¶¶ 4-5.

Second, Defendants have not changed the payment process *en masse* for their favored grantees. *See, e.g.*, Sharp Decl. ¶ 6. And, finally, Defendants did not require their favored

grantees to submit multiple performance reports less than six months after receiving their continuation notices. *Id*. ¶ 8. The Department required affected grantees to submit a report in mid-January, just eight days after they received belated interim awards the Department provided due to its original noncompliance with the Court's orders.[3] *See* Dkt. 349-1. Favored grantees did not have to submit a January report for continuation funding and have not been told to submit performance reports by June 1, 2026, detailing activities performed in 2026. *See, e.g.*, Sharp Decl. ¶ 8. Of course, grantees may be required to submit interim reports *in the fall* containing data for the first part of the year, but that is expected and part of the Department's normal process. Dkt. 314 ¶¶ 6-7. The June 1 report is an entirely new requirement only imposed on affected grantees and appears to be an attempt to force affected grantees to go through a second continuation process.

**D.      Defendants' Measures Will Effectively End Some Grantees' Projects**

Typically, grantees work with their Department program officer regarding requests, concerns, and questions about their project, including budget changes, and program officers would be in regular contact with their grantees so they could monitor the grantee's performance and progress. Stuber Decl. ¶ 11; *see also* Sabay Decl. ¶ 8. But here, Defendants have imposed purported "risk mitigation measures" instead of engaging in this typical, collaborative process. These measures are inconsistent with the Court's orders and will incapacitate some grantees' programs and severely hinder many others. Grantees depend on funding certainty to recruit

---

[3] Defendants report they discontinued nine grantees' projects for allegedly submitting incomplete or untimely reports. Dkt. 365 at 6. At least three of these were erroneous. Chung Decl., ¶¶ 5-6. The Department subsequently issued continuation notices to two of the grantees but has not yet confirmed it will issue a continuation notice to the third. *Id*. ¶ 6. A fourth grantee was discontinued for submitting a report approximately one hour after the deadline and has requested reconsideration. *Id*., Ex. G. Discontinuing a grantee for submitting an incomplete or untimely 2025 budget year report violates the Court's order enjoining Defendants from "[d]enying a continuation award based on performance issues, if any, caused by the Defendant's actions challenged in this case and their disruptive effects." Dkt. 269 at 35. The reports' contents and the deadline the Department set were directly tied to Defendants' Discontinuation Decision and its disruptive effects, including that, unlike favored grantees, affected grantees had only eight days to submit annual performance reports, without technical assistance and guidance. *See, e.g.*, Dkt. 314 ¶ 8 (Department provided webinars and gave non-discontinued, first-year grantees one month to submit reports).

prospective graduate students into their programs, place graduate student interns in schools, and finalize mental health service professional positions for the fall semester. In imposing these measures, Defendants understood they would prevent grantees from properly planning and from providing students and staff sufficient financial security for the fall semester.[4]

Grantees are losing program staff.[5] Grantees in California are legally required to issue layoff notices this month because they lack certainty that funding will be available past June 1, 2026.[6] Because those layoffs will go into effect as early as May 2026, grantees reasonably expect their grant-funded staff to seek more stable employment elsewhere, which would force some grantees to shutter their programs and other grantees to substantially reduce their services. *See, e.g.*, Giannini Previde Decl. ¶ 6a; Iversen Decl. ¶ 6b; Johnston Decl. ¶ 6a. Continued grantees in California represent one third of all continued grantees in Plaintiff States, thus Defendants' measures effectively discontinue or severely hinder one third of all affected grantees' ability to provide mental health services in high-need schools.

The continuation decisions also prevent Mental Health Service Professional (MHSP) grantees from guaranteeing graduate students' tuition, successfully recruiting prospective graduate students, and securing graduate student internships at local schools for the fall semester.[7] This uncertainty has already led students to leave grantees' programs, shrinking the pool of future mental health providers in those grantees' communities and disrupting care for high-need students. *See* n.8.

---

[4] *See, e.g.*, Dkt. 293 ¶ 12; Dkt. 297 ¶ 13; Dkt. 305 ¶ 11; Dkt. 306 ¶ 13; Dkt. 316 ¶ 10; Dkt. 317 ¶ 13; Dkt. 319 ¶ 12; Dkt. 324 ¶ 9; Dkt. 330 ¶ 10; Dkt. 339 ¶ 11.

