The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE OF WASHINGTON, et al.,

                Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

                Defendants.

NO. 2:25-cv-01228-KKE

DECLARATION OF CHRISTINE
MURPHY JUDSON IN SUPPORT OF
PLAINTIFFS' SECOND MOTION TO
ENFORCE SUMMARY JUDGMENT
ORDERS

DECLARATION OF CHRISTINE MURPHY
JUDSON IN SUPPORT OF PLAINTIFFS'
SECOND MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

**DECLARATION OF CHRISTINE MURPHY JUDSON**

I, Christine Murphy Judson, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.      I am the Executive Director, Talent Acquisition of Chicago Public Schools. I am over the age of 18 and have personal knowledge of all the facts stated herein, including knowledge based on my experience and information provided to me. If called as a witness, I could and would testify competently to the matters set forth below.

**Background**

2.      I am the Project Director for the CPS Recruitment and Retention of School-Based Clinical Staff, Award # S184H220232, which the Department funded under the School-Based Mental Health Services Grant Program (SBMH). This grant was discontinued on April 29, 2025.

3.      On January 9, 2026, I submitted a separate declaration that describes my professional background and provides additional information about Chicago Public Schools.

4.      On January 16, 2026, Chicago Public Schools sent the Department a performance report per the Department's January 9, 2026, request. The performance report contains data and detailed information about Chicago Public Schools's grant through the end of 2025.

**The Department's Noncompliance with the Court's Order Harms Chicago Public Schools**

5.      On March 2, 2026, Chicago Public Schools received a Notice of Continuation of Grant Award. The Notice stated that, "[d]ue to ongoing concerns regarding the financial stability and uncertainty about the continued operation of these grants while litigation is pending, an updated performance and budget report will be required by June 1, 2026. As a related risk mitigation measure, . . . the Department is providing . . . approximately 6 months of funding until

completion of the mid-year check-in, consistent with 34 C.F.R. § 75.253(e)(2)(ii). After reviewing the submitted report, the Department may award additional funds and/or take further risk mitigation actions." In other words, the Department has only committed to providing funding for the first half of the budget period.

6.    Because of the ongoing uncertainty as to whether we will receive funding for the second half of the budget period, Chicago Public Schools has suffered and continues to suffer the following harms:

a.  Chicago Public Schools will lose key personnel supporting school-based mental health providers because the team members who provide daily support to our clinician recruitment, training, and retention activities are departing. Two staff members have left the district because these positions were originally slated to close in December 2025, and the ongoing uncertainty prevents us from guaranteeing their continued employment.

b.  To ensure proper planning for the 2026-2027 school year, Chicago Public Schools needs to set recruitment targets for hard to staff school-based mental health provider positions. However, these targets cannot be confirmed without the certainty of funding available for recruitment and retention stipends, or the confirmation that the recruitment team will be employed through the critical summer hiring window that ranges from May 1 to September 1. It is very likely that our program staff will seek employment elsewhere because we do not have a full year of grant funding. Moreover, Chicago Public Schools cannot hire new staff or project its expenses related to mental health services for the remainder of the 2025-2026 school year or the 2026-2027 school year.

c.  The loss of retention stipends tied to our mentoring programs and lack of certainty about future engagement programming has negatively impacted our school-based mental health providers in schools. The loss of these 15 experienced clinicians, who have historically served as mentors and clinical supervisors, severely reduces the quality of training and preparation for future clinicians entering the field. Furthermore, the uncertainty forced us to reconsider our spring clinical placements, causing relational harm with our partner universities and preparation programs, and damaging CPS's reputation as an employer and educational institution. Staff who depart take their specialized training and expertise with them, meaning we will face steep new investments in recruitment, hiring, and training if funding is eventually restored.

d.  Because of this disruption, CPS will be unable to meet necessary provider ratios to meet national standards, which diminishes the quality of care and reduces the availability of services for our most at-risk students. Prior to this uncertainty, we had made substantial progress toward our goals for our 322,106 students: reducing counselor ratios to 358:1, social worker ratios to 483:1, and psychologist ratios to 1267:1. Losing staff reverses this progress. Delaying or reducing services to these students creates a compounding effect of trauma.

e.  Additionally, the ongoing funding uncertainty prevents us from providing necessary stipends for providers to mentor clinician interns, a program that requires enrollment six months in advance. It also curtails our ability to fund travel to clinician conferences where our providers access critical professional development and training in mental health interventions. Finally, staff who remain must handle

increased workloads with reduced professional development, making them highly susceptible to burnout and further increasing the likelihood that they will leave the profession.

7. Receiving six months of funding in the middle of the spring semester cannot resolve these harms. The Department must provide funding for the second half of 2026 so that Chicago Public Schools can plan, budget, and perform its SBMH grant project.

8. Furthermore, the Department's requirement that Chicago Public Schools can only access funding using a new reimbursement request procedure will place substantial burdens on our staff. Already, project staff see a message on the G5 homepage advising "Due to severe staffing constraints, you can expect delays in connecting to a live help desk agent for assistance with G5. We recommend sending an email to OBSSHelpDesk@ed.gov with a summary of your issue or question. The next available agent during normal business hours will respond to your email in the order it was received." Incorporating a reimbursement requirement places additional delays and stress on individual grant team members and federal structures.

9. Already, the delayed provision of funds and Grant Award Notices for Year 4 of our award has created cash flow issues in completing the core requirements of the grant. The Talent Acquisition Manager who is responsible for supervising staff and directly supporting school-based mental health providers will now also have to absorb the new financial obligations. Instead of prioritizing recruiting and hiring new providers, our staff will need to commit a significant portion of their time to submitting reimbursement requests that meet the Department's new requirements. In my 10 years working on Department of Education grants at Chicago Public Schools, the Department has never raised any concerns about Chicago Public Schools's management of funds.

**Conclusion**

10. In order to avoid further harm, Chicago Public Schools needs the Department to provide funding for the entire budget period as soon as possible. Without funding certainty through the end of 2026, Chicago Public Schools cannot effectively plan and will struggle to complete core grant activities, and be unable to fully focus on retaining and recruiting school-based mental health providers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 13th day of March 2026, at Chicago, Illinois.

DocuSigned by:

3DB88F7EAE9A4E6...

Christine Murphy Judson
Executive Director, Talent Acquisition