The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

STATE OF WASHINGTON, et al.,

               Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

               Defendants.

NO. 2:25-cv-01228-KKE

DECLARATION OF JULIE GIANNINI
PREVIDE IN SUPPORT OF PLAINTIFFS'
SECOND MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS

DECLARATION OF JULIE GIANNINI
PREVIDE IN SUPPORT OF PLAINTIFFS'
SECOND MOTION TO ENFORCE
SUMMARY JUDGMENT ORDERS
NO. 2:25-cv-01228-KKE

ATTORNEY GENERAL OF CALIFORNIA
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 879-3098

## <u>DECLARATION OF JULIE GIANNINI PREVIDE</u>

I, Julie Giannini Previde, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.      I am the Superintendent of McKinleyville Union School District in Humboldt County, California. I am over the age of 18 and have personal knowledge of all the facts stated herein, including knowledge based on my experience and information provided to me. If called as a witness, I could and would testify competently to the matters set forth below.

### <u>Background</u>

2.      I am the Superintendent of McKinleyville Union School District (McKinleyville), recipient of the Northern Humboldt School Based Mental Health Consortium Grant, Award S184H240363, which the Department funded under the School-Based Mental Health Services Grant Program (SBMH). McKinleyville received a Notice of Non-Continuation of this grant on April 29, 2025.

3.      On January 9, 2026, I submitted a separate declaration that describes my professional background and provides additional information about McKinleyville.

4.      On January 16, 2026, McKinleyville sent the Department a performance report per the Department's January 9, 2026, request. The performance report contains data and detailed information about McKinleyville's grant through the end of 2025.

### <u>The Department's Noncompliance with the Court's Order Harms McKinleyville</u>

5.      On March 2, 2026, McKinleyville received a Notice of Continuation of Grant Award. While this Notice had the effect of reversing the Notice of Non-Continuation we received in April 2025, it imposed new conditions and only guaranteed funding through the end of June 2026 rather than for the full calendar year.  The Notice stated that, "[d]ue to ongoing concerns

regarding the financial stability and uncertainty about the continued operation of these grants while litigation is pending, an updated performance and budget report will be required by June 1, 2026. As a related risk mitigation measure, . . . the Department is providing . . . approximately 6 months of funding until completion of the mid-year check-in, consistent with 34 C.F.R. § 75.253(e)(2)(ii). After reviewing the submitted report, the Department may award additional funds and/or take further risk mitigation actions." In other words, under the terms of this Notice, the Department may decide not to provide funding for the full second year of the budget period, notwithstanding the decision to continue the grant.

6.      Because of the ongoing uncertainty as to whether we will receive funding for the second half of the budget period, McKinleyville has suffered and continues to suffer the following harms:

a.  Two staff members engaged in grant activities were noticed for Reduction in Force on March 13, 2026, and two other staff members were reassigned to non-SBMH grant-funded positions for which they are qualified. Other program staff will look for more secure work elsewhere. Three of the five employees engaged in School Based Mental Health work for McKinleyville have requested a letter of recommendation from me to ensure they can apply for other jobs. Requiring that McKinleyville wait until it submits the newly required June 1, 2026 performance report to learn whether we will have funding for the second half of 2026 makes it highly unlikely that we will be able to retain or reinstate these highly trained individuals after the end of this school year.

b.  The threat of losing mental health staff at the end of this school year is causing significant stress and anxiety for students and staff. Our students depend on the

mental health clinicians in our schools for support. And with these mental health clinicians on staff, our teachers have been able to refocus their energy on developing community and learning. Our teachers are concerned that students' mental health needs will fall to them if we lose our grant-funded staff. And our administrators know that we will see a decline in attendance, sense of belonging, and academic outcomes as a result.

c.  California school budgets must be approved by local Boards in June of each year. If we do not receive a clear indication that we will receive grant funding for the second half of 2026 before June, we will need to propose a budget that does not include that funding. We will have to reduce direct student support to make up for the lack of guaranteed SBMH grant funding. The result will be less mental health support in our schools, potentially higher class sizes, and reduced services to students.

d.  Within the original five-year grant cycle approved by the Department, there was room to build on previous work and scale up our mental health interventions. The Department's efforts to cut a grant designed to provide a system of care for students who are struggling with poor mental health has created a much less robust program. Without guaranteed funding, the vision and growth of the programs, training, and capacity building have been stunted.

7.  Receiving just six months of funding that ends after the spring semester cannot resolve these harms. The Department must provide funding for the second half of 2026 so that McKinleyville can plan, budget, and perform its SBMH grant project.

8.    Furthermore, the Department's requirement that McKinleyville now can only access funding using a new reimbursement request procedure will place substantial burdens on our small staff. It also adds a significant level of concern that grant activities may not be reimbursed. For a district operating with a small budget and experiencing declining revenues, the loss of grant funds applicable to staffing or training will result in significantly limited grant activities. We simply cannot afford this risk.

9.    The Department has not provided a timeline for expenditure reimbursements. Non-immediate reimbursement will cause cash flow issues, requiring McKinleyville to dip into reserves. Additionally, the same staff who will prepare and finalize reimbursement requests and performance reports are also responsible for coordinating and directing our grant. Instead of prioritizing the implementation of Multi-Tiered System of Supports ("MTSS") and professional development, our staff will need to commit a significant portion of their time to submitting reimbursement requests that meet the Department's new requirements. In my two years working on Department of Education grants at McKinleyville, the Department has never raised any concerns about McKinleyville's management of funds.

//

//

//

//

//

//

//

//

//

**Conclusion**

10.    In order to avoid further harm, McKinleyville needs, as soon as possible, for the Department to confirm that it will provide funding for the entire budget period. Without funding certainty through the end of 2026, McKinleyville cannot plan and will be unable to retain essential staff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 16th day of March 2026, at McKinleyville, California.

Julie Giannini Previde
Superintendent  of  McKinleyville  Union  School
District