Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>                          Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION, *et al.*,<br><br>                          Defendants. | CASE NO.  C25-1228-KKE<br><br>**DEFENDANTS' MEMORANDUM IN<br>OPPOSITION TO STATES' SECOND<br>MOTION TO ENFORCE SUMMARY<br>JUDGMENT ORDERS** |

Defendants U.S. Department of Education and Linda McMahon, U.S. Secretary of Education (hereafter collectively referred to as "the Department") hereby respond to Plaintiff States' second motion to enforce the judgment.

## INTRODUCTION

The Department has not engaged in a pattern of violating this Court's permanent injunction in the past, and it is not violating the injunction now.  The Court ordered the Department to make new individualized continuation determinations as to the affected grantees and the Department has complied.

The States challenge the Department's decisions to (1) monitor grantee spending to ensure reasonable and prudent expenditures of the federal funds they are receiving and (2) condition eligibility to receive additional funding under their current budget period on demonstrating adequate

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 1
(Case No. C25-1228-KKE)

performance in reaching the goals and objectives of their grant agreements. The way the Department determined how to pay its grantees is reasonable and within the Department's statutory and regulatory authority in furtherance of its obligation to act as a responsible steward of taxpayer dollars. More importantly, nothing in the Court's judgment constrains the Department in regard to either decision.

The judgment imposes no requirement that the Department fund any grant, nor does it constrain the Department's discretion in the manner or mode that it chooses to fund any grant. This was not an oversight. When this case was before the Court for a decision on the merits, the States repeatedly disclaimed any interest in a ruling governing the disbursement of federal funds to grantees within their respective states. Thus, the Court's injunction did not order any relief respecting how the Department should fund any grant agreement.

The States' motion tries to obtain such relief, though the propriety of these requirements was never adjudicated on the merits nor were they a subject of the injunction. Thus, the States are attempting to expand the relief ordered by the Court post-judgment and post-appeal, but this is jurisdictionally foreclosed. Accordingly, the motion should be denied.

## STATEMENT OF FACTS

On December 19, 2025, the Court issued an order on cross-motions for summary judgment in which it ruled in the States' favor and issued a permanent injunction. Dkt. # 269. Insofar as relevant to the present motion, the Court vacated the Directive procedure, discontinuation notices, and letters denying reconsideration as to all affected grantees and required the Department to:

1. Refrain from "[i]mplementing or enforcing through any means the Directive procedure, the discontinuation notices, or reconsideration denial letters, including recompeting Grant funds, with respect to any discontinued Grant within Plaintiff States."

2. Make a "lawful continuation determination" as to each Grant, no later than a date to be set by the Court.

*Id.* at p. 34-36. An issue arose immediately post-judgment resulting from the Department's inability to comply with the date originally set by the Court, causing the Department to move for a modification of the compliance date. This Court granted the motion. Dkt. # 356.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 2
(Case No. C25-1228-KKE)

On January 23, 2026, the Department filed a notice of appeal.  Dkt # 357.  The Department's motion for a stay of the judgment pending appeal resulted in a further modification of the deadline due to an administrative stay issued by the Ninth Circuit on February 3, 2026.  *See* Dkt. # 361.

Upon the Ninth Circuit's denial of the Department's motion to stay the judgment, the Court issued an order setting new compliance deadlines.  Dkt. # 363.  The order required the Department to "(1) issue new continuation determinations no later than March 2, 2026; (2) issue any new continuation awards no later than March 5, 2026, backdated to February 6, 2026; and (3) file a status report no later than March 6, 2026, to confirm compliance." *Id*.  The Department completed these actions by the newly set deadlines, and the States do not contend otherwise.[1]

