IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

Defendants.

CASE NO.  C25-1228KKE

## DECLARATION OF CANDICE JACKSON

I, Candice Jackson, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my information and belief:

1. I am Deputy General Counsel at the United States Department of Education ("the Department" or "Education").  I have been employed in that capacity since January 20, 2025, and in that capacity have responsibility for legal advice and compliance with respect to Department grant programs. I am familiar with the issues in this litigation and have been provided facts from Department employees that address the following:

2. In accordance with federal regulations, the Department has an obligation to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution and applicable Federal statutes and regulations.  2 C.F.R. 200.300(a).

3. In this case, Education recognizes that its pending appeal before the Ninth Circuit creates uncertainty regarding the affected grants.  Education recognizes that this circumstance may create a perverse incentive amongst some of the affected grantees to expend grant funds

1

imprudently in the form of excessive drawdowns that are not associated with current and allowable grant activities.  As a result, Education has taken measures to protect against excessive drawdowns that are not associated with current and allowable grant activities.

4.      The three payment flags that may be applied to a grant award, in increasing level of restrictiveness, are (1) Route Payment; (2) Reimbursement; and (3) Stop Payment. A route payment flag requires that program offices review and approve a grantee's drawdown request before funds are released. A reimbursement flag requires that a grantee use its own funds and provide receipts or other documentation of allowable expenditures to program offices before funds are released by a program officer to the grantee. A stop payment prevents a grantee from drawing any funds on the grant.  These pay statuses are used by the Department to safeguard federal funds from risks such as fraud, noncompliance, or irresponsible uses of funds.

5.      The affected grantees in this case have been placed on reimbursement pay status. In the absence of applying reimbursement pay status, grantees could draw money from their accounts with no internal checks or corroboration.

6.      The affected grantees in this case are not the only Education grantees subject to reimbursement payment or other payment restrictions.  There are currently over 2,500 active Education grants under some type of restricted pay status.

7.      Similarly, the Department's decision to initially obligate six months' worth of the affected grantees' requested funding is intended to safeguard federal funds and reduce the risk of improper or excessive drawdowns.  Eligibility to receive additional funding for the remainder of the year requires grantees to provide satisfactory mid-year performance and budget information and show that they are making substantial progress towards fulfilling the goals and objectives of

2

their grant. As the Dana Carr declaration shows, the grantees in this litigation continue to request and quickly receive grant funds made for allowable expenditures for currently incurred costs.

8.      Moreover, the Department routinely awards less continuation funding than what grantees request. Since 2021, for example, the Department made over 1,900 continuation awards that fell short of the amount requested by grantees by more than a $50,000 *de minimis* margin. In the most notable example of the Department's funding flexibility, 644 of those continuation awards provided only a single dollar of continuation funding over the course of the new budget period.

Executed on this 7th day of April, 2025.

_____

Candice Jackson

3