UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | CASE NO. C25-1228-KKE |
| Plaintiff(s), | ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| Defendant(s). | |

Pending before the Court is Plaintiff States' second motion to enforce the Court's prior summary judgment orders.  Dkt. No. 367. [1]  For the reasons detailed below, the Court will deny the motion without prejudice, subject to re-filing if Defendants' future funding determinations and/or awards violate the Court's prior orders.

## I.    INTRODUCTION

In 2018 and 2020, Congress established grant programs via the United States Department of Education ("the Department") to fund mental health services for elementary and secondary schools throughout the country.  The Department funded hundreds of multi-year grants via these programs.  But in April 2025, the Department notified certain grant recipients (hereinafter "Grantees") that their funding would not be renewed at the end of their current budget period,

---

[1] This order refers to documents on the docket by their CM/ECF page number.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 1

which (in most cases) expired December 31, 2025.  Sixteen states filed this lawsuit against the Department and its secretary[2] to challenge the Department's actions to discontinue funding to Grantees under, among other things, the Administrative Procedure Act ("APA").  Dkt. No. 1 at 44–45.

The Court granted Plaintiff States' motion for a preliminary injunction, enjoining the Department from implementing or enforcing the discontinuation decisions as to certain grantees, from recompeting the grant funds, and from reinstituting the discontinuation decisions on the same or similar grounds.[3]  Dkt. No. 193 at 24.  Plaintiff States then moved for summary judgment, asking the Court to vacate the challenged agency action as arbitrary and capricious and contrary to law, and seeking declaratory and permanent injunctive relief.  Dkt. No. 208.  The Department cross-moved, arguing that Plaintiff States were not entitled to any relief.  Dkt. No. 256.

The Court granted Plaintiff States' motion, entering summary judgment on their APA claims because the Department's actions were arbitrary and capricious and contrary to law.  Dkt. No. 269.  In so doing, the Court vacated the Department's Grant Priorities Directive ("Directive") issued in February 2025, which instructed Department personnel to

> conduct an internal review of all new grant awards, grants that have not yet been awarded to specific individuals or entities (e.g., notices of funding opportunities), and issued grants. Such review shall be limited to ensuring that Department grants do not fund discriminatory practices—including in the form of [diversity, equity, and inclusion]—that are either contrary to law or to the Department's policy objectives, as well as to ensure that all grants are free from fraud, abuse, and duplication. … Grants deemed inconsistent with these priorities shall, where permitted by applicable law, be terminated in compliance with all notice and procedural requirements in the relevant award, agreement, or other instrument. *See* 2 C.F.R. § 200.340(a)(4)–341.

---

[2] This order refers to Defendants collectively and/or interchangeably as "the Department."

[3] The Department appealed the Court's preliminary injunction order, but dismissed the appeal after the Ninth Circuit Court of Appeals denied its motion to stay pending appeal.  *See* Dkt. Nos. 252, 263, 350.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 2

Dkt. No. 202-1 at 80–81.  The Court also vacated the boilerplate discontinuation notices that were issued in implementing the Directive, and granted the injunctive and declaratory relief requested by Plaintiff States.  Specifically, in relevant part, the Court ordered:

(1)    The Department's Directive procedure, discontinuation notices, and letters denying reconsideration are unlawful, set aside, and VACATED with respect to the discontinued Grantees in Plaintiff States as arbitrary and capricious and contrary to law.

(2)    The Court DECLARES that when determining whether a grantee has met the requirements for a continuation award under 34 C.F.R. § 75.253(a), the Department is required under 34 C.F.R. § 75.253(b) to consider the information listed in 34 C.F.R. § 75.253(b) and similar relevant information.

(3)    The Court permanently ENJOINS the Department and all its respective officers, agents, servants, employees, attorneys, and any person in active concert or participation with them who receive actual notice of this order from the following:

a.    Considering new priorities or any other information that is not relevant and similar to the information listed in 34 C.F.R. § 75.253(b) when determining whether a grant within Plaintiff States has met the requirements for a continuation award under 34 C.F.R. § 75.253(a).

b.    Implementing or enforcing through any means the Directive procedure, the discontinuation notices, or reconsideration denial letters, including recompeting Grant funds, with respect to any discontinued Grant within Plaintiff States.  To the extent that this injunction will lead to a lapse in the Grant funding, the Court suspends the lapse while this lawsuit plays out.  *See Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024).

c.    Denying a continuation award based on performance issues, if any, caused by the Department's actions challenged in this case and their disruptive effects.

(4)    The Department must make a lawful continuation determination as to each Grant, no later than a date to be set after the parties meet and confer on a reasonable timeline for compliance, including any appropriate interim deadlines (such as due dates for reports the Grantees must submit as required by 34 C.F.R. § 75.253).

