The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants.

NO. 2:25-cv-01228-KKE
NO. 2:26-cv-02409-KKE

PLAINTIFF STATES' MOTION TO ENFORCE AND MODIFY DECEMBER 19, 2025, PERMANENT INJUNCTION AND/OR SEPTEMBER 22, 2026, PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR: NOVEMBER 3, 2026

ORAL ARGUMENT REQUESTED



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Defendants Discontinued Mental Health Grants ........ 2

B. The 2025 Permanent Injunction ........ 2

C. The 2026 Preliminary Injunction ........ 3

D. The Ad Hoc Grant Procedure ........ 4

E. Defendants Have Undermined the Purpose of the Injunctions ........ 6

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 8

A. Defendants Violated the 2025 Permanent Injunction ........ 8

B. Defendants Violated the 2026 Preliminary Injunction ........ 10

C. New Facts Warrant Modification of the Injunctions ........ 11

V. CONCLUSION ........ 13




ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

## I. INTRODUCTION

The Court should enforce its injunctions by ordering Defendants to make additional funding determinations and issue any resulting grant awards for the rest of 2026.

The December 19, 2025, permanent injunction and subsequent order required Defendants to "make a lawful continuation determination" and "issue any new continuation awards no later than March 5, 2026" for certain grants (Protected Grants) performed by grantees within Plaintiff States (Protected Grantees). *Washington v. Dep't of Educ.*, No. 2:25-cv-01228-KKE (W.D. Wash.) (*Washington* (2025)), Dkt. ##269 at 35-36, 363 at 3 (2025 Permanent Injunction). Defendants violated that order by awarding only seven months of funding and reneging on their promise to make additional funding determinations that would have funded Protected Grants for the full 2026 budget period.

The September 22, 2026, preliminary injunction enjoined Defendants from "withholding additional funding determinations" without providing procedural protections under federal civil rights law, and from "considering new priorities" when "evaluating whether to withhold funds." *Washington v. Dep't of Educ.*, No. 2:26-cv-02409-KKE (W.D. Wash.) (*Washington* (2026)), Dkt. #106 (2026 Preliminary Injunction), at 17-18. By withholding funding determinations without statutory protections and based on new priorities, Defendants violated the injunction.

Rather than issue awards that funded the entire 2026 budget period, Defendants have imposed—only for Protected Grants—a novel, fiscally dangerous reimbursement procedure that is wholly at odds with the injunctions and the federal grantmaking scheme. Defendants issued grant awards, funding only half of the activities for 2026. To perform the rest, Defendants instructed Protected Grantees to use grantees' own funds and spend *more* money than they were awarded. Grantees then submit reimbursement requests in the hope, but without any guarantee, that Defendants will issue a retroactive grant award and reimburse the amounts spent in excess of existing awards. For lack of better term, Plaintiffs refer to this bizarre dance as the "ad hoc grant procedure."



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

Defendants' violations perpetuate the harms the injunctions were intended to prevent. The Court should order Defendants to make additional funding decisions and issue any awards for the rest of 2026. Further, Defendants' post-injunction actions make clear that, absent intervention, Defendants will continue to invent new ways to defeat the injunctions' purpose. To maintain the status quo, the Court must modify its injunctions to expressly prohibit Defendants from treating Protected Grantees less favorably than others when administering Program grants.

## II. BACKGROUND

### A. Defendants Discontinued Mental Health Grants

These lawsuits center on Defendants' ongoing efforts to end grants providing student mental health services through the Mental Health Service Professional (MHSP) and School-Based Mental Health (SBMH) grant programs (collectively, "Programs"). Defendants issued Grant Award Notifications (GANs) to Program grantees between 2022 and 2024 for five-year projects (the performance period), initially funding the first year (the first budget period), then funding subsequent budget periods annually. *See Washington* (2025), Dkt. #203-1 at 1-6846 (initial GANs); *id.*, Dkt. #102 ¶¶10-11. GANs "represent[] an obligation by [the Department]." Chung Decl. Ex. B, at 211.