[5] Both Gragg Decl. 6c; DeOrian Decl. ¶ 6a (school district will lose 9 providers); Chamberlin-Scholle Decl. ¶ 6a (will lose 13 providers); Claussen Decl. ¶ 8a; Iversen Decl. ¶ 6a; Schmidt Decl. ¶ 6a; Mocarski Decl. ¶ 6c; Clauson Decl. ¶ 9a; Judson Decl. ¶ 6a; Nadler Decl. ¶ 6; Poindexter Ham Decl. ¶ 6d; Rios Decl. ¶¶ 6a-6c; Welter Decl. ¶¶ 6a-6d.

[6] *See, e.g.*, Johnston Decl. ¶ 6a; Brogan-Baranski Decl. ¶ 6¶ 6a; DeOrian Decl. ¶ 6b; Ciriza Decl. ¶ 6b; Iversen Decl., ¶ 6b; Giannini Previde Decl. ¶ 6a; Furedi Decl. ¶ 6b; Johnson-Smith Decl. ¶ 6b.

[7] *See, e.g.*, Beaudoin Decl. ¶ 6; Welter Decl. ¶ 6h.; Khan Decl. ¶¶ 6a, 6d, 6f; Rodriguez Decl. ¶ 6; Tumer Decl. ¶¶ 5a, 6d; Both Gragg Decl. ¶ 6a; Scott Brown Decl. ¶¶ 6a, 6c-6d; Curran Decl. ¶¶ 6a, 6c-6d; Anderson and Hulac (TiSP) Decl. ¶¶ 6a, 6d-6e; Anderson and Hulac (CRiSP) Decl. ¶ 6a; Barton Decl. ¶¶ 8a-8b; Strear Decl. ¶ 6a; Matuszewicz ¶ 6; Khan Decl. ¶¶ 6a, 6d.

---

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

6

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
(510) 879-3098

The special reimbursement procedure and June 1 reporting requirement also place substantial, additional burdens on grantees.[8] Grantees already sent the Department performance reports on January 16, 2026, containing data and detailed information about grantees' programs through December 31, 2025. The June 1 performance report will contain less than six months of information and will lack key metrics related to students' attendance, academics, and behavior. Nocero Decl. ¶ 8. For many grantees, that data is not available until approximately eight months into the budget year. *See id.*

Furthermore, although Defendants claim the special reimbursement procedure places grantees on a "reimbursement pay status," Stuber Decl., Ex. A at 2, Defendants appear to be imposing a stricter procedure known as "route pay status." *See* Sabay Decl. ¶ 10. Under normal reimbursement, grantees would incur expenses, submit invoices, then draw down the requested amount. *Id.* Instead, affected grantees must fund their programs out of pocket, complete a detailed budget form, and receive Department approval before they are paid. *Compare* Stuber Decl. Exs. C-D, *with* Sabay Decl. ¶ 10. The stricter procedure is typically only used when grantees receive program funding for the first time or have a record of financial mismanagement or similar issues, *see* Sabay Decl. ¶ 11, and there is no indication the affected grantees meet these criteria. Thus, Defendants have baselessly constrained and delayed grantees' access to funds.

### III.    ARGUMENT

#### A.    The Court Should Enforce its Orders

"[T]here is no question that courts have inherent power to enforce compliance with their lawful orders." *Calif. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (quoting *Shillitani v. United States*, 384 U.S. 364 (1966)). This power includes ordering a federal agency to remove grant conditions and to cease the use of a "manual review process" for grant awards when those actions violate an injunction. *See Illinois v. Fed. Emergency Mgmt. Agency*,

---

[8] *See, e.g.*, Iversen Decl. ¶ 8; Schmidt Decl. ¶¶ 8-9; Judson Decl. ¶ 8; Furedi Decl. ¶ 8.