In terms of funding the grants, the Department has initially obligated six months of the affected grantees' requested funding.  Declaration of Jackson, ¶ 7.  The Department has also informed the grantees that eligibility to receive additional funding for the remainder of the year requires grantees to provide satisfactory mid-year performance and budget information and show that they are making substantial progress towards fulfilling the goals and objectives of their grant. *Id.*  Additionally, the Department made each new continuation award on reimbursement pay status, which provides for reimbursement of the grantees expenses as those expenses are incurred.  *Id.* at ¶¶ 4, 5.  Reimbursement pay status permits the Department to monitor how the grantees' drawdowns are being used in order to ensure that payments to grantees are limited to allowable costs for purposes of carrying out the purpose of the approved program or project. *Id.* The Department, in exercising responsible stewardship of its federal funds decided that these measures were necessary because of the heightened risk associated with the grants at issue in this litigation. *Id.* at ¶ 3.

Moreover, the States, throughout the course of this litigation, have noted numerous disruptions to grantees' planned or intended activities. *See, e.g.* Dkt. # 49 at 30 (stating that the non-continuation decisions had caused varied effects across different grantees, including layoffs,

---

1  That said, the Department overlooked that the status report originally ordered by the Court in December required more than a simple confirmation of compliance but also directed the Department to identify to whom the notice was sent. Dkt. # 269, p. 36.  Upon having this called to its attention by the States' attorneys, the Department filed a Supplemental Status Report on March 13, 2026, containing this information.  Dkt. # 366.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 3
(Case No. C25-1228-KKE)

disruption of accreditation, and high workloads and understaffing); Dkt. # 174 at 6 ("Seven California grantees applied for their MHSP grants in 2024 and thus did not receive their awards until January 2025 […] they barely had time to implement any of their planned efforts"); Dkt. # 184 at 2 ("the Non-Continuation Decision is currently disrupting established education and mental healthcare ecosystems").  These disruptions, whether or not outside the grantees' control, have heightened the potential for unauthorized budget modifications and misuse of funds for unauthorized activities.  The reimbursement pay measure permits the Department to guard against such unauthorized spending prior to a grantee drawing down funds as the Department has limited ability to recoup any funds after they have been spent by a grantee.  *Id*. at ¶ 5.

Since the continuation awards were made by the Department in March, 28 affected grantees have submitted reimbursement requests for expenses totaling $2,872,273.23.  Declaration of Carr, ¶ 3.  Of those, 15 have been approved and $1,645,498.89 has been disbursed.  *Id.*  On average, the Department has reviewed all requests within one day and has been providing reimbursements within one to five days of receipt.  *Id.*  The remaining requests are pending final review and/or are awaiting additional information from the grantee.  *Id.*

Typically, as part of routine monitoring for the MHSP and SBMH programs, program staff conduct mid-year check-ins with all grantees.  *Id.* at ¶ 4.  The purpose of these check-ins is to assess the grantee's progress towards their goals and objectives, offer technical assistance, and identify potential risks.  *Id.*  All grantees under these two programs, whether they are grantees affected by the judgment in this action or not, are subject to the same mid-year check-in requirement.  *Id.* at ¶ 5.

On March 10, 2026, the States' counsel contacted the Department's counsel to express their "concerns" that the Department was violating the Court's injunction, and they requested answers to a number of questions.  Dkt. # 401, ¶ 2; # 401-1.  Three days later, on March 13, 2026, the Department's counsel responded to these concerns.  Dkt # 401, ¶ 3; # 401-2.  Apparently dissatisfied with these responses, the States filed the instant motion.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 4
(Case No. C25-1228-KKE)

## ARGUMENT

I.    NOTHING IN THE DEPARTMENT'S REGULATIONS REQUIRE THE DEPARTMENT TO FULLY FUND A GRANT FROM THE OUTSET OF THE BUDGET PERIOD

The States suggest that the Department has violated its own regulations by failing to provide the affected grantees with 100% of the funding that they could have been eligible for.  Dkt. # 367, p. 13, *l.* 20 – p. 14, *l.* 8.  Even if that had been an issue in this lawsuit, the States are simply incorrect. The States are conflating the Secretary's discretionary authority to set the "budget period" of a grant with the Secretary's authority to determine "the amount of new funds to make available" when continuing a grant.  They are not the same thing.