Dkt. No. 269 at 35–36.  After seeking input from the parties (*see* Dkt. No. 272), the Court ordered the Department to make lawful continuation determinations by December 30, 2025, and issue continuation awards by December 31, 2025.  Dkt. No. 273.

On December 30, 2025, the Department filed a motion to amend the judgment, requesting an extension of the compliance deadlines.  Dkt. No. 276. The Department acknowledged that extending the deadlines would leave Grantees without funding, but stated that it would provide five weeks of interim funding while the Department worked to make the determinations and issue awards, as ordered by the Court.[4]  *Id.*  Plaintiff States opposed the motion, noting that the Department's proposal would "rob" the Grantees "of effective relief and rob this Court's order of its intended effect—prolonging the uncertainty and harms that the grantees have suffered and continue to suffer since Defendants unlawfully discontinued their grants eight months ago."  Dkt. No. 279 at 4.

While the Department's motion was pending, and after the Department provided the interim funding contemplated in its motion to amend the judgment (*see* Dkt. No. 286), Plaintiff States filed a motion to enforce the original deadlines set by the Court, arguing that the five-week interim funding offered by the Department in the motion to amend "does not ameliorate the continuing harms from Defendants' unlawful discontinuances—let alone the harm from missing the Court's deadline."  Dkt. No. 288 at 4.  Plaintiff States urged the Court to require the Department to provide a longer period of interim funding, and also proposed a compliance plan that included an accounting and discovery.  *Id.* at 13–15.

---

[4] The Department's motion also requested, on an emergency basis, that the Court stay enforcement of its injunction while the motion to amend was pending.  Dkt. No. 276 at 2 n.1.  The Court denied that motion and ordered the Department to provide the offered interim funding by January 6, 2026, and set an expedited briefing schedule on the Department's motion to amend the judgment.  *See* Dkt. No. 282.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 4

On January 22, 2026, the Court held a hearing on the Department's motion to amend and Plaintiff States' first motion to enforce. Dkt. No. 355. In response to questioning from the Court, the Department represented that it could complete the process of making continuation decisions and awarding funding by February 6, 2026. Dkt. No. 360 at 3–4. The Department's counsel stated that "[s]ome decisions might be issued before February 6th, but as we envision [] how it would work is that for grantees that are now decided to be continued, that they would receive full funding for the calendar year[.]" *Id*. at 4. Plaintiff States' counsel expressed relief at hearing that a full year of funding was envisioned. *Id*. at 13. The Department's counsel reiterated several times the proposal to provide a full year of funding to those Grantees whose grants were continued. *Id*. at 27 ("[A]s I have represented to the Court, it's the Department's intention to fund those grantees [that will be continued] for calendar year 2026."), 31 ("As I indicated to you, Your Honor, today, if the Department decides to continue a grant agreement, its intention is to fund those agreements for the entirety of calendar year 2026."), 33 ("There's nothing in the grant agreements that says, as far as I know, that day one, the grant has to be funded fully for the year. It's just budgetary flexibility that's normal day-to-day operations for the Department. But the proposal here is not to do that.").

At the conclusion of the hearing, and in the context of the Department's assurances, the Court granted the Department's motion to amend and denied Plaintiffs States' motion to enforce without prejudice, extending the deadline to make new continuation decisions to February 6, 2026, and extending the deadline to issue new awards to February 11. Dkt. No. 360 at 47–48; Dkt. No. 356. The next day, the Department filed a notice of appeal as to the original summary judgment order as well as the January 22 order amending the judgment. Dkt. No. 357. The Department also filed a motion to stay the judgment pending appeal, which the Ninth Circuit provisionally granted pending oral argument on February 23, 2026. On February 24, 2026, the Ninth Circuit denied the

motion to stay, finding that the Department had not demonstrated that it was likely to succeed on the merits of its appeal.  Dkt. No. 362.  The Ninth Circuit noted that new compliance deadlines must be imposed as a result of the delay occasioned by the adjudication of the stay request, and thus "remand[ed] to the district court for the limited purpose of setting new deadlines for the Department to make new continuation decisions and any continuation awards resulting from those decisions[.]"  *Id*. at 7.  The Court issued an order requiring the Department to make new continuation decisions by March 2, 2026, and to issue new continuation awards by March 5, 2026.  Dkt. No. 363.