In February 2025, Defendants issued an internal directive to eliminate grants that purportedly "violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education" by supporting DEI. *Washington* (2026), Dkt. #11-3 (February Directive). Pursuant to this Directive, Defendants unlawfully discontinued around 140 Program grants within Plaintiff States. *See Washington* (2025), Dkt. ##203-1 at 6847-7122, 269 at 7.

### B. The 2025 Permanent Injunction

Sixteen states filed suit, and the Court granted summary judgment, issuing the 2025 Permanent Injunction. *Washington* (2025), Dkt. #269 at 34-36. The injunction ordered Defendants to "make a lawful continuation determination as to each Grant." *Id.* at 35-36.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

After Defendants missed the original deadline to make these determinations, Plaintiffs filed a motion to enforce. *Id.*, Dkt. #288. At the hearing, Defendants repeatedly assured the Court that they intended to provide a full year of funding for Protected Grants by February 6. *Id.*, Dkt. #360 at 3-4, 27, 31, 33. Against this backdrop, the Court denied Plaintiffs' motion. *Id.*, Dkt. #356. After Defendants sought to stay the permanent injunction and the Ninth Circuit remanded for this Court to "set[] new deadlines," the Court ordered Defendants to make continuation decisions by March 2, 2026, and "issue any new continuation awards" by March 5, 2026. *Id.*, Dkt. ##364 at 10, 363 at 3.

Although Defendants issued GANs before the March deadline, they obligated only six months of funding rather than the full year and imposed grant-management conditions, including a new reimbursement requirement. *Id.*, Dkt. ##365 at 2, 398-1 at 2-3. Plaintiffs filed a second motion to enforce. *Id.*, Dkt. #367. At the hearing, Plaintiffs and the Court noted that continuation awards should cover the amount needed for the entire budget period. *Id.*, Dkt. #432 at 15, 26. In response, Defendants suggested they would cure this violation by making additional funding decisions, which would fully fund the budget period. *Id.* at 26. Defendants admonished Plaintiffs for "asking the court to say we violated the injunction because that worst-case scenario" (i.e., grantees do not get additional funding determinations) "might occur, when we don't even know if it's going to occur." *Id.* at 26-27. Defendants later assured the Court that "[t]he Department intends to make additional funding determinations…[after] their Mid-Year Check-In but no later than July 1, 2026." *Id.*, Dkt. #430 ¶4. Following these assurances, the Court denied Plaintiffs' second motion. *See id.*, Dkt. #433 at 11.

### C. The 2026 Preliminary Injunction

Defendants conducted mid-year check-ins and concluded the Protected Grantees "meet the criteria required to receive a continuation award." *Washington* (2026), Dkt. #98-2 at 5; Dkt. #98-3 at 5. They found the Protected Grantees "made substantial progress towards meeting the grant objectives and toward meeting the performance targets for the initial six months of the

year," and "[n]o grantee was found to have concerns that required mitigation beyond routine monitoring and the provision of technical assistance, as needed." *Id.*, Dkt. #98-2 at 7; Dkt. #98-3 at 7. Department staff "[did] not recommend[] reductions to any grant awards based on large available balances or excessive carryover." *Id.*, Dkt. #98-2 at 7; Dkt. #98-3 at 7.

Despite these findings, Defendants did not make additional funding determinations for the second half of the budget period. Instead, Defendants announced they planned to terminate some or all of the Protected Grants on July 31. *See id.*, Dkt. #74-3 at 2-3. Anticipating these potential terminations, Defendants issued GANs adding only a seventh month of funding for Protected Grants. *See id.* at 3-4.

After Plaintiff States brought a second lawsuit, the Court entered the 2026 Preliminary Injunction, which "fully enjoined" Defendants from, among other things:

> b. terminating or refusing to grant or continue federal funding assistance, including withholding additional funding determinations or continuation decisions, as to any Protected Grant without first providing any procedural protections to which Protected Grantees are due under federal civil rights statute or regulation…
>
> …[and]
>
> d. reinstituting the February 2025 directive, the June 2025 directive, or the termination plan based on the same or similar reasons, including considering new priorities that did not exist at the time the grantee applied for a Protected Grant, for purposes of evaluating whether to withhold funds from a Protected Grantee.