No. 25-206 WES, 2025 WL 2908807, at *1 (R.D.I. Oct. 14, 2025) (grant conditions); *New York v. Trump*, No. 25-1236, 2026 WL 734941, at *18 (1st Cir. Mar. 16, 2026) (review process); *see also City of Chicago v. U.S. Dep't of Homeland Sec.*, No. 25 C 5463, 2026 WL 353581, at *6 (N.D. Ill. Feb. 9, 2026) (ordering agency to process reimbursement requests after it was enjoined from withholding funds). "Should an agency neglect the orders of a federal court, an order enforcing the original mandate is… 'particularly appropriate.'" *California v. U.S. Dep't of Lab.*, 155 F. Supp. 3d 1089, 1096 (E.D. Cal. 2016) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920 (D.C.Cir.1984)).

"A motion to enforce the court's previous judgment may be granted when the prevailing party demonstrates its opponent has not complied with the judgment's terms." *Id*. Furthermore, this Court possesses a "great deal of flexibility and discretion in choosing the remedy best suited to curing the violation" because Defendants "ha[ve] a 'history of noncompliance with prior orders.'" *Melendres v. Maricopa Cnty*., 897 F.3d 1217, 1221 (9th Cir. 2018) (citations omitted); *compare* Dkt. 273 (ordering Defendants to make new continuations decisions by December 30, 2026, and resultant continuation awards by December 31, 2026), *with* Dkt. 360 at 46:6-47:3 (Court "shar[ing]" Plaintiffs' "frustrat[ion] with the government's inability to comply with the original deadlines set by the Court's orders."); *compare* Dkt. 282 (ordering Defendants to provide continuation awards by January 6, 2026), *with* Dkt. 349 (Defendants issued interim awards on January 8, 2026).

Defendants are implementing their Discontinuation Decision through other means by setting onerous conditions on grantees in violation of the Court's injunction. The continuation notices make clear Defendants are considering information other than performance, fiscal, and management information, contrary to the Court's ruling. *See* Dkt. 269 at 23. Furthermore, Defendants failed to make "continuation awards" as required by the Court. *See supra* Sections II.A, B. As such, Plaintiffs turn to the Court for enforcement.

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

8

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 879-3098

### 1.    Defendants are implementing the discontinuances through other means

Defendants are implementing the Discontinuation Decision through other means and considering information that the Court enjoined Defendants from considering by imposing "grants management measures" on grantees. *See supra* Sections II.B. and D.

First, instead of helping grantees fulfill their programs' objectives, Defendants' continuation notices impose rigid obstacles that will effectively discontinue some grant projects and severely hinder many others. Defendants have baselessly constrained and delayed grantees' access to funds through the special reimbursement procedure, and the June 1 report requirement, which sets a deadline before important outcome data is available and serves no purpose other than to allow Defendants to consider performance issues Defendants themselves *caused*. Grantees rightly fear precisely this, which is driving away graduate students who need tuition assistance to remain enrolled in MHSP grantee's graduate programs, as well as mental health service professionals worried about the security of their positions. *See supra* Section II.D.  In imposing these measures, Defendants considered information, including the outcome of this pending litigation, that the Court enjoined Defendants from considering. The Department's treatment of these previously discontinued grantees deviates from Department's standard practice. Historically, the Department affirmatively engaged grantees to discuss budget changes and resolve any questions or concerns related to grantees' programs. *See, e.g.*, Stuber Decl. ¶ 11. Even as recently as this month, the Department proactively contacted a grantee funded through a different program to discuss budget updates and ensure the grantee's success this year, even though that grantee's project was *also* discontinued and *also* only continued later due to litigation. *See* Sabay Decl. ¶ 8. In light of the Department's clear capacity and willingness to support grantees and troubleshoot issues in other similar contexts, it is significant that Defendants are unable to work collaboratively with grantees to resolve concerns about the workability of the measures. *See* Stuber Decl. ¶ 11; Chung Decl. Ex. B. Without question,

Defendants' actions are directly threatening the existence of grantees' programs in violation of the Court's orders.