The Department's regulations include a baseline definition that a budget period "means an interval of time into which a project period is divided for budgetary purposes" and they further specify that "[t]he Secretary usually approves a budget period of not more than 12 months, even if the project has a multi-year project period[.]"  34 C.F.R. §§ 75.251, 77.1(c).  In this instance, while the Secretary has authority to set budget periods shorter than 12 months, the Secretary has issued new continuation decisions that establish a budget period from January 1, 2026 to December 31, 2026.  *See* 34 C.F.R. § 75.251.  Further, the Department's continuation regulations establish that "[i]f the Secretary makes a continuation award under this section […] the new budget period begins on the day after the previous budget period ends[,]" which is what the Secretary has done now for each new continuation award, and is in compliance with the Court's March 2, 2026 order, dkt. # 363. *See* 34 C.F.R. § 75.253(d)(2).  However, the amount of the continuation award is governed by a discrete subsection of the continuation determination regulations, entitled "Amount of Continuation Award."  34 C.F.R. § 75.253(e)(2).  Pursuant to that subsection,

The Secretary may—

> (i)    Require the grantee to submit a written statement describing how the funds made available under paragraph (e)(1) of this section will be used; and

> (ii)    Determine the amount of new funds that the Department will make available for the subsequent budget period after considering the statement the grantee provides under paragraph (e)(2)(i) of this section and any other information available to the Secretary about the use of funds under the grant.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 5
(Case No. C25-1228-KKE)

*Id.* Nowhere in the Department's regulations, nor in any order of this Court, is there a requirement that the Department pay grant funds at the commencement of a budget period for 100% of the funds budgeted for the entirety of the budget period.[2]

II.    NOTHING IN THE COURT'S JUDGMENT ENJOINS THE DEPARTMENT FROM EXERCISING ITS DISCRETION IN DETERMINING HOW GRANTEES WILL BE PAID

Contrary to the States' argument, nothing in the Court's injunction concerns the mechanisms used by the Department to fund grant agreements nor restrains the Department from exercising its discretion in determining how grantees will be paid.  This did not occur by accident.

In order to support their argument that this Court had jurisdiction under the Administrative Procedure Act, the States structured their claims to avoid any overt demands concerning the Department's obligations with respect to paying out grant funds.  Thus, the States informed the Court that they "seek nothing more than for the Court to order Defendants to follow the lawful process for making grant continuation decisions as directed by applicable statutes and regulations." Dkt. # 157 at p.1, *ll.* 16-21; and see *id.* at pp. 6-8 ("Unlike the grant terminations in *California* and *NIH*, the Court in this case will not order the disbursement of funds.").  These representations played an important role in persuading the Court to retain jurisdiction over their claims. *See, e.g.* dkt. # 190, p. 17, *ll.* 5-8. ("Plaintiff States acknowledge that new decisions must be made but seek only to require the Department to make 'lawful' decisions, rather than to require continuation of Grantee funding.") (citations omitted).

The Department has made its grant continuation decisions, and the States do not contend that the Department failed to follow a lawful process.  Instead, the States now contend that the injunction contemplated restrictions on the Department's exercise of its administrative discretion to determine

---

2  The States cite 34 C.F.R. §§ 75.253(a) and (e)(3) for this proposition.  Dkt. # 367, p. 13, *ll.* 24-25.  Neither subsection supports their argument.  Subsection (a) simply set forth the Secretary's authority to make continuation decisions.  It does not concern grant funding.  Subsection (e)(3) by its express terms only concerns unobligated funds from a prior budget period.  Under the regulation, in determining the amount of new funds to make available to a grantee, the Department considers whether "unobligated funds" from a prior budget year are "needed to complete activities that were planned for completion in the prior budget period."  If not, a grantee might receive a lesser new grant award than might otherwise be the case, thought this is a matter of administrative discretion.  This regulation does not place any obligation on the Department to fully fund a grant at the outset of the budget period.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 6
(Case No. C25-1228-KKE)

the mode and manner of funding the grant agreements after making these continuation decisions. But that contention finds no support in the text of this Court's judgment.