The Department complied with those deadlines, in that new determinations and awards were issued, but the Department added certain grant-management conditions to the awards that had not previously been imposed on Grantees.  Specifically, the Department obligated only six months' worth of funding to the continuing grantees, rather than the full calendar year the Department's counsel had proposed during the January 22 hearing.  Dkt. No. 365 at 2.  The Department conditioned the remaining funding on the submission of additional performance data due June 1, 2026.  *Id*.  The Department also required continued Grantees to fund their programs out of pocket and then request reimbursement (that may or may not be approved over a period of weeks) with documentation, whereas in the past they would incur expenses, internally validate the expense, and then draw down the amount from their Department account within 1–3 days.  *See* Dkt. No. 394 ¶ 10, Dkt. No. 424 ¶¶ 6–10, Dkt. No. 432 at 18–20.  The continuation notices describe the awards as "issued under protest relating to the litigation affecting this matter" and justify the additional management conditions as a response to "concerns about the rapid use of federal funds and the difficulty for the Department to recover those funds once spent[.]"  *See, e.g.*, Dkt. No. 398-1 at 2–3.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 6

Plaintiff States then filed this second motion to enforce the Court's summary judgment orders, requesting that the Court find that the conditions imposed on continued Grantees violate the Court's injunction prohibiting the Department from implementing the unlawful discontinuances "through any means." Dkt. No. 367. Plaintiff States request that the Court lift those conditions and require the Department to issue new awards "that do not impose the grants management measure or similar measures that have the effect of implementing or enforcing the Discontinuation Decision through any means for the full January 1 through December 31, 2026, budget period." Dkt. No. 367-1 ¶ 5. The Court held oral argument on that motion (Dkt. No. 428), and it is now ripe for resolution.

## II.    ANALYSIS

### A.    Legal Standards

The filing of a notice of appeal automatically "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This rule is intended to "promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Nonetheless, even while an appeal is pending, a district court retains authority to modify or clarify its orders to preserve the status quo, so long as the district court does not materially alter the status of the case on appeal. *See Thakur v. Trump*, 795 F. Supp. 3d 1168, 1178–79 (N.D. Cal. 2025) (citing *Pub. Serv. Co. of Colo. v. Batt*, 67 F.3d 234, 238 (9th Cir. 1995); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001); *Sw. Marine*, 242 F.3d at 1166).

**B.    The Department Has Not Yet Violated the Court's Orders.**

The parties agree that the Court retains jurisdiction, despite the pending appeal, to enforce its prior orders.  They disagree about whether the Department's conduct violates the Court's orders, however.

Plaintiff States' motion complains that by imposing onerous conditions on the grant awards issued to Grantees[5]—and only to Grantees, rather than all grantees under these grant programs—the Department is essentially implementing the unlawful discontinuances through another means.  Plaintiff States' motion emphasizes that the conditions are so onerous that they "will incapacitate some grantees' programs and severely hinder many others."  Dkt. No. 367 at 8.  Plaintiff States have presented persuasive evidence that the grant-management conditions are causing harms to the Grantees in the form of an inability to sustain staffing without a year of secured funding as well as significantly delayed reimbursement for program expenses.  *See, e.g.*, Dkt. No. 384 ¶ 6 (describing provisional staff layoffs that will be sent on May 15, 2026, and finalized if funding through 2026 is not secured by May 31, 2026); Dkt. No. 424 ¶¶ 6–12 (describing how funds deposited via the reimbursement pay status procedure are delayed for weeks, when compared to the standard procedure).  Plaintiff States argue that the injunction is further violated because the Department is imposing the conditions only because of its own appeal, and the Court prohibited the Department from holding any performance issues caused by this litigation against the Grantees. *See* Dkt. No. 419 at 8–9.

In response, the Department contends that it has not violated the injunction.  Dkt. No. 416. As summarized earlier in this order, the Court vacated the prior discontinuation determinations and ordered the Department to make new decisions in compliance with 34 C.F.R. § 75.253(b)

---

[5] For the remainder of this order, "Grantees" refers to those Grantees subject to the grant-management conditions.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 8

when determining whether a Grant has met the requirements for a continuation award under 34 C.F.R. § 75.253(a), and, as necessary, issue new grant awards.  The Department stresses that it complied with the Court's instructions in the sense that it evaluated the Grantees according to the applicable regulations and, in most cases, elected to issue continuation awards.  *Id*. at 7.  And although the Court accepted counsel's assurances at the January 22 hearing that new grant awards would be issued for the entire calendar year, the Department emphasizes that the agency's decision to walk back that commitment after the hearing does not violate the injunction because the Court did not expressly *require* that the Department fund any grant in any particular manner.  *See id*. at 6–7, Dkt. No. 432 at 27.  Finally, the Department maintains that as a general proposition, it has the discretion to impose conditions on grantees and nothing in the Court's injunction prevents it from doing so.  Dkt. No. 416 at 5–7.