*Id.*, Dkt. #106 at 17-18.

## D. The Ad Hoc Grant Procedure

Defendants still have not made additional funding determinations or issued awards obligating funds for the entire 2026 budget period. *See, e.g.*, Allen ¶4; Beaudoin ¶4.[1] Plaintiffs informed Defendants that Defendants' refusal to do so violated the Court's injunctions. Chung Decl. Ex. A, at 2-4. Defendants responded that "the Department has been and continues to be in

[1] Citations to non-attorney declarations filed in support of this motion are referred to in "Name ¶No." format.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

compliance." *Id.* at 2. However, Defendants have not notified Protected Grantees about any violations that could justify withholding funds or provided other procedural protections.[2]

Instead of issuing grant awards for the rest of 2026, Defendants implemented a novel, fiscally dangerous procedure, requiring Protected Grantees to incur *more* expenses than the amount Defendants awarded. *See Washington* (2026), Dkt. ##107 ¶4, 107-3. Under this ad hoc grant procedure, which is only available "until further notice," Defendants *might* issue "supplemental reimbursement awards" and reimburse Protected Grantees for amounts in excess of existing awards. *Id.*, Dkt. #107 ¶4. But because Defendants do not issue GANs that obligate these amounts in advance, there can be no guarantee that Defendants will issue these supplemental awards or that funds will even be available, as Defendants could simply abandon the procedure or attempt to reallocate or rescind unobligated funds.[3] And Defendants can (and have) reduced the requested excess amounts for unknown reasons, meaning Protected Grantees have to guess not only whether they will be reimbursed, but how much.[4]

Moreover, it appears the ad hoc grant procedure violates federal fiscal management requirements by obfuscating the status of appropriated funds. *See, e.g.*, 31 U.S.C. §3512(b). The procedure also depends on Defendants' unilateral requirement, in violation of 2 C.F.R. §200.305(b) and §200.208(d)-(e), that Protected Grantees use reimbursements instead of advances. *See Bd. of Educ. of City Sch. Dist. of City of New York v. Dep't of Educ.*, No. 1:25-cv-08547-AS, 2026 WL 2983604, at *4-5 (S.D.N.Y. Oct. 5, 2026) (finding

---

[2] *See, e.g.*, Aseltine ¶23; Allen ¶7; Beaudoin ¶17; Ciriza ¶16; Claussen ¶16; Ham ¶16; Johnson-Smith ¶16; Judson ¶16; Khan ¶15; Mocarski ¶14; Nocero ¶18; Pascarella ¶16; Pelton ¶17; Polo ¶16; Rodriguez ¶16; Sahakian ¶16; Salazar-Martinez ¶16; Santamaria ¶16; Schmidt ¶17; Starkovich ¶16; Webb ¶16.

[3] This administration recently attempted to rescind appropriations for other disfavored Department grant programs by delaying notification to Congress until just before the funds expired (known as a "pocket rescission"). *See* The White House, *President Trump Takes Historic Action to Eliminate Wasteful and Harmful Spending*, (Sept. 25, 2026) https://www.whitehouse.gov/briefings-statements/2026/09/president-trump-takes-historic-action-to-eliminate-wasteful-and-harmful-spending/. For fiscal year 2026, Congress overrode the administration's budget request for $0 and appropriated $190 million to the account that funds the Programs. *See Washington* (2025), Dkt. #352 ¶¶19-20; Consolidated Appropriations Act, 2026, P.L. 119-75, 140 Stat. 173, 296 (Feb. 3, 2026). These appropriations expire on December 31, 2026. 140 Stat. at 296.