Second, Defendants should know, based on Plaintiffs' repeated representations, that providing only six months funding at this juncture will effectively cause grantee projects to end, once again serving Defendants' interests in discontinuing these grants. *See supra* II.D. n.3. Instead of abiding by the injunction meant to protect Plaintiffs' interests and enjoin Defendants' unlawful behavior, Defendants continue to effectuate the "new administration priorities" at the heart of the enjoined unlawful Discontinuation Decision. The imposition of Defendants' measures enables them to fully implement their enjoined discontinuances in the extremely unlikely event they would win their appeal and do so by June 1. Indeed, the timeline built into the measures is nonsensical—given that the parties won't complete appellate briefing until June 8, the Ninth Circuit may not even issue a decision until the end of the year. *See* Dkt. 359. Defendants twice asked for a stay from the Ninth Circuit and did not obtain one. *See* Dkt. 364. They cannot now ignore this Court's orders, and the opinions of the Ninth Circuit, to Plaintiff States' detriment by effectively discontinuing grants before the Court allows them to. *See Illinois*, 2025 WL 2908807 at *1 (granting motion to enforce where federal government imposed enjoined grant conditions that would only be effective if the government prevailed on appeal, holding "[t]he fig leaf conditional nature of the [government's] requirement makes little difference").

### 2.    Defendants failed to make "continuation awards"

As detailed in their Supplemental Status Report, Defendants have continued grants for 120 affected grantees. Dkt. 366. For these grantees, the Court's order required Defendants to issue continuation awards. *See supra* Sections II.A, II.B. By regulation, continuation awards fund the full budget period, not part of it. 34 C.F.R. § 75.253(a). Each budget period is the amount necessary to complete the activities for that period. *Id*. § 75.253(e)(3). And here, budget

periods are twelve months. *See* Stuber Decl., Ex. A at 2; *see also id.* Ex. D at 2 (form grantees are required to fill out specifying budget periods of one year).

But Defendants did not issue continuation awards for the budget period. *Id*., Ex. A at 3. Instead, they only issued six-month awards. *Id.* These are not continuation awards—they are extended interim awards that fall short of the funds necessary for grantees to perform the objectives set at the start of their grant awards and to meaningfully conduct activities within the current budget period. As the Department did not make continuation awards consistent with its regulations and the Court's order, the Court should enforce this part of its injunction.

**B.      In the Alternative, the Court Should Order Defendants to Set Aside Funds, Respond to Post-Judgment Discovery, and Provide a Witness for Deposition**

If this Court concludes it does not yet have sufficient facts to enforce its injunction, it should permit Plaintiffs expedited discovery to determine whether Defendants are implementing the Discontinuation Decision by other means. Additionally, if the partial funding measure is not lifted, Plaintiffs request the Court order Defendants to set aside funds for the rest of the 2026 budget period to forestall any violation of the injunction against "recompeting Grant funds." Dkt. 269 at 35.

Courts have "inherent power" to order discovery to enforce their judgments and "should give careful attention to a request for discovery to establish noncompliance with one of its judgments." *Leavitt*, 523 F.3d at 1033. "If significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id*. at 1034. Courts routinely order such discovery. *See, e.g.*, *Blackberry Ltd. v. Typo Products LLC*, No. 14-cv-00023-WHO, 2014 WL 4136586, at *2 (N.D. Cal. Aug. 21, 2014); *Al Otro Lado, Inc. v. Mayorkas*, No. 17-cv-2366-BAS-KSC, 2021 WL 4357492, at *1-2 (S.D. Cal. Sept. 24, 2021).

If this Court is not yet persuaded that Defendants have violated its injunction, then Plaintiffs should have discovery into Defendants' conclusory statements so they may present evidence that the Department has, in fact, violated the Court's orders. *Cf. Illinois v. Vought*, No.

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

11

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 879-3098

26-CV-1566, Dkt. 50 (N.D. Ill. Feb. 25, 2026) (ordering federal defendants to respond to discovery designed to uncover evidence of a secret, underlying administrative action motivating grant terminations). The Plaintiffs' proposed discovery is limited and narrow, seeking information about the measures Defendants have imposed, the purported risks underlying those measures, and Defendants' treatment of Plaintiffs' grantees compared to other grantees. *See* Chung Decl., Exs. H and I. This modest discovery is directly relevant to whether Defendants have violated this Court's injunction by implementing the Discontinuation Decision by other means. Because the need is immediate, and discontinued grantees are in jeopardy of being forced to shut down their projects, *see supra* Section II.D., the Court should order Defendants to respond fully to Plaintiffs' interrogatories and requests for production no later than ten days after the Court issues its ruling. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). The Court should also order Defendants to make a Rule 30(b)(6) witness available to address the topics listed in Plaintiffs' proposed notice of deposition. *See* Chung Decl. Ex. I.