The States' arguments all rely on a single paragraph in the injunction providing only that:

> The Court permanently ENJOINS the Department . . . from . . . [i]mplementing or enforcing through any means the Directive procedure, the discontinuation notices, or reconsideration denial letters . . .

Dkt. # 269, p. 35.  The Directive procedure, notices, and reconsideration denial letters centered on the Department's determination that certain diversity, equity and inclusion measures in the relevant grants are not in the best interest of the government.  Here, where the Department has not only made the new continuation determinations as required by the injunction but has also funded all of the continued grants it simply cannot be correctly asserted that the Department has implemented or enforced the Directive procedure, the discontinuation notice, or the reconsideration denial letters.

The States' motion asks the Court to stretch its injunction to cover their complaints about how the Department decided to pay its grantees, although they never raised this as an issue in their motion for summary judgment.  As a jurisdictional matter, this is not permitted.  The filing of the Notice of Appeal was a jurisdictionally significant event as it divested this Court of its control over the matters on appeal.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).  While a district court retains jurisdiction to enforce a judgment in the event of an appeal, it may not "alter or expand upon the judgment."  *In re Padilla,* 222 F.3d 1184, 1190 (9th Cir. 2000).  Here, where the States are asking the Court to extend its injunction to matters that were not at issue when this case was before the Court on the merits, it is being asked to exceed its jurisdiction.

The States suggest a variety of reasons why they believe this would be appropriate here.  Even ignoring the jurisdictional barrier, they are wrong on all counts.  First, they contend that the way grantees will be paid may cause hardships for the affected grantees.  This contention is belied by their shifting positions.  The States previously asserted that six month of interim funding was necessary "so that grants are funded for the entire academic term[,]" and stressed that "grantees operate by academic terms[.]"  Dkt. # 288 at pp. 1, 7.  Now that the Department has provided six months of continuation award funding covering the academic term, the States allege that all of their previously asserted harms are actually associated with a different time period.  Compare Dkt. # 288

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 7
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

at p. 7 ("MHSP grantees cannot offer scholarships or recruit for the upcoming semesters. SBMH grantees cannot hire mental health professionals whose employment contracts require their positions to be funded for the full academic term.") with Dkt. # 367 at pp. 5-6 ("Grantees depend on funding certainty to recruit prospective graduate students into their programs, place graduate student interns in schools, and finalize mental health service professional positions for the fall semester."). In any event, the type of funding certainty to which the States claim an entitlement here, either as to the amount or period of availability, is in no way required by this Court's previous orders or the operative regulatory scheme of these programs.

More importantly, for purposes of this motion, the relevant question is not whether the Department's method of paying grantees is "harming" the affected grantees but whether the Department is violating the express terms of the injunction. As discussed above, the answer is no. *Cf. Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996). ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."). The States' transparent effort to have the Court stretch its injunction to cover matters never at issue in this lawsuit on grounds of hardship should be rejected.

Second, the States suggest that the Court's inherent power to enforce compliance with an injunction also includes an inherent power to determine how the Department should pay its grantees. Dkt. # 367, pp. 10-11. However, the cases they cite do not establish such an inherent power. Rather, unlike here, in each of the cases cited by the States, the grant conditions *were* the subject of the underlying litigation. *See e.g., Illinois v. Fed. Emergency Mgmt. Agency*, 2025 WL 2908807, at *1 (D.R.I. Oct. 14, 2025) (district court vacated and set aside several contested grant conditions and permanently enjoined Defendants from enforcing the conditions against the plaintiffs).