The Court is deeply troubled by the Department's treatment of the Grantees: since it issued the unlawful discontinuation notices in April 2025 through the imposition of the grant-management conditions, the Department's stance vis-a-vis the Grantees appears to be hostile.  Although agency guidance suggests that the Department seeks "to encourage the successful completion of [] grant project[s]," the Department's actions with respect to these Grantees seem calculated to hinder such completion.  U.S. DEPARTMENT OF EDUCATION, GRANTMAKING AT [THE DEPARTMENT], *Answers to Your Questions About the Discretionary Grants Process*, *available at* https://www.ed.gov/media/document/grantmaking-ed-108713.pdf (2024) at 36.  The Department has also repeatedly heightened budget uncertainty for the Grantees via its litigation choices, such as seeking an extension of time to issue the interim grant awards, but then filing a notice of appeal (along with a motion to stay pending appeal) as soon as the extension was granted.  Moreover, that the Department abandoned its in-court representations as to its intent to fund the full calendar year has significantly exacerbated the sense of unfairness arising from the Department's imposition of

the grant-management conditions.  Since April 2025, the Department's conduct has ranged from confusing to contrary to law in multiple ways, and that conduct has resulted in disruptive harm to the Grantees many times over.

These disturbing events notwithstanding, the role of this Court, at this time, is limited to enforcing its prior orders while an appeal is pending, rather than providing broad oversight of the Department's dealings with Grantees.  The Court's jurisdiction is limited to maintaining the status quo.  Here, that refers to the injunction requiring the Department to make lawful continuation determinations and, for those grants the Department decided to continue, issue awards.  The Department has, on the whole, continued most of the Grants and although the awards issued contain grant-management conditions, the Court does not at this time find them to be so burdensome that they are essentially a discontinuation in disguise.  *Cf. New York v. Trump*, 777 F. Supp. 3d 112, 119 (D.R.I. 2025) (granting a motion to enforce where the government, in "complying" with a court order, adopted a procedure that instead attempts to effectuate the mandates previously enjoined).  In the first month since the new awards were issued, the Department disbursed more than $1.5 million to Grantees.  *See* Dkt. No. 417 ¶ 3.  And while it is undisputed that in order to obtain this funding, the Grantees must comply with conditions not imposed on all Department grantees, the Grants *are* nonetheless currently funded.

Although the grant-management conditions inject a degree of uncertainty and instability in the Grantees' programs that the Court did not anticipate when issuing its prior orders, the Court does not read its orders to have prohibited the conditions.  Neither the express terms nor the spirit of the Court's prior orders were directed at grant-management conditions.  *Cf. Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949, 954–55 (9th Cir. 2014) (rejecting a party's attempt to claim "technical compliance" with a "self-serving interpretation" of an injunction that is contrary to the spirit of the injunction).  Thus, although the Court is, along with

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 10

Plaintiff States, troubled by the impact of the conditions on the Grantees' ability to achieve their program objectives, the Court cannot find that the Department violated the Court's prior orders in imposing them. Accordingly, the Court also finds that Plaintiff States have failed to show that the discovery requested in the alternative is warranted. And to the extent that Plaintiff States contend that the grant awards violate various regulations (Dkt. No. 367 at 13–14; Dkt. No. 432 at 15–16 (citing 2 C.F.R. § 200.208)) that have not been litigated in this action, the Court declines to reach this issue or expand its injunction while the appeal is pending.

Plaintiff States posit that the grant-management conditions will sabotage the success of the Grantees' programs such that it will be easier for the Department to discontinue their grant funding for the second half of the year. Dkt. No. 419 at 9. From this vantage point, that fear may be well-founded, but it is nonetheless speculative. The Court will not assume that the Department will violate the Court's prohibition on discontinuing a Grant because of disruption caused by the Department's actions challenged in this litigation.

However, if the Department hereafter discontinues Grants in a manner that violates the Court's prior orders, Plaintiff States may renew their motion to enforce. For example, if, as Plaintiff States anticipate, the Department discontinues Grant funding in mid-year decisions due to its failure to set aside sufficient funds (Dkt. No. 367 at 14), or on account of the disruption to Grantees' programs occasioned by the Department's actions challenged in this lawsuit, the Court would entertain a renewed motion to enforce.

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 11

## III.    CONCLUSION

For these reasons, Plaintiff States' second motion to enforce (Dkt. No. 367) is DENIED without prejudice to re-filing.

Dated this 21st day of May, 2026.

_Kymberly K Evanson_
_____
Kymberly K. Evanson
United States District Judge

ORDER ON PLAINTIFF STATES' SECOND MOTION TO ENFORCE - 12