[4] *See, e.g.*, Salazar-Martinez ¶12; Santamaria ¶12.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

requirement unlawful). Defendants do not administer other Program grants using the ad hoc grant procedure, as those grantees are fully funded for 2026 and use advances instead of reimbursements. *See Washington* (2025), Dkt. #397 ¶¶4, 6.

**E. Defendants Have Undermined the Purpose of the Injunctions**

In entering the injunctions, the Court sought to restore and maintain the status quo—meaning that Protected Grantees would be treated as if Defendants had not tried to unlawfully end their grants based on the February Directive, thereby preventing irreparable harm. *See Washington* (2025), Dkt. #269 at 31-32; *Washington* (2026), Dkt. #106 at 15. But instead of placing Protected Grantees on equal footing with other Program grantees, Defendants have invented ways to circumvent the injunctions, defeating their purpose.

As of June 30, 2026, the number of Protected Grants has dropped from 139 to 117. *See Washington* (2025), Dkt. ##257 ¶11, 445. Defendants' piecemeal approach to funding over the past year has already harmed Protected Grants' success.[5] Protected Grantees are further harmed by the lack of certainty about funding for the rest of 2026.[6] Defendants will soon make continuation decisions for 2027, but given Defendants' hostile efforts to undermine (rather than support) their projects, Protected Grantees are justifiably worried about 2027 funding.[7] Instead of showing a five-year performance period and listing expected amounts for future budget periods, recent GANs end the performance period on December 31, 2026, implying that no 2027 continuation award is forthcoming. *Compare, e.g.*, *Washington* (2025), Dkt. #102-3 at 4 (prior GAN), *with Washington* (2026), Dkt. #94-2 at 188 (recent GAN). Defendants have not responded to Plaintiffs' request to fix the performance period dates. Chung Decl. ¶5. And this

---

[5] *See, e.g.*, Aseltine ¶¶10, 16; Beaudoin ¶15; Ciriza ¶10; Claussen ¶10; Ham ¶¶10-11; Johnson-Smith ¶10; Judson ¶10; Khan ¶9; Pascarella ¶10; Pelton ¶10; Polo ¶9; Salazar-Martinez ¶10; Starkovich ¶10; Webb ¶10.

[6] *See, e.g.*, Allen ¶¶5-6; Aseltine ¶¶10-12; Beaudoin ¶¶12-13; Ciriza ¶¶7-8; Claussen ¶¶6-8; Ham ¶¶6-8; Johnson-Smith ¶¶6-8; Judson ¶¶6-8; Khan ¶¶6-8; Mocarski ¶¶7, 9; Nocero ¶¶7-10; Pascarella ¶¶6-8; Pelton ¶¶6-8; Polo ¶¶6-10; Rodriguez ¶¶6-8; Sahakian ¶¶6-8; Salazar-Martinez ¶¶6-8; Santamaria ¶¶6-8; Schmidt ¶¶6-8; Starkovich ¶¶6-8; Webb ¶¶6-8.

[7] *See, e.g.*, Aseltine ¶21; Beaudoin ¶16; Ciriza ¶14; Claussen ¶14; Johnson-Smith ¶14; Judson ¶14; Khan ¶13; Mocarski ¶¶6, 12; Nocero ¶16; Pascarella ¶14; Polo ¶14; Rodriguez ¶14; Sahakian ¶14; Salazar-Martinez ¶14; Santamaria ¶14; Schmidt ¶15; Starkovich ¶14; Webb ¶14.

administration has tried to unilaterally rescind appropriations for other disfavored Department grants. *See supra* n.3.