## IV.   CONCLUSION

The Court should grant Plaintiffs' motion to enforce the Court's injunction and order Defendants to lift the measures, including the partial funding measure, and issue awards consistent with the Court's injunction and the Department's regulations. In the alternative, the Court should order Defendants to set aside sufficient funds for the remainder of the 2026 budget period, respond to post-judgment discovery, and provide a witness for deposition.

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

12

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 879-3098

DATED this 17th day of March 2026.

The signing attorneys certify that this memorandum contains 4158 words in compliance with Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

ROB BONTA
Attorney General of California

*/s/ Ellen Range*
ELLEN RANGE, WSBA #51334
JENNIFER K. CHUNG, WSBA #51583
LUCY WOLF, WSBA #59028
Assistant Attorneys General
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitors General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Ellen.Range@atg.wa.gov
Jennifer.Chung@atg.wa.gov
Lucy.Wolf@atg.wa.gov
William McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

*/s/ Crystal Adams*
CRYSTAL ADAMS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KATHLEEN BOERGERS*
Supervising Deputy Attorney General
KATHERINE MILTON*
Deputy Attorney General
1515 Clay St., 20th Floor
Oakland, CA 94612-0550
(510) 879-3098
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

*Attorneys for State of California*

WILLIAM TONG
Attorney General of Connecticut

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Andrew Ammirati*
ANDREW AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorney for State of Connecticut*

*/s/ Vanessa L. Kassab*
IAN R. LISTON*
Director of Impact Litigation
JENNIFER-KATE AARONSON*
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Vanessa.Kassab@delaware.gov
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

*Attorneys for State of Delaware*

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

13

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
(510) 879-3098

KWAME RAOUL
Attorney General of Illinois

*/s/ Emily Hirsch*
EMILY HIRSCH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Emily.Hirsch@ilag.gov

*Attorney for State of Illinois*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*

LETITIA JAMES
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Special Counsel for Federal Initiatives
MARK LADOV*
Special Counsel
28 Liberty Street
New York, NY 10005
212-416-8240
Rabia.Muqaddam@ag.ny.gov
mailto:Mark.Ladov@ag.ny.gov

*Attorneys for State of New York*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Michael Drezner*
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

*Attorney for State of Maryland*

AARON M. FREY
Attorney General of Maine

*/s/ Sarah A. Forster*
SARAH A. FORSTER*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

*Attorney for State of Maine*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS*
Chief State Trial Counsel
YAEL SHAVIT*
Chief, Consumer Protection Division
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2277
Katherine.Dirks@mass.gov
Yael.Shavit@mass.gov

*Counsel for Commonwealth of Massachusetts*

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

14

DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorney for People of Michigan*

RAÚL TORREZ
Attorney General of New Mexico

*/s/ Aletheia V.P. Allen*
ALETHEIA V.P. ALLEN*
Solicitor General
LAWRENCE M. MARCUS*
Assistant Solicitor General
New Mexico Department of Justice
201 Third St. NW, Suite 300
Albuquerque, NM 87102
505-527-2776
Aallen@nmdoj.gov
Imarcus@nmdoj.gov

*Attorneys for State of New Mexico*


DAN RAYFIELD
Attorney General of Oregon

*/s/ Coby Howell*
COBY HOWELL*
Senior Assistant Attorney General
Trial Attorney
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
971-673-1880
Coby.Howell@doj.oregon.gov

*Attorney for State of Oregon*

AARON FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
702-486-3420
HStern@ag.nv.gov

*Attorney for State of Nevada*


JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Frances Reynolds Colbert*
FRANCES REYNOLDS COLBERT*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-266-9226
Frances.Colbert@wisdoj.gov

*Attorney for State of Wisconsin*

*\*Admitted pro hac vice*

PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Kyla Duffy*
KYLA DUFFY*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2809
Kduffy@riag.ri.gov

*Attorney for State of Rhode Island*

PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS
NO. 2:25-cv-01228-KKE

15

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 879-3098