Third, the States insist that the Court should expand its injunction to cover their complaints because of the Department's supposed history of noncompliance with prior orders. Dkt. # 367 p. 11, *ll.* 9-19 (citing *Melendres v. Maricopa Cnty.*, 897 F.3d 1217 (9th Cir. 2018)). But this case is nothing like the one on which the States rely. In *Melendres*, the Ninth Circuit remarked on the defendants' "repeated bad-faith violations of court orders." *Id.* at 1222. Here, the Department's temporary noncompliance resulted from the Department's inability to meet the Court's deadline, for

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 8
(Case No. C25-1228-KKE)

which it sought and obtained relief. As the Court noted at the hearing on the Department's motion to alter the deadline, "[t]he Court is committed to ensuring compliance and enforcing the substance of the summary judgment order, and the government's motion does not seek to shirk that obligation." Dkt. # 360 (Verbatim Report of Proceedings (1/22/26), p. 47, *ll.* 22-24).

Fourth, the States assert that the Department is "considering information, other than performance, fiscal, and management information, contrary to the Court's ruling." Dkt. # 367, p. 11, *ll.* 21-23. This is also not correct. All information that the Department intends to request under its mid-year check-in will amount to "performance, fiscal, and management information." Declaration of Carr, ¶ 5. Moreover, because the six month check-ins are a materially different event than the April 2025 continuation decisions that were the subject of the lawsuit, the information that the Department is able to request and consider in connection with a check-in is not covered by 34 C.F.R. § 75.253(a) and (b) or the Court's interpretation of those subsections in its summary judgment ruling.

The States' remaining complaint that the way grantees are being paid is "onerous," dkt. # 367, p. 11, *ll.* 20-26, is simply a statement of opinion. In any event, the fact that the States regard this method of payment as onerous does not make it either unlawful or, more importantly, a violation of the Court's injunction.

III.    THE STATES' REQUEST FOR POST-JUDGMENT DISCOVERY SHOULD BE DENIED

Seeking to kick-off a new round of litigation post-judgment (and post-appeal), the States ask the Court to authorize it to conduct expedited discovery into areas far afield from the issues adjudicated by the Court when this case was before it for a determination on the merits.[3] Specifically, they ask the Court to allow it to conduct discovery into the Department's budgetary and funding process and decisions as to all grantees in the MHSP and SMHP programs.[4]

---

[3] The States' proposal is that the Department should have a mere 10 days to respond to its expansive discovery requests. Dkt. # 367, p. 15. In general, and particularly because a number of the States' requests give rise to privilege issues, this is not sufficient time for the Department to prepare responses and, if necessary, to identify and prepare witnesses for the proposed Rule 30(b)(6) deposition.

[4] The States assert that "Courts routinely order such discovery" supporting this sweeping statement with two isolated case citations that say no such thing and where the movants, unlike here, presented concrete evidence of widespread violations of an injunction. Notwithstanding the States' evidence-free declaration, it is more likely true that such

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 9
(Case No. C25-1228-KKE)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

The States seriously downplay their requested discovery as "modest" and "limited and narrow." It is anything but. They propose to propound some 12 interrogatories (not including subparts) and 7 requests for production, preceded by three pages of "definitions" and an additional page of "instructions." Dkt. # 408-1. By way of example, the breadth of these requests is demonstrated by Request for Production No. 1, which would require the Department to "[p]roduce all internal agency communications, memoranda, policies, directives, or guidance documents directing, instructing, or providing guidance to Department staff . . ." *Id.; see also* Request for Production 2-7. The States proposed interrogatories are similarly broad. *See, e.g.*, Interrogatory No. 7 ("Identify all risks . . ."); Interrogatory No. 8 ("Describe with particularity the concerns . . ."); Interrogatory No. 12 ("Identify all steps . . ."). Likewise, the States' proposed Rule 30(b)(6) deposition is equally far reaching, listing 16 broad topic areas. Dkt. # 401-9.