Further, many Protected Grantees cannot use Defendants' ad hoc grant procedure. Protected Grantees have internal financial policies and controls that prohibit them from spending more than they have been awarded, and after having been discontinued and threatened with termination, many Protected Grantees cannot assume the risk Defendants will not reimburse any excess amounts.[8] Grantees are scaling back grant projects and cutting activities to stretch awarded funds, jeopardizing project goals.[9] Even grantees who have been reimbursed for excess amounts under the ad hoc grant procedure must make cuts to reduce financial risk.[10] These problems are exacerbated by Defendants' inability to answer questions about the process.[11]

## III. LEGAL STANDARD

"A motion to enforce … may be granted when the prevailing party demonstrates its opponent has not complied with the judgment's terms." *California v. U.S. Dep't of Lab.*, 155 F. Supp. 3d 1089, 1096 (E.D. Cal. 2016). The court may look to "the objects for which the relief was granted and … find a breach … in a violation of the spirit of the injunction." *Inst. of Cetacean Rsch. v. Sea Shepherd Conserv. Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (citation omitted).

A district court retains jurisdiction to "enforce," "clarify," and "modif[y]" injunctions during a pending appeal. *Thakur v. Trump*, 795 F. Supp. 3d 1168, 1178 (N.D. Cal. 2025); *see, e.g.*, *Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*, 182 F. Supp. 3d 1065, 1073-74 (E.D. Cal. 2016) (collecting cases). An appeal does not divest the district court of jurisdiction where the court "has a continuing duty to maintain a status quo, and where, as the

---

[8] *See, e.g.*, Aseltine ¶¶18-20; Beaudoin ¶¶10-11; Claussen ¶12; Ham ¶¶10, 13; Johnson-Smith ¶12; Judson ¶12; Khan ¶11; Pelton ¶¶12-13; Polo ¶12; Rodriguez ¶12; Schmidt ¶12; Starkovich ¶12.

[9] *See, e.g.*, Allen ¶5; Aseltine ¶¶14-16; Beaudoin ¶11; Ciriza ¶13; Claussen ¶13; Ham ¶14; Johnson-Smith ¶¶12-13; Judson ¶13; Khan ¶12; Mocarski ¶11; Nocero ¶¶9-10, 15; Pascarella ¶¶12-13; Pelton ¶¶12-14; Polo ¶¶12-13; Rodriguez ¶13; Starkovich ¶13.

[10] *See, e.g.*, Sahakian ¶¶12-13; Salazar-Martinez ¶¶12-13; Santamaria ¶¶12-13; Schmidt ¶¶12-14; Webb ¶¶12-13.

[11] *See, e.g.*, Nocero ¶7; Salazar-Martinez ¶12.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

days pass, new facts are created by the parties and the maintenance of the status quo requires new action." *Hoffman v. Beer Drivers & Salesmen's Loc. Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976).

"[A] district court has 'wide discretion' to modify an injunction based on changed circumstances or new facts." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (quoting *System Federation No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961)). Such modifications can "broaden[] the scope of injunctive relief." *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1479 n.14 (9th Cir. 1994). Modifications are permitted provided they "d[o] not materially alter the status of the … appeal" and "le[ave] unchanged the core questions before the appellate panel." *Nat. Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166-67 (9th Cir. 2001) (*NRDC*). Federal Rule of Civil Procedure 62(d) confirms that district courts may modify an injunction pending appeal.

## IV. ARGUMENT

### A. Defendants Violated the 2025 Permanent Injunction

Defendants' failure to award funds for the full 2026 budget period runs afoul of the 2025 Permanent Injunction. The Court ordered Defendants to "issue any new continuation awards no later than March 5, 2026." *Washington* (2025), Dkt. #363 at 3. Statutory requirements, grantmaking regulations, and Defendants' internal handbook show that, in the normal course, issuing a "continuation award" means issuing a GAN that obligates funds for the full budget period. *See, e.g.*, Chung Decl. Ex. B, at 211, 219-20 (GANs required to record obligations); *id.* at 74, 164, 211; *see also* 31 U.S.C. §1501(a) (obligation must be supported by documentary evidence); 34 C.F.R. §75.253(a) ("continuation award" made "for a budget period"); 34 C.F.R. §§75.251-.252. This fundamental requirement is baked into grantees' internal financial policies and controls. *Cf. supra* n.8. Grantees take a comprehensive approach when they plan activities



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

for the budget period and do not make expenditures evenly throughout the year.[12] Additionally, GANs reflect the full five-year performance period. *See* Chung Decl. Ex. B, at 212, 368.