The States' request for discovery is a fallback position, anticipating that the Court might conclude that "it does not yet have sufficient facts to enforce its injunction." Dkt. # 367, p. 15, *ll.* 10-13. In that event, the States suggest that they should be permitted to fish around the Department with broad post-judgment discovery authority in hopes that they can find a "violation." *Id.*

Respectfully, the States have the relevant standard exactly backwards. If the known facts do not suggest that the Department has committed a violation of the Court's injunction, and they do not, the States are not entitled to engage in a fishing expedition in an effort to find one. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *58 (S.D.N.Y. July 17, 2012), report and recommendation adopted sub nom. *Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (post-judgment motion for discovery "should not lead to free rein for a fishing expedition."). Instead, a motion for discovery will be denied in this setting where the movant has not "at least present[ed] a prima facie case raising a likelihood that the outstanding injunction is being violated." *N. W. Controls, Inc. v. Outboard Marine Corp.*, 349 F. Supp. 1254, 1256 (D. Del.

motions are rarely made and even more rarely granted. *See e.g. i4i Ltd. P'ship v. Microsoft Corp.*, 398 F. Supp. 3d 90, 101-102 (E.D. Tex. 2019); *and see 800 Adept, Inc. v. Murex Sec., Ltd.,* 2007 WL 2826247, at *3 (M.D. Fla. Sept. 25, 2007) (motion denied where movant facts constituted mere "suspicions" and "conclusory allegations.").

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 10
(Case No. C25-1228-KKE)

1972); *and see Cardell* at \*58 (adopting this standard as "the most logical" based on applicable caselaw).

The States rely on *California Dep't of Soc. Servs. v. Leavitt,* 523 F.3d 1033 (9th Cir. 2008), to argue that discovery should be granted if "significant questions regarding noncompliance have been raised." *Id*. at 1034. But the States cite *Leavitt's* "significant questions" language without even attempting to put forth the type of evidence *Leavitt* found may raise compliance questions. While *Leavitt* uses slightly different words to describe the applicable standard, their import is the same as in the cases cited above. The party seeking additional discovery must "present some proof to establish" its claim, *Leavitt*, 523 F.3d at 1034 n.12, and in *Leavitt* "[i]nformation already present in the record raise[d] questions of noncompliance," *id*. at 1034. *See also id*. at 1035 (laying out substantial, concrete evidence of non-compliance that justified additional discovery); *Blackberry Ltd. v. Typo Prods*., 2014 WL 4136586 at \*2-5 (N.D. Cal. Aug. 21, 2014) (significant evidence of non-compliance including evidence of "deliberate contempt of the preliminary injunction").

There is no such evidence here. The Department issued the continuation decisions that were the basis of the complaint, and the States present no "substantial, concrete evidence" of any non-compliance by the Department. The States' complaints concern how the Department should pay its grantees, but that never was an issue in the lawsuit when this case was before the Court on the merits.

Further, the matters that are the basis of the States' complaints here are known facts for which discovery is entirely unnecessary. The States have not shown why discovery is needed to persuade the Court that a violation of the injunction has occurred on these facts if they are not otherwise successful in that effort on the basis of this motion.

Finally, while the States seem to be concerned that the Department may violate the Court's injunction in the future, this is also not a basis for discovery. The States have not shown that they are entitled to relief for an "anticipatory violation" of an injunction. The States' motion to conduct post-judgment discovery should be denied.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 11
(Case No. C25-1228-KKE)

## CONCLUSION

For the foregoing reasons, the States' Second Motion to Enforce the Judgment should be denied.

## CERTIFICATION

I certify that this memorandum contains 4,193 words, in compliance with local rule LCR 7(e)(2).

DATED this 7th day of April 2026.

Respectfully submitted,


*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
E-mail: brian.kipnis@usdoj.gov


*Attorneys for Defendants*

DEFENDANTS' MEMORANDUM IN OPPOSITION TO STATES' SECOND
MOTION TO ENFORCE SUMMARY JUDGMENT ORDERS - 12
(Case No. C25-1228-KKE)