GANs must provide "funding that is both fair and adequate to the needs of [grantees'] projects." *Id*. at 144. Any departures from grantees' requested budgets may not "impede the applicant's ability to achieve the project's intended goals." *Id.* at 145. If Defendants decrease the budget amount, the GAN must "officially inform[] grantee" of "any budgetary changes and/or specific cost items that have been reduced or deleted from the budget." *Id*. at 216.

Instead, Defendants awarded only six months of funding, then assured the Court that the "worst-case scenario" would not occur and Defendants would make additional funding determinations for the remainder of the year. *See supra* §II.B. Although Defendants violated the order to issue "continuation awards" by issuing defective GANs that only funded part of the budget period, Defendants could have cured the violation by making additional funding determinations for the rest. However, Defendants failed to make these additional funding determinations, instead providing only a seventh month of funding (through Defendants' planned grant termination date). Defendants still have not issued awards covering the full 2026 budget period. *See supra* §§II.C-D. Additionally, Defendants' GANs incorrectly show a performance period end date of December 31, 2026, instead of restoring the original five-year performance period. *Compare, e.g.*, *Washington* (2025), Dkt. #102-3 at 4, *with Washington* (2026), Dkt. #94-2 at 188.

Defendants' novel ad hoc grant procedure does not meet the requirement to issue continuation awards. The continuations awards ordered by the Court would provide Protected Grantees with upfront notice of their authorized funding for the full budget period. *See* Chung Decl. Ex. B, at 220. Under Defendants' ad hoc grant procedure, Defendants no longer issue grant

---

[12] *See, e.g.*, Aseltine ¶¶8 -10; Beaudoin ¶¶ 8-10; Ciriza ¶6; Claussen ¶6; Ham ¶6; Johnson-Smith ¶6; Judson ¶6; Khan ¶6; Mocarski ¶6; Nocero ¶8; Pascarella ¶6; Pelton ¶6; Polo ¶6; Rodriguez ¶6; Sahakian ¶6; Salazar-Martinez ¶6; Schmidt ¶6; Starkovich ¶6; Webb ¶6.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

awards in advance, and any new retroactive awards they deign to issue cover only, at most, the approved amount in excess of current grant awards.

The order to issue "continuation awards" did not include inventing unlawful workarounds that fall short of Defendants' legal obligations. The effect of Defendants' evasiveness is severe: Protected Grantees cannot risk spending money not officially recorded and obligated by Defendants. *See supra* n.8. Moreover, courts do not countenance such creativity. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (allowing defendants to avoid injunction by "work[ing] out a plan that was not specifically enjoined" would improperly encourage "experimentation with disobedience of the law"). This Court must put an end to it.

Defendants' failure to issue continuation awards that fund the entire budget period violates the 2025 Permanent Injunction. It vitiates the protection provided by the injunction and upends the status quo between the parties, wherein Protected Grantees are treated like any other grantee and receive continuation awards that obligate funds for the entire budget period, *before* they incur expenses. Chung Decl. Ex. B, at 212; *see* Beaudoin ¶¶8-9. The Court should not ratify Defendants' "experimentation with disobedience," *McComb*, 336 U.S. at 192, but should enforce its injunction by ordering Defendants to make additional funding determinations through the end of 2026 and issue any resulting GANs. The Court should also clarify that continuation awards must award funding for the entire budget period and reflect the correct five-year performance period. Chung Decl. Ex. B, at 211, 367.

**B. Defendants Violated the 2026 Preliminary Injunction**

Defendants' failure to award funding for the rest of the 2026 budget period also violates the 2026 Preliminary Injunction, which enjoins Defendants from "considering new priorities that did not exist at the time the grantee applied for a Protected Grant, for purposes of evaluating whether to withhold funds from a Protected Grantee." *Washington* (2026), Dkt. #106 at 18. Defendants' actions against Protected Grantees are still effectuating their new priorities and

interpretation of federal civil rights laws, as Defendants have identified no other reason why they have not made additional funding determinations and issued grant awards to Protected Grantees for the full 2026 budget period. *See, e.g.*, *id.*, Dkt. #94-2 (administrative record); *supra* §II.B (discussing directives); §II.C (discussing funding slate memos); *supra* n.2 (no notification of violations).

The 2026 Preliminary Injunction also enjoins Defendants from "refusing to grant or continue federal funding assistance, including withholding additional funding determinations… without first providing any procedural protections to which Protected Grantees are due under federal civil rights statute or regulation." *Washington* (2026), Dkt. #106 at 17. Because Defendants refuse to make additional funding determinations for the rest of 2026, Protected Grantees are due procedural protections, including notice, an opportunity for voluntary compliance, an administrative hearing, notification to Congress, and judicial review. *See* 42 U.S.C. §§2000d-1, 2000d-2; 20 U.S.C. §§1682, 1683. Defendants did not provide these procedural protections to Protected Grantees before refusing to make additional funding determinations. *See supra* n.2; Chung Decl. Ex. A, at 3-4.

### C. New Facts Warrant Modification of the Injunctions

Even pending appeal, the Court has authority to "effectuate[] the underlying purposes" of the injunctions by clarifying and modifying them "in light of new facts." *NRDC*, 242 F.3d at 1167; *Napster*, 284 F.3d at 1098; *see also, e.g.*, *City & County of San Francisco v. Trump*, 782 F. Supp. 3d 830, 833 (N.D. Cal. 2025) (clarifying "core purpose of the Preliminary Injunction"). The Court should modify one or both injunctions to order Defendants not to administer Protected Grants less favorably than other Program grants. This modification is necessary to "maintain[] … the status quo." *Hoffman*, 536 F.2d at 1276. Here, the status quo required Defendants to treat Protected Grantees like other Program grantees, receive regular (non-defective) continuation awards, and not attempt to end funding based on the February Directive's new priorities or without providing federal civil rights protections.

The purpose of the 2025 Permanent Injunction was to return Protected Grantees to their prior status and issue continuation awards for 2026 without considering new priorities. Instead of restoring the status quo, Defendants failed to issue timely continuation awards, issued GANs shortening the five-year performance period, issued only six months of funding, broke their promise to make additional funding determinations, and threatened to terminate the Protected Grants. *See generally supra* §§II.A-D. After the Court entered the 2026 Preliminary Injunction, Defendants again refused to make additional funding determinations for the rest of the 2026 budget period and imposed the unlawful ad hoc grant procedure. *See* Chung Decl. Ex. A; *supra* §II.D. Protected Grantees continue to suffer the harms the injunctions were intended to prevent. *See supra* §II.E.

This is not the status quo. Defendants' evasive course of conduct demands that the Court modify one or both of its injunctions to ensure Protected Grantees are restored to the same status as other Program grantees and the purpose of the injunctions is met. *See, e.g.*, *Washington* (2025), Dkt. #367 at 7-8 (discussing different treatment of grantees). GEPA requires that "[a]ll regulations shall be uniformly applied and enforced throughout the 50 States." 20 U.S.C. §1232(c). But instead, Defendants are using every tool at their disposal (and inventing new ones) to target Protected Grantees, sabotage their projects, and create a hostile environment designed to force Protected Grantees to voluntarily terminate their grants—an end run around the injunctions' prohibitions against using new priorities to make continuation decisions or withhold funds, and against refusing to continue funding without first providing federal civil rights procedural protections. *Washington* (2025), Dkt. #269 at 35; *Washington* (2026), Dkt. #106 at 17-18.

Moreover, in light of upcoming continuation decisions for 2027, Protected Grantees need assurances that performance issues caused by Defendants' ongoing efforts to end funding will not be counted against them; nor will Defendants continue using the ad hoc grant procedure or invent further disruptions when making continuation decisions for 2027. *See supra* §II.D.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206 464-7744

Enough is enough. The Court should exercise its "wide discretion" and "supervisory authority" to modify the injunctions in light of these changed circumstances. *Napster*, 284 F.3d at 1098. "The Government cannot avoid liability … by 'hewing to the narrow letter of the injunction' while 'simultaneously ignoring its spirit.'" *San Francisco*, 782 F. Supp. 3d at 833 (quoting *Cetacean*, 774 F.3d at 954).

## V. CONCLUSION

For the reasons stated above, Plaintiff States respectfully request that the Court order Defendants to make additional funding determinations and issue any resulting continuation awards for the rest of the 2026 budget period, and modify its orders such that Defendants may not treat Protected Grantees less favorably than other grantees.

DATED this 13th day of October 2026.

I certify that this memorandum contains 4158 words in compliance with Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

/s/ Ellen Range
ELLEN RANGE, WSBA #51334
JENNIFER K. CHUNG, WSBA #51583
DUFFY GRAHAM, WSBA #33103
LUCY WOLF, WSBA #59028
Assistant Attorneys General
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitors General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Ellen.Range@atg.wa.gov
Jennifer.Chung@atg.wa.gov
Duffy.Graham@atg.wa.gov
Lucy.Wolf@atg.wa.gov
William.McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

ROB BONTA
Attorney General of California

*/s/ Crystal Adams*
CRYSTAL ADAMS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KATHLEEN BOERGERS*
Supervising Deputy Attorney General
KATHERINE MILTON*
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7522
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

*Attorneys for State of California*

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON*
Director of Impact Litigation
JENNIFER-KATE AARONSON*
VANESSA L. KASSAB*
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Vanessa.Kassab@delaware.gov
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

*Attorneys for State of Delaware*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Andrew Ammirati*
ANDREW AMMIRATI*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorney for State of Connecticut*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Michael Drezner*
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

*Attorney for State of Maryland*

KWAME RAOUL
Attorney General of Illinois

*/s/ Emily Hirsch*
EMILY HIRSCH*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Emily.Hirsch@ilag.gov

*Attorney for State of Illinois*

AARON M. FREY
Attorney General of Maine

*/s/ Sarah A. Forster*
SARAH A. FORSTER*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

*Attorney for State of Maine*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS*
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS*
Chief State Trial Counsel
YAEL SHAVIT*
Chief, Consumer Protection Division
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
617-963-2277
Katherine.Dirks@mass.gov
Yael.Shavit@mass.gov

*Counsel for Commonwealth of Massachusetts*

LETITIA JAMES
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM*
Special Counsel for Federal Initiatives
MARK LADOV*
Special Counsel
28 Liberty Street
New York, NY 10005
212-416-8240
Rabia.Muqaddam@ag.ny.gov
Mark.Ladov@ag.ny.gov

*Attorneys for State of New York*

RAÚL TORREZ
Attorney General of New Mexico

*/s/ Aletheia V.P. Allen*
ALETHEIA V.P. ALLEN*
Solicitor General
SETH C. MCMILLAN*
Deputy Solicitor General
New Mexico Department of Justice
201 Third St. NW, Suite 300
Albuquerque, NM 87102
505-527-2776
Aallen@nmdoj.gov
SMcMillan@nmdoj.gov

*Attorneys for State of New Mexico*

DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorney for People of Michigan*

AARON FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
702-486-3420
HStern@ag.nv.gov

*Attorney for State of Nevada*

DAN RAYFIELD
Attorney General of Oregon

*/s/ Coby Howell*
COBY HOWELL*
Senior Assistant Attorney General
Trial Attorney
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
971-673-1880
Coby.Howell@doj.oregon.gov

*Attorney for State of Oregon*

PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Kyla Duffy*
KYLA DUFFY*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2809
Kduffy@riag.ri.gov

*Attorney for State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Frances Reynolds Colbert*
FRANCES REYNOLDS COLBERT*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-266-9226
Frances.Colbert@wisdoj.gov

*Attorney for State of Wisconsin*

**Admitted pro hac vice*